Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, FIVE VALLEYS UROLOGY, PLLC, PROVIDENCE HEALTH & SERVICES – MT, WESTERN MONTANA CLINIC, PC, PAT APPLEBY, MARK CARPENTER, LOIS FITZPATRICK, JOEL PEDEN, DIANA JO PAGE, WALLACE L. PAGE, and CHEYENNE SMITH,<br><br>        Plaintiffs,<br><br>    v.<br><br>AUSTIN KNUDSEN, Montana Attorney General, and LAURIE ESAU, Montana Commissioner of Labor and Industry,<br><br>        Defendants. | Cause No.<br><br><br>**COMPLAINT** |

1

The Plaintiffs, Montana Medical Association ("MMA"), Five Valleys Urology, PLLC ("FVU"), Providence Health & Services – MT ("PH&S"), Western Montana Clinic, PC ("WMC"), Pat Appleby, Lois Fitzpatrick, Joel Peden, Diana Jo Page, Wallace L. Page, and Cheyenne Smith for their Complaint against the Defendants, Austin Knudsen (in his capacity as Montana Attorney General) and Laurie Esau (in her capacity as Montana Commissioner of Labor and Industry), state as follows:

## Jurisdiction

1.      Jurisdiction is founded on 28 U.S.C. § 1331 (federal question), on 28 U.S.C. § 1367 (supplemental jurisdiction), and on 42 U.S.C. § 1983 (federal civil rights).

2.      This case is also founded on 28 U.S.C. § 2201, which authorizes the Court to grant declaratory relief.

## Summary of the Claim

3.      This suit asserts that Montana House Bill 702, 67th Legislature, Regular Session (Mont. 2021) ("Montana HB 702"), § 1(b) and portions of § 1(a) and (c) are invalid to the extent those statutory provisions restrict the ability of physician offices and hospitals, within their professional judgment, to determine the conditions of employment based upon a person's vaccination or immunity status or prevents such from otherwise appropriately addressing an unvaccinated

employee, contractor, or prospective employee or contractor. The statutory provisions are invalid because –

(a) under the Supremacy Clause of the United States Constitution, they are preempted by the following federal laws: (i) the Americans with Disabilities Act ("ADA") reasonable accommodation provisions, 42 U.S.C. § 12112, (ii) the ADA public accommodation provisions, 42 U.S.C. § 12182, and (iii) the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 654, and its regulations;

(b) they violate the following sections of the Montana Constitution: (i) the inalienable right to "a clean and healthful environment" under article II, section 3 of the Montana Constitution, (ii) the obligation of the State of Montana and the Montana Legislature to "maintain … a … healthful environment" in Montana, article IX, section 1 of the Montana Constitution, and (iii) the Equal Protection Clause under article II, section 4 of the Montana Constitution, and

(c) they violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## Statute Under Review

4.      Montana HB 702, as most relevant to this case, states as follows:

**Section 1.  Discrimination based on vaccination status or possession of immunity passport prohibited – definitions.**  (1) Except as provided in subsection (2) [which applies to schools and day-care facilities – but not to physician offices or hospitals], it is an unlawful discriminatory practice for:

(a) a person . . . to refuse, withhold from, or deny to a person . . . employment opportunities based on the person's vaccination status or whether the person has an immunity passport;

(b) an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status or whether that person has an immunity passport; or

(c) a public accommodation to exclude, limit, . . .  or otherwise discriminate against a person based on the person's vaccination status or whether the person has an immunity passport.

5.    Montana HB 702 is not limited to vaccinations/immunity related to the COVID-19 virus.  It applies to vaccination against (and immunity status pertaining to) all diseases, known and unknown, that may now or in the future afflict Montanans.

4

6.      Montana HB 702 § 1 applies to Offices of Private Physicians ("OPPs"), as identified in Montana Code Annotated ("MCA") § 50-5-101(26)(b), and to Hospitals, as identified in § 50-5-101(31).

7.      Montana HB 702 § 2 exempts licensed nursing homes, long-term care facilities, and assisted living facilities from the requirements of Montana HB 702 § 1.

8.      Section 50-5-101(31), MCA, requires that Hospitals provide medical care "by or under the supervision of licensed physicians."

