IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | CV 21–108–M–DWM |
| Plaintiffs, | |
| and | OPINION and ORDER |
| MONTANA NURSES ASSOCIATION, | |
| Plaintiff-Intervenor, | |
| vs. | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

This case challenges the recently enacted laws codified in Mont. Code Ann.

§§ 49–2–312 and 49–2–313.  These statutes catalogue Montana House Bill 702,

which was passed in 2021.  In a nutshell, § 49–2–312 prohibits persons and

entities—with limited exceptions—from withholding goods, services, or

employment "based on the person's *vaccination*[1] status or whether the person has

---

[1] Although Defendants stated at the January 21, 2022 hearing that HB 702 was part of the State's efforts to respond to COVID-19, "vaccinations" and "vaccines" are not limited to COVID-19 by the text of the statute.

an immunity passport." *Id.* (emphasis added).  "Vaccination status" refers to "an indication of whether a person has received one or more doses of a vaccine," while "immunity passport" refers to a form of record "indicating that a person is immune to a disease, either through vaccination or infection and recovery."  § 49–2–312(5). School vaccination requirements remain, § 49–2–312(2), and "health care facilities," as defined under § 50–5–101, are permitted to "ask[] an employee to volunteer the employee's vaccination or immunization status" and may "implement reasonable accommodation measures for employees, patients, visitors, and other persons who are not vaccinated or not immune," § 49–2–312(3).  The term "health care facilities" under § 49–2–312(3) "does not include offices of private physicians, dentists, or other physical or mental health care workers regulated under Title 37."  § 50–5–101(26)(b).  Section 49–2–313 then exempts certain facilities from § 49–2–312: licensed nursing homes, long-term care facilities, and assisted living facilities (collectively, "Exempted Facilities").  These facilities are exempt "during any period of time that compliance with [§ 49–2–312] would result in a violation of regulations or guidance by the centers for medicare and medicaid services or the centers for disease control and prevention."

In light of these statutes, multiple parties sued Austin Knudsen, in his official capacity as the Montana Attorney General, and Laurie Esau, in her official capacity as the Montana Commissioner of Labor and Industry (collectively

"Defendants").  The "Institutional Plaintiffs" include Montana Medical

Association ("Montana Medical"), Five Valleys Urology, PLLC ("Five Valleys"),

Providence Health and Services ("Providence"), and Western Montana Clinic, PC.

The "Individual Plaintiffs"—immunocompromised patients—include Pat Appleby,

Mark Carpenter, Lois Fitzpatrick, Joel Peden, Diana Jo Page, Wallace L. Page, and

Cheyenne Smith.  The Montana Nurses Association ("the Nurses") were also given

leave to intervene as Plaintiff-Intervenors, (the Institutional Plaintiffs, Individual

Plaintiffs, and the Nurses are collectively referred to as "Plaintiffs").  The issues at

this stage in the case concern the viability of Plaintiffs' claims, not the merits of

those claims.

Plaintiffs' First Amended Complaint sets forth eight claims.[2]  The first

four claims sound in federal preemption.  Plaintiffs allege that § 49–2–312

violates an employers' obligation under the Americans with Disabilities Act

("ADA")[3] to make reasonable accommodations (Claim I) and prohibits

compliance with the obligation under the ADA for public accommodations

to provide equitable access to individuals with disabilities (Claim II).

Plaintiffs further allege that § 49–2–312 violates the Occupational Safety

and Health Act ("OSHA")[4] because it prohibits employers from providing a

---

[2] These claims are reflected in the Nurses' Intervening Complaint.  (Doc. 11-1.)
[3] 42 U.S.C. §§ 12101, et seq.
[4] 29 U.S.C. §§ 651, et seq.

3

workplace free from recognized hazards (Claim III) and prevents employers

from developing plans to reduce the risk of COVID-19 transmission (Claim

IV).  Plaintiffs' other four claims are constitutional challenges.  Plaintiffs

claim that § 49–2–312 violates the right to a clean and healthful environment

and to seek health (Claim V) and the obligation to maintain and improve a

clean and healthful environment (Claim VI) under the Montana Constitution.

