Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al. | CV-21-108-M-DWM |
| Plaintiffs, | |
| v. | SECOND AMENDED COMPLAINT |
| MONTANA NURSES ASSOCIATION, | |
| Plaintiff-Intervenor, | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

The Plaintiffs, Montana Medical Association ("MMA"), Five Valleys

Urology, PLLC ("FVU"), Providence Health & Services – MT ("PH&S"), Western

Montana Clinic, PC ("WMC"), Pat Appleby, Mark Carpenter, Lois Fitzpatrick,

Joel Peden, Diana Jo Page, Wallace L. Page, and Cheyenne Smith for their

Complaint against the Defendants, Austin Knudsen (in his capacity as Montana Attorney General) and Laurie Esau (in her capacity as Montana Commissioner of Labor and Industry), hereby file their Second Amended Complaint.  This Complaint has been amended to solely to reflect the Court's January 25, 2022 Order and to add Paragraphs 78-92, related to the CMS regulations detailed herein, and Paragraphs E, F, and G of the prayer for relief.  Pursuant to Federal Rule of Civil Procedure 15, Defendants have provided written consent for Plaintiffs to file this Second Amended Complaint.  Provided, however, that Defendants consent for purposes of Rule 15 only and reserve all substantive arguments and objections to the claims plead.

Plaintiffs state as follows:

## Jurisdiction

1.     Jurisdiction is founded on 28 U.S.C. § 1331 (federal question), on 28 U.S.C. § 1367 (supplemental jurisdiction), and on 42 U.S.C. § 1983 (federal civil rights).

2.     This case is also founded on 28 U.S.C. § 2201, which authorizes the Court to grant declaratory relief.

## Summary of the Claim

3.     This suit asserts that Montana House Bill 702, 67th Legislature, Regular Session (Mont. 2021) ("Montana HB 702"), codified at Montana Code

Annotated § 49-2-312 ("MCA 49-2-312"), subsection 1(b) and portions of subsections 1(a) and (c) are invalid to the extent those statutory provisions restrict the ability of physician offices and hospitals, within their professional judgment, to determine the conditions of employment based upon a person's vaccination or immunity status or prevents such from otherwise appropriately addressing an unvaccinated employee, contractor, or prospective employee or contractor. The statutory provisions are invalid because –

> (a) under the Supremacy Clause of the United States Constitution, they are preempted by the following federal laws: (i) the Americans with Disabilities Act ("ADA") reasonable accommodation provisions, 42 U.S.C. § 12112, (ii) the ADA public accommodation provisions, 42 U.S.C. § 12182, and (iii) the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 654, and its regulations;

> (b) they violate the following sections of the Montana Constitution: (i) the inalienable right to "a clean and healthful environment" under article II, section 3 of the Montana Constitution, and (ii) the Equal Protection Clause under article II, section 4 of the Montana Constitution, and

> (c) they violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3

**Statute Under Review**

4.       MCA 49-2-312, as most relevant to this case, states as follows:

**Discrimination based on vaccination status or possession of immunity passport prohibited – definitions.**   (1) Except as provided in subsection (2) [which applies to schools and day-care facilities – but not to physician offices or hospitals], it is an unlawful discriminatory practice for:

(a) a person . . . to refuse, withhold from, or deny to a person . . . advantages, privileges, . . . or employment opportunities based on the person's vaccination status or whether the person has an immunity passport;

(b) an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status or whether that person has an immunity passport; or

(c) a public accommodation to exclude, limit, . . . or otherwise discriminate against a person based on the person's vaccination status or whether the person has an immunity passport.

5.       MCA 49-2-312 is not limited to vaccinations/immunity related to the

4

COVID-19 virus.  It applies to vaccination against (and immunity status pertaining to) all diseases, known and unknown, that may now or in the future afflict Montanans.

6. MCA 49-2-312(1) applies to Offices of Private Physicians ("OPPs"), as identified in Montana Code Annotated ("MCA") § 50-5-101(26)(b), and to Hospitals, as identified in § 50-5-101(31).

7. Montana Code Annotated § 49-2-313 ("MCA 49-2-313") exempts licensed nursing homes, long-term care facilities, and assisted living facilities from the requirements of MCA 49-2-312.

8. Section 50-5-101(31), MCA, requires that Hospitals provide medical care "by or under the supervision of licensed physicians."

