Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

Raph Graybill
GRAYBILL LAW FIRM, PC
300 4th Street North
Great Falls, MT 59403
Phone (406) 452-8566
rgraybill@silverstatelaw.net

Attorneys for Plaintiff-Intervenor

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | Case No. CV 21-00108-DWM |
| Plaintiffs, and | |
| MONTANA NURSES ASSOCIATION, | PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |
| Plaintiff-Intervenor, v. | |
| AUSTEN KNUDSEN, et al., | |
| Defendants. | |

## TABLE OF CONTENTS

Page

I.    FACTUAL AND PROCEDURAL BACKGROUND .....................................2

II.    SCOPE OF RELIEF SOUGHT .......................................................................6

III.   LEGAL STANDARD .......................................................................................7

IV.   ARGUMENT...................................................................................................7

    A.    Plaintiffs have established a likelihood of success on the merits. ...........................................................8

    B.    Plaintiffs have demonstrated irreparable injury in the absence of preliminary injunctive relief..................................11

    C.    The balance of equities tips in favor of the requested relief. ..................................................................14

    D.    The requested relief is in the public interest. ......................................19

V.    CONCLUSION...............................................................................................19

CERTIFICATE OF COMPLIANCE ......................................................................21

i

## TABLE OF AUTHORITIES

**Cases**                                                            Page(s)

*All. For The Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ..............................................................7

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ............................................... 6, 15, 18

*Biden v. Missouri*,
   142 S. Ct. 647 (2022) .......................................................... 1-3, 5, 19

*Cottonwood Envtl.  Law Ctr. v. USFS*,
   789 F.3d 1075 (9th Cir. 2015) ............................................................12

*Gallinger v. Becerra*,
   898 F.3d 1012 (9th Cir. 2018) ............................................................10

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985)............................................................................9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ...............................................................8

*McDermott v. State Dep't of Corr.*,
   2001 MT 134, 305 Mont. 462, 29 P.3d 992 .......................................11

*Republic of Philippines v. Marcos*,
   862 F.2d 1355 (9th Cir. 1988) .............................................................8

*Textile Unlimited, Inc. v. A..BMHAND Co.*,
   240 F.3d 781 (9th Cir. 2001) ...............................................................7

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ............................................................15

TABLE OF AUTHORITIES CONTINUED

**Cases**                                                                    Page(s)

*Williamson v. Mazda Motor of Am., Inc.,*
    562 U.S. 323 (2011) .................................................................9

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ....................................................... 7, 11, 19

**Statutes**

Mont. Code Ann. § 49-2-312 ...............................................1, 3

Mont. Code Ann. § 49-2-312(5) ..............................................4

Mont. Code Ann. § 49-2-313 ..................................................1

Mont. Code Ann. § 49-2-601 ................................................17

**Other Authorities**

86 Fed. Reg. 61555 ........................................................ 4-5, 9

**Rules**

42 C.F.R. § 416.51(c)............................................................4

42 C.F.R. § 482.42(g) .......................................................4, 17

42 C.F.R. § 482.42(g)(3)(iv) ..................................................4

42 C.F.R. § 483.80(i) ............................................................4

42 C.F.R. § 485.640(f) ..........................................................4

INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---------|------------|-------|
| A | CMS' January 14, 2022 Memorandum titled "Guidance for the Interim Final Rule – Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination" | A-1 to A-5 |
| B | Email correspondence between counsel for Plaintiffs, counsel for Defendants, and counsel for Plaintiff-Intervenor, dated February 2 - February 14, 2022 | B-1 to B-17 |
| C | Letter from Senator Steve Daines, Governor Greg Gianforte, and Congressman Matthew M. Rosendale, Sr. to the U.S. Department of Health & Human Services and the U.S. Centers for Medicare and Medicaid Services, dated January 26, 2022l | C-1 |
| D | Total Medicare Enrollment, and Resident Population by Area of Residence for the Calendar Year 2020. | D-1 |

Plaintiffs and Plaintiff-Intervenor (collectively "Plaintiffs") respectfully move this Court for a preliminary injunction prohibiting the enforcement of House Bill 702, codified as Montana Code Annotated § 49-2-312 and § 49-2-313, against Montana's healthcare facilities participating in the Medicare and Medicaid programs.

