AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
  *Solicitor General*
CHRISTIAN B. CORRIGAN
  *Assistant Attorney General*
BRENT MEAD
  *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

EMILY JONES
  *Special Assistant Attorney General*
Jones Law Firm, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
Phone:  (406) 384-7990
emily@joneslawmt.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., <br><br> PLAINTIFFS, <br><br> and <br><br> MONTANA NURSES ASSOCIATION, <br><br> PLAINTIFF-INTERVENORS, <br><br> v. <br><br> AUSTIN KNUDSEN, ET AL., <br><br> DEFENDANTS. | No. CV-21-108-M-DWM <br><br> **DEFENDANTS' PRELIMINARY PRETRIAL STATEMENT** |

Defendants Montana Attorney General Austin Knudsen and Montana Commissioner of Labor and Industry Laurie Esau (collectively "Defendants") hereby submit their Preliminary Pretrial Statement pursuant to L.R. 16(2)(b)(1).

## A.  Brief Factual Outline of Case

On May 7, 2021, Governor Gianforte signed House Bill 702 ("HB 702"). HB 702, codified as MCA, §§ 49-2-312 to -313 generally makes it an unlawful discriminatory practice to discriminate based on vaccination status or possession of an immunity passport. MCA, § 49-2-312(1). HB 702 provides an outlet for healthcare facilities to implement reasonable accommodations based on a person's vaccination status or immunity status. MCA, § 49-2-312(3)(b). HB 702 also exempts three specific types of healthcare facilities from the law for so long as compliance with HB 702 conflicts with regulations or guidance issued by the Centers for Medicare and Medicaid Services or the Centers for Disease Control and Prevention. MCA, § 49-2-313.

HB 702 furthers the State's interest in protecting the privacy of its citizens and in protecting citizens from intrusive and discriminatory conduct.  Montana drew reasonable distinctions between all covered

entities, healthcare facilities generally, and three specific healthcare facilities.  These distinctions allow the overall antidiscrimination policy to remain in effect while allowing for limited exemptions.

## B.  Jurisdiction and Venue

Defendants don't contest venue in this matter.

The Court's subject matter jurisdiction is limited to cases or controversies under Article III.  Defendants contested standing below and intend to reserve jurisdictional defenses based on further discovery.

## C.  Overview of Likely Defenses to Claims

### 1. Standing

Defendants maintain that Plaintiffs lack standing.  Plaintiffs and Plaintiff-Intervenor cannot trace any concrete, redressable injury to Defendants. Defendants reserve the right to renew prior standing arguments based upon further discovery.

### 2.  The Americans with Disability Act and the Occupational Safety and Health Act don't pre-empt HB 702.  (Plaintiffs' Claims I–IV).

Preemption requires either (1) an impossibility of compliance with both state and federal law, or (2) a clear showing that Congress intended to pre-empt state law through federal law.  Plaintiffs cannot meet either

test here.   First, plaintiffs do comply with both HB 702 and the Americans with Disability Act and Occupational Safety and Health Act. Second, Plaintiffs cannot point to any clear showing that Congress intended to pre-empt state antidiscrimination laws through either act. The history and text of both federal acts does not demonstrate any intent by Congress to pre-empt laws like HB 702.

### 3.  HB 702 does not violate the right to a clean and healthful environment or the right to seek health under the Montana Constitution.

The State's police power extends to enacting antidiscrimination statutes.   Montana incorporates antidiscrimination principles into our healthcare regulatory scheme.   The right to seek health under the Montana Constitution is bounded by the State's police power by the language of the Constitution itself.   Plaintiffs, therefore, do not enjoy a right to seek health in ways that violates Montana's antidiscrimination statutes such as HB 702.

### 4.  HB 702 doesn't violate the equal protection of the laws under either the Montana or U.S. Constitution.  (Plaintiffs' claims VI & VII).

Equal protection analyses under both the Montana and U.S. Constitutions require a three-step process:   (1) identification of the

classes involved and determination if they are similarly situated; (2) determination of the appropriate level of scrutiny; and (3) application of the appropriate level of scrutiny.

