Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | Case No. CV 21-00108-DWM |
| Plaintiffs, | |
| and | |
| MONTANA NURSES ASSOCIATION, | PLAINTIFFS' PRELIMINARY PRETRIAL STATEMENT |
| Plaintiff-Intervenors, | |
| v. | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

The Plaintiffs, Montana Medical Association ("MMA"), Five Valleys

Urology, PLLC ("FVU"), Providence Health & Services – MT ("PH&S"), Western

Montana Clinic, PC ("WMC"), Pat Appleby, Mark Carpenter, Lois Fitzpatrick,

1

Joel Peden, Diana Jo Page, Wallace L. Page, and Cheyenne Smith (collectively, "Patients") respectfully submit this Preliminary Pretrial Statement pursuant to this Court's May 5, 2022 Order and Local Rule 16.2(b)(1).

## A.   Brief Factual Outline of the Case

Montana House Bill 702 was signed into law on May 7, 2021, and was subsequently codified at Montana Code Annotated § 49-2-312 ("MCA 49-2-312" and § 49-2-313 ("MCA 49-2-313").  MCA 49-2-312 makes it unlawful for a person, entity, public accommodation, or employer to discriminate against any individual on the basis of their vaccination status and/or possession of an immunity passport related to any disease.  MCA 49-2-313 exempts licensed nursing homes, assisted living facilities and long-term care facilities from the prohibitions of MCA 49-2-312, but does not provide an exemption for Hospitals, as identified in Montana Code Annotated § 50-5-101(31) ("Hospitals"), Critical Access Hospitals, as defined in Montana Code Annotated § 50-5-101(18) ("CHAs"), or Offices of Private Physicians, as identified in Montana Code Annotated § 50-5-101(26)(b) ("OPPs").

Plaintiffs in this case are health care providers and patients harmed by the enactment and enforcement of MCA 49-2-312.  The MMA is Montana's largest professional association of physicians.  Its members include physicians in a variety

of health care settings, including Hospitals and OPPs, who treat and work with immunocompromised individuals.

PH&S operates Providence St. Patrick Hospital, an acute care Hospital in Missoula, as well as St. Joseph Medical Center, a CHA in Polson, as well as various medical clinics in Montana.  PH&S employs physicians and other health care providers, and provides treatment to immunocompromised patients in numerous settings including acute inpatient, outpatient, rehabilitation, intensive care units, neonatal intensive care units, cancer infusion, and other hospital-based settings.  PH&S also employs immunocompromised staff and physicians.  PH&S participates in the Medicare and Medicaid programs and is subject to the Centers for Medicare and Medicaid Services ("CMS") Conditions for participation applicable to Hospitals.  PH&S also operates other facilities in Montana that fall under the CMS Conditions of Participation.  Failure to comply with the CMS Conditions of Participation may lead to monetary penalties, denial of payment for new admissions or other services, or termination of participation in Medicare and Medicaid.  PH&S must comply with the CMS Conditions of Participation to sustain operations and continue with its mission to provide care to patients.  PH&S receives a majority of its reimbursement through CMS and continued participation is essential to sustain operations.  PH&S has had claims filed against it before the

Montana Human Rights Bureau ("HRB") based upon alleged violations of HB 702.

FVU and WMC are OPPs that employ and provide treatment to immunocompromised individuals.  These Plaintiffs are not able to provide sufficient assurances to their immunocompromised patients—who require frequent medical attention and monitoring—that they will be seen by staff and providers who have taken available precautions to ensure that they are not exposing these immunocompromised patients to unnecessary, foreseeable, and preventable risks. Moreover, PH&S, FVU and WMC are unable to effectively accommodate immunocompromised staff and visitors by limiting their contact with unvaccinated individuals.  The HRB is enforcing MCA §§ 49-2-312 and 49-2-313 against Hospitals and OPPs.

Plaintiff Mark Carpenter has chronic kidney disease and received a kidney transplant.  As a result of his condition, Mr. Carpenter must take medications that suppress his immune system.  If Mr. Carpenter fails to take his medications, his body will reject his transplanted kidney and Mr. Carpenter will not survive.  As a result of his condition, Mr. Carpenter's ability to develop antibodies is significantly reduced.  Mr. Carpenter has been informed by his providers that contracting COVID-19 would likely be fatal for him.  He has also been informed by his providers that contracting other communicable diseases would likely cause him

4

severe harm, if not death, and that he should avoid contact with unvaccinated persons.  As a result of his condition, Mr. Carpenter must frequently appear for treatment and monitoring with his healthcare providers, including a physician at WMC.  As a result of HB 702, Mr. Carpenter is afraid for his safety whenever he must appear at an OPP or Hospital for treatment because he cannot be assured that those he must come into contact with to receive necessary treatment are vaccinated against vaccine-preventable diseases.

After surviving breast cancer, Plaintiff Lois Fitzpatrick was diagnosed with dermatomyositis, a rare "orphan" disease, in 2003.  Over ten years ago, Ms. Fitzpatrick was told she had one year to live as a result of the dermatomyositis diagnosis.  As a result of her condition, Ms. Fitzpatrick must take an immunosuppressant to minimize the unavoidable rashes and atrophy of her muscles that plague her life.  As a result of both her condition and her medications, Ms. Fitzpatrick is immunocompromised.  Ms. Fitzpatrick's lungs are compromised as a result of her condition.  Ms. Fitzpatrick has been told that she is extremely susceptible to disease and infection and that the results of contracting COVID would very likely be fatal.  Ms. Fitzpatrick has also been informed that contracting other communicable diseases would very likely cause her severe harm, and perhaps death.  Ms. Fitzpatrick has been cautioned to avoid contact with unvaccinated people.  As a result of her condition, Ms. Fitzpatrick must frequently

appear for treatment and monitoring with her healthcare providers, including

physicians at an OPP and a Hospital.  As a result of HB 702, Ms. Fitzpatrick is

afraid for her safety whenever she must appear at an OPP or hospital for treatment

because she cannot be assured that those she must come into contact with to

receive necessary treatment are vaccinated against vaccine-preventable diseases.

