Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT 59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | Case No. CV 21-108-M-DWM |
| Plaintiffs, | |
| and | |
| MONTANA NURSES ASSOCIATION, | PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| Plaintiff-Intervenors, | |
| v. | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................1

II.   UNDISPUTED FACTS.........................................................3

III.  LEGAL STANDARDS .........................................................6

      A.    Summary Judgment Standard...............................................6

      B.    Declaratory and Injunctive Relief .......................................7

IV.   ARGUMENT........................................................................7

      A.    Plaintiffs are entitled to declaratory judgment that
            MCA 49-2-312 is preempted by the ADA............................7

      B.    Plaintiffs are entitled to declaratory judgment that
            MCA 49-2-312 is unconstitutional, as it violates
            the Equal Protection Clauses of the United States
            and Montana Constitutions..................................................15

            1.    MCA 49-2-312 discriminates against similarly
                  situated classes in multiple, distinct ways. ...............15

            2.    MCA 49-2-312 fails rational basis scrutiny.............19

            3.    MCA 49-2-312 fails strict scrutiny as to
                  the individual Plaintiffs' claims. ...............................24

      C.    The Court should permanently enjoin Defendants
            from enforcing MCA 49-2-312 against physician
            offices and hospitals. .........................................................26

V.    CONCLUSION...................................................................30

CERTIFICATE OF COMPLIANCE........................................................31

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Trucking Ass'ns v. City of L.A.*,
    559 F.3d 1046 (9th Cir. 2009) ...........................................................................27

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................... 6-7

*Ariz. Dream Act Coal. v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) .............................................................. 17-19, 22

*Biden v. Missouri*,
    142 S. Ct. 647 (2022) ...........................................................................3-4, 27-28

*Brach v. Newsom*,
    6 F.4th 904 (9th Cir. 2021) ...............................................................................25

*Celotex Corp. v. Catrett*,
    477 U.S. 317  (1986) ...........................................................................................6

*Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*,
    483 F.3d 1025 (10th Cir. 2007) .......................................................................22

*City & Cty. of S.F. v. United States Citizenship & Immigration Servs.*,
    408 F. Supp. 3d 1057 (N.D. Cal. 2019) ...........................................................29

*Crowder v. Kitagawa*,
    81 F.3d 1480 (9th Cir. 1996) .......................................................................8, 14

*Doe v. San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021) ...................................................................... 28-29

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) ...........................................................................26

TABLE OF AUTHORITIES CONT'D

Page(s)

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990) ........................................................................7

*G.S. v. Lee*,
560 F. Supp. 3d 1113 (W.D. Tenn. 2021) ........................................12

*Gallinger v. Becerra*,
898 F.3d 1012 (9th Cir. 2018) ........................................................15

*Golden Gate Rest. Ass'n v. City of S.F.*,
512 F.3d 1112 (9th Cir. 2008) ........................................................29

*Harrison v. Kernan*,
971 F.3d 1069 (9th Cir. 2020) ........................................................18

*Hensley v. Mont. State Fund*,
2020 MT 317, 402 Mont. 277, 477 P.3d 1065 ...............................15

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905).............................................................. 20, 28, 29

*Jaksha v. Butte-Silver Bow Cty.*,
2009 MT 263, 352 Mont. 46, 214 P.3d 1248 ...............................25

*Johnson v. Brown*,
567 F. Supp. 3d 1230 (D. Or. 2021) ..............................................20

*Mary Jo C. v. N.Y. State & Local Ret. Sys.*,
707 F.3d 144 (2d Cir. 2013)............................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................6

*McCann v. Kerner*,
436 F.2d 1342 (7th Cir. 1971) ........................................................7

TABLE OF AUTHORITIES CONT'D

Page(s)

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) .............................................................8

*Merrifiend v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008) ..............................................................22

*Mont. Cannabis Indus. Ass'n v. State*,
    2012 MT 201, 366 Mont. 224, 286 P.3d 1161 ............................................ 24-25

*Morales v. TWA*,
    504 U.S. 374 (1992)..........................................................................27

*Nelson v. NASA*,
    530 F.3d 865 (9th Cir. 2008) ......................................................... 26-27

*R.K. v. Lee*,
    575 F. Supp. 3d 957 (M.D. Tenn. 2021)...................................................... 12, 14

*Rincon Band of Mission Indians v. Harris*,
    618 F.2d 569 (9th Cir. 1980) ...............................................................7

*Short v. Berger*,
    No. CV 22-1151-DMG (AGRx), 2022 U.S. Dist. LEXIS 67047
    (C.D. Cal. Mar. 3, 2022) ...................................................................29

*Silveira v. Lockyer*,
    312 F.3d 1052 (9th Cir. 2002) ............................................................22

*Zivkovic v. S. Cal Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) .......................................................... 8-9

*Zucht v. King*,
    260 U.S. 174 (1922)..........................................................................20

# TABLE OF AUTHORITIES CONT'D

Page(s)

**Statutes**

28 C.F.R. § 35.130(b)(7)................................................................9

28 U.S.C. § 2201..........................................................................7

28 U.S.C. § 2202..........................................................................7

42 U.S.C. § 12102(1)(A)...............................................................8

42 U.S.C. §§ 12112(a)..................................................................8

42 U.S.C. § 12112(b)(5)(A)...........................................................8

42 U.S.C. § 12182(a) ............................................................. 8-10

42 U.S.C. §§ 12182(b)(2)(A)(ii) ...................................................9

42 U.S.C. § 12182(b)(2)(A)(iii) .....................................................9

Mont. Code Ann. § 20-5-403(1) ..................................................21

Mont. Code Ann. § 49-2-312................................... 1, 16, 23-24

Mont. Code Ann. § 49-2-312(3)(b)...................... 11, 13, 17, 23

Mont. Code Ann. § 49-2-313 ........................................ 2, 16, 23

Mont. Code Ann. § 49-2-601 ......................................................28

Mont. Code Ann. § 50-5-101 ......................................................11

Mont. Code Ann. § 50-5-101(18) .............................................2n.1

Mont. Code Ann. § 50-5-101(26)(a)............................................19

TABLE OF AUTHORITIES CONT'D

Page(s)

Mont. Code Ann. § 50-5-101(26)(b) ........................................................................11

Mont. Code Ann. § 50-5-101(32) ............................................................................19

Mont. Code Ann. § 50-16-502 .......................................................................... 20-21

Mont. Code Ann. § 50-16-505 .......................................................................... 20-21

**Rules**

Fed. R. Civ. P. 56(a).................................................................................................6

