Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | Case No. CV 21-108-M-DWM |
| Plaintiffs, | |
| and | |
| MONTANA NURSES ASSOCIATION, | PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT STATEMENT OF UNDISPUTED FACTS |
| Plaintiff-Intervenor, | |
| v. | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

Pursuant to Local Rule 56.1, Plaintiffs and Plaintiff-Intervenor respectfully file this Joint Statement of Undisputed Facts in support of Plaintiffs' Motion for Summary Judgment and Plaintiff-Intervenor's Motion for Summary Judgment.

1.      Vaccines are safe and effective at preventing disease.  Decl. Justin K. Cole, ¶ 2, Aug. 26, 2022 ("Decl. Counsel") Ex. 1: Decl. David King , ¶¶ 6, 24, 25, July 15, 2022 ("King Report"); Decl. Counsel ¶ 3, Ex. 2: Decl. David Taylor , ¶¶ 5, 15-20; 26-28, 65, July 15, 2022 ("Taylor Report"); Decl. Counsel ¶ 8, Ex. 7: Expert Report of Lauren Wilson, ¶ 10-11, July 15, 2022 ("Wilson Report"); Decl. Counsel ¶ 4, Ex. 3: Expert Report of Holzman, ¶ 6, July 15, 2022 ("Holzman Report"); Decl. Counsel ¶ 5, Ex 4: Decl. Bonnie Stephens, ¶ 15, July 15, 2022 ("Stephens Report"); Decl. Counsel ¶ 9, Ex. 8: Dep. David Taylor, 35:16-20; 68:23-70:12; 93:17-95:17, Aug. 4, 2022 ("Dep. Taylor").

2.      Vaccines reduce the risk of individuals contracting and transmitting vaccine-preventable illnesses.  Decl. Counsel ¶ 6, Ex. 5: Expert Report of Jayanta Bhattacharya, ¶¶ 5; 17; 34, July 15, 2022 ("Bhattacharya Report"); King Report, ¶¶ 8-11, 21, 24; Taylor Report, ¶ 6-11, 62; Holzman Report, ¶ 13.

3.      Both vaccination and natural/recovered immunity through prior infection protects an individual from severe disease and disease spread.  Decl. Counsel ¶ 7, Ex. 6: Expert Report of Ram Duriseti, at 19, 24, July 15, 2022 ("Duriseti Report"); Bhattacharya Report, ¶¶ 5, 17, 34; King Report, ¶ 6, 12; Taylor Report, ¶¶ 7, 56.

4.      An individual's immunity to disease, through vaccination or otherwise, reduces the likelihood that the individual will spread disease to another. Bhattacharya Report, ¶¶ 26, 34; King Report, ¶¶ 21, 32-33.

5.      Vulnerable and immunocompromised individuals seek healthcare from Montana physicians, hospitals and other healthcare facilities.  Stephens Report, ¶ 10-12; Holzman Report, ¶ 9; King Report, ¶¶ 42, 50; Taylor Report, ¶ 55; Decl. Counsel ¶ 38, Ex. 37: Excerpts of Pls.' Resp. Defs.' First Combined Disc. Req. at 23, July 29, 2022 ("Ex. 37"); Decl. Counsel ¶ 39, Ex. 38: Pls.'4th Supp. Resp. Defs.' 1st Combined Disc. Resp. at 2-9, Aug. 19, 2022.

6.      Healthcare settings employ individuals who are particularly vulnerable or at higher risk of harm or death if they acquire an infectious disease, including those with disabilities.  Holzman Report, ¶ 10; Decl. Counsel ¶ 17, Ex. 16: 30(b)(6) Dep. Five Valleys Urology, 47:6-23, Aug. 9, 2022 ("Dep. Five Valleys"); Decl. Counsel ¶ 12, Ex. 11: 30(b)(6) Dep. Providence Health and Services, Montana – K. Trainor, 18:19-19:6, Aug. 10, 2022 ("Dep. Providence – Trainor"); Decl. V. Byrd, ¶¶ 8-9, 15 August 26, 2022 ("Decl. Byrd"), filed contemporaneously herewith.

