AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
 *Solicitor General*
CHRISTIAN B. CORRIGAN
 *Deputy Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., <br><br> *Plaintiffs*, <br><br> and <br><br> MONTANA NURSES ASSOCIATION, <br><br> *Plaintiff-Intervenors*, <br><br> v. <br><br> AUSTIN KNUDSEN, ET AL., <br><br> *Defendants*. | No. CV-21-108-M-DWM <br><br> **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................ii

INTRODUCTION ........................................................................... 2

STANDARD OF REVIEW ................................................................ 3

ARGUMENT ................................................................................. 4

I. HB702 isn't preempted by federal law.................................... 4

    A. Conflict Preemption..................................................... 4

    B. Americans with Disabilities Act. ................................. 6

        1. Employment related claims............................... 10

        2. Public Accommodation discrimination.............. 14

        (Claim II) ......................................................... 14

    C. Occupational Health and Safety Act ......................... 16

        1. 29 U.S.C. § 654(a)(1) ...................................... 16

        2. 29 U.S.C. § 654(a)(2) ...................................... 20

    D. Centers for Medicare and Medicaid Services Claims .............. 22

II. Right to seek health................................................................ 25

III. HB702 doesn't violate the Equal Protection Clause......................... 29

    A. The Individual Plaintiffs Lack Standing. ................................. 30

    B. The institutional Plaintiffs are not similarly situated. ............ 30

    C. HB702 easily satisfies rational basis review............................ 32

CONCLUSION ............................................................................. 37

CERTIFICATE OF SERVICE .......................................................... 38

TABLE OF AUTHORITIES
## Cases

*Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*,
    496 F.3d 695, (D.C. Cir. 2007) ........................................................... 29

*Chamber of Commerce of the United States v. Whiting*,
    563 U.S. 582, (2011) ........................................................... 12

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008) ........................................................... 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................... 10

*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ........................................................... 32

*Atay v. Cnty. of Maui*,
    842 F.3d 688 (9th Cir. 2016) ........................................................... 12, 14

*Barrientos v. 1801-1825 Morton LLC*,
    583 F.3d 1197 (9th Cir. 2009) ........................................................... 26

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005) ........................................................... 11

*Boardman v. Inslee*,
    978 F.3d 1092 (9th Cir. 2020) ........................................................... 32, 34

*Borges v. Missoula Cnty. Sheriff's Office*,
    415 P.3d 976 (Mont. 2018) ........................................................... 14, 15

*Buckingham v. United States*,
    998 F.2d 735 (9th Cir. 1993) ........................................................... 17

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) ........................................................... 31

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................... 10

*Chevron U.S.A., Inc. v. Hammond,*
726 F.2d 483 (9th Cir. 1984) ............................................................. 11

*Chicanos Por La Causa, Inc. v. Napolitano,*
544 F.3d 976 (9th Cir. 2008) ...................................................... 11, 26

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432 (1985) .......................................................................... 33

*City of L.A. v. AECOM Servs.,*
854 F.3d 1149 (9th Cir. 2017) .......................................................... 12

*City of L.A. v. Barr,*
929 F.3d 1163 (9th Cir. 2019) .......................................................... 26

*Coal. of Clergy v. Bush,*
310 F.3d 1153 (9th Cir. 2002) .......................................................... 32

*Donovan v. Royal Logging Co.,*
645 F.2d 822 (9th Cir. 1981) ............................................................ 21

*E.T. v. Paxton,*
19 F.4th 760 (5th Cir. 2021) ............................................................. 14

*E.T. v. Paxton,*
2022 U.S. App. LEXIS 20437 (5th Cir. 2022) ....................... 13, 16, 17

*English v. Gen. Elec. Co.,*
496 U.S. 72 (1990) ............................................................................ 11

*Exxon Corp. v. Governor of Md.,*
437 U.S. 117 (1978) .......................................................................... 11

*Flower World, Inc. v. Sacks,*
2022 U.S. App. LEXIS 22254 (9th Cir. Aug. 11, 2022) .............. 21, 24

*Fortyune v. Am. Multi-Cinema, Inc.,*
364 F.3d 1075 (9th Cir. 2004) ............................................... 12, 15, 21

*Gallinger v. Becerra,*
898 F.3d 1012 (9th Cir. 2018) .......................................................... 33

*Geier v. Am. Honda Motor Co.,*
Inc., 529 U.S. 861 (2000) .................................................................. 12

*Heller v. Doe,*
   509 U.S. 312 (1993) ............................................................ 34

*Hurley v. Irish-American Gay,*
   515 U.S. 557 (1995) ............................................................ 37

*Incalza v. Fendi North America, Inc.,*
   479 F.3d 1005 (9th Cir. 2007) ..................................... 11, 26

*Jackson v. Costco Wholesale Corp.,*
   429 P.3d 641 (Mont. 2018) ................................................ 14

*Kowalski v. Tesmer,*
   543 U.S. 125 (2004) ............................................................ 32

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................ 30

*Mannick v. Kaiser Found. Health Plan, Inc.,*
   2006 U.S. Dist. LEXIS 57173 (N.D. Cal. 2006) ................. 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ............................................................ 10

*McGary v. City of Portland,*
   386 F.3d 1259 (9th Cir. 2004) ........................................... 19

*Mont. Cannabis Indus. Ass'n v. State,*
   286 P.3d 1161 (Mont. 2012) ........................................ 28, 29

*Nadarajah v. Gonzales,*
   443 F.3d 1069 (9th Cir. 2006) ........................................... 15

*Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology,*
   228 F.3d 1043 (9th Cir. 2000) ........................................... 37

*Nat'l Fed'n of Indep. Bus. v. DOL,*
   142 S. Ct. 661 (2022) ......................................................... 23

*Nat'l Realty & Constr. Co. v. OSHRC,*
   489 F.2d 1257 (D.C. Cir. 1973) ......................................... 22

*Nunes v. Wal-Mart Stores, Inc.*,
   164 F.3d 1243 (9th Cir. 1999) ........................................................ 18

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947) ..................................................................... 11

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984) ............................................................... 29, 31

*Salinas v. Edwards Theatres*,
   2016 U.S. Dist. LEXIS 204627 (C.D. Cal. 2016) ........................... 13

