AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
  *Solicitor General*
CHRISTIAN B. CORRIGAN
  *Deputy Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., <br><br> *Plaintiffs,* <br><br> and <br><br> MONTANA NURSES ASSOCIATION, <br><br> *Plaintiff-Intervenors,* <br><br> v. <br><br> AUSTIN KNUDSEN, ET AL., <br><br> *Defendants.* | No. CV-21-108-M-DWM <br><br> **DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE DR. LAUREN WILSON** |

## INTRODUCTION

This Court should exclude, in toto, the opinions of Plaintiff-Intervenor's expert Dr. Lauren Wilson. Her opinions are either unreliable, so vague and generic as to be unhelpful, or both.[1]

Wilson's opinions analyze all vaccines in the aggregate. And she does this even though she concedes that different vaccines protect against infectious disease with different degrees of efficacy. Wilson, however, is not testifying as a vaccine efficacy expert.

Wilson also opines about the relative costs and benefits of "vaccination" despite conceding she's not an expert in virology, vaccines, or public health. Wilson never identified an objective scientific method or data set she analyzed in reaching these broad conclusions. She only cited to her experience as a pediatrician. Wilson is unquestionably a practicing pediatrician. But that experience doesn't justify her broad "vaccination" opinions in this case. *See United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) ("It is well settled that bare qualifications

---

[1] Plaintiffs filed a copy of Wilson's Expert Report as an exhibit to their brief in support of Plaintiffs' motion for summary judgment. (Doc. 86.7). Defendants point the Court to that filing rather than duplicating the report as an exhibit to this motion.

alone cannot establish the admissibility of … expert testimony.").

Federal Rule of Evidence 702 allows expert opinion testimony only if that opinion will assist the trier of fact and if the opinion is reliable. That requirement applies to bench trials too, even though the Court's gatekeeping function changes when there's no jury involved. Wilson isn't an objectively reliable expert witness, and her testimony won't assist the Court in understanding the evidence.  Her conclusory statements masquerade as "expert opinions," but they aren't admissible as expert opinions within the meaning of Rule 702.  Because they fall well short of Rule 702's threshold requirements of reliability and assisting the trier of fact, the Court should exclude Wilson's opinions, and prevent her from

testifying at trial.[2]

## LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[2] A district court possesses broad authority to exclude expert witness testimony based on public policy principles such as "preventing conflicts of interest." *Perfect 10 v. Giganews, Inc.*, 2014 U.S. Dist. LEXIS 185066, at * 12 (C.D. Cal., Oct. 31, 2014). These conflicts include contingency fee arrangements as well as situations where an expert possesses a relationship with a party such that the expert testifies for the party itself. *Id.* at * 10-14. Here, Wilson sits on the Montana Medical Association board of trustees. (Wilson Dep. at 17:9–18:10). Her testimony amounts to the testimony of a party itself. Even if this conflict doesn't result in exclusion of Wilson's testimony, the obvious conflict should undermine the credibility of her purportedly expert evidence. *Id.* at 14 (quoting *Tagatz v. Marquette University*, 861 F.2d 1040, 1042 (7th Cir. 1988) ("the 'trier of fact should be able to discount for so obvious a conflict of interest'")).

The Rule 702 inquiry boils down to assessing (1) reliability—"whether the reasoning or methodology underlying the testimony is scientifically valid"—and (2) relevance—"whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) ("[W]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable.") (internal alterations and quotations omitted); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *Lee v. Weisman,* 505 U.S. 577, 597 (1992) ("[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (citation and internal quotation marks omitted). It's not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." *Ollier*, 768 F.3d at 860.

For expert testimony to be admissible, the expert must be qualified.

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Yet "[i]t is well settled that bare qualifications alone cannot establish the admissibility of … expert testimony." *Hermanek*, 289 F.3d at 1093; *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

Several other guideposts direct the Rule 702 analysis. First, "personal opinion testimony is inadmissible as a matter of law under Rule 702." *Ollier*, 768 F.3d at 860 (citing *Daubert II*, 43 F.3d at 1319). Second, "speculative testimony is inherently unreliable" and, therefore, inadmissible. *Id.* (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997)); *see also Daubert*, 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible). And third, experts may not express any opinion regarding "an ultimate issue of law" at trial. *Hangarter*, 373 F.3d at 1016. Courts must exclude "ultimate issue legal conclusion" testimony because it "invades the province of the trial judge." *Nationwide Transp. Fin. v. Cass. Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008).

In a jury trial setting district courts act as "gatekeepers" for expert testimony—they protect the jury from misleading testimony shrouded in the mystique of "expertise." *See United States v. Ruvalcaba-Garcia*, 923

F.3d 1183, 1188 (9th Cir. 2019). The court's "gatekeeper" role becomes less rigid before a bench trial, in which a Court itself will act as factfinder. *See United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). Still, pretrial admissibility requirements don't vanish in a bench trial. *Daubert*, 509 U.S. at 597.

