AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
  *Solicitor General*
CHRISTIAN B. CORRIGAN
  *Deputy Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA,
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., *Plaintiffs*, and MONTANA NURSES ASSOCIATION, *Plaintiff-Intervenors*, v. AUSTIN KNUDSEN, ET AL., *Defendants*. | No. CV-21-108-M-DWM **DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE DR. BONNIE STEPHENS** |

## INTRODUCTION

This Court should exclude the opinions of Plaintiffs' expert Dr. Bonnie Stephens in their entirety.[1] Stephens acknowledges she "didn't cite any research," and "was not using research … to formulate [her] opinion." (Stephens Dep. at 14:14–23).[2] That absence of supporting facts or data *per se* precludes her testimony as a scientific expert.

Stephens' experience as a clinician doesn't encompass any research or publications related to the efficacy of any vaccine. (Stephens Dep. at 16:16–17:23). Yet the gravamen of Stephens' expert opinion inexplicably concerns the efficacy of vaccines and need for vaccinations among healthcare workers. (Doc. 86.4, ¶¶ 6–8, 10–13, 15–17).

Finally, Stephens resorts to legal conclusions couched as opinion. See, *e.g.* (Doc. 86.4, ¶ 18 ("If the current injunction is lifted, Montana HB 702 directly conflicts with the CMS conditions of participation.")). Such

---

[1] Plaintiffs filed a copy of Stephen's Expert Report as an exhibit to their brief in support of Plaintiffs' motion for summary judgment. (Doc. 86.4). Defendants point the Court to that filing rather than duplicating the report as an exhibit to this motion.

[2] Excerpts of the deposition of Dr. Bonnie Stephens taken on August 15, 2022 are attached as Exhibit 2 to the Declaration of Brent Mead (September 2, 2022).

testimony invades the province of the Court and must be excluded.

Federal Rule of Evidence 702 allows expert opinion testimony only if that opinion will assist the trier of fact and if the opinion is reliable. That requirement applies to bench trials too, even though the Court's gatekeeping function changes when there's no jury involved. Stephens isn't an objectively reliable expert witness, and her testimony won't assist the Court in understanding the evidence. Her conclusory statements masquerade as "expert opinions," but they aren't admissible as expert opinions within the meaning of Rule 702.

Put frankly, Stephens is unqualified to offer her purportedly expert opinions under Rule 702. Because they fall well short of Rule 702's threshold requirements of reliability and assisting the trier of fact, the Court should exclude Stephen's opinions *in toto*, and prevent her from testifying at trial.

## LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule 702 inquiry boils down to assessing (1) reliability—"whether the reasoning or methodology underlying the testimony is scientifically valid"—and (2) relevance—"whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) ("[W]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable.") (internal alterations and quotations omitted); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *Daubert*, 505 U.S. at 597) ("[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the

knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (citation and internal quotation marks omitted). It's not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." *Ollier*, 768 F.3d at 860.

For expert testimony to be admissible, the expert must be qualified. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Yet "[i]t is well settled that bare qualifications alone cannot establish the admissibility of … expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 154 (1999) (the district court correctly excluded an expert even though no one doubted the expert's qualifications).

Several other guideposts direct the Rule 702 analysis. First, "personal opinion testimony is inadmissible as a matter of law under Rule 702." *Ollier*, 768 F.3d at 860 (citing *Daubert II*, 43 F.3d at 1319). Second, "speculative testimony is inherently unreliable" and, therefore, inadmissible. *Id.* (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997)); *see also Daubert*, 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported

speculation" is inadmissible). And third, experts may not express any opinion regarding "an ultimate issue of law" at trial. *Hangarter*, 373 F.3d at 1016. Courts must exclude "ultimate issue legal conclusion" testimony because it "invades the province of the trial judge." *Nationwide Transp. Fin. v. Cass. Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008); *see also Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 U.S. Dist. LEXIS 50949, at \*45 (S.D. Cal. March 26, 2019) ("Courts routinely exclude experts from testifying on compliance with regulatory or industry standards—i.e., legal explanations and conclusions.").

In a jury trial setting district courts act as "gatekeepers" for expert testimony—they protect the jury from misleading testimony shrouded in the mystique of "expertise." *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). The court's "gatekeeper" role becomes less rigid before a bench trial, in which a Court itself will act as factfinder. *See United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). Still, pretrial admissibility requirements don't vanish in a bench trial. *Daubert*, 509 U.S. at 597.

Trial courts possess wide latitude when deciding whether to admit or exclude expert testimony. *Kumho Tire Co.*, 526 U.S. at 153; *Ollier*, 768

F.3d at 859. District courts within the Ninth Circuit can, and do, exclude expert testimony that isn't reliable or relevant to the issues at trial. *See Ollier*, 768 F.3d at 859–61 (affirming exclusion of unreliable and speculative expert testimony before a bench trial).

The party presenting the expert testimony bears the burden of showing that the expert's opinions are reliable and relevant. *See Lust v. Merrell Dow. Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

## ARGUMENT

Stephens' expert report is devoid of any facts or data supporting her opinions. (Doc. 86.4, ¶¶ 5–18). Further, none of her previous publications relate to vaccine efficacy—the paramount issue addressed in her expert report. (Stephens Dep. at 16:16–17:23). Finally, many of her statements constitute legal opinions on live issues in this case. (Doc. 86.4, ¶¶ 5 (standard of care), 11 (requirements of the Americans with Disabilities Act), 12 (standard of care), 17 (requirements of conditions of participation in Medicare and Medicaid), 18 (preemptive effect of conditions of participation)).

