AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
 *Solicitor General*
CHRISTIAN B. CORRIGAN
 *Deputy Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA,
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., *Plaintiffs,* and MONTANA NURSES ASSOCIATION, *Plaintiff-Intervenors,* v. AUSTIN KNUDSEN, ET AL., *Defendants.* | No. CV-21-108-M-DWM **DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE DR. DAVID KING, OR ALTERNATIVELY LIMIT DR. KING'S TESTIMONY** |

## INTRODUCTION

This Court should exclude parts of the opinions of Plaintiffs' expert Dr. David King.[1]  Portions of his opinion are unreliable and unhelpful to this case.  Other parts improperly offer conclusions of law.  This Court should exclude at least (Doc. 86.1, ¶¶ 5, 22–25, 32–33, 35–42, 44, 46–48, 50–53).

Federal Rule of Evidence 702 allows expert opinion testimony only if that opinion will assist the trier of fact and if the opinion is reliable.  That requirement applies to bench trials too.  King doesn't supply objectively reliable expert testimony and his testimony won't assist the Court in understanding the evidence.  Elsewhere, his testimony consists of conclusory statements couched as "expert opinions," but those statements recycle legal elements that Plaintiffs believe necessary to their case.  Such opinions fall outside Rule 702.

---

[1] Plaintiffs filed a copy of King's Expert Report as an exhibit to their brief in support of Plaintiffs' motion for summary judgment.  (Doc. 86.1). Defendants point the Court to that filing rather than duplicating the report as an exhibit to this motion.

## LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule 702 inquiry boils down to assessing (1) reliability—"whether the reasoning or methodology underlying the testimony is scientifically valid"—and (2) relevance—"whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) ("[W]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable.") (internal alterations and quotations omitted); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting

Lee v. Weisman 505 U.S. 577, 597 (1992) ("[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (citation and internal quotation marks omitted; accord *Kumho Tire v. Carmichael*, 526 U.S. 137, 148 (1999). It's not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." *Ollier*, 768 F.3d at 860.

Several other guideposts direct the Rule 702 analysis. First, "personal opinion testimony is inadmissible as a matter of law under Rule 702." *Ollier*, 768 F.3d at 860 (citing *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*")). Second, "speculative testimony is inherently unreliable" and, therefore, inadmissible. *Id.* (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997)); *see also Daubert*, 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible). And third, experts may not express any opinion regarding

"an ultimate issue of law" at trial. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Courts must exclude "ultimate issue legal conclusion" testimony because it "invades the province of the trial judge." *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008).

In a jury trial setting district courts act as "gatekeepers" for expert testimony—they protect the jury from misleading testimony shrouded in the mystique of "expertise." *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). The court's "gatekeeper" role becomes less rigid before a bench trial, in which a Court itself will act as factfinder. *See United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). Still, pretrial admissibility requirements don't vanish in a bench trial. *Daubert*, 509 U.S. at 597.

Trial courts possess wide latitude when deciding whether to admit or exclude expert testimony. *Kumho Tire*, 526 U.S. at 153; *Ollier*, 768 F.3d at 859. District courts in the Ninth Circuit can, and do, exclude expert testimony that isn't reliable or relevant to the issues at trial. *See Ollier*, 768 F.3d at 859–61 (affirming exclusion of unreliable and speculative expert testimony before a bench trial).

The party presenting the expert testimony bears the burden of showing that the expert's opinions are reliable and relevant. *See Lust v. Merrell Dow. Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert II*, 43 F.3d at 1316.

## ARGUMENT

### I. The Court should limit or exclude King's expert report

King's report offers unreliable, unsupported conclusions related to non-COVID-19 diseases (Doc. 86.1, ¶¶ 22–25, 32–33, 42, 44, 46–47, 50). It also improperly offers numerous legal conclusions (Doc. 86.1, ¶¶ 5, 35–41, 48, 51–53). Rule 702 requires relevant and reliable testimony and King largely provides neither.

First, his non-COVID-19 opinions are unreliable and irrelevant to the case. King fails to support contentions like "vaccination remains critically important" for infectious disease prevention in healthcare settings. (Doc. 86.1, ¶ 23). Simply stating a generalization like this fails to establish the relevance of the opinion to HB 702. For example, King fails to analyze whether vaccination rates are up or down among healthcare workers, or even provide an estimation of vaccination and immunity rates generally.

These unhelpful generalizations plague his key conclusions. King subsequently states "unvaccinated individuals are more likely than vaccinated individuals to contract vaccine-preventable diseases and are also more likely to transmit those diseases to others." (Doc. 86.1, ¶ 32); *see also* (Doc. 86.1, ¶ 33). The failure to specify what disease, or vaccine, is at issue and support the opinion with relevant data demonstrating the efficacy of a given vaccine renders the opinion unreliable.

King also espouses that it is "well-known" that individuals with certain conditions are more susceptible to severe illness and more likely to become infected. (Doc. 86.1, ¶ 42). Simply stating it is well-known doesn't establish the opinion.[2] *See Ollier*, 768 F.3d at 860.

King offers an opinion that HB 702 "stands in the way of health care providers providing a safe environment for their patients and staff." (Doc. 86.1, ¶ 46). King's testimony makes clear he refers to unvaccinated healthcare workers. (King Dep. at 93:11–96:23).[3] But King also testified

---

[2] Of course, if something resides in common knowledge, then expert testimony isn't needed. *See* Fed. R. Evid. 702.

