AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
  *Solicitor General*
CHRISTIAN B. CORRIGAN
  *Deputy Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., *Plaintiffs,* and MONTANA NURSES ASSOCIATION, *Plaintiff-Intervenors,* v. AUSTIN KNUDSEN, ET AL., *Defendants.* | No. CV-21-108-M-DWM **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO LIMIT THE TESTIMONY OF DR. DAVID TAYLOR** |

**INTRODUCTION**

This Court should exclude parts of the opinions of Plaintiffs' expert Dr. David Taylor.[1] Portions of his opinion are unreliable and unhelpful to this case. Other parts improperly offer conclusions of law. Defendants request the Court exclude limit Taylor's testimony and exclude at least paragraphs 23, 24, 55, and 56 of his expert report. Additionally, the Court should either exclude or limit testimony as to the opinion expressed in paragraph 49 of his expert report.

Federal Rule of Evidence 702 allows expert opinion testimony only if that opinion will assist the trier of fact and if the opinion is reliable. That requirement applies to bench trials too. Taylor doesn't supply objectively reliable expert testimony and his testimony won't assist the Court in understanding the evidence. Elsewhere, his testimony consists of conclusory statements couched as "expert opinions," but those statements recycle legal elements that Plaintiffs' believe necessary to their case. Such opinions fall outside Rule 702.

---

[1] Plaintiffs filed a copy of Taylor's Expert Report as an exhibit to their brief in support of Plaintiffs' motion for summary judgment. (Doc. 86.2). Defendants point the Court to that filing rather than duplicating the report as an exhibit to this motion.

**LEGAL STANDARDS**

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule 702 inquiry boils down to assessing (1) reliability—"whether the reasoning or methodology underlying the testimony is scientifically valid"— and (2) relevance—"whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) ("[W]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable.") (internal alterations and quotations omitted); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting

*Lee v. Weisman,* 505 U.S. 577, 597 (1992) ("[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (citation and internal quotation marks omitted; accord *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). It's not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." *Ollier*, 768 F.3d at 860.

Several other guideposts direct the Rule 702 analysis. First, "personal opinion testimony is inadmissible as a matter of law under Rule 702." *Ollier*, 768 F.3d at 860 (citing *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*")). Second, "speculative testimony is inherently unreliable" and, therefore, inadmissible. *Id.* (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997)); *see also Daubert,* 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible). And third, experts may not express any opinion regarding

"an ultimate issue of law" at trial. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Courts must exclude "ultimate issue legal conclusion" testimony because it "invades the province of the trial judge." *Nationwide Transp. Fin. v. Cass. Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008).

In a jury trial setting district courts act as "gatekeepers" for expert testimony—they protect the jury from misleading testimony shrouded in the mystique of "expertise." *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). The court's "gatekeeper" role becomes less rigid before a bench trial, in which a Court itself will act as factfinder. *See United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). Still, pretrial admissibility requirements don't vanish in a bench trial. *Daubert*, 509 U.S. at 597.

Trial courts possess wide latitude when deciding whether to admit or exclude expert testimony. *Kumho Tire*, 526 U.S. at 153; *Ollier*, 768 F.3d at 859. District courts in the Ninth Circuit can, and do, exclude expert testimony that isn't reliable or relevant to the issues at trial. *See Ollier*, 768 F.3d at 859–61 (affirming exclusion of unreliable and speculative expert testimony before a bench trial).

The party presenting the expert testimony bears the burden of showing that the expert's opinions are reliable and relevant. *See Lust v. Merrell Dow. Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert II*, 43 F.3d at 1316.

## ARGUMENT

### I. The Court should exclude speculative and unsupported testimony related to vaccine hesitancy.

The Court should exclude Taylor's conclusions regarding vaccine hesitancy and HB 702. Taylor testified that "concerns about coronavirus vaccines are now reflected in attitudes towards routine immunizations." (Doc. 86.2, ¶ 23). In his opinion, it should be "an important duty of the state to educate the – the population in the state on the importance of vaccines …." (Taylor Dep. at 35:5–36:12).[2] HB 702 presents a problem—in his view—because the law increases vaccine hesitancy based upon "a personal freedom issue here -- that that's abdicating our duty to the community." *Id.*

---

[2] Excerpts of the deposition of Dr. David Taylor taken on August 4, 2022 are attached as Exhibit 4 to the Declaration of Brent Mead (September 2, 2022).

Taylor admits these opinions are his personal opinions, not opinions grounded in studies, data, or clinical experience. (Taylor Dep. at 50:14–51:4; 52:1–53:9; 56:19–57:5). That alone disqualifies them. *Ollier*, 768 F.3d at 861.

Beyond that, Taylor's opinion is contradicted elsewhere in his own report. Taylor cites a nationwide report on kindergartner vaccination rates. (Doc. 86.2, ¶ 23); *see also* (Doc. 93, ¶¶ 3–6) (Defendants undisputed facts cite the same study in paragraph 6). That study shows the percentage of Montana kindergartners with a medical or religious exemption to required vaccinations *decreased* between the 2019–20 and 2020–21 school years. (Doc. 93, ¶ 6). Taylor acknowledged that this fact does not support his opinion regarding attitudes towards immunizations. (Taylor Dep. at 86:19–87:10).

