AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
 *Solicitor General*
CHRISTIAN B. CORRIGAN
 *Deputy Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA,
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., | No. CV-21-108-M-DWM |
| *Plaintiffs,* | |
| and | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE TO LIMIT THE TESTIMONY OF DR. GREGORY HOLZMAN** |
| MONTANA NURSES ASSOCIATION, | |
| *Plaintiff-Intervenors,* | |
| v. | |
| AUSTIN KNUDSEN, ET AL., | |
| *Defendants.* | |

## INTRODUCTION

This Court should exclude parts of the opinions of Plaintiff-Intervenor's expert Dr. Gregory Holzman.[1]  Portions of his opinion are unreliable and unhelpful to this case.  Other parts improperly offer conclusions of law.  For these reasons, the Court should exclude (Doc. 86.3, ¶¶ 15–21).

Federal Rule of Evidence 702 allows expert opinion testimony only if that opinion will assist the trier of fact and if the opinion is reliable. That requirement applies to bench trials too.  Holzman doesn't supply objectively reliable expert testimony and his testimony won't assist the Court in understanding the evidence.  Elsewhere, his testimony consists of conclusory statements couched as "expert opinions," but those statements recycle legal elements that Plaintiffs' believe necessary to their case.  Such opinions fall outside Rule 702.

---

[1] Plaintiffs filed a copy of Holzman's Expert Report as an exhibit to their brief in support of Plaintiffs' motion for summary judgment.  (Doc. 86.3). Defendants point the Court to that filing rather than duplicating the report as an exhibit to this motion.

## LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admission of expert testimony.  It provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule 702 inquiry boils down to assessing (1) reliability—"whether the reasoning or methodology underlying the testimony is scientifically valid"—and (2) relevance—"whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) ("[W]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable.") (internal alterations and quotations omitted); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting

*Lee v. Weisman,* 505 U.S. 577, 597 (1992) ("[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'").  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (citation and internal quotation marks omitted; accord *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999).  It's not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." *Ollier*, 768 F.3d at 860.

Several other guideposts direct the Rule 702 analysis.  First, "personal opinion testimony is inadmissible as a matter of law under Rule 702." *Ollier*, 768 F.3d at 860 (citing *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*")).  Second, "speculative testimony is inherently unreliable" and, therefore, inadmissible.  *Id.* (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997)); *see also Daubert*, 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible).  And third, experts may not express any opinion regarding

"an ultimate issue of law" at trial. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Courts must exclude "ultimate issue legal conclusion" testimony because it "invades the province of the trial judge." *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008).

In a jury trial setting district courts act as "gatekeepers" for expert testimony—they protect the jury from misleading testimony shrouded in the mystique of "expertise." *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). The court's "gatekeeper" role becomes less rigid before a bench trial, in which a Court itself will act as factfinder. *See United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). Still, pretrial admissibility requirements don't vanish in a bench trial. *Daubert*, 509 U.S. at 597.

Trial courts possess wide latitude when deciding whether to admit or exclude expert testimony. *Kumho Tire Co.*, 526 U.S. at 153; *Ollier*, 768 F.3d at 859. District courts in the Ninth Circuit can, and do, exclude expert testimony that isn't reliable or relevant to the issues at trial. *See Ollier*, 768 F.3d at 859–61 (affirming exclusion of unreliable and speculative expert testimony before a bench trial).

The party presenting the expert testimony bears the burden of showing that the expert's opinions are reliable and relevant. *See Lust v. Merrell Dow. Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert II*, 43 F.3d 1311 at 1316.

## ARGUMENT

Holzman's expert report fails to cite any meaningful or relevant facts, data, or methodology for analyzing the transmission or control of infectious diseases.  (Doc. 86.3).

