AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
  *Solicitor General*
CHRISTIAN B. CORRIGAN
  *Deputy Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., *Plaintiffs*, and MONTANA NURSES ASSOCIATION, *Plaintiff-Intervenors*, v. AUSTIN KNUDSEN, ET AL., *Defendants*. | No. CV-21-108-M-DWM **DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE TO LIMIT TESTIMONY AND EVIDENCE BASED ON PLAINTIFFS FIVE VALLEYS UROLOGY, WESTERN MONTANA CLINIC, AND PROVIDENCE INVOKING THE FIFTH AMENDMENT** |

**INTRODUCTION**

Plaintiffs Providence, Five Valleys Urology, and Western Montana Clinic each invoked the Fifth Amendment during their respective Rule 30(b)(6) depositions and refused to answer questions on that basis. *See* (Dep. O'Connor at 23:2–22); (Dep. Morris at 68:23–69:21, 84:8–85:18); (Dep. Trainor at 28:8–31:9).[1]

Defendants respectfully request this Court exclude any testimony or evidence related to the issues leading to invocation of the privilege and draw all proper adverse inferences based on the invocation of the privilege.

**ARGUMENT**

The Fifth Amendment to the United States Constitution provides that "no person … shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. Despite the amendment's textual link to "criminal case[s]," the United States Supreme Court has

---

[1] Excerpts of the deposition of Five Valley Urology Rule 30(b)(6) witness John O'Connor is attached as Exhibit 11 to the Declaration of Brent Mead (Sept. 2, 2022). Excerpts of the deposition of Western Montana Clinic Rule 30(b)(6) witness Meghan Morris is attached as Exhibit 12 to the Declaration of Brent Mead (Sept. 2, 2022). Excerpts of the deposition of Providence's Rule 30(b)(6) witness Karyn Trainor is attached as Exhibit 13 to the Declaration of Brent Mead (Sept. 2, 2022).

concluded that the Fifth Amendment's protections also apply in civil proceedings. *See Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

Invoking the privilege, however, carries consequences for litigants in a civil proceeding. "[I]n civil proceedings adverse inferences can be drawn from a party's invocation of this Fifth Amendment right." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000); *see also SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994) (forbidding an adverse inference "poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth."). "[S]uch adverse inferences can only be drawn when independent evidence exists of the fact to which the party refuses to answer." *Rudy-Glanzer*, 232 F.3d at 1264 (citations omitted). "[N]o negative inference can be drawn against a civil litigant's assertion of his privilege against self-incrimination unless there is substantial need for the information and there is not another less burdensome way of obtaining the information." *Id.* at 1265. "The tension between one party's Fifth Amendment rights and the other party's right to a fair proceeding is resolved by analyzing each instance … on a case-by-case basis under the … circumstances of that particular civil litigation." *Id.*

A district court has discretion to craft the appropriate remedy in response to a civil litigant's invocation of the Fifth Amendment. *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). These remedies are often severe. *See id.* (upholding grant of summary judgment against nominal civil fraud defendant who invoked Fifth Amendment privilege); *see also United States v. One Parcel of Real Property,* 780 F. Supp. 715, 722 (D. Or. 1991) (striking counterclaim and affirmative defense in their entirety because of defendant's use of the privilege); *SEC v. Benson,* 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987) (granting summary judgment against the silent party).

In *Benson,* the defendant invoked his Fifth Amendment right and tried to introduce evidence precluding summary judgment against him. *Benson,* 657 F. Supp. at 1129. The court, however, barred him from introducing any such evidence. The court stated that "by his initial obstruction of discovery and his subsequent assertion of the privilege, defendant has forfeited the right to offer evidence disputing the plaintiff's evidence or supporting his own denials." *Id.* At a minimum, a party can't "invoke the privilege against self-incrimination with respect to deposition

questions and then later testify about the same subject matter at trial." *Nationwide Life Ins. Cov. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008).

