AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
 Solicitor General
CHRISTIAN B. CORRIGAN
 Deputy Solicitor General
BRENT MEAD
 Assistant Solicitor General
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., | No. CV-21-108-M-DWM |
| *Plaintiffs*, | |
| and | **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT MOTION IN LIMINE** |
| MONTANA NURSES ASSOCIATION, | |
| *Plaintiff-Intervenors*, | |
| v. | |
| AUSTIN KNUDSEN, ET AL., | |
| *Defendants*. | |

## INTRODUCTION

Defendants' experts, Dr. Jayanta Bhattacharya and Dr. Ram Duriseti, properly elaborated upon and further supported their expert reports during deposition testimony. *See* Doc. 97 at 3. Such testimony falls within the scope of Rule 26(a)(2)(B). *See Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007).

Plaintiffs object to the fact that Defendants' experts diligently prepared for their depositions. Docs. 96, 97.[1] Plaintiffs incorrectly characterize Dr. Duriseti's and Dr. Bhattacharya's testimony as "rebuttal" reports. Doc. 97 at 2. The testimony was nothing of the sort. *E.g.*, Duriseti Dep. at 18:11–18.[2] Instead, Defendants' experts testified only to the opinions expressed in *their* reports. They, of course, read Plaintiffs' rebuttal reports and prepared to testify as to why those rebuttals didn't alter the opinions expressed in their own reports. *E.g.*, Duriseti Dep. at 18:11–18. Such preparation and elaboration supported only their original opinions

---

[1] Plaintiffs and Plaintiff-Intervenor jointly filed the motion in limine. (Doc. 96). Defendants refer to both parties as Plaintiffs in this brief.

[2] Defendants attached excerpts of Dr. Duriseti's deposition as Exhibit 5 to the Declaration of Brent Mead, September 14, 2022.

and in no way constitutes "rebuttal" testimony challenging the purportedly expert testimony of Plaintiffs' experts. *See* Doc. 97 at 9.

And Plaintiffs grossly mischaracterize their own actions in Dr. Duriseti's deposition. Doc. 97 at 8. Plaintiffs allege: "Defendants attempted to circumvent the disclosure rules when Dr. Duriseti attempted to offer undisclosed rebuttal opinions during his deposition on August 17, 2022." Doc. 97 at 8. Defendants *never* attempted to introduce Dr. Duriseti's deposition notes. *See* Duriseti Dep. at 10:10–11:15; 18:11–23; 20:6–17. Plaintiffs introduced those notes into the record—without first reviewing them. *See* Duriseti Dep. at 10:10–11:15 (Mr. Cole stated: "I'm going to ask to make those notes an exhibit to this deposition"). The record—indeed, the record Plaintiffs made—directly contradicts Plaintiffs' unfounded accusations. *See* Duriseti Dep. at 10:10–11:15.

The Court should deny Plaintiffs' motion and allow Defendants' experts to offer fulsome explanations and defenses of their expert reports.

### FACTUAL BACKGROUND

Plaintiffs argued this case could be handled on a compressed timeframe. Doc. 67 at 3–4. They further asserted they anticipated moving for summary judgment on each claim. Doc. 70 at 35. Over

Defendants' objections, the Court agreed to close discovery on August 19, 2022. Doc. 77. The parties considered but did not agree to stipulating that an expert's report would serve as their direct testimony. Doc. 79.

After Plaintiff-Intervenor requested a one-week extension, the parties agreed to simultaneously serve expert reports on July 15, 2022. Doc. 97 at 2.[3] Defendants retained Dr. Ram Duriseti and Dr. Jayanta Bhattacharya. Doc. 97 at 2; Docs. 86-5 (Expert Report of Dr. Bhattacharya), 94-7 (Expert Report of Dr. Duriseti)).

---

[3] Plaintiffs remarkably seem to take umbrage at the deadlines in this case. Doc. 97 at 2–3; Bhattacharya Dep. at 69:22–71:7; Duriseti Dep. at 28:22–29:12. Plaintiffs continue to produce documents that pre-exist Defendants' discovery requests long after the time for production has lapsed. Mead Decl., Ex. 1–3. This includes producing hundreds of pages of documents regarding Five Valleys Urology, Western Montana Clinic, and Providence on the eve of the respective Rule 30(b)(6) depositions for those entities. Mead Decl., Ex. 1–2. On September 9, 2022, two weeks *after* opening summary judgment briefs needed to be filed, Plaintiffs again supplemented production with documents that predate the deadline for responding to Defendants' discovery requests. Mead Decl., Ex. 3 (PL2038–2042 dates 07/12/2019; PL2043–2077 was last revised 06/2022). Plaintiffs offered no justification for this extraordinary delay in producing responsive documents.