9.      While Montana HB 702 § 1 does allow somewhat greater latitude to Hospitals than OPPs in setting employment terms and mitigating the risks related to vaccination or immunity status, it still limits the ability of Hospitals to exercise their professional judgment in determining the conditions of employment of those persons in clinic settings and otherwise, when necessary to address the safety of patients, providers, and staff.

10.     Per Montana HB 702 § 4, Montana HB 702 § 1 is to be codified, with certain exceptions, as an integral part of Title 49, chapter 2, part 3, MCA.

11.     Title 49, MCA is the Montana Human Rights Act.

//


//

5

## Plaintiffs

## Montana Medical Association

12.     The MMA is the largest professional association of physicians in Montana.  Founded in 1879 as a not-for-profit corporation and based in Helena, the MMA has served as the unified voice for Montana physicians dedicated to improving patient care.  The MMA's mission is to serve its members as an advocate for the medical profession, quality patient care, and the health of all Montana citizens.  MMA members practice in all medical specialties.

13.     MMA members are injured by Montana HB 702 and would have standing to sue as individuals for the relief sought in this lawsuit.  The desired relief is consistent with the MMA mission.  Neither the claims, nor the requested relief, requires the participation of individual MMA members.  Hence, the MMA has associational standing to bring this lawsuit.

14.     MMA members own, manage, and are employed in OPPs.

15.     MMA members are employed in Hospitals.  They provide medical care in Hospitals and supervise the provision of medical care in Hospitals.

## Offices of Private Physicians

16.     FVU and WMC are OPPs located in Montana.  Employees of the OPP Plaintiffs care for patients and in some instances have close physical contact with those patients.  The OPP Plaintiffs employ individuals and, from time to time, hire

new employees.  The OPP Plaintiffs are subject to the requirements of Montana
HB 702 § 1.

17.    The OPP Plaintiffs treat patients with compromised immune systems
and employ individuals who may have compromised immune systems.

18.    Montana HB 702 § 1 prevents, or at least substantially limits, the OPP
Plaintiffs from providing a safe environment for their patients and for their
employees/prospective employees and inhibits their ability to practice ethical and
effective medicine for at least the following reasons:

a.    Unvaccinated medical workers are more likely to spread infectious
       diseases and pathogens, including, but not limited to, the COVID-19
       virus, Hepatitis A, Hepatitis B, Pertussis, Measles, and Influenza, than
       vaccinated medical workers;

b.    Unvaccinated medical workers are more likely to spread pathogens
       through airborne, blood-borne, surface contamination, and other
       transmission mechanisms than are medical workers who are
       vaccinated against these pathogens;

c.    The OPP Plaintiffs and their physicians have a professional obligation
       to comply with national standards for the care and treatment of
       patients, including observing and enforcing infectious disease
       prevention protocols;

d.     The OPP Plaintiffs and their physicians have a professional obligation to ensure that immunocompromised patients be treated in a safe and individualized manner, which includes assurances that treating providers and staff are vaccinated against certain diseases;

e.     The presence of unvaccinated medical workers undermines the credibility of the OPP Plaintiffs and their physicians when they urge vaccine-hesitant patients to become vaccinated, even when the vaccines may be in the best interest of the patients and of the public at large; and,

f.     From time to time, physicians who practice at the OPP Plaintiffs refer their patients to other OPPs or to Hospitals.  Care for these patients may be jeopardized if the receiving institution has unvaccinated employees and/or is otherwise restrained in its ability to safely treat these patients.

## Providence Health & Services – MT

19.     PH&S, a Hospital, is a nonprofit corporation located in Montana.  It provides medical care by or under the supervision of licensed physicians.

20.     PH&S employs physicians and other health care professionals who provide care and treatment in clinical settings.  PH&S employees care for patients and in some instances have close physical contact with those patients.  PH&S

8

employs and, from time-to-time, hires employees.  PH&S is therefore subject to the requirements of Montana HB 702 § 1.