Plaintiffs also allege that § 49–2–312 violates equal protection rights under

both the state and federal constitutions (Claims VII and VIII).  Defendants

seek to dismiss Plaintiffs' claims.  (Docs. 20, 29.)[5]  A hearing on

Defendants' motions was held on January 21, 2022.

## ANALYSIS

On the surface, Defendants' motions advance two primary arguments for

dismissal: Plaintiffs lack standing and the Complaint fails to state a claim under

Federal Rule of Civil Procedure 12(b)(6).  But in making these arguments,

Defendants misstate Plaintiffs' asserted injuries,[6] overstate Plaintiffs' requested

---

[5] Defendants state that "[u]nder the plain language of the November 30 Order, no State response was required at all." (Doc. 30 at 2–3.)  This interpretation is wrong. Defendants were not required to "provide additional briefing," but the Federal Rules of Civil Procedure require either a motion or a responsive pleading.  Fed. R. Civ. P. 12(a), (b).  Thus, while the Order stated additional briefing (i.e., analysis) was unnecessary, it did not obviate compliance with Rule 12.

[6] For example, Defendants state, "Plaintiffs' only theory of injury is their inability to terminate those employees they cannot force to vaccinate." (Doc. 25 at 6 (citing Doc. 14 at ¶ 18).)  The plain text of the Complaint refutes that statement.  (*See*

relief,[7] and engage in argument via proof by assertion.[8]  Ultimately, the briefing

throws into sharp relief the fact that the parties are divided over the efficacy of

vaccines and the effect of such vaccines[9] on healthcare employers, employees, and

patients.  But these disputes are grounded in the merits of this case and are beyond

the scope of the present motions.  For the reasons explained below, Plaintiffs have

standing and, for the most part, have stated plausible claims for relief.

Accordingly, Defendants' motions to dismiss, (Docs. 20, 29), are denied as to all

claims except for Plaintiffs' Claim VI and the Institutional Plaintiffs' Claim V,

both of which involve claims under the Montana Constitution's clean and healthful

environment provision.

---

Doc. 14 at ¶¶ 18, 22, 25, 32, 35, 42, 48, 54, 59, 63–65, 70–71, 78–79.)  Such
mischaracterizations border on misrepresentations and test the limits of Rule
3.3(a)(1) of the Montana Rules of Professional Conduct.
[7] For example, Defendants state that Plaintiffs "repeatedly express[] their wish to
fire individuals based on vaccination status."  (Doc. 21 at 35 (citing Doc. 14 at
¶¶ 18, 22).)  Again, the Complaint is devoid of such an expression, and Defendants
could not identify this expression when asked at the January 21 hearing.  Instead,
they proffered that this "wish" could be inferred from the Complaint.  Such an
inference is not synonymous with Defendants' "repeatedly express" language.
[8] For example, Defendants state Plaintiffs "read only part of the rule," "ignore the
remainder of the rule," and engage in "regulatory misreading," seemingly because
Plaintiffs do not cite every provision of the OSHA regulation, but then Defendants
provide only a superficial statement that the "provisions harmonize" with § 49–2–
312(3)(a) without further explanation.  (Doc. 21 at 29–30.)
[9] As stated above, this case encompasses vaccines related to "infectious diseases
and pathogens, including, but not limited to, the COVID-19 virus, Hepatits A,
Hepatitis B, Pertussis, Measles, and Influenza."  (*See, e.g.*, Doc. 14 at ¶ 18.)

## I.  Standing

Standing is a prerequisite to justiciability and "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Standing challenges are subject to review under Federal Rule of Civil Procedure 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2002).  To establish standing, a plaintiff must demonstrate: (1) the plaintiff suffered an injury in fact that is (2) causally connected and fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable decision in court.  *Lujan*, 504 U.S. at 560–61.  A plaintiff asserting associational standing must demonstrate the following additional criteria: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (quotation marks omitted).  The first and second prong of the associational standing inquiry are constitutional, but the third prong is prudential.  *United Food & Comm. Workers Union Local 751 v. Brown*, 517 U.S. 544, 555 (1996).