9. While MCA 49-2-312(1) does allow somewhat greater latitude to Hospitals than OPPs in setting employment terms and mitigating the risks related to vaccination or immunity status, it still limits the ability of Hospitals to exercise their professional judgment in determining the conditions of employment of those persons in clinic settings and otherwise, when necessary to address the safety of patients, providers, and staff.

10. Montana HB 702 §§ 1-2 have been codified as an integral part of Title 49, chapter 2, part 3, MCA, at MCA 49-2-312 and MCA 49-2-313.

11. Title 49, MCA is the Montana Human Rights Act.

## Plaintiffs

## Montana Medical Association

12.     The MMA is the largest professional association of physicians in Montana.  Founded in 1879 as a not-for-profit corporation and based in Helena, the MMA has served as the unified voice for Montana physicians dedicated to improving patient care.  The MMA's mission is to serve its members as an advocate for the medical profession, quality patient care, and the health of all Montana citizens.  MMA members practice in all medical specialties.

13.     MMA members are injured by MCA 49-2-312 and would have standing to sue as individuals for the relief sought in this lawsuit.  The desired relief is consistent with the MMA mission.  Neither the claims, nor the requested relief, requires the participation of individual MMA members, but MMA has within its membership physicians impacted by MCA 49-2-312, including physicians employed at FVU, WMC, and PH&S.  Hence, the MMA has associational standing to bring this lawsuit.

14.     MMA members own, manage, and are employed in OPPs.

15.     MMA members are employed in Hospitals.  They provide medical care in Hospitals and supervise the provision of medical care in Hospitals.

## Offices of Private Physicians

16.     FVU and WMC are OPPs located in Montana.  Employees of the OPP

Plaintiffs care for patients and in some instances have close physical contact with those patients.  The OPP Plaintiffs employ individuals and, from time to time, hire new employees.  The OPP Plaintiffs are subject to the requirements of MCA 49-2-312.

17.    The OPP Plaintiffs treat patients with compromised immune systems and employ individuals who may have compromised immune systems.

18.    MCA 49-2-312 prevents, or at least substantially limits, the OPP Plaintiffs from providing a safe environment for their patients and for their employees/prospective employees and inhibits their ability to practice ethical and effective medicine for at least the following reasons:

 a. Unvaccinated medical workers are more likely to spread infectious diseases and pathogens, including, but not limited to, the COVID-19 virus, Hepatitis A, Hepatitis B, Pertussis, Measles, and Influenza, than vaccinated medical workers;

 b. Unvaccinated medical workers are more likely to spread pathogens through airborne, blood-borne, surface contamination, and other transmission mechanisms than are medical workers who are vaccinated against these pathogens;

 c. The OPP Plaintiffs and their physicians have a professional obligation to comply with national standards for the care and treatment of

patients, including observing and enforcing infectious disease prevention protocols;

d.     The OPP Plaintiffs and their physicians have a professional obligation to ensure that immunocompromised patients be treated in a safe and individualized manner, which includes assurances that treating providers and staff are vaccinated against certain diseases;

e.     The presence of unvaccinated medical workers undermines the credibility of the OPP Plaintiffs and their physicians when they urge vaccine-hesitant patients to become vaccinated, even when the vaccines may be in the best interest of the patients and of the public at large; and,

f.     From time to time, physicians who practice at the OPP Plaintiffs refer their patients to other OPPs or to Hospitals.  Care for these patients may be jeopardized if the receiving institution has unvaccinated employees and/or is otherwise restrained in its ability to safely treat these patients.

## Providence Health & Services – MT

19.     PH&S, a Hospital, is a nonprofit corporation located in Montana.  It provides medical care by or under the supervision of licensed physicians.

20.     PH&S employs physicians and other health care professionals who

8

provide care and treatment in clinical settings.  PH&S employees care for patients and in some instances have close physical contact with those patients.  PH&S employs and, from time-to-time, hires employees.  PH&S is therefore subject to the requirements of MCA 49-2-312.