After this suit was filed, the Centers for Medicare and Medicaid Services ("CMS") promulgated regulations requiring covered facilities to mandate workforce vaccinations for COVID-19 and require proof of vaccination. Although a coalition of states—including Montana—sought preliminary relief against the regulations, the United States Supreme Court allowed them to go into effect. *Biden v. Missouri*, 142 S. Ct. 647, 654-55 (2022). The regulations are in effect in Montana and CMS has required compliance by covered facilities beginning February 14, 2022. These regulations expressly preempt contrary state laws, including Montana Code Annotated § 49-2-312 ("MCA § 49-2-312"). Covered facilities in Montana will face immediate, severe, and irreparable consequences if they do not comply. Because the regulations are in direct and irreconcilable conflict with MCA § 49-2-312, Plaintiffs seek immediate relief to prevent imminent and irreparable harm until the Court has the opportunity to issue a final decision on the merits in this case.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their First Amended Complaint November 1, 2021. (Doc. 14). On November 5, 2021, the Secretary of Health and Human Services, as the administrator of the Medicare and Medicaid programs, issued the CMS Omnibus Covid-19 Health Care Staff Vaccination Interim Final Rule ("CMS Rule").  In short, the CMS Rule requires participating facilities to ensure staff are vaccinated against COVID-19 and to require proof of vaccination as Conditions of Participation in the Medicare and Medicaid programs. *See Biden*, 142 S. Ct. at 651.  Covered facilities that do not comply face dire consequences, including loss of the CMS reimbursements upon which the majority of Montana healthcare providers rely.

By the end of November, two groups of states successfully obtained preliminary injunctions against the CMS Rule. *Biden*, 142 S. Ct. at 651.  On January 13, 2022, the United State Supreme Court vacated the preliminary injunctions and allowed the CMS Rule to take effect. *Id.* at 654.  The Supreme Court recognized that "ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm." *Id.* at 652.  The Court noted that "[i]t would be the 'very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19.'" *Id.*

2

(quoting *Florida v. Dep't of Health and Human Servs.,* 19 F. 4th 1271, 1288 (11th Cir. 2021)).  Consequently, the Court held that promulgation of the CMS Rule fell squarely within the authority Congress conferred upon the Secretary.  *Id.* at 651.

As a result of the Court's decision, the CMS Rule is now enforceable.  And, by its own terms, preempts MCA § 49-2-312 and renders the Montana statute unenforceable against covered facilities.  The conflict between MCA § 49-2-312 and the CMS Rule is direct and irreconcilable.  The CMS Rule requires covered facilities to ensure vaccination of its staff against COVID-19, requires proof of such vaccination, and requires different treatment of individuals based upon vaccination status.  Irreconcilably, MCA § 49-2-312 prohibits Montana's Medicare and Medicaid providers, including Hospitals and Critical Access Hospitals such as those operated by Providence Health and Services ("PH&S"), from ensuring that their employees are vaccinated against vaccine-preventable diseases, including COVID-19, and prohibits treating individuals differently in the terms and conditions of employment based upon vaccination status or proof of vaccination. *See* MCA § 49-2-312.  As such, MCA § 49-2-312 directly conflicts, and prohibits compliance, with the CMS Rule.

The contents of the CMS Rule are unambiguous.  It requires Montana's Medicare and Medicaid providers, including, *inter alia,* Hospitals, Critical Access Hospitals, and Ambulatory Surgical Centers to ensure that "staff," including

3

employees, licensed practitioners, students, trainees, and volunteers, as well as all

"[i]ndividuals who provide care, treatment, or other services" for the facility and/or

its patients "under contract or by other arrangement," are "fully vaccinated for

COVID-19."  *See* 42 C.F.R. § 482.42(g) (Hospitals), § 485.640(f) (Critical Access

Hospitals), § 416.51(c) (Ambulatory Surgical Centers).  The CMS Rule further

requires those facilities to obtain proof of an individual's vaccination status.  *See,*

*e.g.,* 42 C.F.R. § 482.42(g)(3)(iv) and Omnibus COVID-19 Health Care Staff

Vaccination, 86 Fed. Reg. 61555, 61572 (Nov. 5, 2021) ("CMS Rule Preamble")

(noting acceptable forms of proof of vaccination).  And, it requires facilities to

treat staff differently based upon their vaccination status and possession of an

"immunity passport."  *See* 42 C.F.R. § 482.42(g), § 485.640(f), § 416.51(c); Mont.