The Plaintiffs' equal protection claims fail under the first step of an equal protection claim because they fail to identify the proper comparator classes. At step two of the analysis, claims under the federal constitution must be subject to rational basis review as no federal rights are implicated. Under the Montana Constitution, as mentioned, the right to seek health isn't implicated in this case and therefore, all plaintiffs, not just the institutional plaintiffs are subject to rational basis review. At step three, the State furthers a policy of protecting its citizens fundamental right to privacy and to be free from discrimination.

The exemptions from the broad antidiscrimination policy are limited in scope to healthcare facilities generally under § 49-2-312(3) and to specific healthcare facilities under § 49-2-313. The State is justified in distinguishing between the healthcare facilities listed under § 49-2-313 and other healthcare facilities and between healthcare facilities under § 49-2-312(3) and private physician offices.

As to the specific facilities listed under § 49-2-313; at the time HB 702 passed, the Centers for Medicare & Medicaid ("CMS") had issued a series of regulations imposing COVID-19 requirements on Medicare and Medicaid certified nursing homes/long-term care facilities, including requirements to educate staff and residents about COVID-19 and COVID-19 vaccines and to make onsite COVID-19 vaccinations available. CMS and the Centers for Disease Control and Prevention (CDC) had issued guidance recommending vaccination requirements for nursing homes and long-term care facilities that participate in the Medicare and Medicaid programs.  It was further expected that CMS would impose vaccination requirements on nursing homes/long-term care facilities because of the vulnerable populations they serve.  Based on the unique populations served by each of those discrete types of health care facilities, the State of Montana chose to offer a limited exemption to these facilities that is tied in duration to the existence of CMS or CDC guidance or regulations.  At the time HB 702 passed, only these types of health facilities were expected to be subject to a CMS vaccine requirement; it was not until September 2021 that CMS announced that it would expand

the planned emergency regulation requiring vaccination from nursing homes to all Medicare and Medicaid certified facilities.

Nursing homes, assisted living facilities, and long-term care facilities tend to be smaller facilities with fewer beds. They serve especially vulnerable elderly and/or disabled populations. Licensed nursing homes, long-term care facilities, and assisted living facilities also operate under different regulations than hospitals and are licensed separately and differently. *See, e.g.*, MCA § 50-5-101(7), (26), (31), (37), (56) (defining assisted living facilities, long term care facilities, nursing homes, physician offices, and hospitals); *see also* Mont. Admin. R. 37.106.4, 37.106.6, 37.106.28 (setting distinct minimum standards for hospitals, nursing facilities, and assisted living facilities).

Finally, as to the exclusion of private physician offices, from § 49-2-312(3); unlike hospitals, physician offices are not certified by CMS and are not subject to CMS Conditions of Participation or health and safety regulations. This is reflected in the CMS Omnibus Rule which does not cover physician offices. Likewise, the Montana Code Annotated exempts physician offices from the definition of "health care facility" and Montana health and safety regulations exempt physician offices from the

definition for health-care facility. This reduces the regulatory and licensing burden on physician offices because the nature of their ordinary course of business does not require the same inspection, licensing, and oversight regime required of health-care facilities. The State of Montana drew a reasonable line at the exemption provided in MCA, § 49-2-312 between health-care facilities and other types of businesses, as is its prerogative. Physician offices do not qualify as health care facilities and Plaintiffs do not challenge that historic delineation.

### 5. HB 702 doesn't conflict with all CMS regulations cited by Plaintiffs, because those regulations don't impose vaccine requirements. (Claim VIII).

Plaintiffs cite CMS's COVID-19 omnibus rule, 86 Fed. Reg. 61555 (2021), and its associated regulations. The parties have briefed that regulation and the Defendants preserve arguments made in those filings.

The additional regulations cited by Plaintiffs do not conflict with HB 702 because as the federal government acknowledged, it has never previously required a mandatory vaccination regime. The only logical conclusion from CMS's own statements is that outside of the COVID-19 Omnibus rule, it has not previously required vaccination under its

existing rules and therefore no conflict exists with these regulations and HB 702.

### 6. Defenses set forth in pleadings

#### a. Failure to state a claim

For the reasons previously stated, Plaintiffs' and Plaintiff-Intervenor's claims fail as a matter of law.