Plaintiff Joel Peden is a diabetic, has persisting heart conditions, has long-

term kidney conditions, and is a double below-the-knee amputee.  As a result of

these conditions, Mr. Peden has been told that he is at higher risk of having a bad

outcome from contracting communicable diseases.  As a result of his conditions,

Mr. Peden must appear for frequent healthcare appointments, including

appointments at hospitals.  Mr. Peden is apprehensive about appearing for

treatment with potentially unvaccinated healthcare providers but cannot avoid

appearing for his necessary treatments and appointments.  If Mr. Peden is aware

that one of his healthcare providers is not vaccinated against vaccine-preventable

disease Mr. Peden would seek care elsewhere to the extent there are other

providers available to meet his needs.

Plaintiff Pat Appleby is a survivor of granulosa cell ovarian cancer (which

required extensive treatment, including chemotherapy) and has been living with

diabetes for years.  As a result of these conditions, Ms. Appleby is

immunocompromised and at higher risk of having a bad outcome from contracting

communicable diseases.  She must appear for treatment and monitoring of these health conditions with her healthcare providers.  She is currently on a number of medications to manage blood pressure, a thyroid condition, her diabetes, as well as long-term hormone medications to suppress a reoccurrence of cancer.

Plaintiffs Diana Jo Page and Wallace Page are each immunocompromised. Mr. Page was recently diagnosed with Non-Hodgkin's lymphoma as well as multiple myeloma.  As a result of his condition, Mr. Page must appear for frequent chemotherapy and will be required to undergo chemotherapy cycles for the remainder of his life.  Aside from the detrimental effects his underlying conditions have on his immune system, his frequent and sustained chemotherapy further weakens Mr. Page's immune system.  As a result of his condition, Mr. Page must frequently appear for treatment and monitoring with his healthcare providers, including physicians at OPPs and hospitals.  Mr. Page is afraid for his safety whenever he must appear at a hospital for treatment because he cannot be assured that those he must come into contact with to receive necessary treatment are vaccinated.  Further, Mr. Page fears that his unnecessary and preventable contact with unvaccinated people while seeking healthcare at a hospital will cause him to bring home a vaccine-preventable disease that may be detrimental to his health, as well as the health of Mrs. Page.  Mrs. Page was diagnosed with breast cancer and underwent a mastectomy in 2020.  Mrs. Page must take a hormone-based

chemotherapy medication for the rest of her life as a result of her condition.  This medication has the effect of weakening Mrs. Page's immune system.  As a result of her condition, Mrs. Page must frequently appear for treatment and monitoring with her healthcare providers, including physicians at an OPP and Hospital.  Mrs. Page is afraid for her safety whenever she must appear at an OPP or hospital for treatment because she cannot be assured that those she must come into contact with to receive necessary treatment are vaccinated.  Further, Mrs. Page fears that her unnecessary and preventable contact with unvaccinated people while seeking healthcare at an OPP or hospital will cause her to bring home a vaccine-preventable disease that may be detrimental to her health, as well as the health of Mr. Page.  Mr. and Mrs. Page have been informed that contracting communicable diseases may result in severe harm, or even death.

Plaintiff Cheyenne Smith has suffered from rheumatoid arthritis without remission since she was 3 years old.  As a result of her condition, Ms. Smith must take an immunosuppressant to prevent her immune system from attacking her joints so that she is not plagued with constant pain and disfiguration of her joints. As a result of her condition and the medications she must take, Ms. Smith is immunocompromised.  Ms. Smith is also a new mother, with a young baby girl. Ms. Smith's daughter is not old enough to have been fully vaccinated against many vaccine-preventable diseases.  As a result of her condition, Ms. Smith must

frequently appear for treatment and monitoring with her healthcare providers,

including physicians at hospital.  Ms. Smith must also take her newborn daughter

in for frequent "well child visits" at the hospital.  As a result of HB 702, Ms. Smith

is afraid for her safety and that of her daughter whenever either must appear at a

hospital for treatment or monitoring because she cannot be assured that those her

and her daughter must come into contact with to receive necessary treatment are

vaccinated.

**B.     Jurisdiction and Venue**

This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.

§ 1331, providing federal-question jurisdiction, 28 U.S.C. § 1343(a)(3), providing

jurisdiction for cases involving the deprivation of civil rights, and 28 U.S.C.

§ 1367, allowing the exercise of supplemental jurisdiction.

**C & D.     Factual Basis and Legal Theories of Each Claim**

 1.     <u>Violation of Employers' Obligation Under the Americans with
 Disabilities Act to Make Reasonable Accommodations:</u>

The Supremacy Clause of the United States Constitution "'invalidates state

laws that 'interfere with, or are contrary to,' federal law." *Dannels v. BNSF Ry.*

*Co.*, 2021 MT 71, ¶ 14, 403 Mont. 437, 483 P.3d 495 (quoting *Hillsborough Cnty*

*v. Auto. Med. Lab., Inc.* 471 U.S. 707 (1985)).  The Supremacy Clause empowers

the federal legislature to supersede state law in three ways: "(1) express

preemption, (2) field preemption, or (3) conflict preemption, 'the latter two being forms of implied preemption.'" *Dannels*, ¶ 14, (quoting *Mont. Immigrant Justice All. V. Bullock,* 2016 MT 104, ¶28, 383 Mont. 318, 371 P.3d 430).  Relevant here, conflict preemption occurs when "'compliance with both federal and state regulations is a physical impossibility,'" or a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillsborough Cnty.*, 471 U.S. at 713.

The Americans with Disabilities Act ("ADA") "must be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *McGary v. City of Portland*, 386 F.3d 1259, 1268 (9th Cir. 2004) (quotation marks and citation omitted).  A disability is a "physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A) (2021).  This definition of disability encompasses the immunocompromised status of many patients who treat at Hospitals and OPPs, including Patients.