Mont. Admin. R. § 24.9.613(1) ..............................................................................14

Mont. Admin. R. 37.95.140 ....................................................................................21

**Constitutional Provisions**

Mont. Const. art. II, § 3............................................................................................24

INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| 1 | Declaration of David King, M.D. dated July 15, 2022, and Dr. King's CV | 1-1 to 1-25 |
| 2 | Declaration of David Taylor, M.D. dated July 15, 2022, and Dr. Taylor's CV | 2-1 to 2-62 |
| 3 | Declaration and Expert Report of Greg Holzman, M.D., MPH dated July 15, 2022, and Dr. Holzman's CV | 3-1 to 3-24 |
| 4 | Declaration and Expert Report of Bonnie Stephens, M.D. dated July 15, 2022, and Dr. Stephens' CV | 4-1 to 4-19 |
| 5 | Expert Report of Dr. Jayanta Bhattacharya, dated July 15, 2022 | 5-1 to 5-85 |
| 6 | Expert Report of Ram Duriseti M.D., PHD, dated July 15, 2022 | 6-1 to 6-30 |
| 7 | Declaration and Expert Report of Lauren Wilson, M.D., dated July 15, 2022 | 7-1 to 7-18 |
| 8 | Excerpts from the Deposition of David N. Taylor, M.D., dated August 4, 2022 | 8-1 to 8-12 |
| 9 | Excerpts from the Rule 30(b)(6) Deposition of the Montana Department of Public Health & Human Services ("DPHHS"), dated August 18, 2022 | 9-1 to 9-18 |
| 10 | Excerpts from the Rule 30(b)(6) Deposition of the Montana Department of Labor and Industry ("DLI"), dated August 18, 2022 | 10-1 to 10-26 |
| 11 | Excerpts from the Rule 30(b)(6) Deposition of Providence Health and Services – Montana ("Providence"), designee K. Trainor, dated August 10, 2022 | 11-1 to 11-8 |
| 12 | Excerpts from the Rule 30(b)(6) Deposition of Providence, designee K. Bodlovic, dated August 10, 2022 | 12-1 to 12-6 |
| 13 | Excerpts from the Rule 30(b)(6) Deposition of Western Montana Clinic ("Clinic"), dated August 8, 2022 | 13-1 to 13-13 |

INDEX OF EXHIBITS CONT'D

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| 14 | Excerpts from the Rule 30(b)(6) Deposition of the Montana Human Rights Bureau ("HRB"), dated August 22, 2022 | 14-1 to 14-26 |
| 15 | Excerpts from the Rule 30(b)(6) Deposition of the Attorney General's Office ("AG"), dated August 19, 2022 | 15-1 to 15-19 |
| 16 | Excerpts from the Rule 30(b)(6) deposition of Five Valleys Urology ("Five Valleys"), dated August 9. 2022 | 16-1 to 16-9 |
| 17 | Deposition Exhibit 38: CMS Revised Guidance for the Interim Final Rule – Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, QSO-22-09-ALL, dated January 14, 2022, *Revised* 4/05/22 | 17-1 to 17-5 |
| 18 | Deposition Exhibit 39:  Hospital Attachment *Revised* to CMS's QSO-22-09-ALL-Revised | 18-1 to 18-14 |
| 19 | Deposition Exhibit 43:  April 8, 2022 Letter from CMS to the Montana State Hospital Re: Involuntary Termination of Medicare Provider Agreement Effective April 12, 2022 | 19-1 to 19-3 |
| 20 | Deposition Exhibit 44: Excerpts from DPHHS PowerPoint Presentation | 20-1 to 20-1 |
| 21 | Deposition Exhibit 49: August 18, 2022 QCOR Survey Activity Report with deficiency citation for a Montana hospital pertaining to the CMS COVID-19 vaccination of facility staff | 21-1 to 21-1 |
| 22 | Deposition Exhibit 50: August 18, 2022 QCOR Survey Activity Report with deficiency citation for a Montana hospital pertaining to the CMS COVID-19 vaccination of facility staff | 22-1 to 22-1 |
| 23 | Deposition Exhibit 54: Excerpt from DLI's House Bill 702:  Frequently Asked Questions re: Healthcare Vaccine Mandate, updated September 24, 2021 | 23-1 to 23-1 |
| 24 | Deposition Exhibit 57:  November 12, 2021 Letter from L. Esau to Mountain Pacific Quality Health | 24-1 to 24-1 |

INDEX OF EXHIBITS CONT'D

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| 25 | Deposition Exhibit 58:  December 17, 2021 Letter from L. Esau to Big Sky Resort | 25-1 to 25-1 |
| 26 | Deposition Exhibit 59:  June 20, 2022 Letter from L. Esau to the Ninth Circuit Judicial Conference | 26-1 to 26-2 |
| 27 | Deposition Exhibit 62: Email from D. Oestreicher, dated October 13, 2021 | 27-1 to 27-2 |
| 28 | Deposition Exhibit 63:  January 14, 2021 Letter from D. Oestreicher on behalf of Attorney General Knudsen | 28-1 to 28-1 |
| 29 | Deposition Exhibit 66: October 27, 2021 Letter from Governor Gianforte | 29-1 to 29-4 |
| 30 | Deposition Exhibit 69: Declaration of Mary Stukaloff, March 2, 2022, with attachments, also filed at (Doc. 51-2) | 30-1 to 30-9 |
| 31 | Deposition Exhibit 72:  Excerpt from DLI's House Bill 702:  Frequently Asked Questions, updated July 26, 2021 | 31-1 to 31-1 |
| 32 | Deposition Exhibit 74:  EEOC Guidance:  What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, updated July 12, 2022 | 32-1 to 32-76 |
| 33 | Deposition Exhibit 75:  HRB Final Investigative Report Case No. 0220103, May 10, 2022 (produced redacted by Defendants) | 33-1 to 33-3 |
| 34 | Deposition Exhibit 76:  HRB Final Investigative Report Case No. 0220103, May 10, 2022 (produced redacted by Defendants) | 34-1 to 34-4 |
| 35 | Deposition Exhibit 77:  HRB Final Investigative Reports--Case Nos. 0210598 (Feb. 25, 2022), 0210610 (Feb. 25, 2022), 0210597 (Feb. 11, 2022), 0220118 (Feb. 25, 2022), 0210579 (Feb. 25, 2022), 0210599 (Feb. 25, 2022), 0210580 (Feb. 11, 2022), 0210581 (Feb. 25, 2022), 0210582 (Feb. 11, 2022) (produced redacted by Defendants).  Exhibit 35 has been filed under seal pending leave of Court. | 35-1 to 35-96 |