7.      Healthcare workers are more likely to be exposed to infectious diseases than the general population, and more likely to come into contact with individuals who are vulnerable and at high-risk of contracting and being harmed by

infectious diseases.  Taylor Report, ¶ 55; Holzman Report, ¶¶ 8-9; Decl. Byrd, Ex.
B:  OSHA "Healthcare/Infectious Diseases."

8.      Vaccine-preventable diseases pose a risk of death and serious illness
to individuals, particularly to vulnerable or immunocompromised individuals.
King Report, ¶ 5; Taylor Report, ¶ 29; Bhattacharya Report, ¶ 15; Holzman
Report, ¶¶ 4, 8; Wilson Report, ¶ 16; Stephens Report, ¶¶ 5, 8, 10-11.

9.      Health conditions such as cancer, kidney transplant, diabetes, and
other diseases are physical impairments that impact one or more major life
activities.  Stephens Report, ¶ 11; King Report, ¶ 18; Wilson Report, ¶ 17; Decl.
Counsel ¶ 15, Ex. 14: 30(b)(6) Dep. Montana Human Rights Bureau, 92:17-93:21
Aug. 22, 2022. ("Dep. HRB").

10.      Infants in the neonatal intensive care unit (NICU) and patients in
cancer care settings most often have physical impairments that impact major life
activities because of their underlying disease processes and disabilities.  Stephens
Report, ¶ 11.

11.      The young, the elderly and others with severe chronic disease face a
higher mortality risk if infected with disease.  Bhattacharya Report, ¶ 13; King
Report, ¶ 19; Holzman Report, ¶ 9; Wilson Report, ¶ 17; Stephens Report, ¶ 5-11;
Taylor Report, ¶ 55.

12.    Immunocompromised individuals with disabilities are more susceptible to vaccine-preventable illnesses and at increased risk of serious harm or death from such illnesses.  King Report, ¶¶ 39, 42; Stephens Report, ¶ 11; Taylor Report, ¶ 55.

13.    Certain immunocompromised individuals should not be exposed to unvaccinated individuals, including unvaccinated healthcare workers.  King Report, ¶¶ 42, 44; Taylor Report, ¶ 55, Holzman Report, ¶ 20; Stephens Report, ¶¶ 5-8; Decl. Mark Carpenter, ¶¶ 3-6, Aug. 25, 2022, filed contemporaneously herewith.

14.    Infants in the NICU setting have compromised immune systems and are particularly vulnerable to infectious disease.  Stephens Report, ¶ 5; Wilson Report, ¶ 17.

15.    Infants in the NICU are too young to receive vaccinations to protect them from vaccine preventable illness.  Stephens Report, ¶¶ 5, 9; Wilson Report, ¶ 17.

16.    It is standard of care in a NICU setting to confirm the vaccination and/or immunity status of all individuals working in, and providing care to, patients in the NICU.  Wilson Report, ¶ 23; Stephens Report, ¶¶ 5, 6-8.

17.    Pertussis is a highly contagious disease that is fatal in young infants.  Wilson Report, ¶ 16; Stephens Report, ¶ 8; Taylor Report, ¶ 29.

18.     Infectious disease prevention is critical in healthcare settings.

Stephens Report, ¶ 5; Wilson Report, ¶ 17; King Report, ¶ 23.

19.     Infection prevention protocols promote public health.  Decl. Counsel ¶

10, Ex. 9: 30(b)(6) Dep. Montana Department of Public Health and Human

Services, 76:11-13 Aug. 18, 2022 ("Dep. DPHHS"); Ex. 8: Dep. Taylor 35:16-

36:12.

20.     The health and safety of healthcare workers is in the interest of the

Department of Labor and Industry.  Decl. Counsel ¶ 11, Ex. 10: 30(b)(6) Dep.

Montana Department of Labor and Industry, 50:15-51:7 Aug. 18, 2022 ("Dep.

DLI").

21.     Vaccine-preventable diseases have not gone away; the viruses and

bacteria that cause illness and death still exist and can be passed on to those who

are not protected by vaccines or otherwise immune.  Taylor Report, ¶ 29; Wilson

Report, ¶ 12; King Report, ¶¶ 46, 49.

22.     There have been both measles outbreaks and pertussis outbreaks in

Montana.  Wilson Report, ¶¶ 14-15.