*Samper v. Providence St. Vincent Med. Ctr.*,
   675 F.3d 1233 (9th Cir. 2012) ....................................................... 16

*SEC v. Colello*,
   139 F.3d 674 (9th Cir. 1998) ......................................................... 18

*Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*,
   4 F.4th 747 (9th Cir. 2021) ............................................................ 36

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ..................................................................... 26

*State ex. rel. Bartmess v. Board of Trustees*,
   726 P.2d 801 (Mont. 1986) ........................................................... 37

*State v. Skurdal*,
   767 P.2d 304 (Mont. 1988) ........................................................... 30

*Titanium Metals Corp. v. Usery*,
   579 F.2d 536 (9th Cir. 1978) ......................................................... 22

*Tucson Woman's Clinic v. Eden*,
   379 F.3d 531 (9th Cir. 2004) ......................................................... 37

*Vance v. Bradley*,
   440 U.S. 93 (1979) ....................................................................... 36

*Wadsworth v. Montana*,
   911 P.2d 1165 (Mont. 1996) ......................................................... 37

*Wiser v. State*,
   129 P.3d 133 (Mont. 2006) ..................................................... 29, 30

*Wong v. Regents of the Univ. of Cal.*,
  192 F.3d 807 (9th Cir. 1999) ........................................................ 16, 20

*Wyeth v. Levine*,
  555 U.S. 555 (2009) .............................................................................. 12

*Zucht v. King*,
  260 U.S. 174 (1922) ............................................................................. 29

## Other Authorities

**United States Code**

  Tit. 29 § 654(a)(1) ................................................................................ 22

  Tit. 29 § 654(a)(2) ........................................................................... 22, 25

  Tit. 29 § 655(c)(1) ............................................................................... 24

  Tit. 42 §§ 1395(x)(e)(9), 1395i–4(e) ................................................... 26

**Montana Code Annotated**

  §49-2-312 ..................................................................... 18, 19, 33

  § 49-2-312 di ...................................................................................... 18

  § 20-5-403(2) ..................................................................................... 28

  § 49-2-312(2) ..................................................................................... 28

  § 49-2-312(3)(b) ................................................................................ 25

  § 49-2-313 .......................................................................................... 33

  § 50-1-105 .......................................................................................... 10

  § 50-1-105(1) ..................................................................................... 30

  § 50-5-101(26)(a) .............................................................................. 34

  § 50-5-101(26)(b) .............................................................................. 34

  § 50-5-225 .......................................................................................... 37

  §§ 49-2-312 and 313 ......................................................................... 10

  § 50-5-201 .......................................................................................... 34

**Montana Constitution**

  Art. II, § 3 .......................................................................................... 29

**Federal Rules of Civil Procedure**

Rule 56(a) ............................................................ 11

**Code of Federal Regulations**

Tit. 29 C.F.R. § 1910.502(c)(7) .................................... 25, 26

Tit. 42 C.F.R. § 482.41 ......................................... 26, 27, 28

Tit. 42 C.F.R. § 482.42 ......................................... 26, 27, 28

Tit. 86 Fed. Reg. 26306, 26306 (May 13, 2021) ..................... 36, 37

Tit. 86 Fed. Reg. 61555 (Nov. 5, 2021) ............................... 28

## INTRODUCTION

Montana's House Bill 702 ("HB702"), codified at MCA §§ 49-2-312 and 313, protects Montanans from discrimination based upon vaccination status and protects them from the involuntary disclosure of their private health care information.  HB702 created a new protected class in Montana.  The law works within Montana's existing anti-discrimination and public health law infrastructure.  *See* MCA § 50-1-105.

Plaintiffs' Second Amended Complaint, Doc. 37, and Plaintiff-Intervenor's First Amended Complaint, Doc. 38, (together, "Complaint") raise eight overlapping claims against Defendants.[1]  These claims allege that the Supremacy Clause of the U.S. Constitution preempts HB702 because it conflicts with several federal laws and regulations, and that HB702 violates the Equal Protection Clause of the Fourteenth Amendment and Article II, Section 3 of the Montana Constitution.

After extensive discovery, Plaintiffs' allegations have proven unsupported and baseless.  Although these unsubstantiated allegations survived the Rule 12 stage, Plaintiffs can't overcome *their* evidentiary

---

[1] Unless specifically differentiated, Defendants will refer to Plaintiffs and Plaintiff-Intervenors collectively as "Plaintiffs."

burden at summary judgment.  Plaintiffs' claims, therefore, can't survive.
Defendants move and are entitled to summary judgment on Claims I, II,
III, IV, V, VI, VII, VIII(a), and VIII(b).

### STANDARD OF REVIEW

Summary judgment is proper if no genuine issues of material fact
exists and the moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56(a).  A fact is material if it could "affect the outcome" of
a lawsuit, and an issue is "genuine" only if "a reasonable jury could return
a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986).  The moving party need not disprove its opponent's
claims, but must only show or "point[] out to the district court—that there
is an absence of evidence to support the nonmoving party's case." *Celotex
Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets
its initial burden, the burden shifts to the non-moving party to establish
specific facts showing a genuine issue for trial.  *See Matsushita Elec. In-
dus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Defendants are entitled to summary judgment when they estab-
lish an absence of a genuine issue of material fact by (1) presenting evi-
dence that negates an essential element of the non-moving party's case;

or (2) demonstrating that the nonmoving party failed to establish an essential element of that party's case. *Celotex Corp.*, 477 U.S. at 322–23.

ARGUMENT

## I. HB 702 isn't preempted by federal law

### A. Conflict Preemption

Courts strongly disfavor the preemption of state law. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Conflict preemption requires that: (1) state law conflicts with federal law to make compliance with both an impossibility, or (2) that the state law poses an obstacle to the full purposes and objectives of federal law. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). "[A] high threshold must be met if a state law is to be pre-empted for conflicting with the purposes of a federal Act." *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607, 131 S. Ct. 1968, 1985 (2011).