Trial courts possess wide latitude when deciding whether to admit or exclude expert testimony. *Kumho Tire Co.*, 526 U.S. at 153; *Ollier*, 768 F.3d at 859. District courts within the Ninth Circuit can, and do, exclude expert testimony that isn't reliable or relevant to the issues at trial. *See Ollier*, 768 F.3d at 859–61 (affirming exclusion of unreliable and speculative expert testimony before a bench trial).

The party presenting the expert testimony bears the burden of showing that the expert's opinions are reliable and relevant. *See Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

## ARGUMENT

### I. The Court should exclude Wilson's report because she fails to submit a reliable methodology for her opinions.

Most—if not all—of Wilson's opinions referred to the general effects of "vaccination," not to the efficacy of a specific vaccine or vaccines. *See,*

*e.g.* (Wilson Dep. 68:4–10);[3] (Wilson Dep. 69:11–14) ("Vaccines differ in their efficacy, but what I'm saying here is that the technique of vaccination or priming the immune system prevents transmission of disease *generally*, yes.").

As an initial matter, Wilson cites to only three datasets in the entirety of her expert report. (Doc. 86.7, ¶¶ 10, 13, 16). The first dataset relates to morbidity and mortality for vaccine preventable diseases over time. (Doc. 86.7, ¶ 10). The second refers to the Centers for Disease Control's summary for precautions and duration of precautions for various diseases. (Doc. 86.7, ¶ 13). The final dataset contains summary information for possible complications and outcomes associated with various diseases. (Doc. 86.7, ¶ 14). These datasets simply don't form a reliable methodology justifying the opinions reached by Wilson. *E.g.* (Doc. 86.7, ¶¶ 17–23).

Wilson offers generalizations such as a "health care worker who is unvaccinated against measles, pertussis, varicella, influenza, COVID-19 or hepatitis B presents an increased risk to patients and to other co-

---

[3] Excerpts of the deposition of Dr. Lauren Wilson taken on August 3, 2022 are attached as Exhibit 1 to the Declaration of Brent Mead (September 2, 2022).

workers." (Doc. 86.7, ¶ 19). Her generalization fails to present any data quantifying increased risk, or a scientific basis that each listed disease carries a similar risk. Further, by limiting her opinion to "unvaccinated" healthcare workers, she fails to account for otherwise immune individuals. She again presents no data or methodology for how unvaccinated, but immune, individuals pose a heightened risk.

The failure to present some reliable methodology as the basis for opinion infects other opinions. *E.g.* (Doc. 86.7, ¶ 20 ("There are no adjunctive measures (hand washing, mask wearing) that can completely mitigate the risk an unvaccinated caregiver could present to patients or co-workers")); *id.*, ¶ 22 ("it is my opinion that healthcare settings must have actual knowledge of the immunity status of their workers … [i]t is also my opinion that healthcare settings must be able to condition and treat healthcare workers differently based on actual knowledge of their immunity status in order to secure a safe work environment …."); *id.*, ¶ 23. Wilson fails to provide any research, studies, or methodology to reach these conclusions. This failure renders her report unreliable. *See Ollier*, 768 F.3d at 859–61; *see also Grodzitsky v. Am. Honda Motor Co., Inc.*, 2015 U.S. Dist. LEXIS 64683, at *25 (C.D. Cal. Apr. 22, 2015) (expert's

opinion based primarily on personal opinion and speculation regarding consumers' expectations and was inadmissible because it provided no methodology); *Doyle v. Chrysler Grp. LLC*, 2015 U.S. Dist. LEXIS 12858, at *18 (C.D. Cal. Jan. 21, 2015) (excluding expert opinion because it "appear[ed] to be based more on Dr. Batzer's personal experience and/or speculation than it is based on data and analysis.").

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *GE v. Joiner*, 522 U.S. 136, 146 (1997).

Wilson's opinions on vaccination sweep far too broadly and she fails to connect those opinions to a reliable scientific methodology.[4]

---

[4] The Centers for Disease Control recently "streamlined" its COVID-19 guidance. Guidance now calls for similar treatment of vaccinated and unvaccinated individuals for measures like isolation, quarantine, and possible exposures. *See* CDC Streamlines COVID-19 guidance to help the public better protect themselves and understand their risk, Centers for Disease Control and Prevention, Press Release (August 11, 2022) (available at https://www.cdc.gov/media/releases/2022/p0811-covid-guidance.html (accessed on September 2, 2022)).