Stephens acknowledged she "didn't cite any research," and "was not

using research … to formulate [her] opinion." (Stephens Dep. at 14:14–23). Much of her expert report, however, presents conclusions that could only be grounded in scientific facts, research, and data—that she didn't supply. (Doc. 86.4, ¶ 5 (vulnerability of individuals to infectious disease), ¶ 6 (remaining current on all vaccines is crucial for patient safety), ¶ 7 ("[c]urrent vaccination also protects fellow staff members from contracting infectious disease …."), ¶ 8 (pertussis is highly contagious and measles poses a "direct threat" to infants), ¶ 9 (infants cannot receive vaccinations until certain ages), ¶ 10 (importance of infection control in certain settings), ¶ 11 (risk to certain patients in NICU and cancer care settings), ¶ 15 (safety and efficacy of vaccines), and ¶ 16 (risk based on COVID-19 vaccination status)).

Such opinions, regardless of conclusion, must be supported by a sound methodology. *Ollier*, 768 F.3d at 860; *see also Grodzitsky v. Am. Honda Motor Co., Inc.*, 2015 U.S. Dist. LEXIS 64683, at \*25 (C.D. Cal. Apr. 22, 2015) (expert's opinion based primarily on personal opinion and speculation regarding consumers' expectations and was inadmissible because it provided no methodology); *Doyle v. Chrysler Grp. LLC*, 2015 U.S. Dist. LEXIS 12858, at \*18 (C.D. Cal. Jan. 21, 2015) (excluding expert

opinion because it "appear[ed] to be based more on Dr. Batzer's personal experience and/or speculation than it is based on data and analysis.").

Stephens' lack of any methodology decimates the reliability of her proffered opinions. *Compare* (Doc. 86.4, ¶¶ 7–8 (opinions expressing the importance of current vaccinations for pertussis)) to (Stephens Dep. at 41:21–42:21) (Stephens has not looked at any recent studies concerning waning efficacy of the pertussis vaccine). Her opinion on COVID relies on "general knowledge," not any specific study. (Stephens Dep. at 28:9–22); *see also* (Stephens Dep. 26:18–22). She doesn't believe breakthrough cases—i.e. immunized individuals becoming reinfected with COVID-19—are relevant to the discussion of "vaccine-preventable diseases in general." (Stephens Dep. at 20:16–21:14); *but see* (Doc. 86.4, ¶ 16 ("Staff who contract COVID are required to quarantine, exacerbating the shortage of needed healthcare workers.")). When questioned about the assertions in her report, Stephens retreated to her personal knowledge. *See, e.g.,* (Stephens Dep. at 27:17–28:8 (COVID-19 exemption rates across all of Montana are based on her personal knowledge of the vaccination status of employees at her institution)). Such subjective and nigh-untestable assertions fall *far* short of Rule 702's strictures. *See*

*Ollier*, 768 F.3d at 860.

Even these personal opinions fall outside Stephens' experience. Stephens' experience as a clinician doesn't encompass any research or publications related to the efficacy of any vaccine. (Stephens Dep. at 16:16–17:23).

Stephens also proffers multiple opinions that contain legal conclusions. (Doc. 86.4, ¶¶ 5, 11–12, 17–18). Her testimony as to the standard of care unquestionably contains a legal conclusion. *See Bona Fide Conglomerate, Inc.*, 2019 U.S. Dist. LEXIS 50949, at *45 (S.D. Cal. March 26, 2019). Plaintiffs, in fact, argue HB 702 conflicts with an obligation to provide an "appropriate standard of care." (Doc. 82 at 39). Stephens also gives an opinion as to what the Americans with Disabilities Act requires of healthcare settings in providing reasonable accommodations. (Doc. 86.4, ¶ 11). That opinion is laced with legal terms of art like "individualized assessment," "undue hardship," "direct threat," and, of course, "reasonable accommodation." *Id.* She continues that all patient requests to be treated by vaccinated staff should be honored. (Doc. 86.4, ¶ 14). That opinion contains no facts as to any specific situation, or why such requests should be honored. And, finally,

Stephens offers an opinion that HB 702 "directly conflicts" with the Centers for Medicare and Medicaid Services conditions of participation. (Doc. 86.4, ¶¶ 17–18). That is a central *legal* issue in this case. *E.g.* (Doc. 85 at 33). That Stephens' expert report contains legal conclusions is both obvious and admitted by Plaintiffs. *See* (Stephens Dep. at 35:2–15) (Plaintiffs' counsel objected as calling for a legal conclusion what documents were consulted to reach the opinion that there is a direct conflict between HB 702 and Centers for Medicare and Medicaid conditions of participation).

## Conclusion

In sum, this Court should exclude Dr. Stephens' expert report and testimony because it presents unreliable opinions lacking any foundation in facts or data all while smuggling in legal conclusions as "expert opinion."

DATED this 2nd day of September, 2022.

> Austin Knudsen
> Montana Attorney General
>
> David M.S. Dewhirst
>  Solicitor General

/s/*Brent Mead*
BRENT MEAD
  *Assistant Solicitor General*
CHRISTIAN CORRIGAN
 *Deputy Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
christian.corrigan@mt.gov.
brent.mead2@mt.gov

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 1,933 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/    *Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 2, 2022           /s/ *Brent Mead*
                                   BRENT MEAD