[3] Excerpts of the deposition of Dr. David King taken on August 2, 2022 are attached as Exhibit 3 to the Declaration of Brent Mead (September 2, 2022).

this opinion is a "personal opinion" and that this supposed anti-vaccine attitude among healthcare workers pre-exists COVID and HB 702. (King Dep. at 95:14–97:5). Such personal opinions are not expert opinion. *See Ollier*, 768 F.3d at 860. Finally, he again states without supporting facts or data, that other forms of disease prevention cannot serve as a substitute for vaccination. (Doc. 86.1, ¶ 47).

The common thread throughout all his assertions is that they lack any semblance of the sound methodology required by Rule 702. *See Ollier*, 768 F.3d at 860. The correctness of the opinion doesn't matter. The only relevant inquiry is whether the opinion is backed by a reliable methodology and not merely the expression of personal or speculative opinion. *Id.*

For the rare instances where King's report cites to research to back his contentions, his testimony exposed a troubling flaw in his purported methodology. In response to a question about how he determined the relevancy of studies, King answered "I'm actually an English major, and I guess my answer is I have a story to tell. And if it fit, then it got it, and if it didn't fit in the story I was trying to tell, then I didn't cite it." (King Dep. at 112:11–21). Elsewhere, King acknowledged letters to the editor

informed his opinion that people are putting off care due to the presence of unvaccinated workers. (King Dep. at 120:1–13). Letters to the editor and undergraduate creative writing fall short of Rule 702's sound methodology standard. *See Ollier*, 768 F.3d at 860.

If the Court doesn't outright exclude King's expert report, then it should limit his opinions to those relating to COVID-19. King's only citations to supporting data and studies relate to COVID-19. He does not cite any relevant data related to other vaccines or other vaccine-preventable diseases.[4] King's opinions must necessarily be limited to the methodology in his report. As such, applying his opinions to non-COVID-19 diseases would violate Rule 702. *See Ollier*, 768 F.3d at 860.

Finally, King improperly offers opinions reaching the ultimate legal issues in this case. *E.g.* (Doc. 86.1, ¶¶ 39, 48, 52). This Court should exclude such opinions. *Nationwide Transp. Fin. v. Cass. Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008). This includes opinions reaching a

---

[4] The only non-COVID-19 study concerns case rates in Texas following adoption of that State's 1971 school-age vaccination law. (Doc. 86.1, ¶ 8). That study bears no relevance to the facts of this case because (1) HB 702 expressly leaves in place Montana's school-age vaccination requirements and (2) King makes no attempt to demonstrate the relevance of a 50-year old law in Texas to current case rates in Montana.

conclusion as to the operative standard of care. *E.g.* (Doc. 86.1, ¶¶35–41); *see Bona Fide Conglomerate, Inc. v. SourceAmerica,* 2019 U.S. Dist. LEXIS 50949, 2019 WL 1369007 at * 45 (S.D. Cal., Mar. 26, 2019) ("Courts routinely exclude expert reports from testifying on compliance with regulatory or industry standards—i.e. legal explanations and conclusions.").

## II. King's social and political invectives cast doubt as to his objectivity.

King's deposition revealed deep-seeded animosity toward others' personal medical choices with which he disagrees. *E.g.* (King Dep. at 65:5–66:4) ("Antivaxxing has become more and more common, and the – the argument that personal rights supersede public safety, I think we can look at the world around us and understand that – that there's been a shift towards personal rights other than for people who have a uterus."); (King Dep. at 66:5–20) ("I mean, the political arena does not allow us to separate things. Right now you've got to be -- if you're a certain identified political person, you got to be anti-abortion. You've got to be for unlimited weaponry in the hands of everyone. This is a -- a – it's become confused -- and you've got to be against immunizations. It's gotten confused and conflated, and so it's very difficult to talk about personal rights in a way

that doesn't offend somebody's pet peeve."); (King Dep. at 88:8–90:14) ("[T]his goes to personal experience. I've been told that I'm -- because I'm pro vaccine, I'm a minion of Satan … Medically speaking, there's a lot of irrelevant, inappropriate stuff called religious exemption. I have yet to hear a bona fide one that I really understand the science behind."). When asked whether the animosity expressed toward King shaded his views on the validity of religious exemptions, King answered "[a]bsolutely." (King Dep. at 90:1–4).

King's opinion on religious exemptions is that they "should not be honored in cases where the scientific explanation shows that the religious exemption request is falsified. … If the science falsifies the claim, then that should not be allowed." (Dep. King. at 97:19–98:7).

King's opinions aren't grounded in an objective methodology. Rather they reveal personal disdain for unvaccinated healthcare workers. (Dep. King at 95:14–97:5) (it is King's "personal opinion" that unvaccinated healthcare workers violate their ethical obligations). It's clear that King's opinions are informed by factors that stretch beyond science, the practice of medicine, or public health. King clearly harbors personal hostility toward those that disagree with his opinions. As a

citizen, he is free to hold those personal views. But experts are held to a different standard. Such testimony cannot be entered as a matter of law. *See Ollier*, 768 F.3d at 860 (citing *Daubert II*, 43 F.3d at 1319).

## CONCLUSION

For the reasons stated, this Court should exclude (Doc. 86.1, ¶¶ 5, 22–25, 32–33, 35–42, 44, 46–48, 50–53).

DATED this 2nd day of September, 2022.

>  Austin Knudsen
>  Montana Attorney General
>
>  DAVID M.S. DEWHIRST
>    Solicitor General
>
>  */s/Brent Mead*
>  BRENT MEAD
>    *Assistant Solicitor General*
>  CHRISTIAN CORRIGAN
>    *Deputy Solicitor General*
>  P.O. Box 201401
>  Helena, MT 59620-1401
>  christian.corrigan@mt.gov
>  brent.mead2@mt.gov
>
>  *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 2,138 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

>                             /s/Brent Mead
>                             BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 2, 2022              /s/ Brent Mead
                                      BRENT MEAD