Finally, Taylor's testimony that HB 702 negatively affects attitudes toward immunizations should be excluded because it is based on personal opinion. *Ollier*, 768 F.3d at 860. Likewise, the Court should exclude any testimony by Taylor related to speculative harms derived from his unsupported opinion on vaccine hesitancy and the effects of HB 702. *Id.*; *see also Grodzitsky v. Am. Honda Motor Co., Inc.*, 2015 U.S. Dist. LEXIS

64683, at *25 (C.D. Cal. Apr. 22, 2015) (expert's opinion based primarily on personal opinion and speculation regarding consumers' expectations and was inadmissible); *Doyle v. Chrysler Grp. LLC*, 2015 U.S. Dist. LEXIS 12858, at *18 (C.D. Cal. Jan. 21, 2015) (excluding expert opinion because it "appear[ed] to be based more on Dr. Batzer's personal experience and/or speculation than it is based on data and analysis.").

## II. The Court should exclude speculative and unsupported testimony related to the risk unvaccinated individuals pose to others.

Taylor further testifies that unvaccinated, or nonimmune, individuals pose an increased risk to others. (Doc. 86.2, ¶¶ 24, 49, 55, 56). Taylor issues an opinion as to all vaccine preventable diseases—not just COVID-19—but cites only pre-Omicron COVID-19 studies. He also bootstraps COVID-19 vaccine efficacy related to severity of illness to support conclusions on disease transmission. But these are separate concepts. Upon examination, he offers conclusory opinions related to non-COVID-19 diseases and to disease transmission that lack sufficient foundation. *Ollier*, 768 F.3d at 860–61. *Grodzitsky*, 2015 U.S. Dist. LEXIS 64683, at *25; *Doyle*, 2015 U.S. Dist. LEXIS 12858, at *18.

First, in paragraph 24, Taylor cites to declining vaccination rates for why healthcare providers must have knowledge of an individual's (both patients and employees) immunization status to reduce disease transmission. (Doc. 86.2, ¶ 24). But Taylor fails to cite or substantiate his claim that Covid exemption rates in healthcare facilities are twice as high as the national average. *Id.* Further, for reasons already stated, reliance on kindergarten-age vaccinations is misplaced. *See supra* at Part I. In short, Taylor fails to provide the necessary data to make the analytical leap that 1% drop in kindergarten vaccination rates nationally equates to an impending danger in healthcare settings. *See GE v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Even if Taylor had provided the relevant data, nothing in his report links vaccination exemption rates to rates of disease transmission. (Doc. 86.2). His conclusion, that "a safe care" environment requires knowledge of immunization status bears no relationship to the data cited and instead operates as an impermissible legal conclusion. *Nationwide Transp. Fin. v. Cass. Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008).

Elsewhere, Taylor testifies that the "unvaccinated are … a risk to others."  (Doc. 86.2, ¶ 49); *see also id.*, ¶¶55–56.  Taylor's opinion apparently applies to all diseases—not just COVID-19. (Doc. 86.2, ¶¶ 49, 55–56).  Taylor's report, however, cites studies related solely to COVID-19.  (Doc. 86.2, ¶¶ 40–48, 50–54, 57–64).  Moreover, Taylor's report acknowledges that after the Delta variant, "it was no longer possible to create herd immunity."  (Doc. 86.2, ¶ 46).  Further, post-Delta, breakthrough cases emerged in those immunized for COVID-19.  (Doc. 86.2, ¶¶46, 58).  Taylor acknowledged the now-dominant strain, Omicron, evades prior immunity—either vaccination or natural immunity.  (Taylor Dep. at 29:15–33:6; 80:14—23).  He further acknowledged his report didn't consider any data or studies related to Omicron.  (Taylor Dep. at 79:18–24).  His report barely looks at transmissibility.  (Doc. 86.2, ¶¶60, 62).  The single study he does rely on dates to Delta, not Omicron, and certainly doesn't relate to any non-COVID-19 disease.  (Doc. 86.2, ¶ 60).  Even within that study, it clearly demonstrates both vaccinated and unvaccinated individuals are capable of transmitting COVID-19.  (Doc. 86.2, ¶ 60).

Taylor's report focuses on severity of disease, not transmission. (Doc. 86.2, ¶¶ 40–48, 50–54, 61). That issue is separate from transmissibility, the only issue that could be relevant to this case. And on transmissibility, Taylor acknowledges individuals can transmit COVID-19 regardless of vaccination status. (Doc. 86.2, ¶ 60); *see also* (Taylor Dep. at 29:15–33:6; 80:14–23).

Taylor's opinion that "immunized individuals" are "less likely to transmit the diseases," therefore lacks any reliable foundation. (Doc. 86.2, ¶ 56). Without that link, his broader opinion that non-immune individuals pose a heightened risk to others likewise lacks a reliable foundation. (Doc. 86.2, ¶¶49, 55–56).

The Court should therefore exclude Taylor's testimony related to his conclusion related to the risk non-immune individuals pose to others. If the Court doesn't exclude those opinions entirely, then it should limit the applicability to only COVID-19, the only disease for which he presented data and analysis.

## Conclusion

For the aforementioned reasons, this Court should exclude (Doc. 86.2, ¶¶ 23–24, 49, 55–56).

DATED this 2nd day of September, 2022.

        Austin Knudsen
        Montana Attorney General

        DAVID M.S. DEWHIRST
          Solicitor General

        */s/Brent Mead*
        BRENT MEAD
          *Assistant Solicitor General*
        CHRISTIAN CORRIGAN
          *Deputy Solicitor General*
        P.O. Box 201401
        Helena, MT 59620-1401
        christian.corrigan@mt.gov.
        brent.mead2@mt.gov

        *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 1,926 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/    *Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 2, 2022        /s/ *Brent Mead*
BRENT MEAD