Holzman's expert report relies on three data points.  The first and second are simply reports extolling the virtues of vaccines as "one of the Ten Great Public Health Achievements of the 20th Century."  (Doc. 86.3, ¶ 6).  That proclamation is neither contested nor relevant to understanding the facts of this case.  The third and final report contains the Advisory Committee on Immunization Practices recommendations for healthcare personnel.  (Doc. 86.3, ¶ 14).  That report has no binding regulatory effect on healthcare providers.  (Holzman Dep. at 38:5–11); *see also* (Holzman Dep. at 38:12–19) (Plaintiff-Intervenor counsel objecting that it was outside the scope of Holzman's disclosure whether such

recommendations were ever required by the Centers for Medicare and Medicaid Services).[2]

The lack of a sound methodology taints and impairs his opinions on other preventative measures (Doc. 86.3, ¶ 15), need for actual knowledge of immunity status (Doc. 86.3, ¶ 16), and the need to treat individuals differently based on immunity status (Doc. 86.3, ¶ 17).  For example, regarding the alleged need to treat individuals differently based on immunity status, Holzman fails to narrow what individuals are at issue—patients, healthcare workers, or the public generally.  (Doc. 86.3, ¶ 17).  When, as here, it's unclear what facts the expert is considering, his opinions can't assist the Court in understanding the facts of the case. Rule 702 demands experts offer analysis that goes beyond rudimentary scientific platitudes.

Elsewhere, Holzman's testimony offers unsupported testimony that lacks necessary foundation.  (Doc. 86.3, ¶ 20) ("Healthcare workers have an increased risk of exposure to vaccine-preventable diseases. Healthcare workers also pose the risk of transmitting vaccine-

---

[2] Excerpts of the deposition of Dr. Gregory Holzman taken on August 16, 2022 are attached as Exhibit 5 to the Declaration of Brent Mead (September 2, 2022).

preventable diseases to vulnerable patients, and other healthcare workers."). Holzman fails to quantify the risk of exposure, or even state what specific diseases are at issue. He also fails to quantify the risk of transmission, including the effect other preventative measures have on transmission. This amounts to nothing more than unsupported opinion and as such is not admissible. Without a basis in sound methodology, Holzman's testimony should be excluded. *See Ollier*, 768 F.3d at 859–61.

Holzman's report about alludes to what hospitals should do in (ironically-titled) 'specific scenarios' … that he never identifies. *See* (Doc. 86.3, ¶ 18) ("it is my opinion that in specific scenarios, healthcare settings must be able to treat employees differently in the conditions of their work and employment based on their vaccination status to secure a work environment free from known hazards for healthcare workers and their patients."). He fails to specify the specific scenarios he refers to. He fails to specify what he means by healthcare settings. He fails to discuss or analyze what differential treatment might be appropriate in this universe of "specific scenarios." Holzman simply fails to provide any factual support for his opinion.

Another critical flaw in Holzman's report is that it is infested with legal conclusions.  (Doc. 86.3, ¶ 18).  "Known hazards," for example, is a term of art within the Occupational Health and Safety Act.  *See* 29 U.S.C. § 654(a)(1); *see also* (Doc. 86.3, ¶¶ 19–20) (offering further opinion on workplace hazards).  He also states, without support, that "long term care settings face the same or similar workplace risks" as non-long term care settings.  (Doc. 86.3, ¶ 21).  This strikes directly at Plaintiffs' equal protection claims.  *See* (Doc. 82 at 26–30).  Holzman fails to lay out a factual assertion as to the specific risks at long term care facilities and the specific risks at non-long term care facilities.  He instead, offers only a shortcut to the legal conclusion that the risks are the same.

## CONCLUSION

The Court should exclude the parts of Holzman's testimony that offer legal conclusions and should limit the remainder of his testimony to that which is adequately supported by a reliable methodology.  The Defendants request the Court exclude at least (Doc. 86.3, ¶¶ 15–21).

DATED this 2nd day of September, 2022.

> Austin Knudsen
> Montana Attorney General
>
> DAVID M.S. DEWHIRST
>   Solicitor General
>
> */s/Brent Mead*
> BRENT MEAD
>   *Assistant Attorney General*
> CHRISTIAN CORRIGAN
>   *Deputy Solicitor General*
> P.O. Box 201401
> Helena, MT 59620-1401
> christian.corrigan@mt.gov
> brent.mead2@mt.gov
>
> *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 1,559 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

*/s/Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 2, 2022                    /s/ *Brent Mead*
                                                                           BRENT MEAD