This principle carries even greater weight when a party's 30(b)(6) witness invokes the Fifth Amendment. It is "settled that a corporation has no Fifth Amendment privilege." *Braswell v. United States*, 487 U.S. 99, 105 (1988). A corporate entity *must* designate one or more representatives who will not invoke the Fifth Amendment. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 92 n.5 (2d Cir. 2012) (noting "a corporation may not refuse to submit to a Rule 30(b)(6) deposition … on the grounds that such acts may tend to incriminate it."); *see also Chevron U.S.A. Inc. v. M&M Petroleum Servs.*, 2008 U.S. Dist. LEXIS 106045, 2008 WL 5423820, at * 12–13 (C.D. Cal., Dec. 30, 2008) ("[B]ecause a corporation does not have a Fifth Amendment right against self-incrimination, [defendant's] alternate [30(b)(6)] designee may not refuse to answer questions by invoking the Fifth."). To allow otherwise "would effectively permit the corporation to assert on its own behalf the personal privilege of its individual agents." *United States v. Kordel*, 397 U.S. 1, 8 (1970) (internal quotations and citations omitted). Entities that fail to designate non-invoking corporate representatives may be sanctioned

under Rule 37. *See Nutramax Labs., Inc. v. Twin Labs., Inc.*, 32 F.Supp. 2d 331, 338 (D. Md. 1999) (striking affidavits and testimony from Rule 30(b)(6) designee who invoked the Fifth Amendment and ordering further deposition); *In re Anthracite Coal Antitrust Litig.*, 82 F.R.D. 364, 370 (M.D. Pa. 1979) (sanctioning defendants by barring introduction of evidence).

As noted, district courts are "free to fashion whatever remedy is required to prevent unfairness" when a civil litigant invokes the Fifth Amendment. *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir. 1979). Because civil plaintiffs may attempt to use the Fifth Amendment privilege "not merely [as] a shield but also as a sword," courts may impose stricter penalties when a *plaintiff* invokes the privilege. *Schemkes v. Presidential Limousine*, 2011 U.S. Dist. LEXIS 16579 at * 14– 15 (D. Nev., Feb. 18, 2011); *see also Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969) ("The scales of justice would hardly remain equal … if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim.").

Plaintiffs Providence, Five Valleys Urology, and Western Montana Clinic each invoked the Fifth Amendment during their respective Rule 30(b)(6) depositions. *See* (Dep. O'Connor at 23:2–22); (Dep. Morris at 68:23–69:21, 84:8–85:18); (Dep. Trainor at 28:8–31:9).

## I. Plaintiff Providence

Providence was asked whether the vaccination policy entered as (Doc. 95-1 at 426–431) is "currently in effect at Providence?" (Dep. Trainor at 28:13–19). Counsel instructed the witness to only answer as to prior to House Bill 702. (Trainor Dep. at 28:15–19). The witness answered "prior to House Bill 702, this would have been how we would have proceeded." (Trainor Dep. at 28:20–21).

Providence was then asked "is this policy still in effect?" (Trainor Dep. at 29:12–13). Counsel instructed the witness not to answer based on the Fifth Amendment. (Trainor Dep. at 29:14–16).

Providence was next asked "does Providence currently have a[n] immunization requirement for a physician and Allied Health professional policy that is in effect?" (Trainor Dep. at 29:21–24). Counsel again instructed the witness not to answer based on the Fifth Amendment. (Trainor Dep. at 29:25–30:2). Defendants' counsel asked the question again.

(Trainor Dep. at 30:7–10, 31:4–6). After another instruction not to answer from counsel, (Trainor Dep. at 30:12–21, 24–25), the witness ultimately invoked the Fifth Amendment. (Trainor Dep. at 31:9).

Defendants possessed "independent evidence" of the fact in question—namely Providence's vaccination policy—because the document was produced during discovery. *See Rudy-Glanzer*, 232 F.3d at 1264. Absent evidence to the contrary—which Plaintiffs refused to provide—the document plainly appears to be in effect today. The document in question has a clear effective date of "05/2022" and will next be reviewed on "05/2025." (Doc. 95-1 at 427).

It is Defendants' position that this document represents Providence's current immunization policy and should be treated as such. Further, based on Providence's testimony, this policy preexists HB 702. (Dep. Trainor at 36:25–37:6).

Plaintiffs make a variety of claims regarding the effects of HB 702 on their ability to comply with various government regulations and maintain the proper standard of care based on healthcare employees' vaccination status. *See* (Doc. 37, ¶¶ 34, 36, 42, 44, 48–49, 53–54, 58, 63–64, 71–72, 86(a)–(b), 87). But with this negative inference, the Court can and

should infer that Providence's vaccination policies have not changed since the enactment of HB 702. In other words, the harms alleged by Providence are remote, speculative, and unsubstantiated. This—of course—creates serious standing issues for Providence.

Defendants therefore request this Court exclude any testimony or evidence by Plaintiffs to the contrary.

## II. Plaintiff Five Valleys Urology

Counsel for Plaintiff Five Valleys Urology instructed the Rule 30(b)(6) witness not to answer the following question based on the Fifth Amendment: "So this would be a current policy when a new patient who has not indicated on their intake form that they've received the influenza vaccine. The question is, does [Five Valleys Urology] take any special precautions when that new patient first enters into an [Five Valleys Urology] facility?" (O'Connor Dep. at 23:11–22).