On August 15, 2022, Plaintiffs disclosed two rebuttal experts: Dr. Taylor and Dr. King.  Plaintiffs' rebuttal expert reports challenged the reports of both Dr. Duriseti and Dr. Bhattacharya.  Doc. 97 at 3.[4]

Plaintiffs noticed depositions for both Dr. Duriseti and Dr. Bhattacharya for August 17, 2022.  Doc. 97 at 3.  Dr. Duriseti and Dr. Bhattacharya both prepared for their deposition by reviewing the rebuttal reports challenging their reports.  *See* Bhattacharya Dep. at 44:14–45:7; Duriseti Dep. at 18:11–18.[5]  During both depositions, Dr. Duriseti and Dr. Bhattacharya elaborated on and supported the opinions found in their respective expert reports.  At no time did Dr. Duriseti or Dr. Bhattacharya comment on any aspect of the expert reports disclosed by Plaintiffs on July 15, 2022.

## ARGUMENT

The federal rules "[do] not limit an expert's testimony simply to reading his report …. The rule contemplates that the expert will

---

[4] Plaintiffs' Rebuttal Expert Disclosure and the accompanying rebuttal expert reports of Dr. David Taylor ("Taylor Rebuttal") and Dr. David King ("King Rebuttal") are attached as Exhibit 4 to the Declaration of Brent Mead dated September 14, 2022.

[5] All relevant portions of Dr. Bhattacharya's deposition can be found in the previously filed Doc. 98-2.

supplement, elaborate upon, and explain … his report in his oral testi-mony." *Muldrow*, 493 F.3d at 167 (quoting *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)); *see also Godinez v. Huerta*, 2018 U.S. Dist. LEXIS 73623, at *22 (S.D. Cal. May 1, 2018) (citing *Muldrow*, 493 F.3d at 167). "The purpose of these expert reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (cleaned up); *see also Godinez*, 2018 U.S. Dist. LEXIS 73623, at *22 (citing *Metavante Corp.*, 619 F.3d at 762). So long as the testimony "does not differ substantially from opinions offered in the expert report … [it is] not subject to Rule 37 preclusion." *Godinez*, 2018 U.S. Dist. LEXIS 73623, at *22 (quoting *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 2010 U.S. Dist. LEXIS 104549, at *13 (N.D. Ill. Sept. 30, 2010).

Rule 26(a)(2)(C) provides that rebuttal experts are experts disclosed for the sole purpose of contradicting or rebutting an opposing party's ex-perts. *See* Fed. R. Civ. P. 26(a)(2)(C). The rule doesn't bar testimony by an initial expert replying to the critiques found in an opposing party's

rebuttal report. *Cf. Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D. N.J. 2004) ("Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material.").

Finally, even if the testimony triggers Rule 37(c)(1), the Court may still admit the testimony if its inclusion is harmless. *See* Fed. R. Civ. P. 37(c)(1); *see also United States v. Celgene Corp.*, 2016 U.S. Dist. LEXIS 189600, at *19–24 (C.D. Cal. June 29, 2016) (denying motion to exclude because opposing party had opportunity to depose the expert and retain rebuttal experts).[6]

In this instance, Dr. Duriseti and Dr. Bhattacharya testified at their depositions to the opinions in their own expert reports. They didn't testify to the opinions of Plaintiffs' initial experts. Plaintiffs possessed

---

[6] *See also Rebuttal evidence*, BLACK'S LAW DICTIONARY 702 (11th ed. 2019) ("Evidence offered to disprove or contradict the evidence presented by an opposing party. Rebuttal evidence is introduced in the rebutting party's answering case; it is not adduced, e.g., through cross-examination during the case-in-chief of the party to be rebutted."); *Rebuttal witness*, *id.* at 1921 ("A witness who contradicts or attempts to contradict evidence previously presented.").

ample opportunity to question Dr. Duriseti and Dr. Bhattacharya on their opinions, as the reports were timely disclosed on July 15, 2022, and Plaintiffs retained two rebuttal experts.