21.     PH&S treats patients with compromised immune systems and employs individuals with compromised immune systems.

22.     Montana HB 702 § 1 prevents, or at least substantially limits, PH&S from providing a safe environment for its patients and for its employees/prospective employee and inhibits its ability to practice ethical and effective medicine for at least the following reasons:

    a.    Unvaccinated medical workers are more likely to spread infectious diseases and pathogens, including, but not limited to, the COVID-19 virus, Hepatitis A, Hepatitis B, Pertussis, Measles, and Influenza, than vaccinated medical workers;

    b.    Unvaccinated medical workers are more likely to spread pathogens through airborne, blood-borne, surface contamination, and other transmission mechanisms than are medical workers who are vaccinated against these pathogens;

    c.    Medical practitioners have a professional obligation to comply with national standards for the care and treatment of patients, including observing and enforcing infectious disease prevention protocols;

d.     Medical practitioners have a professional obligation to ensure that immunocompromised patients be treated in a safe and individualized manner, which includes assurances that treating providers and staff are vaccinated against certain diseases;

e.     The presence of unvaccinated medical workers undermines the credibility of PH&S and its physicians when they urge vaccine-hesitant patients to become vaccinated, even when the vaccines may be in the best interest of the patients and of the public at large; and

f.     From time to time, physicians who practice at PH&S refer their patients to other Hospitals or to OPPs.  Care for these patients is jeopardized if the receiving institution has unvaccinated employees and/or is otherwise restrained in its ability to safely treat these patients.

**Patients**

23.    Pat Appleby, Lois Fitzpatrick, Joel Peden, Diana Jo Page, Wallace L. Page, and Cheyenne Smith ("Patients"), all live in, and are citizens of, Montana. Each of them suffers from one or more chronic medical conditions, which require frequent care from physicians.  Each of them has a compromised immune system, which makes them especially susceptible to acquiring an infectious disease.

24.     The compromised immune systems of the Patients require that they avoid the risk of acquiring a contagious disease.  Their compromised immune systems prohibit them from participating in the same activities available to vaccinated persons without compromised immune systems.  Examples of such other activities include meeting with people in crowded settings, engaging in close contact with other people, and engaging in even casual contact with a likely carrier of the COVID-19 virus or other infectious disease agent.

25.     During the present COVID-19 pandemic, the Patients must be careful to avoid or minimize contact with persons who carry or may carry the COVID-19 virus.  They have to avoid commercial and professional establishments that fail to take steps to minimize the spread of the virus and other common viruses and germs.  As new pathogens develop and infect Montanans, they will have to avoid commercial and professional establishments that fail to take steps to minimize the spread of those new pathogens.  Such commercial and professional establishments include OPPs and Hospitals that employ unvaccinated workers or are unable to take necessary measures to protect against preventable diseases.

26.     In addition, Cheyenne Smith, one of the Patients, is the mother of a newborn daughter.  On account of her age, Cheyenne Smith's daughter cannot be vaccinated against the COVID-19 virus, and she cannot be vaccinated against certain childhood diseases, such as Pertussis.  Consequently, Cheyenne Smith

must, for the sake of her daughter as well as herself, avoid OPPs and Hospitals that employ unvaccinated workers or do not take necessary measures to mitigate against the risk caused by unvaccinated workers.

27.     The Patients are "qualified individuals with a disability" for purposes of the ADA, 42 U.S.C. §§ 12102, 12131, 12181.

## Defendants

28.     Austin Knudsen is the Montana Attorney General and generally charged with the enforcement of the laws of the State of Montana, as they affect the public interest.

29.     Laurie Esau is the Montana Commissioner of Labor and Industry and is charged with the enforcement of Montana HB 702 § 1 through the Montana Human Rights Commission.

## First Claim – Violation of Employers' Obligation Under the Americans with Disabilities Act to Make Reasonable Accommodations

30.     The allegations of Paragraphs 1-29 are incorporated in this claim as though set forth fully herein.

31.     42 U.S.C. § 12112(b)(5)(A) requires employers to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an applicant or employee."

32.     If applicants or employees at OPPs or Hospitals in Montana have compromised immune systems, the OPPs or Hospitals, under this provision, must reasonably accommodate those applicants' or employees' limitations.  This would include taking reasonable precautions to avoid exposing the applicants or employees to an infectious disease from a co-employee.

33.     Montana HB 702 § 1 prevents OPPs, such as FVU and WMC, from taking the steps necessary to accommodate immune system compromised applicants or employees.