Plaintiffs bear the burden of establishing the three elements of standing. *Lujan*, 504 U.S. at 561.  Nevertheless, there is a "general rule applicable to federal court suits with multiple plaintiffs . . . that once the court determines that one of the

plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993). Furthermore, a plaintiff's burden shifts depending on whether the defendant asserts a facial or a factual challenge. A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facial attacks are resolved under the Rule 12(b)(6) standard: a plaintiff's allegations are accepted as true and all reasonable inferences are drawn in their favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

Here, Defendants contest standing across the board.[10] First, Defendants do

---

[10] Defendants state: "The social compact sometimes requires that citizens forebear [*sic*] laws they dislike. But neither the plaintiff nor this Court are the State, empowered to make or unmake the policy judgments set forth in [the statute]. And differing policy preferences don't grant objectors standing." (Doc. 21 at 9.) This argument misses the mark. Plaintiffs do not assert standing based on "differing policy preferences," but by the plain text of their Complaint they assert injuries rooted in federal statutes and regulations and the state and federal constitution. (*See, e.g.*, Doc. 14 at ¶¶ 31–32, 68–71.) These sorts of alleged injuries are the type of "case or controversy" this Court is empowered to adjudicate. U.S. Const. art. III, § 2, cl. 1. Moreover, contrary to the apparent assertion that a State may insulate itself from review when it enacts a statute, "[i]f a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

not accept Plaintiffs' allegations as true, indicating they challenge the factual

underpinnings of the alleged subject matter jurisdiction. (*See, e.g.*, Doc. 21 at 15–

17, 19–20.) However, as Plaintiffs note, "Defendants have not properly presented

affidavits" in support of their arguments. (Doc. 23 at 10.) Without supporting

evidence, the challenge is not a factual one. *See Safe Air for Everyone*, 373 F.3d at

1039. Second, Defendants suggest the Court may judicially notice certain

materials, perhaps in an attempt to "present other evidence" in lieu of affidavits.

*See id.* But the reference to judicial notice is imprecise and the material

Defendants apparently wish to judicially note is inappropriate. "A high degree of

indisputability is the essential prerequisite" of an adjudicative fact that may be

judicially noticed. Fed. R. Evid. 201(a) advisory committee's notes on proposed

rules. The very nature of this case demonstrates that the "facts" Defendants wish

to be judicially noticed—essentially, that there is no meaningful difference in

transmission risk of COVID-19[11] between vaccinated and unvaccinated medical

workers—are not "undisputed." Accordingly, these materials do not constitute

---

*Jacobsen v. Massachusetts*, 197 U.S. 11, 31 (1905). Finally, as an aside,
"*[f]orebear*, always a noun, means 'ancestor' (usually used in the plural). *Forbear*
is the verb meaning 'to refrain from objecting to'; to tolerate." *See* BRYAN A.
GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 369 (Jeff Newman et al. eds.,
3d ed. 2011). The context of Defendants' argument indicates they intended the
latter.
[11] While Defendants' argument on standing and its apparent request for judicial
notice focuses almost exclusively on the COVID-19 vaccine, the challenge raised
is related to *all* vaccines and immunizations.

sufficient "other evidence" to transmute Defendants' motion to dismiss to a factual one. The standing challenge is therefore facial.

Next, the general rule recognized in *Leonard* applies. As a contextual matter, the rule in *Leonard* derives from the Supreme Court's decision in *Carey v. Population Services, International*, 431 U.S. 678 (1977). In *Carey*, the diverse plaintiffs included a nonprofit, a reverend who served as director of an organization, three physicians, and an individual. *Id.* at 682 n.2. The lower court in *Carey* outlined the differences among the various plaintiffs' asserted injuries, but ultimately concluded that the standing of one plaintiff—regardless of whether his asserted injury was the same as the other plaintiffs—sufficed for all plaintiffs. *See Population Servs. Int'l v. Wilson*, 398 F. Supp. 321, 327–30 (S.D.N.Y. 1975). The Supreme Court affirmed the approach that so long as one plaintiff "has the requisite standing . . . [courts] have no occasion to decide the standing of the other [plaintiffs]." *Carey*, 431 U.S. at 682. Subsequently, in *Leonard*, the Ninth Circuit adhered to the general rule but nonetheless progressed beyond it to decide the standing of individual plaintiffs—despite the organization having standing—because of the unique waiver issue in that case. *See* 12 F.3d at 888. Here, Defendants identify no comparable "waiver issue" that would require the Court to move beyond the general rule from *Leonard*. Additionally, Plaintiffs are comparable to the plaintiffs in *Carey*, where the Court concluded that the standing

9

of one plaintiff was sufficient to encompass all plaintiffs.