21.    PH&S treats patients with compromised immune systems and employs individuals with compromised immune systems.

22.    MCA 49-2-312 prevents, or at least substantially limits, PH&S from providing a safe environment for its patients and for its employees/prospective employee and inhibits its ability to practice ethical and effective medicine for at least the following reasons:

a.    Unvaccinated medical workers are more likely to spread infectious diseases and pathogens, including, but not limited to, the COVID-19 virus, Hepatitis A, Hepatitis B, Pertussis, Measles, and Influenza, than vaccinated medical workers;

b.    Unvaccinated medical workers are more likely to spread pathogens through airborne, blood-borne, surface contamination, and other transmission mechanisms than are medical workers who are vaccinated against these pathogens;

c.    Medical practitioners have a professional obligation to comply with national standards for the care and treatment of patients, including

observing and enforcing infectious disease prevention protocols;

d.    Medical practitioners have a professional obligation to ensure that immunocompromised patients be treated in a safe and individualized manner, which includes assurances that treating providers and staff are vaccinated against certain diseases;

e.    The presence of unvaccinated medical workers undermines the credibility of PH&S and its physicians when they urge vaccine-hesitant patients to become vaccinated, even when the vaccines may be in the best interest of the patients and of the public at large; and

f.    From time to time, physicians who practice at PH&S refer their patients to other Hospitals or to OPPs.  Care for these patients is jeopardized if the receiving institution has unvaccinated employees and/or is otherwise restrained in its ability to safely treat these patients.

## **Patients**

23.    Pat Appleby, Mark Carpenter, Lois Fitzpatrick, Joel Peden, Diana Jo Page, Wallace L. Page, and Cheyenne Smith ("Patients"), all live in, and are citizens of, Montana.  Each of them suffers from one or more chronic medical conditions, which require frequent care from physicians.  Each of them has a compromised immune system, which makes them especially susceptible to

acquiring an infectious disease.

24.     The compromised immune systems of the Patients require that they avoid the risk of acquiring a contagious disease.  Their compromised immune systems prohibit them from participating in the same activities available to vaccinated persons without compromised immune systems.  Examples of such other activities include meeting with people in crowded settings, engaging in close contact with other people, and engaging in even casual contact with a likely carrier of the COVID-19 virus or other infectious disease agent.

25.     During the present COVID-19 pandemic, the Patients must be careful to avoid or minimize contact with persons who carry or may carry the COVID-19 virus.  They have to avoid commercial and professional establishments that fail to take steps to minimize the spread of the virus and other common viruses and germs.  As new pathogens develop and infect Montanans, they will have to avoid commercial and professional establishments that fail to take steps to minimize the spread of those new pathogens.  Such commercial and professional establishments include OPPs and Hospitals that employ unvaccinated workers or are unable to take necessary measures to protect against preventable diseases.

26.     In addition, Cheyenne Smith, one of the Patients, is the mother of a newborn daughter.  On account of her age, Cheyenne Smith's daughter cannot be vaccinated against the COVID-19 virus, and she cannot be vaccinated against

certain childhood diseases, such as Pertussis.  Consequently, Cheyenne Smith must, for the sake of her daughter as well as herself, avoid OPPs and Hospitals that employ unvaccinated workers or do not take necessary measures to mitigate against the risk caused by unvaccinated workers.

27.     The Patients are "qualified individuals with a disability" for purposes of the ADA, 42 U.S.C. §§ 12102, 12131, 12181.

### **Defendants**

28.     Austin Knudsen is the Montana Attorney General and generally charged with the enforcement of the laws of the State of Montana, as they affect the public interest, including the Montana Human Rights Act.

29.     Laurie Esau is the Montana Commissioner of Labor and Industry and is charged with the enforcement of the Montana Human Rights Act, including MCA 49-2-312.

### **First Claim – Violation of Employers' Obligation Under the Americans with Disabilities Act to Make Reasonable Accommodations**

30.     The allegations of Paragraphs 1-29 are incorporated in this claim as though set forth fully herein.

31.     42 U.S.C. § 12112(b)(5)(A) requires employers to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an applicant or employee."

32.     If applicants or employees at OPPs or Hospitals in Montana have

compromised immune systems, the OPPs or Hospitals, under this provision, must reasonably accommodate those applicants' or employees' limitations. This would include taking reasonable precautions to avoid exposing the applicants or employees to an infectious disease from a co-employee.

33.     MCA 49-2-312 prevents OPPs, such as FVU and WMC, from taking the steps necessary to accommodate immune system compromised applicants or employees.