Code Ann. § 49-2-312(5).  CMS provides the same conditions of participation for

"Long Term Care Facilities, including Skilled Nursing Facilities, and Nursing

Facilities, generally referred to as nursing homes."  CMS Rule Preamble, 86 Fed.

Reg. at 61557; 42 C.F.R. § 483.80(i).

On January 14, 2022, CMS issued a memorandum providing Montana's

Medicare and Medicaid facilities 30 days to begin complying with the Rule.  Decl.

Counsel ¶ 2, Feb. 16, 2022 ("Decl. Counsel"), Ex. A: CMS Mem., Jan. 14, 2022.

The CMS Rule expressly preempts contrary state laws, including MCA

§ 49-2-312.  The preamble to the CMS Rule highlights that "some states and

4

localities have established laws that would seem to prevent Medicare- and Medicaid-certified providers and suppliers from complying with" its requirements. CMS Rule Preamble, 86 Fed. Reg. at 61568. The preamble explains that, to the extent state laws prohibit facilities that receive Medicare and Medicaid funding "from imposing vaccine mandates on their employees, there is direct conflict between the provisions of this rule (requiring such mandates)" and the state law. CMS Rule Preamble, 86 Fed. Reg. at 61613. CMS explicitly provided that "consistent with the Supremacy Clause of the United States Constitution," the "nationwide regulation" thereby enacted "preempts inconsistent State and local laws as applied to Medicare- and Medicaid-certified providers and suppliers." CMS Rule Preamble, 86 Fed. Reg. at 61568.

Following the Court's hearing on Defendants' motion to dismiss, Plaintiffs and Defendants began discussions about the entry of a voluntary stay of enforcement of MCA § 49-2-312 against CMS-covered facilities in Montana, given the result of *Biden v. Missouri*. On February 3, 2022, counsel for Defendants proposed the idea of a voluntary stay of enforcement, recognizing MCA § 49-2-312 conflicted with the CMS Rule, but indicated counsel could not provide a draft given the press of other business. Decl. Counsel ¶ 3, Ex. B: Email Corresp. btwn counsel, Feb. 2-Feb. 14, 2022. On February 8, counsel for Plaintiffs provided proposed draft language to effectuate a voluntary stay of enforcement.

On February 11, counsel for Defendants conveyed they did not believe they were in a position to agree to a voluntary stay. Plaintiffs then asked whether Defendants would oppose a motion for a preliminary injunction. On February 14, Defendants indicated they would oppose this motion. Decl. Counsel, Ex. B.

## II.   SCOPE OF RELIEF SOUGHT

Given the compliance deadlines of the CMS Rule, Plaintiffs seek immediate relief enjoining Defendants from enforcing MCA § 49-2-312 against PH&S and all other Montana facilities covered by the CMS Rule. The injunction should enjoin the operation and enforcement of MCA § 49-2-312 against facilities subject to the CMS Rule during the pendency of this litigation. Further, it should provide that, regardless of whether the injunction is lifted or dissolved, enforcement shall not be taken against PH&S and all other Montana facilities subject to the CMS Rule for actions taken during the period the preliminary injunction is in place.

The requested preliminary injunction is prohibitory in nature: to maintain the status quo by prohibiting Defendants from enforcing MCA § 49-2-312 against Montana facilities subject to the CMS Rule; to allow these facilities to maintain their participation in the Medicare and Medicaid programs (and the attendant benefits of participating in the programs, which are essential to healthcare in Montana); and to avoid continuing liability under MCA § 49-2-312. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (citation omitted) ("like

other injunctions that prohibit enforcement of a new law or policy, Plaintiffs' requested injunction is prohibitory.")