#### b. Failure to state sufficient facts

Plaintiffs and Plaintiff-Intervenor fail to state sufficient facts establishing their claims against each of the Defendants. They fail to establish the Attorney General possesses a historic enforcement authority of the Montana Human Rights Act or that the Attorney General intends to enforce HB 702. Plaintiff-Intervenor fails to establish facts demonstrating they possess authority or control over workplace conditions, including vaccination mandates. They fail to state facts sufficient to establish standing through a concrete, traceable, and redressable injury. They also fail to establish sufficient facts proving Congress intended to pre-empt laws like HB 702 through the Americans with Disabilities Act or the Occupational Safety and Health Act. Similarly, they fail to establish facts showing they are unable to comply

with the aforementioned acts and HB 702.  They fail to establish facts to show HB 702 implicates any rights under the Montana Constitution. They fail to proffer facts establishing their chosen classes under their equal protection arguments or that the State lacked a legitimate and compelling interest in protecting the fundamental rights of its citizens and protecting citizens from discrimination.  Finally, they fail to establish facts demonstrating that all of the CMS Regulations cited apply to mandatory vaccination programs.

### c. To the extent the CMS Regulations conflict with state law, the CMS regulations violate statutory and constitutional provisions.

The CMS Regulation pertaining to the COVID-19 vaccine mandate should be set aside as unlawful.  The regulation violates the Administrative Procedure Act in numerous ways.  The regulation was issued without notice and comment as required because the regulation does not qualify for the good cause exception.  The regulation's continued enforcement is arbitrary and capricious because it relied on data from the Delta variant and the facts on the ground have changed substantially since last summer.  The regulation was issued without following the necessary state agency consultation process in 42 U.S.C. § 1395z.  The

regulation generally violates 42 U.S.C. § 1395 which requires rules such as this one go through notice and comment.  The amended guidance from CMS extends the rule to state employees—in those employees' role as state surveyors for Medicaid and Medicare—without going through the notice and comment process.  This process by which the current iteration of the vaccine mandate exists violates federal law.

Separately, the vaccine mandate violates the Tenth Amendment, the Spending Clause, the Anti-Commandeering Doctrine, and the Nondelegation Doctrine.  The Spending Clause requires the federal government impose unambiguous conditions on federal funds so that States can exercise their choice to receive those funds knowingly. Nothing in federal law gave the States clear notice that a vaccine mandate would be a condition of accepted Medicaid or Medicare funds. The sheer magnitude of Medicaid funds as a percentage of the overall state budget means that States have no choice but to acquiesce to federal whims.  The vaccine mandate also runs afoul of the Tenth Amendment and the Anti-Commandeering doctrine because it requires States operating state-run facilities receiving Medicaid to either fire unvaccinated employees or forgo Medicaid funding.  This amounts to a

direct order by the federal government to the States in violation of the Tenth Amendment. Similarly, because the vaccine mandate forces state surveyors to enforce the mandate on participating facilities, and because it forces those surveyors themselves to comply with the mandate, the federal government is unlawfully commandeering state resources to enforce federal policy. The federal government lacks a general policing power and policies like mandatory vaccination regimes are the sole arena of the states, because the States alone possess that general police power. This creates another Tenth Amendment issue.

Finally, CMS lacks clear statutory authority to issue the vaccine mandate. If Congress delegated such sweeping authority to the agency then it would have clearly said so. Instead, CMS is acting outside of its regulatory authority to impose a broad and invasive policy. This violates CMS's own authority and the nondelegation principle.

> **d. To the extent OSHA and the OSHA regulations conflict with state law they unconstitutionally infringe upon the State's powers expressly reserved by the Tenth Amendment.**

For reasons similar to the CMS vaccine mandate, the Occupational Safety and Health Act and its regulations cannot be read to preempt HB

702 because that would supplant the State's police power with an unlawful federal police power in violation of the Tenth Amendment.

### e. HB 702 allows healthcare facilities to inquire into vaccination status for the purpose of implementing reasonable accommodation measures to protect the health and safety of patients, staff, visitors, and other persons.