Title 42 U.S.C. § 12112(b)(5)(A) of the ADA requires employers to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an applicant or employee[,]"  OPPs, CHAs, and Hospitals in Montana, such as PH&S, FVU, and WMC, have an

obligation to reasonably accommodate applicants or employees with compromised immune systems, under the ADA.  This includes taking reasonable precautions to avoid exposing the applicants or employees to infectious diseases from a co-employee.  MCA 49-2-312 prevents OPPs, such as FVU and WMC, from taking the steps necessary to accommodate immune system compromised applicants or employees.  MCA 49-2-312 also prevents Hospitals and CHAs, such as PH&S, from taking the steps necessary to accommodate immune system compromised applicants or employees.   MCA 49-2-312 prohibits Hospitals, CHAs, and OPPs from mandating vaccinations or requiring immunization in any form.  MCA 49-2-312 prohibits OPPs from treating employees differently based upon vaccination status or possession of an immunity passport.  Accordingly, OPPs cannot reassign work based upon vaccination status, remove employees from situations based upon vaccination status, require additional PPE based upon vaccination status, or make vaccination status a condition of employment.

MCA 49-2-312(3)(b) provides a limited exception for health care facilities, as defined in Montana Code Annotated § 50-5-101, but does not provide that exemption for OPPs.  To qualify for the limited exception, MCA 49-2-312(3)(b) requires Hospitals to provide "reasonable accommodations" to those who are not vaccinated or immune, when there may be no reasonable accommodation to protect immunocompromised patients or coworkers against certain infectious

diseases.  Further, MCA 49-2-312(3)(b) likely does not apply to Hospital-owned physician clinics.

OPPs and Hospitals that adhere to MCA 49-2-312 risk violating the ADA. OPPs and Hospitals cannot accommodate individuals by ensuring that they are not exposed to unvaccinated co-workers.  Furthermore, MCA 49-2-312 discourages immune-compromised workers, such as the Patients, from accepting potential employment opportunities otherwise available to them at OPPs or at Hospitals. Because MCA 49-2-312 prevents OPPs and Hospitals in Montana, including FVU, WMC, and PH&S, from complying with 42 U.S.C. § 12112(b)(5)(A) and it makes it more difficult for persons with compromised immune systems to obtain employment at OPPs and at Hospitals, it undercuts the purposes of the ADA 42 U.S.C. § 12112(b)(5)(A) and is preempted

2. <u>Violation of the Public Accommodation Provision of the Americans with Disabilities Act:</u>

The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law."  *Hillsborough Cnty.*, 471 U.S. at 709.  "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law."  *Hillsborough Cnty.,* 471 U.S. at 713.  Such a conflict arises when "'compliance with both federal and state regulations is a physical impossibility,'" or when state law "'stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'" *Id.* (citations omitted).

The ADA provides that no individual may be discriminated against on the basis of a disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" 42 U.S.C. § 12182(a) (2021).  OPPs, such as the FVU and WMC, and Hospitals, such as PH&S, are public accommodations under the ADA. 42 U.S.C. § 12181(7)(F) (2021).  The ADA prohibits the following forms of discrimination:

> [A] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii).

Patients without compromised immune systems who have been vaccinated under approved vaccines are able to more safely use the services of OPPs and Hospitals, even if employees at those OPPs and Hospitals have not themselves been vaccinated against diseases.  MCA 49-2-312 prevents OPPs, including the facilities of FVU and WMC, and Hospitals, such as PH&S, from taking those steps necessary to ensure that patients with compromised immune systems are able to

utilize the services of those offices and facilities to the same extent as can patients

without compromised immune systems.  Hospitals and OPPs cannot accommodate

patients by ensuring that they will not come into contact with unvaccinated

workers, as they cannot treat workers differently based upon vaccination status.

Further, MCA 49-2-312 limits the access of patients with compromised immune

systems, including the Patients, to OPPs and Hospitals.

Because MCA 49-2-312 prevents OPPs and Hospitals, including FVU,

WMC, and PH&S, from complying with 42 U.S.C. § 12182 and because it reduces

the accessibility of OPPs and Hospitals to persons with compromised immune

systems, including the Patients, it is preempted by the ADA.

3.    <u>Violation of the Occupational Safety and Health Act:</u>

The Supremacy Clause "invalidates state laws that 'interfere with, or are

contrary to,' federal law." *Hillsborough Cnty.*, 471 U.S. at 709.  "Even where

Congress has not completely displaced state regulation in a specific area, state law

is nullified to the extent that it actually conflicts with federal law." *Id*.  Such a

conflict arises when "'compliance with both federal and state regulations is a

physical impossibility,'" or when state law "'stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress[.]'"

*Id.* (citations omitted).

14

The Occupational Safety and Health Act ("OSHA") provides that:

Each employer . . . shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

29 U.S.C. § 654(a)(1).  COVID-19, Hepatitis B, Pertussis, and other vaccine-preventable diseases are recognized hazards that "are causing or are likely to cause death or serious physical harm" to the employees of OPPs and Hospitals, including FVU, WMC, PH&S, as well as the members of the MMA.  Health care providers are particularly exposed to these recognized hazards, with increased risk in many settings when performing necessary medical procedures.

MCA 49-2-312 requires OPPs and Hospitals, including FVU, WMC, and PH&S, to hire and keep in their employ, employees regardless of their vaccination status or possession of immunity passports and otherwise impedes them from implementing precautions based upon vaccination status, such as requiring additional PPE based upon vaccination status or controlling the placement of employees based upon vaccination status.  As a result, these providers are unable to comply – or are at least impeded from complying – with OSHA 29 U.S.C. § 654(a)(1).  MCA 49-2-312 limits the ability of those persons with compromised immune systems who now work at OPPs and Hospitals, or who may wish to work in OPPs and Hospitals, from securing the benefits of OSHA 29 U.S.C. § 654(a)(1).

Therefore, MCA 49-2-312 is conflict preempted.

    4.    <u>Violation of OSHA Regulation:</u>

The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty.*, 471 U.S. at 709. "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Id.* Such a conflict arises when "'compliance with both federal and state regulations is a physical impossibility,'" or when state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'" *Id.* (citations omitted). Federal regulations may preempt contrary state laws. *Id*; *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011).

OSHA, at 29 U.S.C. § 654(a)(2), requires each employer to "comply with occupational safety and health standards promulgated under [OSHA]." OSHA regulation § 1910.502 (codified at 29 C.F.R. § 1910.502) requires that when employees provide health care services or health care support services, the "employer must develop and implement a COVID-19 plan" which must include "policies and procedures to [m]inimize the risk of transmission of COVID-19 for each employee." OPPs and Hospitals, including the named Plaintiffs here, cannot differentiate between vaccinated and unvaccinated individuals, such as requiring unvaccinated individuals to utilize additional PPE, maintain social distancing

guidelines, or mandate vaccines.  Thus, they cannot develop meaningful plans to minimize the risks of employees' transmission of COVID-19 when they are barred by MCA 49-2-312 from taking reasonable precautions to mitigate the known risk of COVID-19 transmission.  MCA 49-2-312 is conflict preempted by the OSHA regulations.