INDEX OF EXHIBITS CONT'D

| EXHIBIT | DESCRIPTION | PAGES |
|---------|-------------|-------|
| 36 | Deposition Exhibit 80:  HRB Final Investigative Report, Case No. 0210440, dated November 22, 2021 (produced redacted by Defendants) | 36-1 to 36-4 |
| 37 | Excerpts from Plaintiffs' Responses to Defendants' First Combined Discovery Requests, July 29, 2022 | 37-1 to 37-6 |
| 38 | Plaintiffs' Fourth Supplemental Responses to Defendants' First Combined Discovery Requests, August 19, 2022 | 38-1 to 38-13 |
| 39 | Excerpts from Defendants' Responses to Plaintiff's [sic] First Combined Discovery Requests, May 11, 2022 | 39-1 to 39-13 |
| 40 | Audio recording of a One American News Network Dan Ball radio interview of Austin Knudsen, recorded on February 7, 2022, conventionally filed on a flash drive | |
| 41 | April 28, 2021 Letter from Governor Greg Gianforte to Speaker Galt and President Blasdel with Amendatory Veto | 41-1 to 41-4 |
| 42 | Montana 67th Legislature House Bill No. 702:  An Act Prohibiting Discrimination Based on a Person's Vaccination Status or Possession of an Immunity Passport; Providing and Exception and Exemption; Providing an Appropriation; and Providing Effective Dates | 42-1 to 42-5 |
| 43 | Audio recording of a XM Sirius David Webb radio interview of Austin Knudsen, recorded on November 11, 2021, conventionally filed on a flash drive | |
| 44 | Declaration of Jay Bhattacharya in Support of Governor Bill Lee's Opposition to Plaintiffs' Motion for Preliminary Injunction, September 28, 2021, filed in *R.K., et al., v. Governor Bill Lee*, Cause No. 3:21-cv-00725, Doc. 42 (Sept. 28, 2021) | 44-1 to 44-34 |
| 45 | Excerpts from the Deposition of David King, M.D., dated August 2, 2022 | 45-1 to 45-10 |

Plaintiffs respectfully file this Brief in Support of their Motion for Summary Judgment.  As detailed below, Plaintiffs are entitled to declaratory judgment and a permanent injunction related to Montana Code Annotated § 49-2-312 ("MCA 49-2-312").

## I.     INTRODUCTION

Vaccines reduce the infection and transmission risk of communicable diseases and are the best tool the medical community has to protect the public from vaccine-preventable diseases.  MCA 49-2-312 harms public health by removing that essential tool from the healthcare community's fight against infectious diseases.

While Plaintiffs believe they are entitled to judgment on all of their claims, this Motion is focused on preemption by the Americans with Disabilities Act ("ADA"), and violation of Equal Protection under the Montana and United States Constitutions.

First, Plaintiffs are entitled to summary judgment that MCA 49-2-312 is preempted by the ADA because the two irreconcilably conflict.  The ADA requires employers and public accommodations to provide reasonable accommodations to individuals with disabilities.  It is undisputed that some individuals with disabilities should only be treated by vaccinated healthcare workers—thus requiring different treatment of healthcare workers based upon vaccination status.  MCA 49-2-312

prevents physician offices and hospitals[1] from treating unvaccinated or nonimmune workers differently and prevents them from meaningfully engaging in the interactive process under the ADA.  As such, MCA 49-2-312 is preempted by the ADA.

Plaintiffs are separately entitled to summary judgment that MCA 49-2-312 violates the Equal Protection Clauses of the United States and Montana Constitutions.  It is undisputed that physician offices, hospitals, nursing homes, long term care facilities, and assisted living facilities are similarly situated in all relevant respects, yet physician offices and hospitals are not afforded equal treatment under Montana law.  Montana Code Annotated § 49-2-313 ("MCA 49-2-313") provides an exemption from MCA 49-2-312 for nursing homes, long term care facilities and assisted living facilities ("Exempted Facilities"), but does not exempt physician offices or hospitals.  Moreover, MCA 49-2-312 provides a limited exception for "health care facilities," but singles out and specifically excludes physician offices from this exception.  There is no rational basis for treating these entities differently and denying physician offices and hospitals equal protection under the law.  Further, MCA 49-2-312 and 313 create impermissible classifications between patients who seek care in these different facilities,

---

[1] Unless specifically noted otherwise, references to "hospitals" include "critical access hospitals" as defined in Montana Code Annotated § 50-5-101(18).

infringing on patients' fundamental right to seek health under the Montana Constitution.  Patients seeking care from an Exempted Facility are entitled to be treated by vaccinated workers; patients seeking care from a physician office or hospital are not.  Defendants cannot demonstrate these statutes are narrowly tailored to advance a compelling state interest.

As a result, Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing MCA 49-2-312 against physician offices and hospitals. At minimum, Plaintiffs are entitled to have the preliminary injunction related to the Centers for Medicare and Medicaid Services ("CMS") vaccine mandate made permanent.  Plaintiffs have established actual success on the merits, irreparable injury, and that the remedies at law are inadequate.  Further, the balance of the hardships and public interest justify the requested permanent injunctive relief.

## II.    UNDISPUTED FACTS

Plaintiffs' challenges to MCA 49-2-312 implicate primarily legal issues. The material facts are not in dispute, which has been confirmed by the Parties' extensive discovery and the accompanying Statement of Undisputed Facts.

Infection prevention protocols, including vaccination, promote public health and are in the public's interest.  Pls.' & Plaintiff-Intervenor's Joint Statement Undisputed Facts ¶¶ 2, 4, 19-20, 25, Aug. 26, 2022 ("SUF").  Vaccination requirements have been a common feature of healthcare in Montana, and vaccines

are safe and effective for preventing disease.  SUF ¶¶ 1-4, 19, 23-25, 38; *Biden v. Missouri*, 142 S. Ct. 647, 653 (2022).  Vaccines reduce the risk of individuals contracting and transmitting vaccine-preventable illnesses.  SUF ¶ 1-3.  Vaccine-preventable diseases are dangerous and can cause serious injury or death.  SUF ¶ 8.  Infectious disease prevention, including required vaccination or knowledge of vaccination and/or immunity status, is critical in healthcare settings.  SUF ¶ 18.