23.     Available vaccines for Measles, Mumps and Rubella (MMR),

Tetanus, Diptheria and Pertussis (TDaP), Polio, Varicella (chickenpox), and

Hepatitis B are effective at reducing the risk of disease and should be required in

the healthcare setting.  Duriseti Report, at 20-21; King Report, ¶ 23; Taylor Report, ¶¶ 7-24; Stephens Report, ¶¶ 6-8.

24.     MMR, TDaP, Polio, Varicella, and Hepatitis B vaccines are all approved by the FDA.  Taylor Report, ¶ 26.

25.     The MMR vaccine for Measles and the Hepatitis B vaccine effectively eliminate infection risk and provide protection from severe illness.  Duriseti Report, at 22, 24-25; King Report, ¶ 23; Taylor Report, ¶¶ 7-24; Stephens Report, ¶¶ 6-8; Wilson Report, ¶ 10; Holzman Report, ¶ 6.

26.     Measles is a respiratory virus that transmits through either aerosol, droplets or surface contact, and is highly contagious.  Duriseti Report, at 22; Wilson Report, ¶ 13.

27.     In the case of Measles and Hepatitis B, there is a major component of the infection that is bloodborne, "such that blood-borne vaccine or infection induced antibodies can perform a pivotal role in preventing infection."  Duriseti Report, at 22-23.

28.     Vulnerable, non-vaccine eligible populations are more susceptible to infection during an outbreak of a disease.  Duriseti Report, at 23-24.

29.     "Hepatitis B is transmitted through body fluid contact.  Duriseti Report, at 24.

30.     Given the benefits of vaccines such as MMR and the Hepatitis B vaccine, "clearly demonstrated reduction in transmission with high community vaccination rates requires more consideration than one's personal autonomy." Duriseti Report, at 25.

31.     "[C]aregivers who do not accept such "sterilizing vaccines" where said vaccination can markedly attenuate transmission when community vaccine coverage is more than 90%, may need to accept special precautions when caring for vulnerable populations."  Duriseti Report, at 25-26.

32.     Special precautions that should be required of unvaccinated workers "may include, but are not limited to, use of fit-tested N95 masking, enhanced barrier precautions, and even surveillance testing."  Duriseti Report, at 26.

33.     Standard of care and medical ethical principles require healthcare providers to treat individuals in an individualized manner.  King Report, ¶¶ 34, 38; Stephens Report, ¶ 12.

34.     Standard of care and medical ethical principles call for healthcare providers to require vaccination and/or confirmed immunity status when treating patients, particularly immunocompromised patients.  King Report, ¶¶ 35; 45; Wilson Report, ¶¶ 22-23; Stephens Report, ¶¶ 5-8, 12, 14; Holzman Report, ¶ 12.

35.     The Clinic, Five Valleys, and Providence all employ more than fifteen employees.  Decl. Counsel ¶ 14, Ex. 13: 30(b)(6) Dep. Western Montana Clinic

13:9-13 Aug. 8, 2022. ("Dep. Clinic"); Ex. 16: Dep. Five Valleys 12:12-15; Ex. 37

at 41.

36.     Patients in Montana have requested to be treated by vaccinated staff.

Stephens Report, ¶ 14; Ex. 11: Dep. Providence – Trainor 37:23-38:10; Ex. 16:

Dep. Five Valleys 44:22-45:6.

37.     Patient requests to be treated by vaccinated staff should be honored.

Stephens Report, ¶ 14; Ex. 11: Dep. Providence – Trainor 39:1-5; Ex. 13: Dep.

Clinic 80:16-81:2.

38.     Vaccination requirements have been a common staple of healthcare in

America.  King Report, ¶ 35; Wilson Report, ¶ 18; Stephens Report, ¶ 13; Decl.

Byrd, ¶¶ 19-20.

39.     A healthcare provider or healthcare facility needs to know a

caregiver's actual (not presumed) vaccination status, and take meaningful steps to

address situations where unvaccinated workers seek to treat patients.  King Report,

¶ 35; Wilson Report, ¶¶ 18, 22-23; Stephens Report, ¶ 12; Holzman Report, ¶¶ 12,

16; Duriseti Report, p. 25-26.