"[T]he conflict must be an actual conflict, not merely a hypothetical or potential conflict." *Chicanos Por La Causa, Inc. v. Napolitano*, 544 F.3d 976, 983 (9th Cir. 2008). "Tension between federal and state law is not enough to establish conflict preemption." *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007). "[T]he 'teaching of this Court's decisions … enjoin[s] seeking out conflicts between state and federal

4

regulation where none clearly exists.'" *Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483, 499 (9th Cir. 1984) (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 130 (1978)).  And, when the text of a statute "is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

Further, "where a statute regulates a field traditionally occupied by states, such as health, safety, and land use, a 'presumption against preemption' adheres." *Atay v. Cnty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009)).  "States have historically regulated in the area of civil rights" to prohibit discrimination.  *City of L.A. v. AECOM Servs.*, 854 F.3d 1149, 1159 (9th Cir. 2017).  Courts "assume that a federal law does not preempt the states' police power absent a clear and manifest purpose of Congress." *Atay*, 842 F.3d at 699*; Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000) ("[A] court should not find pre-emption too readily in the absence of clear evidence of a conflict.").  HB702 is an exercise of the State's police power to which all the forceful presumptions against preemption apply.

5

### B. Americans with Disabilities Act.

Defendants are entitled to summary judgment on Claims I and II because the general right to a reasonable accommodation under the Americans with Disabilities Act cannot preempt state laws in a factual vacuum. Plaintiffs' theory appears to be that HB702 frustrates their obligation to provide immunocompromised visitors and employees reasonable accommodations under the Americans with Disabilities Act. That theory, however, is divorced from the facts—facts which must be present—that form the basis of judicial review under the Americans with Disabilities Act. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082–83 (9th Cir. 2004) (determining whether an accommodation is reasonable necessarily requires a "fact-specific, case-by-case inquiry"). Even after probing discovery, Plaintiffs offer only purely hypothetical conflicts.

The Americans with Disabilities Act cannot be violated where an individual hasn't requested a modification or accommodation. *See id.* at 1082 (discrimination requires the defendant "failing to make a *requested* reasonable modification") (emphasis added); *Mannick v. Kaiser Found. Health Plan, Inc.*, 2006 U.S. Dist. LEXIS 57173, at *12 (N.D. Cal. 2006) ("the plaintiff bears the burden of proving, first, that a modification was

requested, and second, that the requested modification was reasonable");

*see also Salinas v. Edwards Theatres*, 2016 U.S. Dist. LEXIS 204627, at

*24–26 (C.D. Cal. 2016) (granting Defendant's motion for summary judg-

ment based on Plaintiff's failure to prove request was made).[2]

In a preemption challenge, Plaintiffs must still establish case-spe-

cific facts.   *See E.T. v. Paxton*, No. 21-51083, 2022 U.S. App. LEXIS

20437, at *13–16 (5th Cir. 2022).[3]   *E.T.* involved a claim that the Ameri-

cans with Disabilities Act preempted a Texas executive order prohibiting

school districts from imposing mask mandates.  *Id.* at *4.  The Fifth Cir-

cuit dismissed the case because the plaintiffs failed to demonstrate how

adopted policies failed to mitigate the alleged injury.  *Id.* at *14 ("They

have simply said that they prefer one accommodation—masks—to all

others.").   Importantly, "the record contain[ed] no evidence that any of

these plaintiffs ever requested an accommodation from anyone."  *Id.*

---

[2] Other circuits consider it a standing deficiency to fail to establish a
prima facie case.  *See E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021).

[3] Plaintiffs cited to the district court decision in *E.T.* at the motion to
dismiss stage.  Doc. 23 at 23–24.  This Court should note how the Fifth
Circuit dealt with the factual issues in that case on appeal.

These factual deficiencies led the Fifth Circuit to dismiss for lack of standing. *Id.* at *15–16. The same factual deficits plague Plaintiffs here.

Violations of HB702 can likewise only arise in the context of fact-specific, case-by-case analyses. *See* SUF, ¶¶ 95–97; *see also Borges v. Missoula Cnty. Sheriff's Office*, 415 P.3d 976, 984 (Mont. 2018) ("We look to guidance from … the [Americans with Disabilities Act] when construing provisions of the [Montana Human Rights Act]" and the "obligation to … identify potential reasonable accommodations" arises only after "an employee notifies the employer of [her] disability and desire for an accommodation"); *Jackson v. Costco Wholesale Corp.*, 429 P.3d 641, 646 (Mont. 2018) ("Generally it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed."); *see also* SUF, ¶¶ 42, 60, 78 (Plaintiffs' witnesses agree that reasonable accommodation determinations require individualized, case-by-case analyses).

To the maximum extent possible, this Court must harmonize the Montana Human Rights Act with the Americans with Disabilities Act so it doesn't unduly diminish the State's authority to combat discrimination. *See Atay*, 842 F.3d at 699*; cf. Nadarajah v. Gonzales*, 443 F.3d 1069, 1076

8

(9th Cir. 2006) (canon of constitutional avoidance).   Here though, the Court's obligation to harmonize is nil—the laws exist in perfect harmony.

Plaintiffs' theory relies on a supposition that these two fact-specific, case-by-case laws conflict in cases involving unvaccinated or non-immune staff or visitors at various healthcare settings.   *See* Doc. 37, ¶¶ 33–35, 41–43.   The facts disagree.   Plaintiffs currently take steps to ameliorate risk to immunocompromised patients and staff.   SUF, ¶ 82 (detailing current infection control measures at Providence).   Plaintiffs currently employ unvaccinated, or non-immune, staff at their healthcare settings. SUF, ¶¶ 50, 63, 81.   Despite this fact, Plaintiffs continue to treat immunocompromised patients without running afoul of any state or federal law or regulation.   SUF, ¶¶ 44–46, 62, 80.   Most critically, *no one—including the individual Plaintiffs—has requested a reasonable accommodation based on the vaccination or immunity status of healthcare workers.*   SUF, ¶¶ 18–19, 21–24, 40, 43, 58–59, 75–77.   These facts prevent the Court from engaging in the required case-by-case analysis under both the Americans with Disabilities Act and Montana Human Rights Act.   *See Fortyune*, 364 F.3d at 1083; *Borges*, 415 P.3d at 984.   Claims I and II, therefore, necessarily fail.

Claims I and II depend entirely on specific facts that don't exist. Plaintiffs, instead, persist in relying on an ill-defined universe of purely speculative situations to sustain their preemption challenge to HB702. At summary judgment, though, speculation isn't good enough.