## II. Wilson is not an expert on vaccination or public health.

Wilson also fails to establish her opinions through the "relevant knowledge and experience of [her] discipline." *Kumho Tire Co.*, 526 U.S. at 148. Wilson is a pediatrician. (Doc. 86.7, ¶¶ 3–4). She is not a basic researcher, vaccine scientist, or virologist. (Wilson Dep. 43:1–43:10 ("[W]hen you ask if I'm a vaccine expert, I am not a basic researcher, I'm not a vaccine scientist, I'm not a virologist.")). Wilson also conceded that she is not a public health expert. *See* (Wilson Dep. at 15:12—16:2). Wilson further testified that in her experience she "assumed" the vaccination status of other healthcare workers and she is "not really in a supervisory role for other employees." (Wilson Dep. at 105:1–107:16). She has "not been involved" in making decisions about unvaccinated healthcare workers as it relates to those workers interacting with patients. (Wilson Dep. at 105:1–09).

Wilson's report, according to her, concerns her "experience as a pediatrician in a hospital and [her] knowledge of patient safety and the impact of vaccinations on keeping patients safe and keeping my colleagues and coworkers safe." (Wilson Dep. 67:22–68:10). She purports to analyze the efficacy, risk, and benefits of all vaccines in the aggregate.

*See, e.g.*, Wilson Rep. at ¶ 10 ("Vaccination is an effective way of preventing the transmission of disease and preventing death from disease."); *id.* ¶ 11 ("[s]erious adverse effects from vaccines are rare"); *id.* ¶ 19 ("A health care worker who is unvaccinated against measles, pertussis, varicella, influenza, COVID-19, or hepatitis B presents an increased risk to patients and to other co-workers."); *id.* ¶ 20 ("There are no adjunctive measures (hand washing, mask wearing) that can completely mitigate the risk an unvaccinated caregiver could present to patients or co-workers in the course of his or her usual clinical duties in a hospital."); *id.* ¶ 23 ("It is my opinion that in order to secure a safe work environment and a safe environment for patients in this setting, the healthcare setting must have actual knowledge of a worker's immunization status and must have the flexibility to condition the worker's employment in ways that respond to their actual immunity status."). These opinions don't track from her experience.

    First, she testified to vaccination efficacy at a general level. (Wilson Dep. 69:11-14) ("Vaccines differ in their efficacy, but what I'm saying here is that the technique of vaccination or priming the immune system prevents transmission of disease *generally*, yes."). She acknowledges

that specific vaccines for specific diseases differ in their efficacy at preventing transmission and infection, as well as reducing severity of disease. (Wilson Dep. 69:1–74:2). In response to a question, "you were not asked to give any expert opinion on whether vaccination is an effective way of preventing the transmission of disease," Wilson answered "correct." (Wilson Dep. 74:15–22); *but see* (Doc. 86.7, ¶ 10). As Wilson testified, and as Plaintiff-Intervenor's Counsel made clear, she "wasn't disclosed as a vaccine efficacy expert." (Wilson Dep. 73:16).

Based on the statements of Wilson and Plaintiff-Intervenor's counsel, this Court should exclude Wilson's opinions because—as they acknowledge—she isn't an expert on vaccines or vaccine efficacy. *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592 ("[W]here [an expert's] testimony's factual basis, data, principles, methods, or their application are sufficiently called into question … the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'")).

Next, the Court should exclude those opinions related to steps healthcare settings should take to mitigate risks from unvaccinated or nonimmune caregivers. *E.g.* (Doc. 86.7, ¶¶ 18–23). Wilson acknowledged

she doesn't inquire into other caregivers' vaccination status, nor does she work in a supervisory role over other employees. (Wilson Dep. at 105:1–107:16). In short, assuming these opinions could justifiably rest entirely and only on Wilson's training and experience, she still lacks the requisite experience in how hospitals (or other healthcare settings) treat or should treat unvaccinated or nonimmune employees. This renders her opinions unsupported personal views as to what healthcare settings should do. That falls short of Rule 702's standard. *See Daubert*, 509 U.S. at 590; *see also Ollier*, 768 F.3d at 860 ("[S]peculative testimony is inherently unreliable.") (internal citation omitted).

## CONCLUSION

This Court should exclude Wilson's opinions in toto.

DATED this 2nd day of September, 2022.

                                  Austin Knudsen
                                  Montana Attorney General

                                  DAVID M.S. DEWHIRST
                                   Solicitor General

*/s/Brent Mead*
BRENT MEAD
  *Assistant Solicitor General*
CHRISTIAN CORRIGAN
  *Deputy Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, MT 59620-1401
christian.corrigan@mt.gov.
brent.mead2@mt.gov

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 2,557 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/     *Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 2, 2022                           /s/ *Brent Mead*
                                                                    BRENT MEAD