Prior to the non-answer, Five Valleys Urology testified that prior to the onset of the COVID-19 pandemic, Five Valleys did not take any special precautions when a patient indicated they were unvaccinated for influenza. (O'Connor Dep. at 21:5–23).

Plaintiffs make a variety of claims regarding the effects of HB 702 on their ability to comply with various government regulations and maintain the proper standard of care. *See* (Doc. 37, ¶¶ 34, 36, 42, 44, 48–49, 53–54, 58, 63–64, 71–72, 86(a)–(b), 87). Because Five Valleys pleaded the Fifth on the precautions it currently takes when a patient indicates they are unvaccinated for influenza, the Court can and should infer that Five Valleys Urology now takes the same special precautions based on a patient's vaccination status that it did before HB 702's enactment. In other words, they don't take any special precautions. (O'Connor Dep. at 21:5–23). The harms alleged by Five Valleys Urology are, therefore remote, speculative, and unsubstantiated. This—of course—creates serious standing issues for Five Valleys Urology. Defendants' request this Court exclude any testimony or evidence from Plaintiffs to the contrary.

### III. Plaintiff Western Montana Clinic

Plaintiffs' counsel instructed Western Montana Clinic's Rule 30(b)(6) witness not to answer the following question based on the Fifth Amendment: "Does [Western Montana Clinic] currently require all physicians, nurses, or other licensed healthcare professionals, as that term is defined in Section 50-5-101 subpart (36) of Montana Code, to disclose

their vaccination status for any vaccine-preventable diseases as a condition of employment? (Morris Dep. at 69:2–21).

Western Montana Clinic previously testified that prior to HB 702 it didn't require any vaccination as a condition of employment and the only vaccine the clinic regularly tracked was the influenza vaccine. (Morris Dep. at 62:6–20).

Plaintiffs make a variety of claims regarding the effects of HB 702 on their ability to comply with various government regulations and maintain the proper standard of care. *See* (Doc. 37, ¶¶ 34, 36, 42, 44, 48–49, 53–54, 58, 63–64, 71–72, 86(a)–(b), 87). But with this negative inference, the Court can and should infer that Western Montana Clinic has not, and does not, required any vaccination as a condition of employment, nor did Western Montana Clinic actively track staff vaccination beyond its annual flu shot drive. In other words, the harms alleged by Western Montana Clinic are remote, speculative, and unsubstantiated. This—of course—creates serious standing issues for them. This Court should exclude any evidence or testimony to the contrary.

Plaintiffs' counsel again instructed the witness not to answer (based on the Fifth Amendment) the question: "Has [Western Montana

Clinic] provided reasonable accommodations under the Montana Human Rights Act to employees or contractors since January 1st, 2021 due to the vaccination status of another [Western Montana Clinic] employee or employees?" (Morris Dep. at 84:12–85:18). The witness answered that from the period of January 1, 2021 to passage of HB 702 Western Montana Clinic "haven't had that circumstance arise." (Morris Dep. at 85:10–86.2).

But with this negative inference, the Court can and should infer that Western Montana Clinic has not had that circumstance arise post-HB 702. In other words, the harms alleged by Western Montana Clinic are remote, speculative, and unsubstantiated. This Court should exclude any evidence or testimony to the contrary.

## CONCLUSION

The Court should exclude any attempt at introducing evidence or testimony by the Plaintiffs on topics which they chose to remain silent during discovery.

Plaintiffs brought this action. The corporate Plaintiffs cannot legitimately use the Fifth Amendment as a shield blocking valid inquiries into their existing policies. Defendants sought to understand what changes

those corporations took based on HB 702. Because Plaintiffs' invoked the Fifth Amendment, this Court should draw the inference that they did not, in fact, change any policies as a result of HB 702.

DATED this 2nd day of September, 2022.

>Austin Knudsen
>Montana Attorney General
>
>DAVID M.S. DEWHIRST
>  Solicitor General
>
>*/s/Brent Mead*
>BRENT MEAD
>  *Assistant Solicitor General*
>CHRISTIAN CORRIGAN
>  *Deputy Solicitor General*
>P.O. Box 201401
>Helena, MT 59620-1401
>christian.corrigan@mt.gov.
>brent.mead2@mt.gov
>
>*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 2,692 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/ Brent Mead
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 2, 2022 /s/ *Brent Mead*
BRENT MEAD