This Court should reject Plaintiffs' motion because it fails to recognize the nature of testimony offered at the depositions. All testimony at issue was confined to the initial opinions of Defendants' experts. Plaintiffs had ample opportunity to retain rebuttal experts and use those experts to prepare for the respective depositions of Dr. Duriseti and Dr. Bhattacharya. Further, Plaintiffs will be able to use the depositions of Dr. Duriseti and Dr. Bhattacharya to prepare a cross-examination at trial. In short, Plaintiffs cannot demonstrate any harm from the deposition testimony.

The Court should also deny Plaintiffs' motion regarding Dr. Duriseti because the notes at issue were introduced by the Plaintiffs themselves.

### A. The parties agree the testimony in question is not "rebuttal" testimony.

Dr. Bhattacharya and Dr. Duriseti testified as to their own opinions, not testimony "intended solely to rebut" Plaintiffs' experts. Doc. 97

at 8, 9.  That alone should negate Plaintiffs' improper framing of the issue.

Plaintiffs' motion assumes a temporal theory that for Dr. Duriseti's and Dr. Bhattacharya's deposition testimony to comply with the rule it needed to be disclosed simultaneously as a reply to the rebuttal reports of Dr. King and Dr. Taylor on August 15, 2022.  Doc. 97 at 7.  Rule 26 doesn't require that level of precognition.  Instead, the rule allows experts to support and elaborate on their original opinions without it being considered "rebuttal" testimony.  *See Crowley*, 322 F. Supp. 2d at 551.

Plaintiffs conflate Dr. Bhattacharya and Dr. Duriseti preparing for their depositions, *i.e.*, being prepared to defend their reports against Plaintiffs' rebuttal experts, with an attack on Plaintiffs' initial experts. *E.g.*, Bhattacharya Dep. at 71:25–73:10; Duriseti Dep. at 93:23–96:20. Plaintiffs disclosed Dr. King and Dr. Taylor as both initial and rebuttal experts, but Dr. Bhattacharya and Dr. Duriseti only testified as to the rebuttal reports during their respective depositions.  *See* Bhattacharya Dep. at 44:18–45:7; Duriseti Dep. at 18:11–19:2.

Plaintiffs also fail to identify the specific testimony from Dr. Bhattacharya and Dr. Duriseti that falls outside the scope of their reports

and then explain why the testimony is improper.  *See* (Doc. 97 at 7–9);

*see also Godinez*, 2018 U.S. Dist. LEXIS 73623, at *23 (denying motion

in limine for a failure to "point to any specific opinion").  That failure

defeats the motion.  Plaintiffs broadly seek to preclude Dr. Bhattacharya

and Dr. Duriseti from "offering opinions outside of their original expert

report." (Doc. 97 at 9).  But neither witness ever offered such opinions.

Nor can Plaintiffs' motion serve to limit Defendants' experts to the exact

words of their report.  *See Muldrow*, 493 F.3d at 167.  Because Defend-

ants' experts testified to their original opinions, this Court shouldn't con-

sider them rebuttal experts.

This Court should deny the motion.

## B. Dr. Bhattacharya testified only to his original opin-ions.

Plaintiffs object generally to testimony elicited during Dr.

Bhattacharya's deposition.  Doc. 97 at 3 (citing Bhattacharya Dep. 44:11–

66:15).  This testimony relates directly to Dr. Bhattacharya's expert re-

port.  At no point does Dr. Bhattacharya introduce new opinions.  He

explains, rather, why his opinions remain unchanged even after

Plaintiffs' rebuttal experts.  It's permissible for experts to defend their work and explain their opinions in the face of criticism.