34.     Montana HB 702 § 1 also prevents Hospitals, such as PH&S, from taking the steps necessary to accommodate immune system compromised applicants or employees.  It requires Hospitals to provide reasonable accommodations to those who are not vaccinated or immune, when there may be no reasonable accommodation to protect against certain infectious diseases. Further, Montana HB 702 § 3(b) may have no application in Hospital-owned physician clinics.

35.     OPPs and Hospitals that adhere to Montana HB 702 § 1 risk violating the ADA § 12112(b)(5)(A).  Furthermore, Montana HB 702 § 1 discourages immune-compromised workers, such as the Patients, from accepting potential employment opportunities otherwise available to them at OPPs or at Hospitals.

36.     Because Montana HB 702 § 1 prevents OPPs and Hospitals in Montana, including FVU, WMC, and PH&S, from complying with 42 U.S.C. § 12112(b)(5)(A) and it makes it more difficult for persons with compromised immune systems to obtain employment at OPPs and at Hospitals, it undercuts the purposes of the ADA § 12112(b)(5)(A) and is preempted.

### Second Claim – Violation of the Public Accommodation Provision of The Americans with Disabilities Act

37.     The allegations of Paragraphs 1-36 are incorporated in this claim as though set forth fully herein.

38.     Under the ADA, a disability is a "physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A) (2021).

39.     OPPs, such as the FVU and WMC, and Hospitals, such as PH&S, are public accommodations under the ADA.  42 U.S.C. § 12181(7)(F) (2021).

40.     The ADA, under 42 U.S.C. § 12182(b)(2)(A)(iii) prohibits the following form of discrimination:

> [A] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can

14

demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

41.    Patients without compromised immune systems who have been vaccinated under approved vaccines are able to more safely use the services of OPPs and Hospitals, even if employees at those OPPs and Hospitals have not themselves been vaccinated against diseases.

42.    Montana HB 702 § 1 prevents OPPs, including the facilities of FVU and WMC, and Hospitals, such as PH&S, from taking those steps necessary to ensure that patients with compromised immune systems are able to utilize the services of those offices and facilities to the same extent as can patients without compromised immune systems.

43.    Montana HB 702 § 1 limits the access of patients with compromised immune systems, including the Patients, to OPPs and Hospitals.

44.    Because Montana HB 702 § 1 prevents OPPs and Hospitals, including FVU, WMC, and PH&S, and from complying with 42 U.S.C. § 12182 and because it reduces the accessibility of OPPs and Hospitals to persons with compromised immune systems, including the Patients, it is preempted by the ADA.

//

//

15

## **Third Claim – Violation of the Occupational Safety and Health Act**

45.     The allegations of Paragraphs 1-44 are incorporated in this claim as though set forth fully herein.

46.     OSHA, at 29 U.S.C. § 654(a)(1), states: "Each employer . . . shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."

47.     The COVID-19 virus, Hepatitis B, Pertussis, and other communicable diseases are recognized hazards that are causing, or are likely to cause, death or serious physical harm.

48.     Because Montana HB 702 § 1 requires OPPs and Hospitals, including FVU, WMC, and PH&S, to hire employees regardless of their vaccination/immunity status and otherwise impedes them from identifying or controlling the placement of employees based upon vaccination status, they are unable to comply – or are at least impeded from complying – with OSHA § 654(a)(1).

49.     Montana HB 702 § 1 limits the ability of those persons with compromised immune systems who now work at OPPs and Hospitals, or who may wish to work in OPPs and Hospitals, from securing the benefits of OSHA § 654(a)(1).

50.     Because Montana HB 702 § 1 undercuts the purposes of OSHA

§ 654(a)(1), it is preempted.

### Fourth Claim – Violation of OSHA Regulation

51.     The allegations of Paragraphs 1-50 are incorporated in this claim as

though set forth fully herein.

52.     OSHA, at 29 U.S.C. § 654(a)(2) states: "Each employer . . . shall

comply with occupational safety and health standards promulgated under

[OSHA]."

53.     OSHA Regulation § 1910.502, (codified at 29 C.F.R. § 1910.502) in

turn, requires, that, where employees provide health care services or health care

support services – (c)(1) "The employer must develop and implement a COVID-19

plan," which is to include (c)(7) "policies and procedures to [m]inimize the risk of

transmission of COVID-19 for each employee."