Finally, construing the allegations in Plaintiffs' complaint as true, Plaintiffs have demonstrated associational standing for at least one Plaintiff.  Five Valleys, Western Montana Clinic, and Providence argue that § 49–2–312 prevents them from providing a medically safe environment for staff and patients because the statute bars them from requiring any vaccination for medical workers, which causes harm to others in the clinics by increasing the risk of transmission.  (Doc. 14 at ¶¶ 18, 22.)  Notably, some of the diseases Plaintiffs cite as likely to spread absent vaccination (hepatitis, measles, and influenza) are diseases for which the Supreme Court recently noted "[h]ealthcare workers around the country are ordinarily required to be vaccinated [against]."  *Biden v. Missouri*, __ S. Ct. __, 2022 WL 120950, at *3 (Jan. 13, 2022) (per curiam).

Thus, these three Institutional Plaintiffs satisfy associational standing because the alleged injury of not being able to inquire about the vaccination status of or require vaccinations for healthcare workers to reduce transmission risk is directly traceable to the statutory prohibition on such action for healthcare workers, and that injury may be redressed by a favorable decision in this Court.  Moreover, the members of these Institutional Plaintiffs would have standing to sue in their own right.  These Plaintiffs argue that § 49–2–312 prohibits providers from complying with "generally accepted standards of practice" because they are

10

prohibited from inquiring about employees' vaccination status, which prevents them from exercising their medical judgment to make decisions about how care is distributed.  Moreover, the interests these Institutional Plaintiffs seek to protect— keeping staff and patients healthy—are germane to their purposes.  And, neither the claims asserted nor the requested injunctive relief requires participation of individual members.

Similarly, the Nurses, as Plaintiff-Intervenors, demonstrate associational standing.  The Nurses allege that § 49–2–312 disrupts the relationship between vaccine requirements and "the provision of reasonable accommodations to nurses who cannot be vaccinated." (Doc. 11-1 at ¶ 4.)  And the Nurses allege that § 49–2–312 disrupts this relationship because it denies healthcare facilities the power to implement vaccine requirements based on science to best balance health and safety with reasonable accommodations.  (*Id.* ¶ 5.)  It is inapposite whether the Nurses control or have the capacity to impose vaccination requirements. *See Lujan*, 504 U.S. at 560–61. Finally, and related to redressability, the Nurses request injunctive relief, which traditionally satisfies the last prong of the associational standing inquiry. *See United Food*, 517 U.S. at 554.  Accordingly, Plaintiffs have standing.

## II.     Failure to State a Claim

Defendants further argue that dismissal is appropriate under Rule 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), allegations of material fact

are viewed as true and construed in the light most favorable to the nonmoving party. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). Those allegations must not be a mere recitation of the elements of a legally recognizable claim, but "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Here, Defendants' motion succeeds only as to Plaintiffs' Claim VI and as to the Institutional Plaintiffs' Claim V.

## A.   ADA Preemption

Conflict preemption exists "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (quotation marks and citations omitted). Plaintiffs make a plausible showing at this stage that § 49–2–312 conflicts with the ADA's "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" because they state facts to support their allegation that the statute prohibits certain health care

providers, including Institutional Plaintiffs, from making reasonable accommodations. *See McGary v. City of Portland*, 386 F.3d 1259, 1268 (9th Cir. 2004). Similarly, Plaintiffs make a plausible showing that § 49–2–312 conflicts with the public accommodations provision of the ADA because they state facts to support the allegation that the statute prevents health care providers, including Institutional Plaintiffs, from "taking such steps as may be necessary to ensure that no individual with a disability is excluded . . . or otherwise treated differently," *see* 42 U.S.C. § 12182(b)(2)(A)(iii), as the statute prohibits employers like Institutional Plaintiffs from inquiring into employees' vaccination status, which then prevents Institutional Plaintiffs from taking steps to limit immunocompromised patients' contact with unvaccinated healthcare workers.