34.     MCA 49-2-312 also prevents Hospitals, such as PH&S, from taking the steps necessary to accommodate immune system compromised applicants or employees. It requires Hospitals to provide reasonable accommodations to those who are not vaccinated or immune, when there may be no reasonable accommodation to protect against certain infectious diseases. Further, MCA 49-2-312(3)(b) may have no application in Hospital-owned physician clinics.

35.     OPPs and Hospitals that adhere to MCA 49-2-312 risk violating the ADA § 12112(b)(5)(A). Furthermore, MCA 49-2-312 discourages immune-compromised workers, such as the Patients, from accepting potential employment opportunities otherwise available to them at OPPs or at Hospitals.

36.     Because Montana MCA 49-2-312 prevents OPPs and Hospitals in Montana, including FVU, WMC, and PH&S, from complying with 42 U.S.C. § 12112(b)(5)(A) and it makes it more difficult for persons with compromised

immune systems to obtain employment at OPPs and at Hospitals, it undercuts the purposes of the ADA § 12112(b)(5)(A) and is preempted.

### Second Claim – Violation of the Public Accommodation Provision of The Americans with Disabilities Act

37.     The allegations of Paragraphs 1-36 are incorporated in this claim as though set forth fully herein.

38.     Under the ADA, a disability is a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A) (2021).

39.     OPPs, such as the FVU and WMC, and Hospitals, such as PH&S, are public accommodations under the ADA. 42 U.S.C. § 12181(7)(F) (2021).

40.     The ADA, under 42 U.S.C. § 12182(b)(2)(A)(iii) prohibits the following form of discrimination:

> [A] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

41.     Patients without compromised immune systems who have been vaccinated under approved vaccines are able to more safely use the services of OPPs and Hospitals, even if employees at those OPPs and Hospitals have not themselves been vaccinated against diseases.

42.     MCA 49-2-312 prevents OPPs, including the facilities of FVU and WMC, and Hospitals, such as PH&S, from taking those steps necessary to ensure that patients with compromised immune systems are able to utilize the services of those offices and facilities to the same extent as can patients without compromised immune systems.

43.     MCA 49-2-312 limits the access of patients with compromised immune systems, including the Patients, to OPPs and Hospitals.

44.     Because MCA 49-2-312 prevents OPPs and Hospitals, including FVU, WMC, and PH&S, and from complying with 42 U.S.C. § 12182 and because it reduces the accessibility of OPPs and Hospitals to persons with compromised immune systems, including the Patients, it is preempted by the ADA.

**Third Claim – Violation of the Occupational Safety and Health Act**

45.     The allegations of Paragraphs 1-44 are incorporated in this claim as though set forth fully herein.

46.     OSHA, at 29 U.S.C. § 654(a)(1), states: "Each employer . . . shall furnish to each of his employees employment and a place of employment which

are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."

47.     The COVID-19 virus, Hepatitis B, Pertussis, and other communicable diseases are recognized hazards that are causing, or are likely to cause, death or serious physical harm.

48.     Because MCA 49-2-312 requires OPPs and Hospitals, including FVU, WMC, and PH&S, to hire employees regardless of their vaccination/immunity status and otherwise impedes them from identifying or controlling the placement of employees based upon vaccination status, they are unable to comply – or are at least impeded from complying – with OSHA § 654(a)(1).

49.     MCA 49-2-312 limits the ability of those persons with compromised immune systems who now work at OPPs and Hospitals, or who may wish to work in OPPs and Hospitals, from securing the benefits of OSHA § 654(a)(1).

50.     Because MCA 49-2-312 undercuts the purposes of OSHA § 654(a)(1), it is preempted.

## Fourth Claim – Violation of OSHA Regulation

51.     The allegations of Paragraphs 1-50 are incorporated in this claim as though set forth fully herein.

52.     OSHA, at 29 U.S.C. § 654(a)(2) states: "Each employer . . . shall

comply with occupational safety and health standards promulgated under

[OSHA]."

53.    OSHA Regulation § 1910.502, (codified at 29 C.F.R. § 1910.502) in

turn, requires, that, where employees provide health care services or health care

support services – (c)(1) "The employer must develop and implement a COVID-19

plan," which is to include (c)(7) "policies and procedures to [m]inimize the risk of

transmission of COVID-19 for each employee."

54.    OPPs and Hospitals, including the facilities run by FVU, WMC, and

PH&S, cannot develop meaningful plans to minimize the risk of employees'

COVID-19 transmission if they are barred from taking steps to mitigate the risks

caused by unvaccinated employees.