## III.   LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo and prevent the "irreparable loss of rights" before a final judgment on the merits. *Textile Unlimited, Inc. v. A..BMHAND Co.*, 240 F.3d 781, 786 (9th Cir. 2001). Generally, a plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008). The Ninth Circuit applies a sliding scale test to these factors: if the plaintiff can at least raise "serious questions going to the merits," and demonstrate a "balance of hardships that tips sharply towards the plaintiff," the plaintiff is entitled to preliminary injunctive relief "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## IV.   ARGUMENT

The CMS Rule unambiguously preempts MCA § 49-2-312.  Failure to comply with the CMS Rule will result in severe and irreparable harm for Plaintiffs, as well the Montana public broadly.  This preliminary injunction will maintain the

status quo, as prior to the enactment of MCA § 49-2-312, facilities were permitted to comply with the CMS conditions of participation and there was no prohibition on mandating vaccination of employees or requiring proof of such vaccination. Decl. Vicky Byrd ¶¶ 6-9, Feb. 16, 2022("Decl. Byrd"); *see Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations omitted) ("*[S]tatus quo ante litem*…means "'the last, uncontested status which preceded the pending controversy.'")  In fact, many facilities required vaccination as a condition of employment prior to the enactment of MCA § 49-2-312.  Decl. Byrd ¶¶ 6-8.  All of the factors weigh in favor of a preliminary injunction.

A.    **Plaintiffs have established a likelihood of success on the merits.**

Plaintiffs are likely to succeed on the merits or, at a minimum, have raised serious questions on the merits to support preliminary relief.  Serious questions on the merits are those questions that present a "'fair ground for litigation and thus for more deliberative investigation.'"  *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (citation omitted).  "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'"  *Marcos,* 862 F.2d at 1362 (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)).

The plain language of the CMS Rule and MCA § 49-2-312 demonstrate a likelihood of success on the merits, particularly as it relates to the narrow relief

requested through this motion.  MCA § 49-2-312 is preempted by the CMS Rule

and the statute is unconstitutional under the Fourteenth Amendment to the United

States Constitution and the Equal Protection Clause of the Montana Constitution.

The CMS Rule preempts MCA § 49-2-312 under the Supremacy Clause of

the United States Constitution.  The Supremacy Clause "invalidates state laws that

'interfere with, or are contrary to,' federal law."  *Hillsborough Cnty. v. Automated

Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (citation omitted).  "Even where

Congress has not completely displaced state regulation in a specific area, state law

is nullified to the extent that it actually conflicts with federal law."  *Id*.  Such a

conflict arises when "'compliance with both federal and state regulations is a

physical impossibility,'" or when state law "'stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress[.]'"

*Id.* (citations omitted).  Federal regulations may preempt contrary state laws.  *Id*;

*Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011).

Here, the conflict between the CMS Rule and MCA § 49-2-312 is

unavoidable based upon the plain language of those laws and expressly recognized

by the preamble to the CMS Rule.  CMS Rule Preamble, 86 Fed. Reg. at 61568.

Defendants cannot contend that these regulations and the accompanying COVID

vaccination requirement, including requiring proof of vaccination, are reconcilable

with MCA § 49-2-312.  The CMS Rule requires CMS-participating facilities to:

mandate COVID vaccination; require staff to provide "immunity passports;" and, take action against individuals for failing to do so—all of which Montana law expressly prohibits.  By operation of the Supremacy Clause, MCA § 49-2-312 is preempted.

Additionally, MCA §§ 49-2-312 and 313 violate equal protection principles. This statutory scheme impermissibly draws classifications between similarly-situated healthcare facilities in Montana—allowing certain facilities to comply with the CMS Rule and participate in CMS programs, while prohibiting other facilities from doing so.  Because MCA § 49-2-313 exempts long-term care, assisted living, and nursing home facilities from the prohibitions of MCA § 49-2-312 to the extent these facilities need to comply with CMS regulations, Montana law allows these types of facilities to maintain participation in the Medicare and Medicaid programs, while subjecting all other Montana licensed facilities – including hospitals, critical access hospitals, ambulatory surgery centers, and other licensed, Medicare-participating facilities – to noncompliance and potential exclusion from CMS programs.