MCA § 49-2-312(3)'s plain text allows healthcare facilities to inquire into employees' vaccination status and implement reasonable accommodation measures to protect the health and safety of patients, staff, visitors, and other persons.  This provision allows Plaintiffs and Plaintiff-Intervenor to mitigate their alleged injury.

### f. HB 702 permits employers to recommend vaccines to employees.

MCA § 49-2-312(2)'s plain text permits employers to recommend vaccines to employees.  This provision allows Plaintiffs and Plaintiff-Intervenor to mitigate their alleged injuries.

### g. HB 702 permits healthcare facilities to make certain inquiries and take steps to protect the health and safety of patients.

As previously stated, MCA § 49-2-312(3) allows healthcare facilities to inquire into their employees' vaccination status and implement

measures to protect the health and safety of patients, including patients like the individual Plaintiffs.

> **h.  Plaintiffs and Plaintiff-Intervenor can mitigate some or all of their alleged injuries.**

As previously stated, Plaintiffs and Plaintiff-Intervenor can mitigate some or all of their alleged injuries by the plain text of HB 702. Further, as individuals, Plaintiffs and Plaintiff-Intervenors can make personal medical, lifestyle, and other choices to mitigate their alleged injuries.  For example, the individual Plaintiffs can undertake the same precautions they take in their day-to-day lives inside the facilities under the control of Plaintiffs and Plaintiff-Intervenors.

> **i.  HB 702 contains an express severability clause severing valid portions of the law from any invalid portions.**

HB 702, § 5 contains an express severability clause.  If any part of the law is found unconstitutional then the valid portions must be severed from the invalid portions.

## D.  Computation of Damages

Plaintiffs seek only injunctive relief in this case and therefore do not have damages to calculate.  Defendants deny that Plaintiffs have suffered any damages.

## E.  Pendency of Related State or Federal Litigation

*Netzer Law Office P.C. and Donald Netzer v. State of Montana*, DV-21-89 (State of Montana District Court, Seventh Judicial District). Netzer Law challenges HB 702 on purely state law grounds including the right to a clean and healthful environment and violation of equal protection of the laws.  These claims overlap with the claims in this case. The district court denied a preliminary injunction on February 1, 2022, and the denial of the preliminary injunction is currently on appeal to the Montana Supreme Court.  The State also has a pending, fully-briefed, motion to dismiss.

## F.  Proposed Stipulations of Fact and Law

Defendants refer the Court to the separately submitted list of jointly stipulated facts by Plaintiffs and incorporate that list herein.

Defendants separately request the following stipulated facts or points of law:

1.     Private physician offices are not covered facilities under the CMS Omnibus Rule found at 86 Fed. Reg. 61555 (2021).

2.     Prior to the CMS Omnibus Rule found at 86 Fed. Reg. 61555, CMS did not require mandatory vaccination for any disease as a

condition of participation in Medicare and Medicaid.

  3.  The Occupational Safety and Health Act has never been used to impose a mandatory vaccination regime for any disease.

  4.  The United States Department of Labor stated that "the agency has never previously used its authority to strictly mandate vaccination" in the context of the now withdrawn COVID-19 vaccination rule promulgated by that Department.  86 Fed. Reg. 61439 (2021).

  5.  Private physician offices are not regulated as healthcare facilities, as those facilities are defined by MCA, § 50-5-101(26).

  At this stage, Defendants are unwilling to stipulate to additional facts or points of law pending availability of discovery and investigation into Plaintiffs' and Plaintiff-Intervenor's claims.

## G.  Proposed Deadlines for Joinder of Parties or Amendment of Pleadings

  Defendants propose that the deadlines for joinder of parties and amendment of pleadings be those dates set forth in the parties' Joint Discovery Plan.

## H. Identifications of Controlling Issues of Law Suitable for Pretrial Disposition

Consistent with Defendants' previous statements on claims and defenses, Defendants believe that after appropriate discovery, many of the legal issues in this case could be subject to pretrial dispositive motions.