     5.    <u>Violation of Montanans' Constitutional Right to a Safe and Healthy Environment:</u>

The Declaration of Rights enshrined in the Montana Constitution provides: "All persons are born free and have certain inalienable rights.  They include the right to a . . . healthful environment and the rights of . . . seeking their safety [and] health . . . in all lawful ways." Mont. Const. art. II, § 3.  The Montana Supreme Court has embraced these constitutional provisions in the context of an individual's fundamental right to "seek health."  *See, e.g., Mont. Cannabis Indus. Ass'n v. State*, 2012 MT 201, ¶ 23, 366 Mont. 224, 286 P.3d 1161 ("In pursuing one's own health, an individual has a fundamental right to obtain and reject medical treatment.") (citing *Wiser v. State*, 2006 MT 20, ¶ 17, 331 Mont. 28, 129 P.3d 133).  Strict scrutiny analysis applies when a law threatens a fundamental right. *Jaksha v. Butte-Silver Bow Cnty.*, 2009 MT 263, ¶ 17, 352 Mont. 46, 214 P.3d 1248.  Under this analysis, Defendants have "'the burden of showing the law is

narrowly tailored to serve a compelling government interest.'" *Jaksha*, ¶ 17 (citation omitted).

MCA 49-2-312 operates to deny individuals seeking healthcare, such as the immunocompromised Patients, their right to enjoy a healthy environment. MCA 49-2-312 impedes the right of Montanans, such as the Patients, to seek health by introducing unnecessary, avoidable, and foreseeable risk of harm into their attempts to seek necessary healthcare.

The stated government interest underlying the enactment of MCA 49-2-312 is Montana citizens' privacy interest in their vaccination/immunity status. This is not a compelling government interest. "[I]f a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905). Moreover, MCA 49-2-312 fails to achieve this interest by appropriate or narrowly tailored means, instead putting the interests of an individual above the interests of public health. MCA 49-2-312 fails strict scrutiny analysis because it is not narrowly tailored to serve a compelling government interest. MCA 49-2-312 is unconstitutional based upon the Montana Constitution.

6.   <u>Violation of Equal Protection Clause of the State and Federal
Constitution:</u>

The Fourteenth Amendment to the United States Constitution prohibits any

state from denying "to any person within its jurisdiction the equal protection of the

laws."  Similarly, Article II, Section 4 of the Montana Constitution requires that

"[n]o person shall be denied the equal protection of the laws."  The Equal

Protection Clause guarantees of each constitution embody "a fundamental principle

of fairness: that the law must treat similarly-situated individuals in a similar

manner."  *McDermott v. State Dep't of Corr.*, 2001 MT 134, ¶ 30, 305 Mont. 462,

29 P.3d 992; *see also Gallinger v. Becerra,* 898 F.3d 1012, 1016 (9th Cir. 2018)

(noting that the Fourteenth Amendment Equal Protection Clause is "essentially a

direction that all persons similarly situated should be treated alike" (internal

quotation marks and citation omitted)).  Its function "is to measure the validity of

classifications created by state laws." *ISC Distribs. v. Trevor*, 273 Mont. 185, 195

(1995) (internal quotation marks and citation omitted).  "[T]he principal purpose of

Montana's Equal Protection Clause is to ensure that Montana's citizens are not

subject to arbitrary and discriminatory state action."  *Powell v. State Comp. Ins.*

*Fund,* 2000 MT 321, ¶ 16, 302 Mont. 518, 15 P.3d 877 (citation omitted).  Equal

protection claims require a showing "that the state has adopted a classification that

affects two or more similarly situated groups in an unequal manner." *Powell*, ¶ 22; *see also Gallinger*, 898 F.3d at 1016.

MCA 49-2-312 and the exclusions created by MCA 49-2-313 create several unconstitutional classifications that deny equal protection under the law. MCA 49-2-312 and 49-2-313 adopt classifications that affect two or more similar groups in an unequal, arbitrary, and discriminatory manner. First, the statute discriminates against OPPs as compared to other, similarly situated health care providers, including Hospitals, licensed nursing homes, assisted living facilities, and long term care facilities. By affording no exception or exemption to physician offices, MCA 49-2-312 and MCA 49-2-313 deny equal protection under the law to providers in these care settings, as well as their patients. Physicians treat patients in clinic settings (i.e., OPPs) in the same manner they treat patients in a licensed facility such as a hospital, nursing home, long-term care facility, or assisted living facility. Physician offices are the "front line" in both primary care and specialty services. Physicians work and treat patients in all settings – physicians with the same specialty can treat the same types of patients in a physician office, hospital, nursing home, long-term care facility, or assisted living facility. Further, they treat the same or similar patients with the same or similar illnesses and risk levels. Montana Code Annotated § 50-5-101(31) requires Hospitals to provide medical care "by or under the supervision of licensed physicians." The Centers for

20

Medicare and Medicaid Services ("CMS") Conditions of Participation require

Hospitals to administer care through a medical staff comprised of physicians.  45

C.F.R. § 482.22(a).  Physicians treat patient populations with similar medical

conditions in an OPP in the same manner they would treat such a patient in a

Hospital or other clinical setting within a licensed facility, and thus OPPs represent

a class similarly situated to Hospitals and other licensed facilities.  Further, OPP

patients also represent a class similarly situated to patients seeking treatment in

Hospitals and other licensed facilities.  Despite this, OPPs are not exempted from

MCA 49-2-312 like nursing homes, long-term care facilities, and assisted living

facilities (*see* Montana Code Annotated § 49-2-313), nor are they afforded the –

albeit insufficient – exception in MCA 49-2-312(3)(b).  Immunocompromised

patients and patients infected with communicable diseases seek care from OPPs in

the same way they seek care in other settings; yet OPPs and the patients they treat

are afforded no relief from MCA 49-2-312's detrimental effect on infectious

disease prevention.