Vulnerable and immunocompromised individuals seek healthcare from Montana physicians, hospitals, and other healthcare facilities.  Healthcare settings employ individuals with disabilities who are at higher risk of harm or death if they acquire an infectious disease.  Healthcare workers are more likely to be exposed to infectious diseases than the general population and are more likely to come into contact with individuals who are at high-risk of contracting and being harmed by infectious diseases.  A healthcare entity needs to know a caregiver's actual (not presumed) vaccination status in order to take meaningful steps to address situations where unvaccinated workers seek to treat patients.  SUF ¶¶ 5-7, 31-32, 34, 39.

Unfortunately, vaccine-preventable diseases have not gone away; the viruses and bacteria that cause illness and death still exist and can be passed on to those who are not protected by vaccines or otherwise immune.  Montana has experienced localized outbreaks of vaccine-preventable infectious diseases due to unvaccinated populations.  SUF ¶¶ 21-22.  Standards of care and medical ethical principles call

for healthcare providers to require vaccination or confirm immunity status of healthcare workers when treating specific patients.  SUF ¶¶ 39-40.  This requires an individual assessment of a patient care encounter and determination of whether the particular patient requires treatment only by vaccinated staff.  If so, the facility must ensure the patient is only treated by vaccinated staff or that other effective accommodations are made.  SUF ¶¶ 33, 41.  In those situations, staff must be treated differently based upon vaccination status.  SUF ¶ 42.

Health conditions such as cancer, kidney disease, and other diseases are physical impairments that impact one or more major life activities.  SUF ¶ 9.  Immunocompromised individuals with such disabilities are more susceptible to vaccine-preventable illnesses and at increased risk of serious harm or death from such illnesses.  SUF ¶ 9.  Certain individuals with disabilities should not be exposed to unvaccinated healthcare workers.  SUF ¶¶ 10-16.  In these cases, healthcare entities must be able to treat their staff differently based upon vaccination status.  SUF ¶ 42.  While other forms of disease prevention, such as masking, are helpful, they do not serve as a substitute for, and are not as effective as, vaccination.  SUF ¶¶ 47-49.

Hospitals and physician offices are similarly situated to Exempted Facilities in all relevant ways.  SUF ¶¶ 50-58.  These entities all provide similar care to similarly situated patients by similarly situated healthcare workers.  In fact, they

frequently treat the same patients.  The ethical principles and duties to patients are unchanged based upon the location in which a provider is providing treatment. Critically, all of these entities have the same interest in infection prevention, including preventing the spread of communicable diseases and protecting their patients and staff from harm.  SUF ¶ 57.

Defendants are actively enforcing MCA 49-2-312 against healthcare entities and have threatened other entities with criminal prosecution for violation of MCA 49-2-312.  SUF ¶¶ 81-82.  MCA 49-2-312 applies to all vaccines.  SUF ¶ 96.

## III.    LEGAL STANDARDS

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party has met its burden, the burden shifts to the opposing party to establish a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The opposing party must

demonstrate that the fact in contention is material and that the dispute is genuine.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B.     Declaratory and Injunctive Relief

This Court "may declare the rights and other legal relations of any interested

party seeking such declaration, whether or not further relief is or could be sought.

Any such declaration shall have the force and effect of a final judgment or decree

and shall be reviewable as such."  28 U.S.C. § 2201.  The Court may issue further

necessary or proper relief based on a declaratory judgment, including appropriate

injunctive relief to protect and enforce its judgment.  28 U.S.C. § 2202; *McCann v.*

*Kerner*, 436 F.2d 1342, 1344 (7th Cir. 1971); *Rincon Band of Mission Indians v.*

*Harris*, 618 F.2d 569, 575 (9th Cir. 1980).

## IV.     ARGUMENT

## A.     Plaintiffs are entitled to declaratory judgment that MCA 49-2-312 is preempted by the ADA.

State law is preempted by federal law where it is impossible to comply with

both state and federal requirements, or where state law "'stands as an obstacle to

the accomplishment and execution of the full purposes and objectives of

Congress.'"  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (citation omitted).

MCA 49-2-312 is preempted by both the employer and public accommodation

requirements of the ADA.

The ADA prohibits disability discrimination by employers and public accommodations.  42 U.S.C. §§ 12112(a), 12182(a).  The ADA "must be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  *McGary v. City of Portland*, 386 F.3d 1259, 1268 (9th Cir. 2004) (quotation marks and citation omitted); *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) ("when Congress has passed antidiscrimination laws such as the ADA which require reasonable modifications to public health and safety policies, it is incumbent upon the courts to insure that the mandate of federal law is achieved").  The ADA defines disability as a "physical or mental impairment that substantially limits one or more major life activities[.]"  42 U.S.C. § 12102(1)(A).

The ADA requires employers to make "reasonable accommodations to the known physical … limitations of an otherwise qualified individual with a disability who is an applicant or employee[.]"  42 U.S.C. § 12112(b)(5)(A).  "[E]mployer[s] must engage in an interactive process with the employee to determine the appropriate reasonable accommodation."  *Zivkovic v. S. Cal Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).  "The interactive process requires: (1) direct communication between the employer and employee to explore in good faith possible accommodations; (2) consideration of the employee's request; and (3)

offering an accommodation that is reasonable and effective." *Zivkovic*, 302 F.3d at 1089 (citations omitted).

The ADA similarly precludes public accommodations from denying individuals with disabilities "the full and equal enjoyment of [its] goods, services, facilities, privileges, advantages, or accommodations" and requires public accommodations to make "reasonable modifications" to their "policies, practices, or procedures" to afford such enjoyment to persons with disabilities. 42 U.S.C. §§ 12182(a), (b)(2)(A)(ii); 28 C.F.R. § 35.130(b)(7). Public accommodations must "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals[.]" 42 U.S.C. § 12182(b)(2)(A)(iii).

It is undisputed that hospitals and physician offices employ disabled employees and treat disabled patients as a public accommodation, triggering both obligations under the ADA. SUF ¶¶ 5-15. It is further undisputed that patients have requested to only be treated by vaccinated staff. SUF ¶ 36. These types of requests trigger the ADA's reasonable accommodation obligations, including the interactive process. Because certain disabled patients should not be exposed to unvaccinated individuals, healthcare entities must identify and distinguish between vaccinated and unvaccinated employees (through actual, not "presumed," knowledge), and treat employees differently based upon vaccination or immunity

status.  SUF ¶¶ 13, 39, 42.  In this regard, MCA 49-2-312 conflicts with both

obligations under the ADA—the public accommodation requirements applicable to

immunocompromised patients seeking healthcare, and the employer requirements

to reasonably accommodate immunocompromised staff.