40.     Medical standard of care principles require knowing and addressing

the immunization status of healthcare workers in healthcare settings, particularly

settings where physicians and other providers provide treatment to vulnerable

patient populations, such as intensive care settings, neonatal or pediatric intensive

care settings, and cancer care settings, among others.  King Report, ¶ 35; Wilson Report, ¶ 23; Holzman Report, ¶ 12; Stephens Report, ¶ 5-8.

41.　Healthcare facilities and workers have an obligation to comply with national standards of care in the care and treatment of patients.  King Report, ¶ 36; Stephens Report, ¶ 12.

42.　A health care provider needs to be able to treat unvaccinated staff members differently from vaccinated staff members when patient care circumstances require it.  King Report, ¶ 40; Wilson Report, ¶¶ 22-23; Holzman Report, ¶¶ 12, 17-19; Stephens Report, ¶ 14; Ex. 11: Dep. Providence – Trainor 39:1-5; Ex. 13: Dep. Clinic 80:16-81:2; Ex. 16: Dep. Five Valleys 39:16-40:1, 43:25-44:5.

43.　Exposing patients to non-vaccinated healthcare workers exposes patients to higher risk of injury or death.  King Report, ¶ 50; Wilson Report, ¶ 19; Taylor Report, ¶ 49; Holzman Report, ¶ 8; Stephens Report, ¶ 11.

44.　When treating a vulnerable, immunocompromised patient, a facility needs to perform an individualized assessment of whether a reasonable accommodation is available to the patient absent an undue hardship or direct threat to the hospital's operations, including the safety of its patients.  King Report, ¶ 39; Stephens Report, ¶ 11; Ex. 11: Dep. Providence – Trainor 44:5-12; 44:21-45:4.

45.     A failure to engage in the interactive process with an individual with a disability constitutes discrimination under the ADA.  Ex. 14: Dep. HRB 90:12-91:10; 94:13-17.

46.     In order to provide an individualized assessment of treating a vulnerable patient, health care providers need to know the vaccination status of the healthcare workers, so they can provide appropriate care to vulnerable patients. King Report, ¶ 39; Stephens Report, ¶ 11.

47.     Other forms of disease prevention, such as masking, while helpful, cannot serve as a substitute for vaccination.  King Report, ¶ 47; Wilson Report, ¶ 20; Holzman Report, ¶ 15.

48.     Simple masking is not equally as effective as vaccination in preventing the spread and severity of disease.  King Report, ¶ 47; Wilson Report, ¶ 20; Holzman Report, ¶ 15; Taylor Report, ¶ 62; Decl. Counsel ¶ 16, Ex. 15: 30(b)(6) Dep. Attorney General's Office 49:4-53:5 Aug. 19, 2022 ("Dep. AG"); Decl. Counsel, ¶ 41, Ex. 40: One American News Network Dan Ball Radio Interview of Austin Knudsen, Time Stamp 13:00-13:10, Feb. 7, 2022[1] (public radio statement by the AG indicating that masks do not work to prevent the spread of disease); Decl. Counsel, ¶ 45, Ex. 44: Decl. Bhattacharya in Support of Gov. Lee's

---

[1] Conventionally filed, also available at: https://www.spreaker.com/user/ oneamericanewsnetwork/2-7-oanra366e-audio (last accessed Aug. 26, 2022)

Opp. To Pls.' Mot. For Prelim. Injunction ("In other words, according to a comprehensive evidence summary of masks effectiveness in the context of the flu – a virus that shares many physical properties with the SARS-CoV-2 virus and is transmitted similarly to SARS-CoV-2 – high-quality evidence finds no effect of masks on the spread of disease, even when the masks are employed by health care workers who are trained to use them properly").

49.     Masking does not protect against bloodborne pathogens, or the spread of pathogens through surface contact. King Report, ¶ 47; Wilson Report, ¶ 20; Holzman Report, ¶ 15; Taylor Report, ¶ 62.

50.     Hospitals and physician offices are similarly situated in all meaningful ways when it comes to treating patients.  King Report, ¶¶ 39, 48; Holzman Report, ¶ 11, 21; (Doc. 77 at ¶ 4(k)); Decl. Byrd.

51.     Physicians of all types of specialties treat similar types of patients in acute hospital settings as well as outpatient physician clinic or office settings. King Report, ¶ 48.