This Court should dismiss Claims I and II based on Plaintiffs' failure to establish sufficient supportive facts.  *See E.T.*, 2022 U.S. App. LEXIS 20437, at *13–16.

### 1. Employment related claims

For an employment-related Americans with Disabilities Act claim, a plaintiff must show "(1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability."  *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

Here, Plaintiffs speculate about what HB702 *might* require *if* a disabled individual *were* to seek an accommodation under the American with Disabilities Act.  Doc. 37, ¶¶ 33–35.  But as Plaintiffs admit, such hypothetical facts don't exist in this case.  SUF, ¶¶ 18–19, 21–24, 40, 43, 58–59, 75–77; *cf. Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818

(9th Cir. 1999) ("'mere[] speculation that a suggested accommodation is not feasible' falls short of the 'reasonable accommodation' requirement; the Acts create 'a duty' to 'gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary to enable [the individual to meet the standards in question].'" (quoting *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993))).

Plaintiffs haven't shown that *any* disabled individual sought, but was denied, employment based on the vaccination or immunity status of others. SUF, ¶¶ 18–19, 21–24, 40, 43, 58–59, 75–77. Plaintiffs admit that none of the individual Plaintiffs requested accommodations related to others' vaccination status under the Americans with Disability Act. *Id*. The institutional Plaintiffs couldn't recall a single instance of an employment-based accommodation request based on third parties' vaccination or immunity status. *Id*. In short, Plaintiffs haven't satisfied their burden to state in clear, specific terms why one particular accommodation—mandating staff vaccinations or immunity status disclosure—is the *only* reasonable accommodation available to any specific disabled individuals. *See E.T.*, 2022 U.S. App. LEXIS 20437, at *13 (rejecting an

Americans with Disabilities Act preemption challenge where the plaintiffs preferred one accommodation—that they never requested—to all others).

After extensive discovery, Plaintiffs have failed utterly to substantiate their Complaint's allegations. *See* Doc. 37, ¶ 35 ("MCA 49-2-312 discourages immune-compromised workers, such as the Patients, from accepting potential employment opportunities otherwise available to them at [offices of private physicians] or at Hospitals."); Doc. 37, ¶ 33 ("MCA 49-2-312 prevents [offices of private physicians] … from taking the steps necessary to accommodate immune system compromised applicants or employees."); Doc. 37, ¶ 34 ("MCA 49-2-312 also prevents Hospitals … from taking the steps necessary to accommodate immune system compromised applicants or employees.").

Even if Plaintiffs could overcome this initial evidentiary hurdle, they'd fail the next threshold, which requires a showing that HB702 prevents implementing case-specific reasonable accommodations. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). Plaintiffs' own admissions contradict their theory that the presence of unvaccinated or non-immune staff require the provision of reasonable

accommodations to visitors or other staff.  First, Plaintiffs fail to cite any instance where this has actually happened.  SUF, ¶¶ 18–19, 21–24, 40, 43, 58–59, 75–77.  Second, Plaintiffs, including Providence, admit they maintained their pre-HB702 vaccination policies after HB702's enactment.[4]  The institutional Plaintiffs admitted they freely granted medical and religious exemptions to vaccination mandates, or simply allowed workers to sign declination forms.  SUF, ¶¶ 48–49, 54, 79, 81.  Plaintiffs' policies contemplated and allowed unvaccinated or non-immune workers to interact with other workers, patients, or visitors.  SUF, ¶¶ 37, 61, 82.  While there may have been sound reasons for not dismissing Claims I and II at the pleadings stage, *see McGary v. City of Portland*, 386 F.3d

---

[4] Providence's 30(b)(6) deponent admitted that Exhibit 25 contained Providence's pre-HB702 vaccination policy.  Asked whether that policy remained in effect after HB702's enactment, the deponent incredibly asserted her Fifth Amendment right against self-incrimination.  SUF, ¶ 73.  This Court should draw adverse inferences against Plaintiffs based on the use of the privilege.  *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998).  If the Court doesn't outright dismiss claims affected by this invocation of the Fifth Amendment right, then it should bar Plaintiffs from introducing any evidence contrary to that inference.  *Id.* at 677–78.  Plaintiffs Five Valleys and Western Montana Clinic also invoked the Fifth Amendment by request of their counsel—and in any event refused to answer.  SUF, ¶¶ 47, 65.

13

1259, 1264 (9th Cir. 2004), Plaintiffs' utter lack of substantiation dooms these claims to failure at summary judgment.

### 2. *Public Accommodation discrimination (Claim II)*

Plaintiffs have similarly failed to muster any of the facts necessary to establish that the Americans with Disabilities Act preempts HB702 because of their role as public accommodations.

The institutional Plaintiffs didn't identify any specific policies that conceivably discriminate against immunocompromised individuals. SUF, ¶¶ 34–39, 48, 52, 54–55, 57, 67, 72–73, 79, 82. And those policies remained in effect after HB702's enactment. *Id.* Institutional Plaintiffs maintained their staff vaccination and immunization requirements. *Id.*, *see also* SUF, ¶¶ 47, 65, 73.[5] Institutional Plaintiffs maintained their prior infection control policies. *Id.* Institutional Plaintiffs maintained their prior infection exposure policies. *Id.* Institutional Plaintiffs largely maintained their prior patient screening questionnaires and visitation policies. *Id.* To the extent policies such as temperature checks and

---

[5] This excludes COVID-19 vaccination requirements. In the context of the federal COVID-19 rule, however, healthcare workers may receive medical or religious exemptions and the testimony of Providence makes clear that such exemptions were freely given. SUF, ¶ 81.

mandatory masking changed, those changes resulted from declining COVID-19 case numbers—not HB702. SUF, ¶ 68. Fatally, the institutional Plaintiffs fail to present a single example of any individual requesting a reasonable accommodation based on the vaccination or immunity status of healthcare workers, SUF, ¶¶ 40, 43, 58–59, 75–77 , much less linking any denial of access to their facilities based on HB702. *See Wong*, 192 F.3d at 818. The facts that might—*might*—predicate a conflict simply don't exist.