Plaintiffs fail to point to any testimony by Dr. Bhattacharya that isn't a direct reply to criticisms of his report by the Plaintiffs' rebuttal experts.  Nor can they.  *See* Bhattacharya Dep. at 44:12–53:19; Taylor Rebuttal, ¶¶ 4–5; Doc. 86-5, ¶¶ 11–16 (discussing seroprevalence studies in Dr. Bhattacharya's report); Bhattacharya Dep. at 54:1–55:16; Taylor Rebuttal, ¶ 6; Doc. 86-5, ¶¶ 15–16 (discussing the relative risk COVID-19 poses to different age groups); Bhattacharya Dep. at 55:17–57:4; Taylor Rebuttal, ¶ 7; Doc. 86-5, ¶¶ 5, 12–16 (discussing excess mortality and mortality risk from COVID-19); Bhattacharya Dep. at 57:8–60:2; Taylor Rebuttal, ¶ 8; Doc. 86-5, ¶¶ 17–35 (discussing natural immunity); Bhattacharya Dep. at 60:7–61:9; King Rebuttal, ¶ 17; Doc. 86-5, ¶ 15 (discussing the chart included at Doc. 86-5, ¶ 15); Bhattacharya Dep. at 61:13–62:23; King Rebuttal, ¶¶ 15–16; Doc. 86-5, ¶¶ 15–16 (discussing Dr. Bhattacharya's opinion at Doc. 86-5, ¶ 16); Bhattacharya Dep. at 62:24–66:15; King Rebuttal, ¶ 19l; Doc. 86-5, ¶¶ 36–60 (discussing the efficacy of COVID-19 vaccines at preventing infection and mutation).

Plaintiffs also decry their ability to "prepare a meaningful" cross of Dr. Bhattacharya.  Doc. 97 at 8.  But the testimony in question relates directly to criticisms made by Plaintiffs' rebuttal experts against Dr. Bhattacharya's expert report.  *E.g.*, Dep. Bhattacharya at 60:7–62:23. Plaintiffs fail to explain how they couldn't prepare a meaningful cross examination of Dr. Bhattacharya when they had two rebuttal experts on the topic.  *See Celgene Corp.*, 2016 U.S. Dist. LEXIS 189600, at *22–23 (denying motion in limine because opposing party had ample time to read expert report, retain rebuttal experts, and depose the expert).

This Court should deny Plaintiffs' motion as to Dr. Bhattacharya because granting the motion would create a rule necessitating inclusion of vast amounts of likely irrelevant material in opening report "on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material."  *See In re High-Tech Emple. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 47181, at *56 (N.D. Cal. Apr. 4, 2014).

### C. Dr. Duriseti testified only to his original opinions.

Dr. Duriseti compiled extensive notes in preparation for his deposition.  Doc. 98-3.  Plaintiffs cannot point to any authority that Dr. Duriseti

violated any rules by organizing his thoughts into detailed notes to en-
sure he was adequately prepared for his deposition based on the critiques
raised by Plaintiffs' rebuttal experts.

Plaintiffs argue that they were hoodwinked into entering the notes
into the record.  (Doc. 97 at 8); *but see* Duriseti Dep. at 10:15–11:15.
Plaintiffs—not Defendants—entered the notes as an exhibit.  Duriseti
Dep. at 10:15–11:15.  Plaintiffs fail to justify why, after entering the notes
as an exhibit, they now wish to exclude them.  Doc. 97 at 8; *see also*
Duriseti Dep. at 10:15–11:15, 18:11–19:11 (Plaintiffs entered the notes
as an exhibit prior to reviewing them).[7]  Buyers' remorse doesn't justify
excluding Dr. Duriseti from presenting fulsome testimony defending his
original report.

As a threshold matter, this Court should deny the motion because
Dr. Duriseti's notes are simply notes, not an attempt to introduce a re-
buttal expert report.  *See Crowley*, 322 F. Supp. 2d at 551; Duriseti Dep.
at 18:11–18; 20:6–17; 23:7–10; 24:2–28:1; 29:13–31:14; Doc. 98-3.

---

[7] Dr. Duriseti testified that no one (including Defendants' counsel) asked him to
prepare these notes or to prepare a rebuttal report. *See* Duriseti Dep. at 21:25–22:23;
23:7–10; 26:16–19; 28:6–9; 29:13–15; 98:2–7.