54.     OPPs and Hospitals, including the facilities run by FVU, WMC, and

PH&S, cannot develop meaningful plans to minimize the risk of employees'

COVID-19 transmission if they are barred from taking steps to mitigate the risks

caused by unvaccinated employees.

55.     Because Montana HB 702 § 1 prevents – or at least impedes – OPPs

and Hospitals, including FVU, WMC, and PH&S, from complying with OSHA

§ 654(a)(2) and OSHA Regulation § 1910.502, and other similar regulations,

Montana HB 702 § 1 is preempted.

### Fifth Claim – Violation of Montanans' Constitutional Right To a Safe and Healthy Environment

56.     The allegations of Paragraphs 1-55 are incorporated in this claim as though set forth fully herein.

57.     The Montana Constitution, in its Declaration of Rights, provides: "All persons are born free and have certain inalienable rights.  They include the right to a . . . healthful environment and the rights of . . . seeking their safety [and] health . . . in all lawful ways."  Mont. Const. art. II, § 3.

58.     Montana HB 702 § 1 impedes OPPs and Hospitals, such as FVU, WMC, and PH&S, from maintaining a healthful environment.

59.     Montana HB 702 § 1 prevents persons with compromised immune systems, such as the Patients, from enjoying a healthy environment and securing their right to safe and healthy medical care.

60.     Montana HB 702 § 1 therefore violates § 3 of the Montana Constitution's Declaration of Rights.

### Sixth Claim – Violation of Montana's Constitutional Obligation To Maintain a Healthy Environment

61.     The allegations of Paragraphs 1-60 are incorporated in this claim as though set forth fully herein.

62.     The Montana Constitution provides:

(1) The state and each person shall maintain and improve a . . . healthful environment in Montana . . . .

(2) The legislature shall provide for the administration and enforcement of this duty.

Mont. Const. art. IX, § 1.

63.     Montana HB 702 § 1 violates the legislature's obligation to maintain and improve a healthful environment by facilitating and even mandating the employment in medical offices of persons who are more likely to spread disease.

64.     Montana HB 702 § 1 impedes OPPs and Hospitals, such as FVU, WMC, and PH&S, from maintaining a healthful environment.

65.     Montana HB 702 § 1 impairs the ability of persons with compromised immune systems, such as the Patients, from enjoying a healthy environment.

66.     Montana HB 702 § 1 therefore violates article IX, section 1 of the Montana Constitution.

### Seventh Claim – Violation of Montana's Constitutional Obligation To Provide Equal Protection of the Laws

67.     The allegations of Paragraphs 1-66 are incorporated in this claim as though set forth fully herein.

68.     The Montana Constitution requires that "[n]o person shall be denied the equal protection of the laws."  Mont. Const. art. II, § 4.

69.     Under Montana HB 702 § 2, OPPs and Hospitals, such as FVU, WMC, and PH&S, are treated more stringently than nursing homes, long term care facilities, or assisted living facilities.

70.     Montana HB 702 thereby draws an unreasonable and baseless distinction between OPPs and Hospitals and different types of licensed facilities that treat the same types of patients.  Montana HB 702 specifically draws an unreasonable and baseless distinction between clinics in which physicians treat patients, and other licensed health care facilities.

71.     Immunocompromised and other disabled Montana citizens, such as the Patients, are disparately and adversely affected by Montana HB 702 as compared with other similarly situated Montana citizens.  For example, immunocompromised patients who receive care in licensed nursing home facilities are entitled to receive treatment only from vaccinated providers, whereas immunocompromised patients who receive care in OPPs and certain Hospital clinical settings are not.

72.     There is no state interest or rational basis for treating OPPs and Hospitals, such as FVU, WMC, and PH&S, differently than other types of Montana health care facilities.

73.     There is no state interest or rational basis for discriminating against immunocompromised or otherwise disabled Montana citizens, such as Patients, in this adverse manner.

74.     Consequently, Montana HB 702 § 1 violates Montana's constitutional obligation to provide equal protection of the laws to OPPs and Hospitals and to immune system compromised patients, such as Patients, who may seek or require treatment in OPPs or Hospitals.