**B.    OSHA Preemption**

Plaintiffs allege that § 49–2–312 conflicts with OSHA's requirement that employers provide a workplace free from recognized hazards. The Supreme Court recently recognized that healthcare workers are generally required to be vaccinated against transmissible diseases, which indicates such diseases are a workplace hazard that healthcare employers are obligated to address. *Biden*, 2022 WL 120950, at *3. Because § 49–2–312 prevents healthcare employers such as Institutional Plaintiffs from requiring vaccinations against any disease, there is a plausible argument it conflicts with OSHA. Relatedly, the OSHA regulations

13

require employers to implement a COVID-19 plan, which involves inquiring into healthcare employees' vaccination status. *See* 29 C.F.R. § 1910.502(c)(4)(i), (ii). Yet § 49–2–312 specifically excludes healthcare providers such as Institutional Plaintiffs from making that inquiry. Thus, Plaintiffs allege a plausible claim that the statute conflicts with the OSHA regulations.

### C.    Clean and Healthful Claims

Plaintiffs fail to state a claim for relief under Article IX, § 1, which states that "each person shall maintain and improve a clean and healthful environment," because the legislative history and text of the provision indicates that it applies exclusively to the natural environment. *See Mont. Env't Info. Ctr. v. Dep't of Env't Quality*, 988 P.2d 1236, 1246–48 (Mont. 1999). Similarly, Institutional Plaintiffs have failed to state a claim under Article II, § 3, which guarantees a "clean and healthful environment," on the same grounds. *Id.* However, the Individual Plaintiffs and the Nurses have sufficiently alleged a claim under Article II, § 3, which embodies the "fundamental right to seek health," *Mont. Cannabis Indus. Ass'n v. State*, 286 P.3d 1161, 1166 (Mont. 2012), because they have alleged facts that support their claim that unvaccinated medical workers prevent them from obtaining or providing safe healthcare in a safe workplace.

### D.    Equal Protection

Equal protection claims are evaluated under a three-step process:

(1) identification of classes involved and determination if they are similarly situated; (2) a determination of the appropriate level of scrutiny; and (3) application of the appropriate level of scrutiny. *Hensley v. Mont. State Fun*, 477 P.3d 1065, 1073 (Mont. 2020); *see also Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018). Plaintiffs have adequately pled their equal protection claims.

Institutional Plaintiffs' claim is subject to rational basis review because no fundamental right is implicated. But the claim survives at this stage because these Plaintiffs allege facts showing two groups that are "identical in all other respects," health care services such as Institutional Plaintiffs and Exempted Facilities, are subject to different treatment simply because of the statutory exemption for the latter.[12] The Individual Plaintiffs and the Nurses' claims are subject to strict scrutiny because a fundamental right is implicated. Individual Plaintiffs state the claim that two groups that are "identical in all respects," immunocompromised patients who are treated by Exempted Facilities and those who are not, are treated differently as a result of §§ 49–2–312 and 49–2–313's different treatment of healthcare providers. Their claims survive at this stage.

---

[12] Additionally, Defendants seemingly make an upside-down argument regarding the interest of the State to exercise its police power in favor of prioritizing the individual choice over the alleged collective good. (*See* Doc. 21 at 34, 39.) Given the traditional description of a state's police power as "embrac[ing], at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety," *Jacobson*, 197 U.S. at 25, there is a question at this stage about the nature and weight of the State's alleged interest.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' motions to dismiss (Docs. 20, 29) are GRANTED IN PART and DENIED IN PART. They are GRANTED on Institutional Plaintiff's Claim V and Plaintiffs' Claim VI. They are DENIED in all other respects. Given the parties' representations about the trajectory of this case, an expedited trial schedule shall be set by separate order.

DATED this 25th day of January, 2022.

12:01 P.M.

Donald W. Molloy, District Judge
United States District Court

16