55.    Because MCA 49-2-312 prevents – or at least impedes – OPPs and

Hospitals, including FVU, WMC, and PH&S, from complying with OSHA §

654(a)(2) and OSHA Regulation § 1910.502, and other similar regulations, MCA

49-2-312 is preempted.

### Fifth Claim – Violation of Montanans' Constitutional Right To a Safe and Healthy Environment

56.    The allegations of Paragraphs 1-55 are incorporated in this claim as

though set forth fully herein.

57.    The Montana Constitution, in its Declaration of Rights, provides: "All

persons are born free and have certain inalienable rights.  They include the right to

a . . . healthful environment and the rights of . . . seeking their safety [and] health . . . in all lawful ways."  Mont. Const. art. II, § 3.

58.    MCA 49-2-312 prevents persons with compromised immune systems, such as the Patients, from enjoying a healthy environment and securing their right to safe and healthy medical care.

59.    MCA 49-2-312 therefore violates § 3 of the Montana Constitution's Declaration of Rights.

## Sixth Claim – Violation of Montana's Constitutional Obligation To Provide Equal Protection of the Laws

60.    The allegations of Paragraphs 1-59 are incorporated in this claim as though set forth fully herein.

61.    The Montana Constitution requires that "[n]o person shall be denied the equal protection of the laws."  Mont. Const. art. II, § 4.

62.    Under MCA 49-2-312 and 313, OPPs and Hospitals, such as FVU, WMC, and PH&S, are treated more stringently than nursing homes, long term care facilities, or assisted living facilities.

63.    MCA 49-2-312 and 313 thereby draw an unreasonable and baseless distinction between OPPs and Hospitals and different types of licensed facilities that treat the same types of patients.  MCA 49-2-312 specifically draws an unreasonable and baseless distinction between clinics in which physicians treat patients, and other licensed health care facilities.

64.     Immunocompromised and other disabled Montana citizens, such as the Patients, are disparately and adversely affected by MCA 49-2-312 and 313 as compared with other similarly situated Montana citizens.  For example, immunocompromised patients who receive care in licensed nursing home facilities are entitled to receive treatment only from vaccinated providers, whereas immunocompromised patients who receive care in OPPs and certain Hospital clinical settings are not.

65.     There is no state interest or rational basis for treating OPPs and Hospitals, such as FVU, WMC, and PH&S, differently than other types of Montana health care facilities.

66.     There is no state interest or rational basis for discriminating against immunocompromised or otherwise disabled Montana citizens, such as Patients, in this adverse manner.

67.     Consequently, MCA 49-2-312 and 313 violate Montana's constitutional obligation to provide equal protection of the laws to OPPs and Hospitals and to immune system compromised patients, such as Patients, who may seek or require treatment in OPPs or Hospitals.

## Seventh Claim – Violation of
## Equal Protection Clause of the Fourteenth Amendment

68.     The allegations of Paragraphs 1-67 are incorporated in this claim as though set forth fully herein.

69.     The Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

70.     OPPs and Hospitals, such as the facilities of FVU, WMC, and PH&S, are treated more stringently than nursing homes, long term care facilities, or assisted living facilities.

71.     MCA 49-2-312 and 313 thereby draw an unreasonable and baseless distinction between OPPs and Hospitals and different types of health care facilities. MCA 49-2-312 specifically draws an unreasonable and baseless distinction between clinics in which physicians treat patients, and other licensed health care facilities.

72.     Immunocompromised and other disabled Montana citizens, such as the Patients, are disparately and adversely affected by MCA 49-2-312 as compared with other similarly situated Montana citizens.  For example, immunocompromised patients who receive care in licensed nursing home facilities are entitled to receive treatment only from vaccinated providers, whereas immunocompromised patients who receive care in OPPs and certain Hospital clinical settings are not.

73.     There is no state interest or rational basis for treating OPPs or Hospitals, such as FVU, WMC, and PH&S, differently than other types of Montana health care facilities.

74.     There is no state interest or rational basis for discriminating against immunocompromised or otherwise disabled Montana citizens, such as Patients, in this adverse manner.

75.     Consequently, MCA 49-2-312 and 313 violate the Equal Protection Clause of the Fourteenth Amendment in that it discriminates against OPPs and Hospitals and against immune system compromised patients, such as Patients, who may seek or require treatment in OPPs or Hospitals.