Both the United States and Montana Constitutions prohibit this denial of equal protection under the law.  *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal

protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."); *McDermott v. State Dep't of Corr.*, 2001 MT 134, ¶ 30, 305 Mont. 462, 29 P.3d 992 (Montana's equal protection guarantee likewise embodies "a fundamental principle of fairness: that the law must treat similarly-situated individuals in a similar manner.").  There is no rational basis for drawing arbitrary distinctions between different types of health care facilities that treat the same types of patients, utilizing the same types of health care providers (both physicians and nurses), and are otherwise treated in all similar respects under Montana licensing laws.  MCA § 49-2-312 unconstitutionally denies equal protection under the law to PH&S, depriving PH&S the equal ability to comply with federal law and participate in the Medicare and Medicaid programs.

To resolve this motion, the Court need only determine whether Plaintiffs have raised serious questions on the merits with a fair chance of success.  Plaintiffs have done so and the first *Winter* factor weighs heavily in favor of the requested preliminary injunction.

**B.   Plaintiffs have demonstrated irreparable injury in the absence of preliminary injunctive relief.**

Without preliminary relief, healthcare facilities in Montana face an impossible choice: violate MCA § 49-2-312 and continually be exposed to liability, including criminal penalties; or, violate the CMS Rule and face extreme

consequences—up to and including exclusion from CMS programs.

The Ninth Circuit has established that demonstrating "irreparable injury should not be an onerous task for plaintiffs." *Cottonwood Envtl. Law Ctr. v. USFS*, 789 F.3d 1075, 1091 (9th Cir. 2015) (citing 16 U.S.C. § 1531). Montana law effectively prohibits PH&S and other Montana facilities subject to the CMS Rule (other than long-term care, assisted living, and nursing home facilities) from complying with the CMS Conditions of Participation. The Conditions of Participation are regulations setting forth detailed requirements and health and safety standards that health care facilities must meet in order to participate in Medicare and Medicaid. Decl. Kirk. Bodlovic ¶ 3, Feb. 15, 2022 ("Decl. Bodlovic"). Compliance with the Conditions of Participation is required to participate in the Medicare and Medicaid programs and bill for services rendered to Medicare and Medicaid beneficiaries. Decl. Bodlovic ¶ 3. Participating facilities, like PH&S, receive periodic compliance audits and surveys reviewing the facility's continued compliance with the requirements of the Conditions of Participation. Decl. Bodlovic ¶ 3. Failure to comply with the Conditions of Participation may lead to monetary penalties, denial of payment for new admissions or other services, or termination of participation in Medicare and Medicaid. Decl. Bodlovic ¶ 3.

Failure to receive reimbursements or exclusion from CMS programs would

12

have immediate and devastating effects on healthcare in Montana.  *See* Decl.

Counsel ¶ 4, Ex. C: Gianforte Ltr., Jan. 26, 2021 (recognizing the inability to

comply with the CMS Rule would jeopardize healthcare in Montana.)  As of 2020,

237,744 Montanans, representing 22% of the total population in Montana, were

enrolled as Medicare beneficiaries.  Decl. Counsel ¶ 5, Ex. D: CMS Medicare

Enrollment Data, 2020.  For November of 2021, 57,463 adults and 105,735

children in Montana were enrolled in traditional Medicaid.[1]  A substantial portion

of Montana citizens receive care through Medicare and Medicaid participating

health care providers.  The continued participation of Montana health care facilities

in the Medicare and Medicaid programs is essential to maintaining operations and

continuing to treat Montana patients.  PH&S, like other Montana facilities,

receives a majority of its reimbursement through participation with CMS and

would not be able to sustain current operations and continue to treat Montana

---

[1] As of February 16, 2022, the DPHHS Montana Medicaid Enrollment Dashboard reported, for November 2021, 57,463 adults enrolled in traditional Medicaid and 105,735 children enrolled in traditional Medicaid.  The DPHHS website indicated the data comes from the MGMT-1000M report, which observes a 90-day look back period to allow for application processing lag, retroactive enrollments, etc.  The DPHHS website indicated that the dashboard was last updated 2/4/2022.  *See* Mont. DPHHS, *Mont. Medicaid Enrollment Dashboard*, dphhs.mt.gov, https://dphhs.mt.gov/InteractiveDashboards/medicaidenrollment dashboard (last visited Feb. 16, 2022).

patients at the levels currently offered if it were to lose this revenue.  Decl.