## I.  The name and residence of individuals with information about claims or defenses

| NAME | CONTACT INFORMATION |
|---|---|
| Jean Branscum, Montana Medical Assoc. | c/o Garlington, Lohn & Robinson |
| John O'Conner, Five Valleys Urology | c/o Garlington, Lohn & Robinson |
| Joyce Dombrowski, PH&S | c/o Garlington, Lohn & Robinson |
| Kirk Bodlovic, PH&S | c/o Garlington, Lohn & Robinson |
| Meghan Morris, Western Montana Clinic | c/o Garlington, Lohn & Robinson |
| Pat Appleby | c/o Garlington, Lohn & Robinson |
| Mark Carpenter | c/o Garlington, Lohn & Robinson |
| Lois Fitzpatrick | c/o Garlington, Lohn & Robinson |
| Joel Peden | c/o Garlington, Lohn & Robinson |
| Diana Jo Page | c/o Garlington, Lohn & Robinson |
| Wallace Page | c/o Garlington, Lohn & Robinson |
| Cheyenne Smith | c/o Garlington, Lohn & Robinson |
| David King, M.D. | 931 Highland Boulevard, Suite 3103, Bozeman, MT 59715, 406-414-5000 |
| David Taylor, M.D. | 931 Highland Boulevard, Suite 3103, Bozeman, MT 59715, 406-414-6109 |
| Laurie Esau, Commissioner of Labor and Industry | Contact through counsel |

| Derek Oestreicher, General Counsel, Montana Department of Justice | Contact through counsel |
|---|---|

Witnesses regarding licensing of healthcare facilities in Montana.

Witnesses who work as frontline healthcare workers and can speak to the impact of discrimination based on vaccination status or possession of an immunity passport in their job.

Witnesses identified in discovery by any party.

Any witnesses necessary for foundation, rebuttal, or impeachment.

Any witnesses identified by Plaintiffs or Plaintiff-Intervenor.

Any expert witnesses disclosed by any party.

## J.  Substance of any insurance coverage

As Plaintiffs' claims are non-monetary, no insurance agreement applies.

## K. Status of settlement discussions and prospects for compromise of the case

No settlement discussions have taken place.  Defendants do not believe a resolution is likely through compromise.

## L.  Special procedures

Defendants do not believe any special procedures are necessary or appropriate.

Based on the supplemental claims filed by Plaintiffs, the number of Plaintiffs, and the need for expert witnesses, Defendants do not believe this case will be ready for trial until 2023.

Defendants will need to depose at least one representative for each plaintiff organization and facility regarding their operations, finances, claimed harm, and implementation of HB 702.  Additionally, Defendants will need to depose the individual plaintiffs.  In total, this includes depositions of Montana Medical Association, Montana Nurses Association, Providence Health & Services, Five Valleys Urology, Western Montana Clinic, and the six individual plaintiffs.  This does not include any expert witnesses who will also need to be deposed, or any other lay witnesses disclosed by Plaintiffs or Plaintiff-Intervenor. Defendants are entitled to conduct full discovery into Plaintiffs' and Plaintiff-Intervenor's claims in order to mount a full defense to those claims.

Defendants will seek discovery on the subjects outlined in the Parties' Joint Discovery Plan.  Given the number of Plaintiffs in this action and the breadth of their claims, discovery cannot reasonably be completed by the August 19, 2022 date proposed by Plaintiffs.

Based on a realistic appraisal of the scope of discovery that must be conducted in this case, Defendants propose a close of discovery on October 28, 2022.  This will still be a short timeframe for the completion of written discovery, disclosure of multiple expert witnesses, and depositions of the parties, expert witnesses, and other witnesses.

DATED this 12th day of May, 2022.

Austin Knudsen
Montana Attorney General

DAVID M.S. DEWHIRST
  Solicitor General

*/s/Brent Mead*
BRENT MEAD
  *Assistant Attorney General*
CHRISTIAN CORRIGAN
  Assistant Solicitor Generals
P.O. Box 201401
Helena, MT 59620-1401
christian.corrigan@mt.gov.
brent.mead2@mt.gov

EMILY JONES
  *Special Assistant Attorney General*
115 N. Broadway, Suite 410
Billings, MT  59101
Phone: (406) 384-7990
emily@joneslawmt.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing

document was served electronically through the Court's CM/ECF

system on registered counsel.

Dated: <u>May 12, 2022</u>            <u>/s/ *Brent Mead*  </u>
                                    BRENT MEAD