Second, and relatedly, the statute treats OPPs and Hospitals more harshly

than nursing homes, assisted living facilities, and long-term care facilities.  As a

result, it also treats patients of OPPs and Hospitals more harshly that patients of

nursing homes, assisted living facilities, and long-term care facilities.  MCA 49-2-

313 exempts nursing homes, long-term care facilities, and assisted living facilities

from compliance with MCA 49-2-312 when compliance would violate "regulations or guidance" issued by the CMS or CDC.  The very definition of "health care facilities" cited by MCA 49-2-312 groups Hospitals and long-term care facilities together.  *See* Mont. Code Ann. § 50-5-101(26) ("The term includes . . . hospitals, . . . long-term care facilities . . . .").  Moreover, Hospitals and CAHs participate in Medicare and Medicaid, often receiving the majority of their reimbursement from these federal payers – in the same way as nursing homes and long-term care facilities.  *Compare* 42 C.F.R. § 482.42(g) (providing requirement for Hospitals) *with* 42 C.F.R. § 483.80(i) (providing requirement for Long Term Care Facilities including Skilled Nursing Facilities and Nursing Facilities).  Compliance with the CMS Regulations is required in order to receive Medicare and Medicaid funding.  Failure to comply with the CMS Regulations may lead to monetary penalties, denial of payment for new admissions or other services, and/or termination of participation in Medicare and Medicaid.  Hospitals and CAHs are also subject to CMS regulations.  Additionally, Hospitals and OPPs treat patients in accordance with CDC guidance and recommendations on infectious disease prevention.  Likewise, these providers treat the same high-risk patient populations as nursing homes, long-term care facilities, and assisted living facilities Hospitals and OPPs should be allowed to follow CMS regulations and CDC recommendations in the same manner as other facilities without liability under MCA 49-3-312.  Further,

their patients should be allowed to be treated by providers following CMS regulations and CDC recommendations. MCA 49-2-312 and MCA 49-2-313's unequal, arbitrary and discriminatory treatment of these facilities and their patients deprives them of equal protection of the law.

Third, MCA 49-2-312 and 49-2-313 discriminate against Montana patients seeking health care. These statutes operate to discriminate against those patients with compromised immune systems and discriminate against patients treated in different care settings. Patients require frequent care from physician offices, are especially susceptible to acquiring an infectious disease, must avoid the risk of acquiring a contagious disease, and thereby must avoid establishments that employ unvaccinated workers or are unable to take necessary measures to protect against preventable diseases. Similarly, MCA 49-2-312 and 49-2-313 allow patients receiving care in a nursing home or long-term care setting to receive care in a different, and in certain cases safer, manner as compared with similarly situated patients receiving care in a hospital or physician office. The classes drawn by MCA 49-2-312 and 49-2-313 fail rational basis and strict scrutiny. When a fundamental right is implicated, strict scrutiny applies under either a federal or Montana equal protection analysis. *See Farrier v. Teacher's Ret. Bd.,* 2005 MT 229, ¶ 16, 328 Mont. 375, 120 P.3d 390; 16; and *San Antonia Indep. Sch. Dist. V. Rodriguez*, 411 U.S. 1, 17 (1973). To the extent MCA 49-2-312 and 49-2-313

implicate a fundamental right to seek healthcare, they fail strict scrutiny in that they do not achieve a compelling government interest and are not narrowly tailored to that interest. Moreover, to the extent a fundamental right is not implicated in this case, rational basis scrutiny applies to the federal and Montana equal protection analysis. *See Fcc v. Beach Communications*, 508 U.S. 307, 313 (1993); *Jaksha ¶ 17.* To the extent a fundamental right is not implicated, MCA 49-2-312 and 49-2-313 do not meet rational basis scrutiny. The rational basis test is satisfied if the objective of the statute is legitimate and such objective is rationally related to the classification. *Jaksha*, ¶ 17; *Fcc*, 508 U.S. at 313-314. There is no legitimate governmental interest in drawing distinctions between medical care delivered in different types of health care settings, placing patients and caregivers in physician offices and hospitals at greater risk of harm.

Additionally, there is no rational basis for treating the classifications differently. Creation of an overly broad and novel protected class based on vaccination/immunity status is not rationally related to the claimed government interest, particularly in light of the disproportionate harms caused by MCA 49-2-312. MCA 49-2-312 and 49-2-313 are internally inconsistent, recognizing the need for schools, daycare facilities, nursing homes, long-term care facilities, and assisted living facilities to be able to respond to an individual's immunity status, yet failing to treat physician offices and hospitals in a similar manner. The fact

24

that MCA 49-2-312 creates an exception for "health care facilities" that, by its own definition, specifically excludes physician offices, evidences intentional discrimination against physician offices and their patients with no rational basis for doing so.

Further, MCA 49-2-312 and 313 allow certain facilities to comply with CMS regulations and participate in CMS programs, while prohibiting other facilities from doing so.  Because MCA § 49-2-313 exempts long-term care, assisted living, and nursing home facilities from the prohibitions of MCA  49-2-312 to the extent these facilities need to comply with CMS regulations, Montana law allows these types of facilities to maintain participation in the Medicare and Medicaid programs, while subjecting all other Montana licensed facilities – including hospitals, critical access hospitals, ambulatory surgery centers, and other licensed, Medicare-participating facilities – to noncompliance and potential exclusion from CMS programs.

Accordingly, MCA 49-2-312 and 49-2-313 are unconstitutional under the U.S. and Montana Constitutions.

7.    Violation of CMS Regulation:

The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty.*, 471 U.S. at 709.  "Even where Congress has not completely displaced state regulation in a specific area, state law

25

is nullified to the extent that it actually conflicts with federal law." *Id*. Such a conflict arises when "'compliance with both federal and state regulations is a physical impossibility,'" or when state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'" *Id.* (citations omitted). Federal regulations may preempt contrary state laws. *Id*; *Williamson*, 562 U.S. at 330.