 MCA 49-2-312 unconstitutionally conflicts with the ADA.  Healthcare

providers must individually assess a patient care encounter and determine whether

the patient should only be treated by vaccinated staff.  SUF ¶¶ 44, 46.  This

requires healthcare providers to treat unvaccinated staff differently from vaccinated

staff when patient care circumstances require it.  SUF ¶¶ 42, 46.  When an

unvaccinated worker poses a risk to a disabled patient seeking care, that worker

may need to wear additional personal protective equipment ("PPE"), be reassigned,

be removed from the care environment, or otherwise treated differently so that the

vulnerable patient with a disability may be accommodated.  Refusing to

accommodate a patient with a disability in this manner would result in the patient

either being excluded from, or deprived of, "the full and equal enjoyment" of the

healthcare services.  42 U.S.C. §§ 12182(a).  Yet, under MCA 49-2-312, physician

offices and hospitals cannot accommodate such patients, as they cannot treat

workers differently based upon vaccination status.  Thus, MCA 49-2-312 prohibits

compliance with the ADA.

Similarly, MCA 49-2-312 conflicts with hospitals' and physician offices' requirement to reasonably accommodate disabled employees.  Physician offices and hospitals employ immunocompromised individuals who qualify as "individuals with a disability."  SUF ¶ 6.  The ADA obligates employers to reasonably accommodate disabled employees who require additional precautions to avoid the risk of infectious disease.  When these employees, due to their own disabilities, request to work only around vaccinated staff, or limit exposure to nonvaccinated staff, the ADA requires the employer to engage in an interactive process to reasonably accommodate these types of requests.  MCA 49-2-312 conflicts with an employer's ability to engage in this interactive process, as employers cannot treat unvaccinated staff differently, cannot consider the employee's request, and, in fact, cannot even require another employee to disclose the employee's vaccination status.  Accordingly, it conflicts with the ADA.

While MCA 49-2-312(3)(b) purports to provide a limited exception for "health care facilities," as defined in Montana Code Annotated § 50-5-101, the exception does not save the statute from preemption.  The ADA requires an interactive process that MCA 49-2-312 disrupts and, in some cases, prohibits.  First, the exception specifically does not apply to physician offices, so physician offices are precluded from complying with the ADA's requirements outlined above.  Mont. Code Ann. §§ 49-2-312(3)(b); 50-5-101(26)(b).  If these entities

have a disabled patient or employee who requests limited interactions with non-vaccinated individuals, physician offices are required to either violate the ADA or violate MCA 49-2-312.

Second, even as to "healthcare facilities," the statute is preempted. Other courts have found similar attempts to legislate the ADA's interactive process requirements are inappropriate and preempted. In *R.K. v. Lee*, a Tennessee district court found a statute that prohibited mask mandates in schools was preempted by the ADA, even though the statute contained a "reasonable accommodations" provision. *R.K. v. Lee*, 575 F. Supp. 3d 957 (M.D. Tenn. 2021). The court found "the statute assume[d] power the legislature did not have and fail[ed] to take into account how the ADA is intended to operate[;]" further finding the statute "imped[ed] a reasonable accommodation request because it dictate[d] exactly what [was] reasonable…" *R.K.*, 575 F. Supp. 3d at 986. Like here, the Tennessee statute did not "contemplate the interactive, individualized process required by the ADA[.]" *Id.* (citations omitted) (further noting an "'individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances'"); *see also G.S. v. Lee*, 560 F. Supp. 3d 1113, 1125 (W.D. Tenn. 2021).

MCA 49-2-312's attempt to legislate a "reasonable accommodation measures" process is, on its own, legally flawed and subjects the statute to

preemption.  Moreover, MCA 49-2-312's requirement of "reasonable accommodation measures" for the nonvaccinated is flawed on a fundamental basis. The text of the exception requires compliance with "both" of the following: (1) the "health care facility" must ask an employee to volunteer vaccination or immunity status, and (2) the health care facility "must" implement "reasonable accommodation measures" for the unvaccinated or nonimmune employee.  The ADA, however, requires accommodations be made <u>to the individual with a disability</u>; not to the unvaccinated employee who poses the risk of harm to the disabled employee.  SUF ¶ 76.  While the ADA requires the patient/employee with a disability be reasonably accommodated, MCA 49-2-312 requires the accommodation measures be provided to the unvaccinated/nonimmune employee posing the infection risk.  Not only does the exception facially recognize the threat nonvaccinated people present to the safety and health of others, MCA 49-2-312 turns the reasonable accommodation process required by the ADA on its head— requiring accommodation of the non-disabled individual and prohibiting reasonable accommodation of the disabled individual.

Moreover, the exception in MCA 49-2-312(3)(b) recklessly presumes other measures, such as masking, can take the place of vaccination to protect against the spread of vaccine-preventable diseases.  Masking is not effective for protecting against bloodborne or contact-communicable diseases, is not equally effective to

vaccination for respiratory illnesses, and may not eliminate the direct threat posed to individuals with disabilities.  *See* Mont. Admin. R. § 24.9.613(1); SUF ¶¶ 47-49. The Attorney General himself has made public statements indicating that masks do not work, and Defendants' own expert testified in *R.K.* that "high-quality evidence finds no effect of masks on the spread of disease, even when the masks are employed by healthcare workers who are trained to use them properly."  SUF ¶ 48. Masking cannot be a "reasonable accommodation measure" if it is not effective to prevent the threat to the individual with a disability.  In any event, requiring additional PPE (such as masking), reassigning or segregating unvaccinated/ nonimmune employees would constitute "discrimination" in terms and conditions of employment, again running afoul of MCA 49-2-312. SUF ¶¶ 69-70.

Observance of MCA 49-2-312's prohibitions requires healthcare entities to ignore or violate their mandate to reasonably accommodate patients and employees with disabilities—creating a direct, irreconcilable conflict with the ADA.  *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 164 (2d Cir. 2013) ("ADA preempts inconsistent state law when appropriate and necessary to effectuate a reasonable accommodation").  At minimum, MCA 49-2-312 stands as a direct obstacle to the accomplishment of the full objectives of the ADA. *Crowder*, 81 F.3d at 1484.  As a matter of law, MCA 49-2-312 is preempted by the ADA.