52.     Physician offices and hospitals are similarly situated to long-term care settings such as assisted living facilities and skilled nursing facilities.  King Report, ¶ 48; Holzman Report, ¶ 21.

53.     Primary care physicians as well as subspecialists treat elderly and immunocompromised patients in clinic settings, hospital settings, rural swing-bed

hospital settings, and nursing homes and long-term care settings.  King Report, ¶ 48.

54.     Hospitals treat the same patients as nursing homes, long-term care facilities and assisted living facilities.  Decl. Counsel, ¶ 46, Ex. 45: Dep. David King 55:10-56:23; 57:23-3; 59:6-16; 124:24-126:2; 151:1-14, Aug. 2, 2022; April 28, 2021 House Floor Session Video, 2nd Reading Governor's Proposed Amendments Adopted, timestamp 16:53:20-16:57:52, http://sg001-harmony.sliq. net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/41104?agendaId=220301.

55.     Critical access hospital and hospital swing beds are often used in the exact same manner as nursing homes and long-term care facilities; these facilities provide the same (or similar) care to similarly situated patients by similarly situated healthcare workers.  King Report, ¶ 48; Ex. 45: Dep. King 52:18-53:53:19.

56.     The ethical principles of these healthcare providers and duties to their patients and fellow coworkers are unchanged whether the healthcare provider is providing treatment in a hospital, physician office, or long-term care setting.  King Report, ¶ 48; Holzman Report, ¶¶ 20-21.

57.     Healthcare entities have the same interest in infection prevention and preventing the spread of communicable diseases to their patients and staff.  Ex. 8: Dep. Taylor 35:5-36; 59:5-24; 94:6-95:5; Decl. King ¶¶ 47-48.

58.     Providence participates in the federal Medicare and Medicaid programs and cares for patients covered by Medicare and Medicaid.  (Doc. 77 at ¶ 4(i)).

59.     When claims of discrimination are filed under MCA 49-2-312, the Montana Human Rights Bureau is mandated to conduct informal investigations of alleged violations of MCA 49-2-312, and to promptly and impartially determine whether there is reasonable cause to believe that there has been a violation.  Ex. 14: Dep. HRB 28:1-29:3.

60.     If the HRB makes a for-cause finding of discrimination under the MCA 49-2-312, the case then proceeds to conciliation, and then to a contested case hearing.  Ex. 14: Dep. HRB 32:7-21.

61.     After the HRB makes a for-cause finding, the parties cannot resolve the matter without involving the HRB.  Ex. 14: Dep. HRB 32:22-25.

62.     The HRB requires targeted equitable relief to resolve a matter after there has been a for-cause finding of discrimination, in a manner that eliminates the discriminatory practice.  Ex. 14: Dep. HRB 33:14-34:7.

63.     "After there is a cause finding, the [HRB] has an obligation to seek redress for any discrimination."  Ex. 14: Dep. HRB 33:4-6.

64.     If a hearing officer finds that an entity engaged in a discriminatory practice, the Department of Labor must order that the party refrain from engaging in discriminatory conduct.  Ex. 14: Dep. HRB 37:8-38:3.

65.     The Department of Labor can petition the district court to enforce its orders and sue a party in district court for breach of a conciliation agreement.  Ex. 14: Dep. HRB 38:4-11.

66.     Since its enactment, the Montana Human Rights Bureau has investigated complaints alleging discrimination in violation of MCA 49-2-312. (Doc. 77 at ¶ 4(h)); Ex. 14: Dep. HRB 61:1-3, 11-16.

67.     The DLI defers all enforcement and interpretation of MCA 49-2-312 to the HRB, and DLI testified it has no independent knowledge of such enforcement or interpretation.  Ex. 10: Dep. DLI 16:14-17:10; 31:7-32:21; 34:20-36:5; 37:4-42:11; 45:7-13; 47:8-18; 49:10-50:10; 53:11-23; 90:22-92:12; 99:3-100:2; 102:7-103:21.

68.     The HRB has made 25 for-cause findings related to MCA 49-2-312, some of which are against hospitals.  Ex. 14: Dep. HRB 41:21-42:3.

69.     The HRB testified that it could be unlawful discrimination if a physician office removed an unvaccinated individual from having direct patient care, based on the individual's vaccination status.  Ex. 14: Dep. HRB 50:21-52:17.