The individual Plaintiffs likewise fail to state a specific policy that discriminates against them. SUF, ¶¶ 18–19, 21–24. Instead, they uniformly aver they received services at healthcare settings regardless of and without checking the vaccination status of healthcare workers. SUF, ¶¶ 25–27. Of note, Plaintiff Wallace Page acknowledges he received care "over 100 times" and often had to wait in the emergency care waiting room with "many of the sickest with COVID." SUF, ¶ 31. Yet, he acknowledges "he did not catch COVID from someone there while he was receiving those treatments." *Id.* Plaintiff Cheyenne Smith, a dental hygienist, likewise fails to identify any policy that discriminates against her ability to work in the healthcare field or seek healthcare treatment. SUF,

15

¶ 32.  The individual Plaintiffs fail to provide any example of an instance when they inquired into a healthcare worker's vaccination status; or sought a reasonable accommodation based on such status; or any example of when the vaccination status of healthcare workers prevented them from accessing healthcare services.  SUF, ¶¶ 18–24.

Preemption challenges don't allow the Court to engage in hypotheticals.  Concrete facts must exist for the Americans with Disabilities Act to preempt state law.  Plaintiffs offer no facts detailing specific cases where there obligation to provide or right to obtain a reasonable accommodation required mandatory staff vaccinations or the disclosure of staff immunity statuses.  By failing to meet their prima facie burden, Plaintiffs cannot, as a matter of law, demonstrate that it preempts the Montana Human Rights Act.  *See Fortyune*, 364 F.3d at 1082–83.

## C. Occupational Safety and Health Act

### *1.* 29 U.S.C. § 654(a)(1)

The Occupational Safety and Health Act "contemplates that the Secretary will promulgate specific safety standards to insure safe and healthful working conditions*." Donovan v. Royal Logging Co.*, 645 F.2d 822, 829 (9th Cir. 1981); *see* 29 U.S.C. § 654(a)(2).  Plaintiffs argue but

16

cannot show that HB702 conflicts with the Occupational Safety and Health Act's General Duty Clause in 29 U.S.C. § 654(a)(1). "The general duty clause applies when there are no specific standards." *Flower World, Inc. v. Sacks*, 2022 U.S. App. LEXIS 22254, at *4 (9th Cir. Aug. 11, 2022). "[U]nder the [general duty] clause, the Secretary must prove (1) that the employer failed to render its workplace 'free' of a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious physical harm[.]'" *Titanium Metals Corp. v. Usery*, 579 F.2d 536, 540 (9th Cir. 1978) (quoting *Nat'l Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257, 1265 (D.C. Cir. 1973)).

Plaintiffs claim that the threat from "COVID-19 virus, Hepatitis B, Pertussis, and other communicable diseases" require them to violate HB702's prohibitions on vaccine- and immunity passport-based discrimination. Doc. 37 at ¶ 47. The institutional Plaintiffs have never required vaccinations for Hepatitis B, Pertussis, or other communicable diseases; nor have they required disclosure of vaccination status as part of their Occupational Safety and Health Act compliance plan. Five Valleys' compliance plan mentions only the Hepatitis B vaccination and says "[a]lthough [the Occupational Safety and Health Act] does not require it,

you may wish to request new employees who have already been vaccinated to provide proof of their vaccination." SUF, ¶ 48. The manual further says that "the [the Occupational Safety and Health Act] Standard requires that an employee who declines to accept hepatitis B vaccination offered by the employer sign the Hepatitis B Vaccine Declination." *Id*. That declination doesn't ask the employee to disclose their vaccination status. *Id*. It merely requires employees to acknowledge both that they are declining the offered Hepatitis B vaccination and the associated risks from the Hepatitis B. *Id*. Five Valleys, moreover, admits that it has not required proof of vaccination status or disclosure of vaccination status for any vaccine-preventable disease as a term or condition of employment.

Similarly, Western Montana Clinic's Occupational Safety and Health Act manual doesn't mention vaccines other than Hepatitis B. SUF, ¶ 57. For Hepatitis B, Western Montana Clinic says it provides no-cost Hepatitis B vaccines after an exposure incident. *Id*. Providence's Respiratory Protection Program Policy mentions the Occupational Safety and Health Act's Respiratory Standard but doesn't mention vaccination status. SUF, ¶ 82.

All institutional Plaintiffs admitted they have never been cited or faced an enforcement action under the Occupational Safety and Health Act due to the vaccination status of its employees or its vaccination policies. SUF, ¶¶ 44, 46, 62, 80.  Plaintiff-Intervenor has collectively bargained at times to not be subject to mandatory vaccines or immunizations.  SUF, ¶ 87; *Chicanos Por La Causa, Inc.*, 544 F.3d at 983 (preemption requires actual, not hypothetical conflict).

Nor can the Occupational Safety and Health Act's General Duty Clause apply to special concerns related to COVID-19.  The U.S. Supreme Court stayed the Occupational Safety and Health Act's Emergency Temporary Standard, promulgated under 29 U.S.C. § 655©(1), that required all employers with at least 100 employees to ensure their workforces are fully vaccinated for COVID-19 or show a negative test at least once a week.  *Nat'l Fed'n of Indep. Bus. v. DOL* 142 S. Ct. 661, 663 (2022).  The Court rejected the argument that the generic risk of contracting COVID-19 qualifies as a "work-related danger[]." *Id.* at 665; *see also* SUF, ¶¶ 29, 31.

Recently, in a preemption case interpreting the scope of the Occupational Safety and Health Act's authority as applied to Washington's

COVID-19 public health proclamations, the Ninth Circuit rejected the Occupational Safety and Health Administration's "broad interpretation of its existing regulations as applying generally to COVID hazards in the workplace." *Flower World, Inc. v. Sacks*, 2022 U.S. App. LEXIS 22254, at *17 (9th Cir. Aug. 11, 2022). Thus, if the Occupational Safety and Health Act's specific regulations don't address hazards from COVID-19, then Plaintiffs cannot rely on its more generic authority to regulate in that same sphere.