A cursory review of Dr. Duriseti's notes demonstrates the notes relate to his original report by supporting that report against Plaintiffs' rebuttal experts' attacks.  *See generally* Doc. 98-3.  Dr. Duriseti's notes can be broken down into six sections and each section relates to specific criticisms against parts of his expert report.  *See* Doc. 98-3, ¶¶ 1–3; Taylor Rebuttal, ¶ 1; Doc. 94-7 at 4 (discussing viral transmission); Doc. 98-3, ¶¶ 4–15; Taylor Rebuttal, ¶¶ 2–3; Doc. 94-7 at 5–6 (discussing COVID-19 transmission rates in nursing homes); Doc. 98-3, ¶¶ 16–62; Taylor Rebuttal, ¶¶ 4–8; Doc. 94-7 at 18–20, 25 (discussing COVID-19 vaccine efficacy related to low-risk populations, namely children); Doc. 98-3, ¶¶ 63–72, King Rebuttal, ¶¶ 1–6, Doc. 94-7 at 6–8 (discussing the Danish household study in Dr. Duriseti's report); Doc. 98-3, ¶¶ 73–77; King Rebuttal, ¶¶ 7–12; Doc. 94-7 at 8–18 (discussing Walgreen's data in Dr. Duriseti's report); Doc. 98-3, ¶¶ 78–80; King Rebuttal, ¶¶ 18–20; 94-7 at 19–26 (discussing the ineffectiveness of COVID-19 vaccine mandates).

Plaintiffs cannot claim surprise at Dr. Duriseti's preparation to defend specific points of his report.  Doc. 97 at 9.  Plaintiffs had the benefit of their rebuttal experts to prepare for the deposition.  *See generally* Mead Decl., Exhibit 4.  Plaintiffs could've asked Dr. Duriseti questions related

to each section of his notes because each section related to a topic of his expert report. *See* Duriseti Dep. at 19:8–11. Plaintiffs did, in fact, depose Dr. Duriseti on these points. *E.g.*, Duriseti Dep. at 74:1–93:8 (discussing Walgreens data); *see also* Doc. 98-3, ¶¶ 73–77; King Rebuttal, ¶¶ 7–12; Doc. 94-7 at 8–18 (also discussing Walgreens study); Duriseti Dep. at 56:6–69:4 (discussing Danish household study); Doc. 98-3, ¶¶ 63–72, King Rebuttal, ¶¶ 1–6, Doc. 94-7 at 6–8 (also discussing Danish household study).

No amount of mischaracterization or insinuations of bad faith change that fact.[8]

After entering the notes into the record—and then finally reading them—Plaintiffs paused the deposition. Duriseti Dep. at 19:8–11. When the deposition resumed, Plaintiffs stated they would need an additional two hours to depose Dr. Duriseti on the notes. Duriseti Dep. at 25:14–

---

[8] Plaintiffs baselessly attack Dr. Duriseti's truthfulness by alleging the notes' organization somehow constitutes a "report" because they mention courts and Dr. Duriseti signed them. Doc. 97 at 8 n.1. Dr. Duriseti *repeatedly* testified why he, as a non-lawyer, did this. *See* Duriseti Dep. at 20:6–17; 23:7–10; 24:2–28:1; 29:13–31:14. He also testified that no one asked him to prepare these notes or a rebuttal opinion. *See* Duriseti Dep. at 21:25–22:23; 23:7–10; 26:16–19; 28:6–9; 29:13–15; 98:2–7.

26:6. Ultimately, however, Plaintiffs declined to avail themselves of their option to hold the deposition open and closed the deposition. Duriseti Dep. at 111:1–3.

This Court should deny Plaintiffs' motion as it applies to Dr. Duriseti. Dr. Duriseti's deposition testimony concerned only the opinions in his expert report, he never purposed to rebut any opinions by Plaintiffs' initial experts. He properly testified as to his opinions and Plaintiffs now possess the benefit of his deposition for trial.

Further, this Court should deny Plaintiffs' attempt to undo their own actions during Dr. Duriseti's deposition. Plaintiffs—not Defendants or Dr. Duriseti—introduced the notes in question.

## CONCLUSION

This Court should deny Plaintiffs' motion because Defendants' experts properly testified only as to their own opinions. This Court should also deny Plaintiffs' attempt to exclude evidence that Plaintiffs entered into the record.

DATED this 14th day of September, 2022.

Austin Knudsen
Montana Attorney General

DAVID M.S. DEWHIRST
  *Solicitor General*

CHRISTIAN CORRIGAN
  *Deputy Solicitor General*

*/s/ Brent Mead*
BRENT MEAD
  *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
christian.corrigan@mt.gov.
brent.mead2@mt.gov

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 3,013 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

*/s/ Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 14, 2022          */s/Brent Mead*
                                   BRENT MEAD