**Eighth Claim – Violation of**
**Equal Protection Clause of the Fourteenth Amendment**

75.     The allegations of Paragraphs 1-74 are incorporated in this claim as though set forth fully herein.

76.     The Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

77.     OPPs and Hospitals, such as the facilities of FVU, WMC, and PH&S, are treated more stringently than nursing homes, long term care facilities, or assisted living facilities.

78.     Montana HB 702 thereby draws an unreasonable and baseless distinction between OPPs and Hospitals and different types of health care facilities. Montana HB 702 specifically draws an unreasonable and baseless distinction

between clinics in which physicians treat patients, and other licensed health care facilities.

79.     Immunocompromised and other disabled Montana citizens, such as the Patients, are disparately and adversely affected by Montana HB 702 as compared with other similarly situated Montana citizens.  For example, immunocompromised patients who receive care in licensed nursing home facilities are entitled to receive treatment only from vaccinated providers, whereas immunocompromised patients who receive care in OPPs and certain Hospital clinical settings are not.

80.     There is no state interest or rational basis for treating OPPs or Hospitals, such as FVU, WMC, and PH&S, differently than other types of Montana health care facilities.

81.     There is no state interest or rational basis for discriminating against immunocompromised or otherwise disabled Montana citizens, such as Patients, in this adverse manner.

82.     Consequently, Montana HB 702 § 1(b) violates the Equal Protection Clause of the Fourteenth Amendment in that it discriminates against OPPs and Hospitals and against immune system compromised patients, such as Patients, who may seek or require treatment in OPPs or Hospitals.

83.   42 U.S.C. § 1983 provides: "Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

84.   Deprivation of equal protection of the laws under the Fourteenth Amendment is a deprivation of a constitutional right, and thus the Defendants in this action can be sued in this Court for redress.

## **Relief Requested**

Consequently, the Plaintiffs pray for the following relief:

A.   A declaration that Montana HB 702 § 1 is invalid and unenforceable against Offices of Private Physicians (as identified in § 50-5-101(26), MCA) and the physicians who own, run, or practice in Offices of Private Physicians to the following extent:

(i)   The phrase "employment opportunities" in Montana HB 702 § 1(a) is invalid and unenforceable,

(ii)   Montana HB § 1(b) is invalid and unenforceable in its entirety, and

(iii)   The phrase "or otherwise discriminate" in Montana HB 702 § 1(c) is invalid and unenforceable;

B.   A permanent injunction prohibiting the Defendants from enforcing Montana HB 702 § (1) against Offices of Private Physicians and the physicians who own, run, or practice in Offices of Private Physicians to the following extent:

    (i)   A permanent injunction against enforcing the phrase "employment opportunities" in Montana HB 702 § 1(a),

    (ii)   A permanent injunction against enforcing Montana HB 702 § 1(b) in its entirety, and

    (iii)   A permanent injunction against enforcing the phrase "or otherwise discriminate" in Montana HB 702 § 1(c);

C.   A declaration that Montana HB 702 § 1 is invalid and unenforceable against Hospitals (as identified in § 50-5-101(31), MCA) and the physicians who practice in Hospitals to the following extent:

    (i)   The phrase "employment opportunities" in Montana HB 702 § 1(a) is invalid and unenforceable,

    (ii)   Montana HB § 1(b) is invalid and unenforceable in its entirety, and

    (iii)   The phrase "or otherwise discriminate" in Montana HB 702 § 1(c) is invalid and unenforceable;

24

D.     A permanent injunction prohibiting the Defendants from enforcing Montana HB 702 § (1) against Hospitals and the physicians who practice in Hospitals to the following extent:

    (i)     A permanent injunction against enforcing the phrase "employment opportunities" in Montana HB 702 § 1(a),

    (ii)    A permanent injunction against enforcing Montana HB 702 § 1(b) in its entirety, and

    (iii)   A permanent injunction against enforcing the phrase "or otherwise discriminate" in Montana HB 702 § 1(c);

E.     Attorney's fees, including litigation expenses, and costs; and

F.     Such other relief as may be just and proper.

DATED this 22nd day of September, 2021.


                /s/  Justin K. Cole
                Attorneys for Plaintiffs