76.     42 U.S.C. § 1983 provides: "Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

77.     Deprivation of equal protection of the laws under the Fourteenth Amendment is a deprivation of a constitutional right, and thus the Defendants in this action can be sued in this Court for redress.

## ADDITIONAL ALLEGATIONS

78.     The allegations of Paragraphs 1-77 are incorporated as though set forth fully herein.

79.     In order for hospitals to care for patients covered under the federal Medicare or Medicaid programs, they must satisfy the conditions of participation

21

set forth in 42 C.F.R. Part 482 (collectively referred to hereafter as the "CMS Regulations"), promulgated by the Centers for Medicare & Medicaid Services ("CMS").

80.    Compliance with the CMS Regulations is required in order to receive Medicare and Medicaid funding.

81.    Failure to comply with the CMS Regulations may lead to monetary penalties, denial of payment for new admissions or other services, and/or termination of participation in Medicare and Medicaid.

82.    PH&S, a hospital, cares for patients covered under the federal Medicare and Medicaid programs and must therefore comply with the Conditions of Participation set forth in the CMS Regulations.  Hospitals, such as PH&S, have the same requirement to comply with the CMS Regulations as nursing homes, long term care facilities, and assisted living facilities.  *Compare* 42 C.F.R. § 482.42(g) (providing requirement for Hospitals) *with* 42 C.F.R. § 483.80(i) (providing requirement for Long Term Care Facilities including Skilled Nursing Facilities and Nursing Facilities).

83.    Loss of Medicare and Medicaid funding and/or the inability to care for Medicare and Medicaid patients would negatively impact PH&S operations and its ability to provide healthcare to Montanans.

<u>**Eighth Claim – Violation of CMS Regulation**</u>

84.     The allegations of Paragraphs 1-83 are incorporated in this claim as though set forth fully herein.

85.     The Social Security Act at 42 U.S.C. § 1395(x)(e)(9), § 1395i–4(e), and § 1395k(a)(2)(F)(i), authorized the Secretary of Health and Human Services to establish conditions of participation in the Medicare and Medicaid programs.

86.     The CMS Conditions of Participation include, but are not limited to, the following regulations:

a.     42 C.F.R. § 482.41, which states that "[t]he hospital must be … maintained to ensure the safety of the patient."

b.     42 C.F.R. § 482.42, which states that "[t]he hospital must have active hospital-wide programs for the surveillance, prevention, and control of HAIs [healthcare-associated infections] and other infectious diseases. … The programs must demonstrate adherence to nationally recognized infection and control guidelines … as well as to best practices for … infection prevention."

c.     42 C.F.R. §482.42(g), which states–

"**Standard: COVID-19 Vaccination of hospital staff.**  The hospital must develop and implement policies and procedures to ensure that all staff are fully vaccinated for COVID-19."

d.     42 C.F.R. §482.42(g)(3), which states, in part –

23

"The policies and procedures must include, at a minimum, the
following components:

(i) A process for ensuring all staff [with certain exceptions] have
received, at a minimum, a single-dose COVID-19 vaccine, or the first
dose of the primary vaccination series for a multi-dose COVID-19
vaccine prior to staff providing any care, treatment, or other services
for the hospital and/or its patients;

(ii) A process for ensuring that all staff [with exceptions] are fully
vaccinated for COVID-19;

(iii) A process for ensuring the implementation of additional
precautions, intended to mitigate the transmission and spread of
COVID-19, for all staff who are not fully vaccinated for COVID-19;

(iv) A process for tracking and securely documenting the COVID-19
vaccination status of … staff."

87.     The CMS Regulations require hospitals to impose different treatment

for members of their staff based upon vaccination status and/or the possession of

an immunity passport.

88.     Facilities, such as PH&S, cannot comply with both MCA 49-2-312

and the CMS Regulations.  At a minimum, MCA 49-2-312 impedes compliance

with the CMS Regulations and undercuts its purposes.