Bodlovic ¶ 7.  Continued participation with CMS is essential to PH&S's continued

operations and ability to continue to deliver its current level and volume of patient

care, and PH&S would not be in a position to sustain its current operations if it was

unable to participate in Medicare and Medicaid.[2]  Decl. Bodlovic ¶ 7.  This reality

is true for Providence St. Patrick Hospital in Missoula, St. Joseph Medical Center

in Polson, as well as numerous other like-situated facilities across Montana.  Decl.

Bodlovic ¶ 2.  Moreover, if these facilities comply with the CMS Rule, they will

face continuing and recurrent liability under MCA § 49-2-312.

  PH&S and all other facilities in Montana subject to the CMS Omnibus Rule

would be irreparably harmed by not being able to comply with the CMS

Conditions of Participation, which would cause further irreparable harm to

Medicare and Medicaid beneficiaries seeking care from these facilities.

**C.** **The balance of equities tips in favor of the requested relief.**

  A preliminary injunction will allow Plaintiffs to continue to receive and

provide quality healthcare in Montana, uninterrupted.

---

[2] Defendants may attempt to argue, as they asserted in their Answer, that participation in Medicare and Medicaid is a voluntary business decision.  Given that most facilities in Montana would be unable to operate without reimbursement from Medicare and Medicaid, decimating healthcare in Montana, this argument must be disregarded.

The balance of equities tips sharply in favor of granting the requested preliminary injunctive relief. "'[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (citation omitted) (holding that "by establishing a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction" and "the public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights'"); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (citations omitted) ("an alleged constitutional infringement will often alone constitute irreparable harm").

The equities favor allowing Montana facilities covered by the CMS Rule to comply with the federal regulations, without the risk of enforcement of MCA § 49-2-312.  First, Plaintiffs have acted diligently in seeking this preliminary injunction.  Plaintiffs would have moved more quickly in seeking preliminary injunctive relief but were delayed by negotiations with Defendants to fashion a stipulated stay of enforcement.  Plaintiffs moved promptly once negotiations broke down.  As set forth in the correspondence, counsel for Plaintiffs, Plaintiff-Intervenor, and Defendants began discussions about a stipulated stay of enforcement following the hearing on Defendants' Motion to Dismiss.

15

Defendants' counsel initially proposed entering into a voluntary stay of enforcement.  Defendants' counsel noted the need for triggers that would dissolve the stay based on further orders from this Court or the United State Supreme Court. Plaintiffs' counsel provided a proposed draft of the stipulated stay on February 8, 2022, incorporating the concerns expressed by Defendants' counsel.  Defendants reviewed the draft internally, ultimately concluding they could not stipulate for reasons unrelated to the CMS Rule or MCA § 49-2-312, citing unknown effects certain actions by non-parties may have on unemployment insurance.  When it became apparent the parties would not be able to stipulate to appropriate relief, Plaintiffs diligently prepared this motion.

Second, the preliminary relief sought is narrowly tailored to the direct impact caused by MCA § 49-2-312 on Medicare and Medicaid participating facilities in Montana.  There is no legitimate dispute that the CMS Rule and MCA § 49-2-312 directly conflict, nor is there a legitimate dispute that this conflict causes real and irreparable harm to the facilities implicated by this conflict of law. Montana facilities have no choice but to comply with the CMS Rule to protect and maintain continued participation in Medicare and Medicaid.  Cutting off Montana facilities' ability to participate in these federal programs would devastate healthcare in Montana, ultimately harming patients, staff at healthcare facilities, and the public at large.