For hospitals to care for patients covered under the federal Medicare or Medicaid programs, they must satisfy the conditions of participation set forth in 42 C.F.R. Part 482 (collectively "CMS Regulations"), promulgated by the Centers for Medicare & Medicaid Services ("CMS"). Compliance with the CMS Regulations is required to receive Medicare and Medicaid funding. Failure to comply with the CMS Regulations may lead to monetary penalties, denial of payment for new admissions or other services, and/or termination of participation in Medicare and Medicaid. PH&S operates a Hospital and CAH that care for patients covered under the federal Medicare and Medicaid programs and must comply with the Conditions of Participation set forth in the CMS Regulations. Loss of Medicare and Medicaid funding and/or the inability to care for Medicare and Medicaid patients would negatively impact PH&S operations and its ability to provide healthcare to Montanans.

The Social Security Act at 42 U.S.C. § 1395(x)(e)(9), § 1395i–4(e), and

§ 1395k(a)(2)(F)(i), authorized the Secretary of Health and Human Services to

establish conditions of participation in the Medicare and Medicaid programs. The

CMS Conditions of Participation include, but are not limited to, the following

regulations:

- 42 C.F.R. § 482.41, which states that "[t]he hospital must be …
  maintained to ensure the safety of the patient."
- 42 C.F.R. § 482.42, which states that "[t]he hospital must have active
  hospital-wide programs for the surveillance, prevention, and control
  of HAIs [healthcare-associated infections] and other infectious
  diseases. … The programs must demonstrate adherence to nationally
  recognized infection and control guidelines … as well as to best
  practices for … infection prevention."
- 42 C.F.R. §482.42(g), which states–"**Standard: COVID-19
  Vaccination of hospital staff.**  The hospital must develop and
  implement policies and procedures to ensure that all staff are fully
  vaccinated for COVID-19."
- 42 C.F.R. §482.42(g)(3), which states, in part –"The policies
  and procedures must include, at a minimum, the following
  components:
  (i) A process for ensuring all staff [with certain exceptions]
  have received, at a minimum, a single-dose COVID-19 vaccine,
  or the first dose of the primary vaccination series for a multi-
  dose COVID-19 vaccine prior to staff providing any care,
  treatment, or other services for the hospital and/or its patients;
  (ii) A process for ensuring that all staff [with exceptions] are
  fully vaccinated for COVID-19;
  (iii) A process for ensuring the implementation of additional
  precautions, intended to mitigate the transmission and spread of
  COVID-19, for all staff who are not fully vaccinated for
  COVID-19;
  (iv) A process for tracking and securely documenting the
  COVID-19 vaccination status of … staff."

The CMS Regulations require hospitals to impose different treatment for members of their staff based upon vaccination status and/or the possession of an immunity passport.

Hospitals and CAHs, such as PH&S, cannot comply with both MCA 49-2-312 and the CMS Regulations.  At a minimum, MCA 49-2-312 impedes compliance with the CMS Regulations and undercuts its purposes.  If Montana Hospitals and CAHs, such as PH&S, fail to comply with the CMS conditions of participation on account of MCA 49-2-312, the Patients, like other Montanans with compromised immune systems, will have their ability to seek safe healthcare jeopardized.  This would undercut the purpose behind 42 C.F.R. Part 482, including the purpose behind 42 C.F.R. §§ 482.41, 481.42, 481.42(g), and 481.42(g)(3).

The Federal Register notice adopting the CMS COVID-19 vaccination requirement states: "We intend, consistent with the Supremacy Clause of the United States Constitution, that this nationwide regulation preempts inconsistent State and local laws as applied to Medicare- and Medicaid-certified providers and suppliers."  86 Fed. Reg. 61555, 61568 (Nov. 5, 2021).  The Federal Register notice further states: "we find that State and local laws that forbid employers in the State or locality from imposing vaccine requirements on employees directly conflict with this exercise of our statutory health and safety authority to *require*

28

vaccinations for staff of the providers and suppliers subject to this rule." *Id.,* at

61613 (emphasis in original).

MCA 49-2-312 prohibits Montana Hospitals and CAHs, such as but not

limited to PH&S, from complying with the CMS Conditions of Participation,

including requiring vaccination of their staff under 42 C.F.R. Part 482 and

undercuts the purpose of the CMS Regulations.  Therefore, MCA 49-2-312 is

preempted and should be permanently enjoined.

**E.      Computation of Damages**

Plaintiffs are not seeking monetary damages in this case for declaratory and

injunctive relief.  Nonetheless, Plaintiffs will seek attorneys' fees and costs as

permitted by law.

**F.      Pendency of Related State or Federal Litigation**

On October 5, 2021, Plaintiff Netzer Law Office, P.C. filed a Complaint in

Montana's Seventh Judicial District Court, Richland County, Cause No. DV-21-

89, against Defendants the State of Montana, by and through Austin Knudsen, in

his official capacity as Attorney General and Laurie Esau, the Montana

Commissioner of Labor and Industry concerning the enactment of House Bill 702.

Plaintiff Netzer Law Office, P.C. alleges violations of the Montana Constitution's

provisions for the right to a safe and healthy environment, the obligation to

maintain a healthy environment, and the equal protection of the laws.  The district

court denied application for a preliminary injunction, and this order is currently being appealed to the Montana Supreme Court.

**G.     Additional Proposed Stipulated Facts and Law**

Plaintiffs propose the following additional stipulated facts:

1.     MCA 49-2-312 and 49-2-313 apply to vaccinations for, and immunity status of, all diseases, not just COVID-19.

2.     MMA has members who are employed in OPPs, as identified in Montana Code Annotated § 50-5-101(26)(b).

3.     FVU and WMC are OPPs that care for patients.

4.     FVU and WMC employ individuals and, from time to time, hire new employees.

5.     FVU and WMC treat patients with compromised immune systems.

6.     FVU and WMC employ individuals with compromised immune systems.

7.     An individual who is vaccinated against vaccine-preventable diseases is less likely to contract a vaccine-preventable disease than an individual who is not vaccinated for that same disease.

8.     An individual who is vaccinated against vaccine-preventable diseases is less likely to spread a vaccine-preventable disease to another than an individual who is not vaccinated for that same disease.

9.      Individuals with compromised immune systems are more likely to contract severe disease than individuals without compromised immune systems.

10.     PH&S employs individuals and, from time to time, hires new employees.

11.     PH&S treats patients with compromised immune systems.

12.     PH&S employs individuals with compromised immune systems.

13.     Austin Knudsen, as the Montana Attorney General, is charged with enforcement of the laws of the State of Montana, as they affect the public interest, including MCA 49-2-312.