**B.      Plaintiffs are entitled to declaratory judgment that MCA 49-2-312 is unconstitutional, as it violates the Equal Protection Clauses of the United States and Montana Constitutions.**

MCA 49-2-312 is unconstitutional.  Both the Fourteenth Amendment and Article II, Section 4 of the Montana Constitution prohibit a state from denying equal protection of the laws.  Equal protection claims are evaluated under a three-step process: (1) identification of classes involved and determination if they are similarly situated; (2) a determination of the appropriate level of scrutiny; and (3) application of the appropriate level of scrutiny.  *Hensley v. Mont. State Fund*, 2020 MT 317, ¶ 18, 402 Mont. 277, 477 P.3d 1065; *Gallinger v. Becerra,* 898 F.3d 1012, 1016 (9th Cir. 2018).  MCA 49-2-312 and the exclusions created by MCA 49-2-313 create several unconstitutional classifications that treat similar groups in an unequal, arbitrary, and disparate manner.

**1.      MCA 49-2-312 discriminates against similarly situated classes in multiple, distinct ways.**

MCA 49-2-312 arbitrarily carves Montana healthcare entities into three categories, treating each differently with respect to the most crucial infection prevention tool healthcare providers have to prevent deadly, infectious diseases: (1) physician offices (Clinic and Five Valleys); (2) healthcare facilities (Providence); and (3) Exempted Facilities.  In dividing out these classes of healthcare providers, the statute arbitrarily creates discriminatory classes among

the patients who receive care from these different healthcare settings.  These groups are similarly situated, as detailed below, and should not be denied equal protection of the law.

The statute creates and discriminates against similarly situated classes in three distinct ways.  First, it discriminates against physician offices and "health care facilities" as compared to the Exempted Facilities by operation of MCA 49-2-313.  Exempted Facilities can follow Centers for Disease Control and Prevention ("CDC") and CMS guidance and regulations to protect their patients and staff, notwithstanding the prohibitions of MCA 49-2-312.  SUF ¶ 77.  However, physician offices (providing both primary and specialty care to those same patients) and hospitals (providing acute inpatient, outpatient, emergency, and surgical treatment to those same patients) may not.  Mont. Code Ann. §§ 49-2-312-313.  Because the CDC and CMS both emphatically recognize and recommend vaccines in all healthcare settings, Exempted Facilities may reasonably mandate staff vaccination for the safety of both their patients and employees.  SUF ¶ 97.  Yet, under MCA 49-2-312, physician offices and hospitals may not—limiting their ability to provide a safe environment and comply with CDC and CMS guidance and recommendations.  Instead, physician offices and hospitals are subjected to civil and criminal liability for what would otherwise be industry standard and, in some cases, medically and legally required action.

4863-9461-5595

16

Second, the statute discriminates against physician offices as compared to "health care facilities," as physician offices are excluded from the exception in MCA 49-2-312(3)(b). Physician offices provide a wide array of crucial primary and specialty care to high-risk individuals. Yet, under MCA 49-2-312, physician offices are deprived of the ability to take *any* action that would treat an unvaccinated staff member differently than a vaccinated staff member, even when such action is required to protect people from communicable diseases. "Health care facilities" are allowed, in certain limited circumstances, to treat employees differently based upon vaccination status if they implement "reasonable accommodation measures," but physician offices are not.

Third, MCA 49-2-312 and 49-2-313 arbitrarily create and disparately treat classes of patients, allowing patients receiving care in Exempted Facilities to receive care in a different and safer manner as compared with patients receiving care in a hospital or physician office. Patients in an Exempted Facility may be treated in an environment that requires vaccination or otherwise uses the knowledge of staff's immunity status in a manner that protects patients. Patients seeking treatment and care from a hospital or physician office are precluded from benefiting from these precautions.

These healthcare settings and the patients who seek healthcare are similarly situated in all relevant respects. SUF ¶¶ 50-58; *Ariz. Dream Act Coal. v. Brewer*,

855 F.3d 957, 966 (9th Cir. 2017) (classes need only be similar in "relevant respects" as related to the goals of the challenged law); *Harrison v. Kernan*, 971 F.3d 1069, 1075-76 (9th Cir. 2020) (male and female inmates, though housed separately, found to be similarly situated when evaluating prison regulation regarding ability to purchase personal property). Hospitals, physician offices, and Exempted Facilities treat similarly situated patients, including patients with compromised immune systems. SUF ¶¶ 53-54. This is epitomized by the fact that hospitals utilize their swing/observation beds for long-term care—caring for patients in the exact same manner as Exempted Facilities. SUF ¶ 55. Moreover, all care settings have the same interest in protecting their patients and staff from communicable diseases, and utilizing all forms of infection control, including vaccination. SUF ¶ 57.

There can be no dispute that the classes of patients drawn by MCA 49-2-312 are similarly situated. In fact, the same patient may be cared for and treated by the same healthcare provider in an Exempted Facility, a primary care clinic, and a hospital. SUF ¶ 54. Patients seeking care, particularly immunocompromised patients, all have the same interest in, and right to receive, safe and appropriate healthcare, regardless of the type of facility providing the care.

Physician offices are similarly situated in all relevant respects to other "health care facilities," yet are arbitrarily treated more harshly under the law.

4863-9461-5595

18

"Health care facilities" are broadly defined to include "all or a portion of an institution, building, or agency ... that is used, operated, or designed to provide health services, medical treatment, or nursing, rehabilitative, or preventive care to any individual."  Mont. Code Ann. § 50-5-101(26)(a); SUF ¶¶ 74-75.  This includes, as one example, an infirmary located in a university for the treatment of the sick or injured, which can include outpatient care only (such as a clinic located inside a university).  Mont. Code Ann. § 50-5-101(32).  There is no functional difference between a private physician office and a physician clinic located in a university.  Yet, under MCA 49-2-312, the facilities are not treated equally under the law.

### 2.    MCA 49-2-312 fails rational basis scrutiny.

The institutional Plaintiffs' claims are subject to rational basis scrutiny.  (Doc. 35 at 15).  To survive rational basis review, MCA 49-2-312's disparate treatment of physician offices and hospitals must be "'rationally related to a legitimate state interest.'"  *Ariz. Dream Act Coal.*, 855 F.3d at 969 (citation omitted).  While the individual Plaintiffs' claims are subject to strict scrutiny (Doc. 35 at 15), addressed below, all claims fail because there is no supportable rational basis for the harms caused by MCA 49-2-312.  The stated basis for the law is, on its own, arbitrary and irrational, and the statue itself is not rationally related to the stated interest.

Fundamentally, MCA 49-2-312 is not rationally related to a legitimate state interest as it is antithetical to the proper exercise of a state's police power—elevating individual rights over the public good. The Supreme Court established a state's police power may "embrace [ ] such reasonable regulations established directly by legislative enactment <u>as will protect the public health and safety</u>." *Jacobson v. Massachusetts*, 197 U.S. 11, 22 (1905) (emphasis added). "As *Jacobson* reveals, the right to refuse vaccination is not deeply rooted in this nation's history." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1250-51 (D. Or. 2021); *see Zucht v. King*, 260 U.S. 174, 176 (1922) (it is "settled that it is within the police power of a State to provide for compulsory vaccination"). Rather than promote public safety, MCA 49-2-312 harms public health in the name of individual privacy. As such, MCA 49-2-312 is, as a matter of law, an improper exercise of police power and unsupported by a rational basis.