70.     The HRB testified that it could be unlawful discrimination if a physician office required only unvaccinated employees to wear masks.  Ex. 14: Dep. HRB 52:22-53:16; *see also* Ex. 15: Dep. AG 52:3-22.

71.     For a "health care facility," as defined by MCA 49-2-312, if there are no "reasonable accommodation measures" that can be put in place to protect the health and safety of employees, patients, visitors, and other persons from communicable diseases, terminating an unvaccinated individual could be a violation of the law.  Ex. 14: Dep. HRB 58:12-59:9.

72.     In a claim filed before the HRB, the HRB found that the requirement to obtain a flu vaccine constituted reasonable cause to believe discrimination under MCA 49-2-312 had occurred, even though there had been no other adverse employment action.  Ex. 14: Dep. HRB 96:18-98:10, Decl. Counsel ¶ 34, Ex. 33: HRB Final Investigative Report, May 20, 2022.

73.     In another claim filed before the HRB, the HRB reasonable cause to believe discrimination under MCA 49-2-312 had occurred where an event scheduled for cancer survivors prohibited unvaccinated individuals to attend in person, even though it allowed them to attend the conference remotely.  Ex. 14: Dep. HRB 99:16-102:1; Decl. Counsel ¶ 35, Ex. 34: HRB Final Investigative Report, May 10, 2022.

74.    In a claim filed against a prison, the HRB found the prison constituted a health care facility and thereby applied the exception in MCA 49-2-312(3)(b). Ex. 14: HRB Dep. 102:5-108:14; Decl. Counsel ¶ 36, Ex. 35: HRB Final Investigative Reports, Feb. 25, 2022 (filed under seal pending leave of Court).

75.    In the claim against the prison, the HRB found that the designation of health care facility applied not just to the prison infirmary, but to the entire institution.  Ex. 14: Dep. HRB 107:14-17; Ex. 35.

76.    The HRB has indicated that the term "reasonable accommodation measures" in MCA 49-2-312 "appears unrelated" to the definition of "reasonable accommodation" under other portions of the Montana Human Rights Act applying to a person with a disability.  Ex. 14: Dep. HRB 109:13-110:3; Ex. 35.

77.    The HRB found no reasonable cause in a claim against a facility exempted from MCA 49-2-312 by virtue of MCA 49-2-313, noting that CDC guidance recommended vaccination for all healthcare personnel.  Ex. 14: Dep. HRB 126:23-128:23; Decl. Counsel ¶ 37, Ex. 36: HRB Final Investigative Report, Nov. 22, 2021.

78.    The HRB applies to EEOC guidance when such guidance does not conflict with state law.  Ex. 14: Dep. HRB 19:19-21:15; 87:9-24.

79.    The EEOC has issued guidance indicating that when an immunocompromised employee requests a reasonable accommodation based on a

4884-9268-5099                                                                                    17

concern of heightened risk of severe illness from a COVID-19 infection, the employer must explore potential reasonable accommodations that may be provided absent undue hardship.  Decl. Counsel ¶ 33, Ex. 32: EEOC Guidance at 49-50, July 12, 2022 ("Ex. 32").

80.     This obligation applies even if the employee is vaccinated, as "some individuals who are immunocompromised might still need reasonable accommodations because their conditions may mean that the vaccines may not offer them the same measure of protection as other vaccinated individuals."  Ex. 32 at 50.

81.     Montana AG and DLI intend to, and are actively, enforcing MCA § 49-2-312.  Ex. 10: Dep. DLI 75:2-21; 76:18-77:5; 77:14-79:18; 79:23-85:13; 85:18-86:14; 86:22-87:3; 87:20-24; 88:5-9; 88:17-92:12; Decl. Counsel ¶ 25, Ex. 24: Letter from L. Esau to Mountain Pacific Quality Health, Nov. 12, 2021; Decl. Counsel ¶ 26, Ex. 25: Letter from L. Esau to Big Sky Resort, Dec. 17, 2021; Decl. Counsel ¶ 27, Ex. 26: Letter from L. Esau to Ninth Circuit Judicial Conference, June 20, 2022; Ex. 14: Dep. HRB 41:21-42:3; 62:2-67:3; 89:6-90:11; Ex. 15: Dep. AG 27:2-35:15; 37:8-39:18; 43:13-44:13; 44:19-45:18; 49:4-53:5; 74:1-5; Decl. Counsel ¶ 28, Ex. 27: Email Corr. D. Oestreicher to S. Logan, Oct. 13, 2021; Decl. Counsel ¶ 29, Ex. 28: Letter from D. Oestreicher, Jan. 14, 2021; Decl. Counsel ¶ 40, Ex. 39: Excerpts of Defs.' Resp. Pls.' Disc. Reqs., at 3-5, May 11, 2022.