### 2. 29 U.S.C. § 654(a)(2)

29 C.F.R. § 1910.502(c)(7) requires some healthcare employers to "develop and implement a COVID-19 plan," that includes "policies and procedures to [m]inimize the risk of transmission of COVID-19 for each employee." Plaintiffs allege they "cannot develop meaningful plans to minimize the risk of employees' COVID-19 transmission if they are barred from taking steps to mitigate the risks caused by unvaccinated employees." In other words, they want to know which of their employees

have obtained COVID-19 vaccinations, which they believe HB702 pro-
scribes.[6]

First, the text of the regulation says nothing about vaccinations.
Plaintiffs COVID-19 plans do not discuss vaccination status as part of
compliance with this regulation. SUF, ¶ 83.

Second, the COVID-19 vaccination status of employees is irrelevant
to mitigating the risks of transmission of COVID-19.  Vaccinated and un-
vaccinated employees transmit COVID-19 at roughly the same rate.
SUF, ¶ 16.  No evidence proves otherwise.  Any risks, therefore, posed by
unvaccinated employees mirror those posed by vaccinated employees.
Plaintiffs' inability to require vaccinations, change terms and conditions
of employment, or ascertain their employees' vaccination status is, there-
fore, irrelevant to their compliance with 29 C.F.R. § 1910.502(c)(7).

The Court should grant summary judgment for Defendants on
Claims III and IV.

---

[6] Under MCA § 49-2-312(3)(b), this is only potentially true for the non-
hospital institutional Plaintiffs.

## D. Centers for Medicare and Medicaid Services Claims

In Claim VIII, Plaintiffs make several claims under The Social Security Act at 42 U.S.C. §§ 1395(x)(e)(9), 1395i–4(e), and 1395k(a)(2)(F)(i), which authorizes the Secretary of Health and Human Services to establish "conditions of participation" in the Medicare and Medicaid programs. Doc. 37 at ¶¶ 84–92. Plaintiffs first allege that HB702 conflicts with 42 C.F.R. § 482.41, which states that "[t]he hospital must be … maintained to ensure the safety of the patient." They allege the same regarding 42 C.F.R. § 482.42, which states that "[t]he hospital must have active hospital-wide programs for the surveillance, prevention, and control of [healthcare-associated infections] and other infectious diseases …. The programs must demonstrate adherence to nationally recognized infection and control guidelines … as well as to best practices for … infection prevention." *Id.* at ¶ 86(a), ¶ 86(b). Neither allegation holds up.

Plaintiffs cannot "demonstrate a conflict between a particular local provision and the federal scheme, that is strong enough to overcome the presumption that state and local regulation … can constitutionally coexist with federal regulation." *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1209 (9th Cir. 2009) (internal quotation omitted). Plaintiffs'

22

preemption burden grows larger under Spending Clause statutes because of the voluntary association with federal Medicare and Medicaid programs. *Cf. City of L.A. v. Barr*, 929 F.3d 1163, 1174 (9th Cir. 2019) ("[I]f Congress decides to impose conditions on the allocation of funds to the states, it 'must do so unambiguously … enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation.'" (quoting *South Dakota v. Dole*, 483 U.S. 203, 207 (1987)).

First, there's no actual conflict because Plaintiffs haven't demonstrated that it's impossible to comply with both. *Chicanos Por La Causa, Inc.*, 544 F.3d at 983; *Incalza,* 479 F.3d at 1010. There's also not "unambiguous intent" to preempt state antidiscrimination laws like HB702. *Barrientos*, 583 F.3d at 1212. The plain terms of 42 C.F.R. § 482.41 and 42 C.F.R. § 482.42 say nothing about vaccination status or antidiscrimination laws. These regulations don't infer anything about vaccination status, either; and if they did, regulatory inference would be a shaky basis upon which to preempt state law.

HB702, moreover, doesn't affect patient safety or the spread of infectious diseases because it doesn't significantly alter vaccination practices in Montana. Prior to HB702, multiple Plaintiffs didn't require

disclosure of vaccination status—they didn't need to.  SUF, ¶¶ 35, 49, 57,

94.  Centers for Medicare and Medicaid Services itself stated in Novem-

ber 2021 that "we have not, until now, required any health care staff vac-

cinations" as a condition of participation in Medicare or Medicaid.  *In-

terim Final Rule, Medicare and Medicaid Programs; Omnibus COVID-19

Health Care Staff Vaccination*, 86 Fed. Reg. 61,555 (Nov. 5, 2021).  This

was because, in part, many health care workers "met State and local vac-

cination requirements in order to attend school to complete the necessary

education to qualify for health care positions."  *Id.* at 61568.  HB702

doesn't alter that.  *See* MCA § 49-2-312(2).  Schools—including medical

and nursing programs—may still require vaccinations.  *See* MCA § 20-5-

403(2).

Prior to HB702 and COVID-19, Plaintiffs' staff vaccination policies

never triggered a complaint, citation, or violation of Centers for Medicare

and Medicaid Services conditions of participation, including those set

forth in 42 C.F.R. § 482.41 and 42 C.F.R. § 482.42.  SUF, ¶¶ 44, 46, 62,

80, 91–93.  Montana Department of Public Health and Human Services,

which conducts surveys on behalf of the Centers for Medicare and Medi-

caid Services confirms this.  SUF, ¶ 94.  And, post-HB702, *all*

24

employers—including the institutional Plaintiffs—may inquire into someone's vaccination or immunization status. SUF, ¶ 17. HB702 simply prohibits those employers from discriminating based on employees' answer or refusal to answer. SUF, ¶ 17.

The Court should grant summary judgment for Defendants on Claims VIII(a) and VIII(b).

## II. Right to seek health

Montanans enjoy a right to seek "their safety, health and happiness in *all lawful ways*." MONT. CONST. ART. II, § 3 (emphasis added); *accord Mont. Cannabis Indus. Ass'n v. State*, 286 P.3d 1161, 1166 (Mont. 2012). "[T]he Constitution is clear that the right to seek health is circumscribed by the State's police power to protect the public's health and welfare." *Mont. Cannabis Indus. Ass'n*, 286 P.3d at 1166. Plaintiffs ignore the plain limitation of the right to seek health. They also fail to establish any facts suggesting that HB702 limits their ability to obtain healthcare. Finally, even if the right to seek health is implicated under these facts, Plaintiffs fail to establish any legal theory that the individual right to seek health includes the right to force third parties to submit to unwanted medical treatments.