89.     If Montana hospitals, such as PH&S, fail to comply with the CMS

conditions of participation on account of MCA 49-2-312, the Plaintiff Patients, like

other Montanans with compromised immune systems, will have their ability to

seek safe healthcare jeopardized.  This would undercut the purpose behind

42 C.F.R. Part 482, including the purpose behind 42 C.F.R. §§ 482.41, 481.42, 481.42(g), and 481.42(g)(3).

90.     The Federal Register notice adopting the COVID-19 vaccination requirement for Medicare and Medicaid participating hospitals states: "We intend, consistent with the Supremacy Clause of the United States Constitution, that this nationwide regulation preempts inconsistent State and local laws as applied to Medicare- and Medicaid-certified providers and suppliers."  86 Fed. Reg. 61555, 61568 (Nov. 5, 2021).

91.     The Federal Register notice further states: "we find that State and local laws that forbid employers in the State or locality from imposing vaccine requirements on employees directly conflict with this exercise of our statutory health and safety authority to *require* vaccinations for staff of the providers and suppliers subject to this rule."  *Id.,* at 61613 (emphasis in original).

92.     Accordingly, to the extent that MCA 49-2-312 prohibits Montana hospitals, such as but not limited to PH&S, from complying with the CMS Conditions of Participation, including requiring vaccination of their staff under 42 C.F.R. Part 482, or undercuts the purpose of the CMS Regulations, MCA 49-2-312 is preempted.

## **Relief Requested**

Consequently, the Plaintiffs pray for the following relief:

A.    A declaration that MCA 49-2-312 is invalid and unenforceable against Offices of Private Physicians (as identified in § 50-5-101(26), MCA) and the physicians who own, run, or practice in Offices of Private Physicians to the following extent:

(i)    The phrases "employment opportunities" and "advantages [and] privileges" (to the extent such advantages and privileges implicate employment opportunities) in MCA 49-2-312(1)(a) are invalid and unenforceable,

(ii)    MCA 49-2-312(1)(b) is invalid and unenforceable in its entirety, and

(iii)    The phrase "or otherwise discriminate" in MCA 49-2-312(1)(c) is invalid and unenforceable;

B.    A permanent injunction prohibiting the Defendants from enforcing MCA 49-2-312 against Offices of Private Physicians and the physicians who own, run, or practice in Offices of Private Physicians to the following extent:

(i)    A permanent injunction against enforcing the phrases "employment opportunities" and "advantages [and] privileges" (to the extent such advantages and privileges implicate employment opportunities) in MCA 49-2-312(1)(a),

26

(ii)   A permanent injunction against enforcing MCA 49-2-312(1)(b) in its entirety, and

(iii)   A permanent injunction against enforcing the phrase "or otherwise discriminate" in MCA 49-2-312(1)(c);

C.   A declaration that MCA 49-2-312 is invalid and unenforceable against Hospitals (as identified in § 50-5-101(31), MCA) and the physicians who practice in Hospitals to the following extent:

(i)   The phrases "employment opportunities" and "advantages [and] privileges" (to the extent such advantages and privileges implicate employment opportunities) in MCA 49-2-312(1)(a) are invalid and unenforceable,

(ii)   MCA 49-2-312(1)(b) is invalid and unenforceable in its entirety, and

(iii)   The phrase "or otherwise discriminate" in MCA 49-2-312(1)(c) is invalid and unenforceable;

D.   A permanent injunction prohibiting the Defendants from enforcing MCA 49-2-312(1) against Hospitals and the physicians who practice in Hospitals to the following extent:

(i)   A permanent injunction against enforcing the phrases "employment opportunities" and "advantages [and] privileges"

(to the extent such advantages and privileges implicate

employment opportunities) in MCA 49-2-312(1)(a),

(ii)   A permanent injunction against enforcing MCA 49-2-312(1)(b)

in its entirety, and

(iii)   A permanent injunction against enforcing the phrase "or

otherwise discriminate" in MCA 49-2-312(1)(c);

E.   A declaration that MCA 49-2-312 is invalid and unenforceable against

facilities, including PH&S, covered by the CMS Regulations.

F.   A permanent injunction prohibiting the Defendants from enforcing

MCA 49-2-312 against facilities, including PH&S, covered by the

CMS Regulations.

G.   A preliminary injunction prohibiting the Defendants from enforcing

MCA 49-2-312 against facilities covered by the CMS Regulations.

H.   Attorney's fees, including litigation expenses, and costs; and

I.   Such other relief as may be just and proper.

DATED this 3rd day of February, 2022.

_____/s/  Justin K. Cole_____
Attorneys for Plaintiffs

28