In complying with the CMS Rule, Montana facilities are forced to violate MCA § 49-2-312 because they are required to take action against "staff" based upon vaccination status and the possession of an immunity passport. This conflict occurs regardless of whether an employee is eligible for a religious or medical exemption under the CMS Rule, as facilities are required to implement additional mitigation efforts for unvaccinated individuals subject to such exemptions—thus treating them differently based upon vaccination status or the possession of an immunity passport. *See, e.g.,* 42 C.F.R. § 482.42(g). This conflict exposes Montana facilities to continuing and recurrent (private and direct enforcement) claims before the Human Rights Bureau, as well as potential criminal penalties. Mont. Code Ann. § 49-2-601. PH&S alone has five claims currently pending before the Montana Human Rights Bureau ("HRB") based on allegations of a violation of MCA § 49-2-312 due to PH&S's attempts to comply with the CMS Rule. Decl. Bodlovic ¶ 8.

Defendants suggest that facilities may simply defend MCA § 49-2-312 claims by arguing the statute is preempted by federal law and is unconstitutional before the HRB. However, the very purpose of federal preemption is to protect Plaintiffs from being caught between two irreconcilable legal schemes. There is an important difference between this Court enjoining the unlawful operation of a preempted state statute and the ability to raise a defense after an HRB complaint

17

has been filed.  As a general matter, investigators with the HRB are not empowered to address constitutional questions or federal preemption.  HRB investigations are fact-intensive and divert a serious amount of time, resources, and money from Plaintiff facilities.  Facilities will likely be required to litigate these issues through the administrative process and appeal to district court, before receiving any relief based upon such defenses.  Further diverting time and resources, which are better spent caring for Montana patients, particularly during the current pandemic.  Additionally, criminal penalties would not only result in a waste of resources, they would irreparably damage the reputation and standing of these facilities in the community.

On the other side of the equities, preliminary relief against the Defendants will, at most, require Defendants to pause ongoing enforcement actions under MCA § 49-2-312 until this Court can issue a decision on the merits.  The burden is minimal compared to the immediate and severe burdens Plaintiffs face if MCA § 49-2-312 remains enforceable.

The balance of equities favors protecting PH&S and all other Montana healthcare facilities subject to the CMS Rule from violating federal law and from being deprived of constitutional rights.  *Ariz. Dream Act Coal.*, 757 F.3d at 1069.

18

**D.     The requested relief is in the public interest**.

The entry of preliminary relief also best serves the public interest.  The mass disruption of healthcare services in Montana, should facilities be unable to participate in Medicare and Medicaid, is against the public interest.  CMS is the largest payor to virtually all healthcare facilities in Montana and these facilities cannot operate at current levels without participating in CMS programs.  Montana facilities' ability to treat patients will be jeopardized to the extent Montana law prohibits compliance with the CMS Rule.  Moreover, a large portion of Montana's population are beneficiaries under Medicare or Medicaid and need to seek care from facilities that participate in these programs.

The Supreme Court has recognized not only that CMS has the authority to issue the CMS Rule, but that required vaccinations are in furtherance of the public good, and consistent with health care providers' mission to provide ethical and safe medicine to patients in need of it.  *See Biden*, 142 S. Ct. at 651.  The public interest is served by the requested injunction, which will maintain the status quo and permit PH&S and other Montana health care facilities to continue to serve Montana's patients.

## V.     CONCLUSION

Each of the four *Winter* factors are satisfied: Plaintiffs are likely to succeed on the merits of their claim; an injunction would prevent irreparable injury to

PH&S and other Montana facilities subject to the CMS Rule, including all facilities where both physicians and nurses work and treat patients; the balance of equities tips in favor of granting the preliminary injunction; and an injunction would serve the public interest.

Plaintiffs respectfully ask the Court to (1) grant their motion for a preliminary injunction and (2) enjoin Defendants from enforcing MCA § 49-2-312 against PH&S and all other Montana facilities covered by the CMS Rule as set forth herein.

DATED this 16th day of February, 2022.

/s/  Justin K. Cole
Attorneys for Plaintiffs

/s/  Raph Graybill
Attorneys for Plaintiff-Intervenor

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Plaintiffs' and Plaintiff-Intervenor's Brief in Support of Motion for Preliminary Injunction is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 4,373 words long, excluding Caption, Certificate of Service and Certificate of Compliance.

/s/  Justin K. Cole

Attorneys for Plaintiffs

/s/  Raph Graybill

Attorneys for Plaintiff-Intervenor