14.     Laurie Esau, as the Montana Commissioner of Labor and Industry, is charged with enforcement of the Montana Human Rights Act, including MCA 49-2-312.

15.     Since its enactment, the HRB has been enforcing MCA 49-2-312 and 49-2-313.

16.     Communicable diseases, such as COVID-19, Hepatitis B, pertussis, measles, mumps, rubella, among others, are recognized hazards that cause, or are likely to cause, death or serious physical harm.

17.     Failure to comply with CMS Regulations may lead to monetary penalties, denial of payment for new admissions or other services, and/or termination of participation in Medicare and Medicaid.

18.     Loss of Medicare and Medicaid funding would negatively impact the ability to provide healthcare to Montanans.

19.     The Patients all live in, and are citizens of, Montana.

20.     Each of the Patients suffers from one or more chronic medical conditions, which require frequent care from physicians.

21.     Each of the Patients has a compromised immune system, which makes them especially susceptible to acquiring and/or developing symptoms from an infectious disease.

22.     Physicians have an obligation to comply with nationally-recognized professional medical standards of care when treating a patient.

23.     Standards of care applicable to the medical profession require healthcare providers take steps to avoid transmitting dangerous viruses to their patients.

24.     Health care providers are at higher risk of exposure to communicable diseases than the general public.

25.     Vaccinations are an infection control measure.

26.     Standards of care applicable to the medical profession require healthcare providers to implement infection control measures at their facilities.

27.     Vaccination requirements are a common feature of the provision of healthcare in America.

28.     Healthcare workers around America are ordinarily required to be vaccinated for disease such as hepatitis B, influenza, measles, mumps, and rubella. is consistent with the fundamental principle of the medical profession; first, do no harm.

29.     Prior to implementation of MCA 49-2-312, healthcare workers in Montana were ordinarily required to provide proof of vaccination upon hire.

30.     Physicians work and treat patients in all settings – physicians with the same specialty can treat the same types of patients in a physician office, hospital, nursing home, long-term care facility, or assisted living facility.

31.     Physicians treat patient populations with similar medical conditions in a physician office in the same manner they would treat such a patient in a hospital or other clinical setting within a licensed facility.

32.     Hospitals, CAHs, and OPPs treat the same high-risk patient populations as nursing homes, long-term care facilities, and assisted living facilities.

33.     Hospitals, CAHs, OPPs, nursing homes, long-term care facilities and assisted living facilities each participate in Medicare and Medicaid.

34.     Hospitals, CAHs, OPPs, nursing homes, long-term care facilities and assisted living facilities participating in Medicare and Medicaid receive a majority of their reimbursement from federal payors.

35.     Rural hospitals in Montana rely on participation in the Medicare and Medicaid programs, and would not be able to continue sustainable operations if these facilities could not participate in the Medicare and Medicaid programs.

36.     Hospitals, CAHs, and OPPs treat patients in accordance with CDC guidance and recommendations on infectious disease prevention.

37.     OPPs as identified in Mont. Code Ann. § 50-5-101(26)(b) treat patients with compromised immune systems.

38.     Hospitals as identified in Mont. Code Ann. § 50-5-101(31) treat patients with compromised immune systems.

39.     CAHs as identified in Mont. Code Ann. § 50-5-101(18) treat patients with compromised immune systems.

40.     PH&S operates a CAH that employs physicians and health care professionals who provide care and treatment for patients in clinical settings.

Plaintiffs further propose stipulating to Plaintiff-Intervenor's additional proposed stipulated facts.

## H.     Proposed Deadlines Regarding Joinder of Parties and Amendment to Pleadings

The Parties propose June 3, 2022, as provided in the Parties' Joint Discovery Plan, for the deadline for joinder of parties and amendment of pleadings.

## I.     Identification of Controlling Issues of Law Suitable for Pretrial Disposition

Plaintiffs believe each claim is suitable for pretrial disposition in the form of summary judgment and anticipate filing a motion for summary judgment on the declaratory and injunctive relief sought by Plaintiffs' Second Amended Complaint.

## J.     Name of Each Individual Believed to Have Relevant Information

1.     Jean Branscum or other representatives of MMA, c/o Garlington, Lohn & Robinson, PLLP.  MMA representatives have knowledge regarding the impact of the law related to MMA members, impact of the law regarding patient care and employment, hiring, accommodations, attempted compliance efforts, harm caused by the law, and additional information regarding the facts set forth in the Second Amended Complaint and Defendants' defenses, as well as infectious disease prevention.  MMA representatives may also have knowledge regarding patient care and treatment and professional obligations of medical practitioners.

2.     John O'Connor or other representatives of FVU, c/o Garlington, Lohn & Robinson, PLLP.  FVU representatives have knowledge regarding the impact of the law related to FVU and offices of private physicians, impact of the law in various clinical settings, impact of the law regarding patient care and employment, hiring, accommodations, attempted compliance efforts, harm caused by the law, FVU's policies and procedures, and additional information regarding the facts set

forth in the Second Amended Complaint and Defendants' defenses.  FVU

representatives may also have knowledge regarding CDC guidelines, as well as

infectious disease prevention.  FVU representatives may also have knowledge

regarding patient care and treatment and professional obligations of medical

practitioners.

       3.     Joyce Dombrowski, Kirk Bodlovic, or other representatives of PH&S,

c/o Garlington, Lohn & Robinson, PLLP.  PH&S representatives have knowledge

regarding the impact of the law related to PH&S, offices of private physicians,

hospitals, and other various clinical settings, impact of the law regarding patient

care and employment, hiring, accommodations, attempted compliance efforts,

harm caused by the law, PH&S's policies and procedures, and additional

information regarding the facts set forth in the Second Amended Complaint and

Defendants' defenses.  PH&S representatives may also have knowledge regarding

CDC, OSHA, and CMS guidelines, including but not limited to the CMS COVID

vaccination mandate, well as infectious disease prevention.  PH&S representatives

may also have knowledge regarding patient care and treatment and professional

obligations of medical practitioners.