MCA 49-2-312 is arbitrary and irrational. The text of House Bill 702 ("HB 702") identifies the stated legislative intent as protecting patient privacy and privacy in medical records. SUF ¶ 84. In support, the bill cites Montana Code Annotated § 50-16-502 and Montana Supreme Court precedent holding that medical records constitute protected information in the context of unlawful searches and seizures. SUF ¶ 84. Incidentally, Montana Code Annotated § 50-16-502 does not even apply to most healthcare providers in Montana, as most

providers are covered under the Health Insurance Portability and Accountability Act ("HIPAA").  *See* Mont. Code Ann. § 50-16-505.  Regardless, MCA 49-2-312 is not rationally related to protecting the privacy of medical records as it restricts what <u>employers</u> can do with <u>employment records</u>, not medical records, and prohibits discrimination based on vaccination or immunity status.  Accordingly, the stated interest is an irrational basis for enacting a law that prohibits utilizing knowledge of one's vaccination and/or immunity status as an infection prevention measure.

Additionally, MCA 49-2-312 stands at odds with physicians' professional and ethical standards of care when treating vulnerable patients.  SUF ¶¶ 33-34. Whatever the stated intent, such intent cannot constitute a rational basis if it forces physicians to violate their Hippocratic oath and national standards of care.

There is no supportable rational basis for prohibiting certain healthcare providers from requiring vaccination, when other Montana statutes <u>specifically require</u> vaccination in schools and daycares.  Mont. Code Ann. § 20-5-403(1); Mont. Admin. R. 37.95.140.  MCA 49-2-312 simply cannot have a rational basis for prohibiting a pediatrician's office or a hospital from mandating the MMR, TDaP, varicella, tetanus, polio, and Hib vaccines to protect pediatric patients, when Montana law separately *requires* schools and daycares to mandate those exact same vaccines to protect children.  Defendants cannot find a supportable public

interest in protecting individual privacy in a manner directly antagonistic to public health and inconsistent with other Montana vaccination requirements.

The statute separately fails because the illegitimate and insufficient state interest underlying MCA 49-2-312 is not rationally related to the statute.  Creating a wholly novel protected class based on the non-immutable characteristic of vaccination/immunity status, given the direct harms it causes in the healthcare context, is overly broad and not rationally related to the interest in keeping medical records private.  *See Merrifiend v. Lockyer*, 547 F.3d 978, 985 (9th Cir. 2008) (no rational basis for singling out three types of vertebrae pests for pest control licensing purposes); *Silveira v. Lockyer*, 312 F.3d 1052, 1087-88 (9th Cir. 2002) (no rational basis for the retired officer exception of the AWCA because it did not further the interest of enacting restrictions on assault weapons and was not otherwise connected to a legitimate state interest); *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1033 (10th Cir. 2007) (no rational basis for treating nonpublic schools harsher than public schools); *see also Ariz. Dream Act Coal.*, 855 F.3d at 969-970.

Arbitrarily drawing distinctions between different healthcare entities, treating some more harshly than others, is likewise not rationally related to any stated interest.  These healthcare entities undisputedly treat the same patient populations, including immunocompromised, high-risk individuals.  SUF ¶ 54.

This unequal treatment–created by MCA 49-2-312(3)(b) and MCA 49-2-313–was created through an amendatory veto.  SUF ¶ 83.  The Governor addressed the basis for the unequal treatment of different healthcare entities in a letter with his amendatory veto.  SUF ¶ 83.  However, this stated basis is irrational and fails when scrutinized.

The stated intent behind creating the Exempt Facilities was to "ensure that provisions of HB 702 do not put licensed nursing homes, long-term care facilities, or assisted living facilities in violation of regulations or guidance issued by the U.S. Centers for Medicare and Medicaid Services."  SUF ¶ 83.  This fails rational basis scrutiny for a number of reasons.  First, there is no dispute that hospitals also critically rely on Medicare and Medicaid funding, and must be permitted to follow CMS regulations and guidance.  SUF ¶¶ 58, 89-92.  It is irrational to treat them different from Exempted Facilities on this basis.  Moreover, assisted living facilities–one of the Exempt Facilities–are <u>not</u> CMS-certified facilities that are required to follow the CMS Conditions of Participation.  SUF ¶ 88.  If the stated intent is to allow those facilities that rely on CMS funding to remain in good standing, the manner in which this law does so is patently irrational.

Additionally, the Governor indicated that the ability to implement "reasonable accommodation measures" applied to all "employers," yet the plain language of the amendment, and now the statute, expressly excludes physician

offices.  SUF ¶ 83; Mont. Code Ann. § 49-2-312.  There is no rational basis for singling out physician offices for unequal treatment, as it is undisputed that physician offices have the same interest in preventing the spread of infectious disease and complying with CDC guidance.

Moreover, to the extent the Governor cited the need to have religious and medical exemptions to vaccination requirements as a basis, those exemptions were already rooted in established law—the Montana Human Rights Act, the ADA and Title VII of the Civil Rights Act of 1964.  Harming healthcare providers' ability to reasonably mandate staff vaccination and arbitrarily determining which types of healthcare entities can require vaccination cannot be justified on this basis when adequate legal protections already exist.

MCA 49-2-312's disparate treatment of healthcare entities and disparate treatment of patients seeking care from different establishments does nothing to further the law's stated interests.  MCA 49-2-312 fails rational basis scrutiny and is unconstitutional.

### 3.    MCA 49-2-312 fails strict scrutiny as to the individual Plaintiffs' claims.

Strict scrutiny applies to the individual Plaintiffs' equal protection claim, as MCA 49-2-312's disparate treatment implicates the Plaintiffs' fundamental right to "seek health."  (Doc. 35 at 15); Mont. Const. art. II, § 3; *Mont. Cannabis Indus.*

*Ass'n v. State*, 2012 MT 201, ¶ 23, 366 Mont. 224, 286 P.3d 1161.