82.     Employers face potential criminal penalties for violation of MCA 49-2-312.  Ex. 10: Dep. DLI 75:2-21; 77:14-79:18; 79:23-85:13; 85:18-86:14; 88:17-92:12; Ex. 24; Ex. 25; Ex. 26; Ex. 27; Ex. 15: Dep. AG 37:8-39:18; 43:13-44:13; 74:1-5.

83.     The exclusion contained in MCA 49-2-313 for licensed nursing homes, long-term care facilities, and assisted living facilities was drafted by the Governor in an amendatory veto dated April 28, 2021, which was later adopted by the legislature.  Decl. Counsel ¶ 42, Ex. 41: Letter from G. Gianforte to Speaker Galt & President Blasdel, April 28, 2021; Mont. Code Ann. § 49-2-312 through 313.

84.     The text of HB 702 identifies the bases of the bill are for protecting patient privacy (citing Montana Code Annotated § 50-16-502, which does not apply to most Montana health care providers) and the constitutional right of privacy in medical records, in the context of search and seizure law.  Decl. Counsel ¶ 43, Ex. 42: Montana 67th Legislature, House Bill 702.

85.     The AG Office does not know the basis for the disparate treatment of different health care entities under MCA 49-2-312 and 313, testifying instead that the basis for disparate treatment is contained "within the four corners of the statute itself."  Ex. 15: Dep. AG 92:2-93:21; 93:23-95:7; *but see* Ex. 39: Defs.' Resp. Pls.' Disc. Reqs., at 24-28.

86.     Both the DLI and the AG have recognized the conflict between federal vaccination mandates and the penalties imposed on employers by MCA 49-2-312.  Ex. 15: Dep. AG 76:2-24; Decl. Counsel ¶ 30, Ex. 29: Letter Gianforte, Oct. 27, 2021 (Indicating that a federal COVID-19 vaccine mandate "violates Montana law."); Decl. Counsel, ¶ 44, Ex. 43: Sirius XM David Webb Radio Interview of Austin Knudsen, Time Stamp 5:28-6:25, Nov. 11, 2021[2]; Ex. 10: Dep. DLI 61:11-62:15; 64:16-66:6; 74:11-20; 75:2-21; 76:2-24; 77:14-79:18; 79:23-85:13; 85:18-86:14; 88:17-92:12; Decl. Counsel ¶ 24, Ex. 23: Excerpt from DLI's House Bill 702 FAQ; Ex. 24; Ex. 25; Ex. 26.

87.     DPHHS testified that hospitals, when faced with the question of how to comply with MCA 49-2-312 and the CMS COVID-19 vaccine mandate, should follow the CMS COVID-19 mandate.  Ex. 9: Dep. DPHHS 88:19-89:12.

88.     Assisted living facilities are not Medicare or Medicaid certified facility providers, are not subject to the CMS conditions of participation, and do not risk losing funding from CMS based on not complying with the conditions of participation.  Ex. 9: Dep. DPHHS 36:5-17; 83:14-22; 83:23-25; 84:1-3; 84:4-7; Decl. Counsel ¶ 21, Ex. 20: DPHHS Provider Q&A.

---

[2] Conventionally filed, also available at: https://www.podcastaddict.com/episode/133340150 (last accessed Aug. 26, 2022).

89.     Providence receives a majority of its reimbursement through CMS. Decl. Bodlovic.  (Doc. 45 at ¶ 7).

90.     Continued participation with CMS is essential to Providence's continued operations and ability to continue to deliver its current level and volume of patient care.  (Doc. 45 at ¶ 7).