The right to seek health, itself, is far from absolute.  A decade ago, the Montana Supreme Court explained that the right is not an affirmative right to access a particular manner of treatment.  *Id.* (citing *Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*, 495 F.3d 695, 712 n. 18 (D.C. Cir. 2007)).  The right to seek health does include a right to obtain medical treatment.  *Id.*[7]  But there's no "right to obtain medical care free of regulation."  *Wiser v. State*, 129 P.3d 133, 138 (Mont. 2006).  The constitutional language, likewise, bounds the right to reject medical treatment by the State's police power.  *See id.; see also Zucht v. King*, 260 U.S. 174, 175 (1922).

The State possesses a general police power to protect public welfare, safety, and health.  *See State v. Skurdal*, 767 P.2d 304, 306 (Mont. 1988).  Nondiscrimination laws like HB702 advance the public welfare and morals.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984).  Montana's public health laws, moreover, operate in concert with nondiscrimination interests.  *See* MCA § 50-1-105(1) ("It is the policy of the state of Montana that the health of the public be protected and promoted to the extent

---

[7] The right also includes a right to *reject* medical treatment.  *Mont. Cannabis Indus. Ass'n*, 286 P.3d at 1166 (citing *Wiser v. State*, 129 P.3d 133, 137) (Mont. 2006)); *see also* SUF, ¶ 76.

practicable through the public health system while respecting individual rights to dignity, privacy, and nondiscrimination."). HB702—a valid antidiscrimination law—doesn't implicate the right to seek health.

After thorough discovery, Plaintiffs have presented no facts showing that HB702 limits anyone's ability to seek health. The individual Plaintiffs admit they have all successfully sought treatment in various healthcare settings since HB702's enactment. SUF, ¶¶ 25–26. Further, the individual Plaintiffs admit they never requested any vaccine-related accommodations to access these healthcare services. SUF, ¶¶ 21–24. The other Plaintiffs each admit that since HB702's enactment, no individual or entity has lodged any complaint against them, alleging that their infection control policies were deficient. SUF, ¶¶ 40, 43–44, 46, 58–59, 62, 75, 77, 80.

Plaintiffs failed to establish that HB702 quantifiably enhanced the risks faced by healthcare workers or patients. SUF, ¶¶31, 34–39, 52–55, 73.[8] Plaintiffs fail to establish any concrete link between denied or

---

[8] If the presence of unvaccinated medical workers implicates the right to seek health, that issue predates HB702. SUF, ¶¶ 34, 54, 73; *see also* Doc. 35 at 14. Any injury would then not be fairly traceable to HB702. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

reduced access to healthcare and HB702.  SUF, ¶ 25.  While the Court allowed this claim to move forward based on *alleged* facts, *see* Doc. 35 at 14, further examination has proven those allegations baseless.

Even if Plaintiffs could establish that the right is implicated, their claim would depend upon a flagrant violation of the concomitant individual right to reject medical treatment.  Plaintiffs recognize this right to reject treatment through their own vaccination policies.  SUF, ¶¶ 34, 54, 73, 76.  For example, Providence caregivers can simply decline the strongly recommended pertussis vaccine.  SUF, ¶ 73.  If a Providence caregiver declines the annual flu shot, they simply wear masks around patients, socially distance, and otherwise take additional precautions related to patient safety.  SUF, ¶ 82.  As Providence put it, this avoids "impinging on somebody else's right."  SUF, ¶ 76.  Plaintiffs' theory of the right to seek health must fail, because it requires the violation of others' right to seek health.

Plaintiffs' desire to dictate the personal health decisions of others must give way to the State's antidiscrimination interests.  *See Roberts*, 468 U.S. at 624.  "[A]cts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique

evils that government has a compelling interest to prevent." *Id.* HB702 carefully checks the impulse to discriminate based on vaccination or immunity status. *Id.* at 629; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014) (stating employment discrimination laws are "precisely tailored" to combat employment discrimination). HB702 has no effect on Plaintiffs' ability to seek healthcare services. Plaintiffs have not been denied access to any healthcare service. In short, HB702 doesn't implicate the right to seek health.

## III. HB702 doesn't violate the Equal Protection Clause

The State possesses broad authority to regulate different healthcare providers differently and to protect the rights of its citizens. Far from "unreasonable and baseless," Doc. 37 at ¶71, the Montana Legislature had ample reason to exempt—under prescribed circumstances— nursing homes, assisted living facilities, and long-term care facilities from HB702.[9]

---

[9] Defendants move for summary judgment on both the federal and Montana equal protection claims. While each claim follows a similar analysis, Plaintiffs failed to allege any violation of any fundamental federal right so that claim must be analyzed under rational basis.

## A. The Individual Plaintiffs Lack Standing.

MCA 49-2-312 regulates healthcare providers, not individual patients. The individual Plaintiffs must, therefore, demonstrate the three requirements for third-party standing: (1) injury-in-fact; (2) close relationship to the third party; and (3) hindrance to the third party. *Coal. of Clergy v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002). The fact that other Plaintiffs in this case are actively asserting the equal protection challenge against HB702 is dispositive that there is no hindrance. *See Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). The individual Plaintiffs can't assert the equal protection claims.

## B. The institutional Plaintiffs are not similarly situated.

In equal protection challenges, after identifying a classified group, courts "look for a control group composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy." *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (internal quotations omitted). Here, the classified group consists of those entities exempted from HB702's coverage in MCA § 49-2-313. Plaintiffs fail to establish that they're similarly situated to the § 49-2-313 groups. "The groups must be comprised of similarly situated

30

persons so that the factor motivating the alleged discrimination can be identified." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014).  The proposed comparator must align with the classified group "in respects that are relevant to the [government's] challenged policy." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018).