       4.     Meghan Morris or other representatives of WMC, c/o Garlington,

Lohn & Robinson, PLLP.  WMC representatives have knowledge regarding the

impact of the law related to WMC, offices of private physicians, and other various

clinical settings, impact of the law regarding patient care and employment, hiring, accommodations, attempted compliance efforts, harm caused by the law, WMC's policies and procedures, and additional information regarding the facts set forth in the Second Amended Complaint and Defendants' defenses. WMC representatives may also have knowledge regarding CDC and OSHA guidelines, as well as infectious disease prevention. WMC representatives may also have knowledge regarding patient care and treatment and professional obligations of medical practitioners.

5.  Pat Appleby, c/o Garlington, Lohn & Robinson, PLLP. Ms. Appleby has knowledge regarding her medical conditions, treatment, vaccination/immunity status, and medical advice she has received. Ms. Appleby has knowledge regarding the types of activities she can safely engage in, and her tactics for preventing contracting communicable diseases.

6.  Mark Carpenter, c/o Garlington, Lohn & Robinson, PLLP. Mr. Carpenter has knowledge regarding his medical conditions, treatment, vaccination/immunity status, and medical advice he has received. Mr. Carpenter has knowledge regarding the types of activities he can safely engage in, and his tactics for preventing contracting communicable diseases.

7.  Lois Fitzpatrick, c/o Garlington, Lohn & Robinson, PLLP. Ms. Fitzpatrick has knowledge regarding her medical conditions, treatment,

vaccination/immunity status, and medical advice she has received.  Ms. Fitzpatrick has knowledge regarding the types of activities she can safely engage in, and her tactics for preventing contracting communicable diseases.

8.     Joel Peden, c/o Garlington, Lohn & Robinson, PLLP.  Mr. Peden has knowledge regarding his medical conditions, treatment, vaccination/immunity status, and medical advice he has received.  Mr. Peden has knowledge regarding the types of activities he can safely engage in, and his tactics for preventing contracting communicable diseases.

9.     Diana Jo Page, c/o Garlington, Lohn & Robinson, PLLP.  Ms. Page has knowledge regarding her medical conditions, treatment, vaccination/immunity status, and medical advice she has received.  Ms. Page has knowledge regarding the types of activities she can safely engage in, and her tactics for preventing contracting communicable diseases.

10.     Wallace L. Page, c/o Garlington, Lohn & Robinson, PLLP.  Mr. Page has knowledge regarding his medical conditions, treatment, vaccination/immunity status, and medical advice he has received.  Mr. Page has knowledge regarding the types of activities he can safely engage in, and his tactics for preventing contracting communicable diseases.

11.     Cheyenne Smith, c/o Garlington, Lohn & Robinson, PLLP.  Ms. Smith has knowledge regarding her medical conditions, treatment,

vaccination/immunity status, and medical advice she has received, as well as knowledge regarding this information for her infant child.  Ms. Smith has knowledge regarding the types of activities she, and her infant child, can safely engage in, and her tactics for preventing contracting communicable diseases.

12.     Austin Knudsen, c/o Defendants' counsel.  Mr. Knudsen likely has knowledge regarding enforcement and application of Montana Code Annotated § 49-2-312, as well as Defendants' defenses.

13.     Laurie Esau, c/o Defendants' counsel.  Ms. Esau likely has knowledge regarding enforcement and application of Montana Code Annotated § 49-2-312, as well as Defendants' defenses.

14.     David King, M.D., 931 Highland Boulevard, Suite 3103, Bozeman, MT 59715, 406-414-5000.  Dr. King has knowledge regarding vaccines, including types, development, efficacy, studies, safety, risks and benefits, clinical outcomes, impact on public health, breakthrough infections, FDA approval, and recommended/required vaccinations.  Dr. King also has knowledge related to immunology, including vaccine related immunity, natural immunity, immunity over time/durability, immunity related to immunocompromised individuals, and immunity studies.  Dr. King also has knowledge regarding the standard of care related to vaccinations and treating patients, including immunocompromised individuals.  Dr. King also has knowledge regarding health organization

recommendations, including those of the CDC and WHO.  Further, Dr. King has

knowledge regarding public health, virology and infectious diseases (including

viral loads, transmission/contraction, clinical outcomes, and prevention).

15.    David Taylor, M.D., MSc, 931 Highland Boulevard, Suite 3103,

Bozeman, MT 59715, 406-414-6109.  Dr. Taylor has knowledge regarding

vaccines, including types, development, efficacy, studies, safety, risks and benefits,

clinical outcomes, impact on public health, breakthrough infections, FDA

approval, and recommended/required vaccinations.  Dr. Taylor also has knowledge

related to immunology, including vaccine related immunity, natural immunity,

immunity over time/durability, immunity related to immunocompromised

individuals, and immunity studies.  Dr. Taylor also has knowledge regarding the

standard of care related to vaccinations and treating patients, including

immunocompromised individuals.  Dr. Taylor also has knowledge regarding health

organization recommendations, including those of the CDC and WHO.  Further,

Dr. Taylor has knowledge regarding public health, virology and infectious diseases

(including viral loads, transmission/contraction, clinical outcomes, and

prevention).

16.    Marieke Beck, Montana Human Rights Bureau Chief or other

representative of the Montana Human Rights Bureau. Ms. Beck or other HRB

representative likely has knowledge regarding enforcement and application of

Montana Code Annotated § 49-2-312.  She (or other HRB representative) also has knowledge regarding the HRB's enforcement and application of the ADA, including reasonable accommodations thereunder, as the HRB is the deferral agency for the EEOC.  Ms. Beck or other HRB representative likely has additional knowledge regarding Plaintiffs' claims, as well as Defendants' defenses.

17.     Witnesses identified in Discovery.

18.     Witnesses identified by the Defendants.

19.     Witnesses necessary for foundation, rebuttal, or impeachment.

**K.     Substance of Any Insurance Agreement**

No applicable insurance policy applies to Plaintiffs' claims.

**L.     Status of Settlement Discussions and Prospects of Compromise**

The parties have not engaged in any settlement discussions and Plaintiffs do not believe a compromise is likely to resolve their claims.

**M.     Suitability of Special Procedures**

Plaintiffs are not aware of any special procedures suitable to the resolution of their claims.

DATED this 12th day of May, 2022.

/s/  Justin K. Cole
Attorneys for Plaintiffs