To satisfy strict scrutiny, Defendants bear the burden of establishing MCA 49-2-312 "is 'narrowly tailored' to advance a 'compelling' state interest." *Brach v. Newsom*, 6 F.4th 904, 931 (9th Cir. 2021) (citation omitted); *Jaksha v. Butte-Silver Bow Cty.*, 2009 MT 263, ¶ 17, 352 Mont. 46, 214 P.3d 1248. Defendants cannot meet this burden. As set forth above, MCA 49-2-312 is fundamentally infirm as it harms public health and the ability of patients to seek safe healthcare from physician offices and hospitals in the name of individual privacy. The stated interest behind the statute is irrational and Defendants cannot establish a "compelling" interest for treating patients differently based upon where they seek care. Moreover, MCA 49-2-312's broad prohibitions against vaccination requirements and disparate treatment of patients based upon where they seek care are not narrowly tailored to the stated interest in protecting privacy in medical information. HIPAA and Montana law already provide robust protections for privacy in medical records. Arbitrarily drawing distinctions between different types of facilities in terms of application of MCA 49-2-312 is illogical–patients or staff of one type of healthcare entity do not, and should not, have greater privacy interests over patients or staff of another type of healthcare entity. Creation of this novel and unprecedented protected class is not narrowly tailored to fulfill the State's expressed interest.

4863-9461-5595

MCA 49-2-312 harms, and unconstitutionally infringes upon, the individual

Plaintiffs' ability to seek healthcare in a safe environment, without any compelling

interest.  MCA 49-2-312 fails under strict scrutiny.

**C.    The Court should permanently enjoin Defendants from enforcing MCA 49-2-312 against physician offices and hospitals.**

To be entitled to a permanent injunction, a plaintiff must demonstrate:

(1)    actual success on the merits;

(2)    that it has suffered an irreparable injury;

(3)    that remedies available at law are inadequate;

(4)    that the balance of hardships justify a remedy in equity; and

(5)    that the public interest would not be disserved by a permanent injunction.

*Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (citations and internal

quotations omitted).

Here, all factors for permanent injunctive relief have been met.  As set forth

above, Plaintiffs have demonstrated actual success on the merits that MCA 49-2-

312 is preempted by the ADA and unconstitutional.  Irreparable injury is

established by these constitutional violations.  *Nelson v. NASA*, 530 F.3d 865, 882

(9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be

adequately remedied through damages and therefore generally constitute irreparable harm.")

Irreparable injury is further established by the undisputed facts. Institutional Plaintiffs' ability to comply with their obligations under the ADA is directly and irreparably harmed by MCA 49-2-312's unconstitutional prohibitions against utilizing vaccination as an infection prevention tool; institutional Plaintiffs' ability to provide an appropriate and safe care environment for their patients and staff is unconstitutionally infringed upon by the illogical and irrational classifications drawn by MCA 49-2-312 and 313; and the individual Plaintiffs' fundamental right to seek healthcare is unconstitutionally infringed upon by the illogical and irrational classifications of different healthcare settings. There is no adequate remedy at law for these harms. *Morales v. TWA*, 504 U.S. 374, 381 (1992) ("When enforcement actions are imminent -- and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses -- there is no adequate remedy at law."); *Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("[A] constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm.").

The balance of hardships and the public's interest tips sharply toward granting injunctive relief. "Vaccination requirements are a common feature of the

provision of healthcare in America: Healthcare workers around the country are ordinarily required to be vaccinated for diseases such as hepatitis B, influenza, and measles, mumps, and rubella." *Biden*, 142 S. Ct. at 653 (citations omitted).  The institutional Plaintiffs face a Hobson's Choice of either complying with the ADA to protect disabled individuals, or complying with MCA 49-2-312.  On a more fundamental basis, these entities face civil and criminal liability for what would otherwise be necessary and appropriate standard of care infection control practices. *See* Mont. Code Ann. § 49-2-601; SUF ¶ 82.  They also risk exposing individuals to injury or death from vaccine-preventable diseases, when their main objective is to make people well.  *See Biden*, 142 S. Ct. at 652.  The individual Plaintiffs face the impossible choice of either foregoing necessary care or seeking care from physician offices and hospitals who are not allowed to follow industry and professional standard infection control protocols.

As this Court analyzed, it is inherently against the public interest to allow a state statute to violate federal law, or to inappropriately exercise police powers in a manner detrimental to public health and safety.  (Doc. 53 at 22-23.)  Any public interest that can be gleaned from MCA 49-2-312 is fundamentally at odds with the appropriate exercise of the State's police power as expressed in *Jacobson*. Defendants do not, and cannot, contend that MCA 49-2-312 protects and promotes public health and safety.  Individual rights are "not 'beyond regulation in

the public interest,' including regulation aimed at reducing the risk of 'expos[ing] the community or the child to communicable disease or the latter to ill health or death.'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1182 (9th Cir. 2021) (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944)); *see also Short v. Berger*, No. CV 22-1151-DMG (AGRx), 2022 U.S. Dist. LEXIS 67047, at *26-27 (C.D. Cal. Mar. 3, 2022) ("it is perhaps worth remembering the familiar aphorism that one's civil liberties can only extend so far as they do not harm others.").

Public health and safety is always in the public's interest, and reducing the prevalence of infectious diseases is in furtherance of public health. *Jacobson*, 197 U.S. at 25; *Golden Gate Rest. Ass'n v. City of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008) ("the general public has an interest in the health of [its] residents and workers"); *City & Cty. of S.F. v. United States Citizenship & Immigration Servs.*, 408 F. Supp. 3d 1057, 1127 (N.D. Cal. 2019) ("The public certainly has an interest in decreasing the risk of preventable contagion."). MCA 49-2-312 does the opposite and has no public health benefit. The public's interest furthering public health and safety outweighs the State's interest in the codification of an unconstitutional law that, by its nature, harms public health.

The Court should issue permanent injunctive relief enjoining Defendants from enforcing MCA 49-2-312 against physician offices and hospitals. At minimum, the Court should convert the preliminary injunction pertaining to the

CMS COVID-19 vaccination mandate (Doc. 53) into a permanent injunction.  (*See* Doc. 43.)  The undisputed facts establish actual success on the merits, irreparable injury, and the Court's prior opinion already analyzed the inadequacy of remedies at law, the balance of hardships, and the public interest.  (Doc. 53.)

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant summary judgment, declare MCA 49-2-312 preempted and unconstitutional, and issue the requested injunctive relief.

DATED this 26th day of August, 2022.

        /s/  Justin K. Cole
        Attorneys for Plaintiffs

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Plaintiffs' Brief in Support of Motion for Summary Judgment is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 6,444 words long, excluding Caption, Certificate of Service and Certificate of Compliance.

/s/  Justin K. Cole
Attorneys for Plaintiffs