91.     Rural hospitals receive 60% or more of their gross billing from CMS, emphasizing that CMS funding is critical to continued operations.  Decl. Counsel ¶ 31, Ex. 30: Decl. Stukaloff with attachments (also at Doc. 51-2 at 5); Ex. 15: Dep. AG 97:15-103:2; *see also* Ex. 9: Dep. DPHHS 76:22-80:24; 82:22-83:7 (DPHHS testifying the loss of CMS funding will make it difficult to operate the Montana State Hospital).

92.     Failure to comply with the CMS conditions of participation subjects a covered facility to termination from the Medicare and Medicaid programs.  Ex. 9: Dep. DPHHS 50:25-51:20; Decl. Counsel ¶ 20, Ex 19: Letter from CMS to Montana State Hospital Re: Involuntary Termination, Apr. 8, 2022; (Doc. 45 at ¶ 3).

93.     Failure to comply with the CMS COVID-19 vaccination mandate subjects a covered facility to termination from the Medicare and Medicaid programs.  Ex. 9: Dep. DPHHS 50:25-52:11; Decl. Counsel ¶ 18, Ex. 17: CMS Revised Guidance for Interim Final Rule, QSO-22-09-ALL.

94.     The CMS COVID-19 vaccination mandate requires covered facilities to ensure unvaccinated staff adhere to additional precautions above and beyond those implemented for vaccinated staff.  Ex. 9: Dep. DPHHS 53:23-54:24; Decl. Counsel ¶ 19, Ex. 18: Hospital Attachment Revised to QSO-22-09-ALL.

95.     There have been two hospitals in Montana who have received deficiencies under a complaint survey specifically for deficiencies under the COVID-19 vaccination requirement.  Ex. 9: Dep. DPHHS 107:23-109:16; 113:3-14; Decl. Counsel ¶ 22, Ex. 21: QCOR report; Decl. Counsel ¶ 23, Ex. 22: QCOR report.

96.     MCA 49-2-312 applies to all vaccines, not just the COVID-19 vaccine.  Ex. 15: Dep. AG 35:12-15; Ex. 14: Dep. HRB 26:25-27:25; Decl. Counsel ¶ 32, Ex. 31: Excerpt from DLI's House Bill 702: FAQ, July 26, 2021.

97.     CDC recommends the following vaccines for healthcare workers: Hepatitis B, influenza, MMR, Varicella, Tdap, and Meningococcal.  *See* https://www.cdc.gov/vaccines/adults/rec-vac/hcw.html.  *See also* Decl. Byrd, ¶ 18.

98.     Physician offices provide a wide-array of primary and specialty care to high risk individuals.  Ex. 12: Dep. Clinic 28:25-29:5; 39:9-13; 47:6-12; 48:14-49:2.

99.     Providence operates St. Patrick Hospital in Missoula, Montana, St. Joseph Medical Center, a critical access hospital, in Polson, Montana, 30-40

clinics, as well as an assisted living facility in Polson, Montana.  Decl. Counsel ¶ 13, Ex. 12: 30(b)(6) Dep. Providence – K. Bodlovic 13:15-25, Aug. 10, 2022 ("Dep. Providence – Bodlovic").  The critical access hospital and assisted living facility in Polson share staff.  Ex. 12: Dep. Providence – Bodlovic 15:15-21.

100.   St. Patrick Hospital has a specialized critical care unit for Rocky Mountain Laboratory.  Ex. 12: Dep. Providence – Bodlovic 20:12-20.

101.   The Montana Nurses Association is the professional association that speaks on behalf of the approximately 18,000 Registered Nurses and approximately 1,000 Advanced Practice Registered Nurse ("APRN") in Montana.  Decl. Byrd, ¶ 2.

102.   Nurses in nursing homes, assisted living facilities, and long term care facilities face the same workplace risks from vaccine-preventable disease as those in other healthcare facilities.  Decl. Byrd, ¶¶ 14, 17.

103.   Nurses in hospitals, the offices of private physicians, APRN clinics, nursing homes, long-term care facilities, assisted living facilities, and other healthcare settings treat patients in varying degrees of health.  Decl. Byrd, ¶ 13.

DATED this 26th day of August, 2022.

/s/  Justin K. Cole
Attorneys for Plaintiffs

/s/  Raph Graybill
Attorneys for Plaintiff-Intervenor