Plaintiffs appear to identify "health care facilities" generically as the relevant control group.  *See* Doc 37 at 73 ("There is no state interest or rational basis for treating [offices of private physicians] or Hospitals, such as [Five Valleys Urology], [Western Montana Clinic], and [Providence], differently than other types of Montana health care facilities."). That's too broad to serve as a proper comparator.  Providence is a licensed "healthcare facility" under MCA Title 50 (health and safety).  MCA § 50-5-101(26)(a); § 50-5-201.  By contrast, Five Valleys and Western Montana are not licensed "healthcare facilities" and are, instead, regulated separately under Title 37 (professions and occupations).  *See* MCA § 50-5-101(26)(b).  Plaintiffs haven't identified a proper control group.  *See* MCA § 50-5-101(7), (37), (56) (defining the exempted facilities separately from hospitals or other types of healthcare facilities); *see also* SUF, ¶¶ 33, 51.

## C. HB702 easily satisfies rational basis review

Plaintiffs can't establish that HB702 violates any fundamental right (HB702 doesn't implicate the only fundamental right they assert—the right to seek health).  *See infra* Part II.  For equal protection purposes, therefore, the Court must analyze HB702 under rational basis review.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

"[L]egislation is presumed to be valid" under rational basis.  *Id.*  In the realm of "social or economic legislation," the mandate of equal protection affords "the States wide latitude."  *Id.*  "Under rational-basis review … the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record."  *Boardman*, 978 F.3d at 1118 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

 "The Equal Protection Clause is satisfied so long as there is a plausible policy reason for [a] classification … and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational."  *Boardman*, 978 F.3d at 1118 (internal quotations omitted).  "[A] legislature that creates these categories need not actually

32

articulate at any time the purpose or rationale supporting its classification." *Heller*, 509 U.S. at 320 (internal quotations omitted); *see also id.* ("[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."). "Given the standard of review, it should come as no surprise that [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." *Boardman*, 978 F.3d at 1118 (internal quotation omitted).

Montana had logical and rational reasons for exempting licensed nursing homes, long-term care facilities, and assisted living facilities.

First, The Governor's April 28, 2021, Amendatory Veto for HB702 proposed the amendment that became the exemption to "ensure that provisions of HB702 do not put licensed nursing homes, long-term care facilities, or assisted living facilities, in violation of regulations or guidance issued by the U.S. Centers for Medicare and Medicaid Services." SUF, ¶ 11.

Long before HB702's enactment, it was well-documented that residents of the exempted facilities were some of the most acute victims of COVID-19. *See, e.g.*, Shaylee Ragar, *Montana COVID-19 Nursing Home*

33

*Death Rate Ranks Second In The Nation*, MONTANA PUBLIC RADIO (Dec. 10, 2020), https://www.mtpr.org/montana-news/2020-12-10/montana-covid-19-nursing-home-death-rate-ranks-second-in-the-nation.   In fact, just days after HB702's enactment, the Centers for Medicare and Medicaid Services observed: "Individuals residing in congregate settings, regardless of health or medical conditions, are at greater risk of acquiring infections, and many residents and clients of long-term care (LTC) facilities and Intermediate Care Facilities for Individuals with Intellectual Disabilities (ICFs–IID) face higher risk of severe illness due to age, disability, or underlying health conditions." *See Medicare and Medicaid Programs; COVID–19 Vaccine Requirements for Long-Term Care (LTC) Facilities and Intermediate Care Facilities for Individuals With Intellectual Disabilities (ICFs–IID) Residents, Clients, and Staff*, 86 Fed. Reg. 26306, 26306 (May 13, 2021).  This regulation, indeed, imposed vaccination education and other requirements on the very types of facilities HB702 exempts from its coverage.  *Id.* There was ample reason for the State to suspect that these facilities, specifically, would be subject to eventual federal requirements related to COVID-19 vaccinations.  As noted, that bore out.  *Id.*

Second, the State routinely regulates healthcare providers differently based on the services they provide.  The State regulates the exempted facilities differently than Western Montana Clinic, Five Valleys Urology, and Providence—just as it regulates Providence differently than Western Montana and Five Valleys.  Plaintiffs and the exempted facilities are regulated separately because the core services they provide and populations they serve are generally different.  The combination of congregate settings and elderly populations in the exempted facilities warrant special protection. SUF, ¶¶ 13–15; *see also* MCA § 50-5-225 (assisted living facilities may not hire certain persons, must provide personal services, and assistance with daily living, in recognition the population they care for triggers unique concerns).

Additionally, even if Plaintiffs are correct that the types of patients and services offered at exempted and non-exempted facilities overlap to varying extents, the State need not draw a perfect line in determining which entities are subject to HB702.  *See Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 759–60 (9th Cir. 2021) (citing *Vance v. Bradley*, 440 U.S. 93, 108-09 (1979) (under rational-basis review, classifications that are under- or over-inclusive do not create constitutional

violations)).  "[A] state legislature addressing health and safety reform … may select one phase of one field and apply a remedy there, neglecting the others." *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1052 (9th Cir. 2000); *see also Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 547 (9th Cir. 2004) (upholding under rational basis a statutory and regulatory scheme requiring the licensing and regulation of medical facilities based on the number of abortions performed).

The State, meanwhile, possesses unquestioned compelling interests in preventing invidious discrimination.  *See State ex. rel. Bartmess v. Bd. of Trustees*, 223 Mont. 269, 279, 726 P.2d 801, 807 (1986) (Morrison, J. concurring); *Hurley v. Irish-Am. Gay*, 515 U.S. 557, 572 (1995).  This includes the right to pursue employment.  *See Wadsworth v. Montana*, 275 Mont. 287, 911 P.2d 1165, 1176 (1996).  The Montana Legislature also invoked its interest in protecting the individual right to privacy.

HB702 doesn't run afoul of the Equal Protection Clause.

CONCLUSION

Plaintiffs have not satisfied their evidentiary or legal burdens.  Defendants are entitled to summary judgment on Claims I-VII and VIII(a)-(b).

DATED this 26th day of August, 2022.

Austin Knudsen
Montana Attorney General

DAVID M.S. DEWHIRST
  Solicitor General

CHRISTIAN CORRIGAN
  *Deputy Solicitor General*

*/s/ Brent Mead*
BRENT MEAD
  *Assistant Attorney General*
P.O. Box 201401
Helena, MT 59620-1401
david.dewhirst@mt.gov
christian.corrigan@mt.gov.
brent.mead2@mt.gov

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: <u>August 26, 2022</u>            <u>/s/ *Brent Mead*  </u>
                                            BRENT MEAD

38