Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | CV 21-108-M-DWM |
| Plaintiffs, | |
| and | |
| MONTANA NURSES ASSOCIATION, | PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT |
| Plaintiff-Intervenors, | |
| v. | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .........................................................................1

II.   ARGUMENT.................................................................................1

      A.   Defendants have not met their burden of establishing
           that the undisputed facts entitle them to judgment as
           a matter of law. ...........................................................1

      B.   Defendants are not entitled to summary judgment on
           Plaintiffs' preemption claim under the Americans
           with Disabilities Act ("ADA"). ...............................................2

      C.   Defendants are not entitled to summary judgment
           based upon preemption under the Occupational Safety
           and Health Act ("OSH Act").................................................9

      D.   Plaintiffs' CMS claims survive summary judgment. ..........................13

      E.   Defendants are not entitled to summary judgment on
           the individual Plaintiffs' claims related to violation of
           the Montana Constitutional right to a safe and
           healthy environment. ........................................................15

      F.   Defendants are not entitled to summary judgement
           on Plaintiffs' equal protection claims. .....................................19

III.  CONCLUSION.............................................................................28

CERTIFICATE OF COMPLIANCE.......................................................29

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arc of Iowa v. Reynolds*,
   F.4th 1162 (8th Cir. 2022) ....................................................................5

*Babbitt v. UFW Nat'l Union*,
   442 U.S. 289 (1979).............................................................................5

*Biden v. Missouri*,
   142 S. Ct. 647 (2022) ......................................................... 11, 13-14, 18

*Brach v. Newsom*,
   6 F.4th 904 (9th Cir. 2021) ................................................................22

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................2

*Coal. of Clergy v. Bush*,
   310 F.3d 1153 (9th Cir. 2002) ..........................................................20

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)..........................................................................13

*DOC v. New York*,
   139 S. Ct. 2551 (2019) ........................................................................5

*Dothard v. Rawlinson*,
   433 U.S. 321 (1977)...........................................................................17

*E.T. v. Morath*,
   571 F.Supp. 3d 639 (W.D. Tex. Nov. 10, 2021) ...................................5

*E.T. v. Paxton*,
   No. 21-51083, 2022 U.S. App. LEXIS 20437
   (5th Cir. 2022)................................................................................. 3-5

*Flower World, Inc. v. Sacks*,
   43 F.4th 1224 (9th Cir. 2022) ...........................................................11

TABLE OF AUTHORITIES CONT'D

Page(s)

**Cases**

*Frazier v. Boomsma*,
No. CV 07-08040-PHX-NVW, 2007 U.S. Dist. LEXIS 72427
(D. Ariz. Sep. 27, 2007) ........................................................................ 4-5

*Gallinger v. Becerra*,
898 F.3d 1012 (9th Cir. 2018) ................................................................20

*Hensley v. Mont. State Fund*,
2020 MT 317, 402 Mont. 277, 477 P.3d 1065 ............................... 19-20

*Hillsborough Cty. v. Auto. Med. Labs., Inc.*,
471 U.S. 707 (1985) .............................................................................6, 13

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905) ............................................................... 16-18, 25

*Jaksha v. Butte-Silver Bow Cty.*,
2009 MT 263, 352 Mont. 46, 214 P.3d 1248 .......................................22

*Mary Jo C. v. N.Y. State & Local Ret. Sys.*,
707 F.3d 144 (2d Cir. 2013)....................................................................8

*Mont. Cannabis Indus. Ass'n v. State*,
2012 MT 201, 366 Mont. 224, 286 P.3d 1161 ............................... 15-16

*Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*
228 F.3d 1043 (9th Cir. 2000) ...............................................................26

*Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*,
142 S. Ct. 661 (2022) ...................................................................... 11-12

*Nordstrom v. Ryan*,
856 F.3d 1265 (9th Cir. 2017) .................................................................4

## TABLE OF AUTHORITIES CONT'D

Page(s)

**Cases**

*Prince v. Massachusetts*,
  321 U.S. 158 (1944) ........................................................................17

*Seaman v. Virginia*,
  No. 3:22-cv-00006, 2022 U.S. Dist. LEXIS 52136
  (W.D. Va. March 23, 2022) .............................................................5, 8

*Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*
  4 F.4th 747 (9th Cir. 2021) ...............................................................25

*Tohono O'odham Nation v. City of Glendale*,
  804 F.3d 1292 (9th Cir. 2015) ..........................................................14

*Tucson Woman's Clinic v. Eden*
  379 F.3d 531 (9th Cir. 2004) ............................................................26

*U.S. v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) ..............................................................4

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ............................................................5

*Virginia v. Am. Booksellers Ass'n*,
  484 U.S. 383 (1988) ..........................................................................4

*W. Air Lines v. Criswell*,
  472 U.S. 400 (1985) ........................................................................17

*Wiser v. State*,
  2006 MT 20, 331 Mont. 28, 129 P.3d 133 ......................................16

**Statutes**

28 C.F.R. § 35.130(b)(7) .....................................................................7

29 C.F.R. § 1910.502 ........................................................................12

TABLE OF AUTHORITIES CONT'D

Page(s)

**Statues**

29 C.F.R. § 1910.1030 ................................................................................11

29 C.F.R. § 1910.1030(b) ...........................................................................11

29 C.F.R. § 1910.1030(f)(1) ........................................................................11

29 C.F.R. § 1910.1030(f)(2) ........................................................................11

29 C.F.R. § 1910.1030(f)(4) ........................................................................12

29 C.F.R. § 1910.1030(h)(1)(ii)(B) ............................................................12

42 C.F.R. § 481.42(g) .................................................................................13

42 C.F.R. § 481.640(f) ...............................................................................13

42 C.F.R. § 482.41 .....................................................................................14

42 C.F.R. § 482.42 ................................................................................ 14-15

42 C.F.R. § 482.42(a)(2) ............................................................................14

42 U.S.C. § 12113 ................................................................................. 16-17

42 U.S.C. § 12182(a) ...................................................................................7

42 U.S.C. § 12182(b)(2)(A)(ii) ....................................................................7

42 U.S.C. § 12182(b)(2)(A)(iii) ...................................................................7

Mont. Code Ann. § 20-5-403 ......................................................................19

Mont. Code Ann. § 49-2-312 ........................................................................1

Mont. Code Ann. § 49-2-312(3)(b) ....................................................... 21-23

TABLE OF AUTHORITIES CONT'D

Page(s)

**Statues**

Mont. Code Ann. § 49-2-313 .................................................................. 1, 21, 23, 27

Mont. Code Ann. § 50-5-101(18) ............................................................................1

Mont. Code Ann. § 50-5-101(26)(a)........................................................................24

Mont. Code Ann. § 50-5-101(32) ............................................................................24

Mont. Code Ann. § 52-2-735 ...................................................................................19

**Rules**

Mont. Admin. R.  § 24.9.613 ...................................................................................17

Mont. Admin. R. § 37.95.140 ..................................................................................19

**Constitutional Provisions**

Mont. Const. art. II, § 3...........................................................................................15

INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| 1 | St. Patrick's Hospital's Influenza Vaccination Policy | 1-1 to 1-2 |
| 2 | St. Joseph Hospital's New Caregiver Health Screening Policy | 2-1 to 2-6 |
| 3 | Providence's Guideline:  Communicable Disease-Guidelines for Exposure dated July 1, 2019 | 3-1 to 3-24 |
| 4 | Email from S. Dotson to K. Trainor and J. VanFossen dated November 9, 2021 | 4-1 to 4-2 |
| 5 | Providence email string dated February 2-4, 2022 | 5-1 to 5-4 |
| 6 | Excerpts from the Deposition of Ram Duriseti MD, Ph.D, taken August 17, 2022 | 6-1 to 6-6 |
| 7 | Excerpts from the 30(b)(6) Deposition of Montana Nurses Association, taken August 24, 2022 | 7-1 to 7-5 |
| 9 | Excerpts from the 30(b)(6) Deposition of the Montana Department of Public Health and Human Services, taken August 18, 2022 | 9-1 to 9-7 |
| 10 | Plaintiffs' 30(b)(6) Deposition Designations for Five Valleys Urology, dated July 22, 2022 | 10-1 to 10-11 |
| 11 | Plaintiffs' 30(b)(6) Deposition Designations for Western Montana Clinic, dated July 22, 2022 | 11-1 to 11-12 |
| 12 | Plaintiffs' Amended 30(b)(6) Deposition Designations for Providence Health and Services, dated August 8, 2022 | 12-1 to 12-13 |
| 13 | Excerpts from the Deposition of Dr. Gregory Holzman, taken on August 16, 2022 | 13-1 to 13-6 |

Plaintiffs respectfully file this Brief in Opposition to Defendants' Motion for Partial Summary Judgment.  As illustrated herein, Defendants are not entitled to summary judgment on Plaintiffs' claims.

## I.     INTRODUCTION

While Defendants' strategy has been to make this case solely about COVID-19, Montana Code Annotated § 49-2-312[1] ("MCA 49-2-312") has a much broader, and frankly deadlier, impact.  MCA 49-2-312 prevents physician offices and hospitals[2] from utilizing vaccination of their staff to prevent the transmission and spread of all vaccine-preventable diseases.  As outlined herein and in Plaintiffs' Brief in Support of their Motion for Summary Judgment, the focus on COVID-19 is merely a red herring to distract from the fact that Plaintiffs should prevail based upon the undisputed facts and MCA 49-2-312 should be enjoined.

## II.   ARGUMENT

**A.     Defendants have not met their burden of establishing that the undisputed facts entitle them to judgment as a matter of law.**

Rather than utilize actual, undisputed facts in support of their motion, Defendants utilize logical fallacies and selective quotations to claim facts are "undisputed."  This is insufficient to support summary judgment.  While Plaintiffs

---

[1] House Bill 702 was codified at Montana Code Annotated §§ 49-2-312 and 49-2-313.

[2] Unless specifically noted otherwise, references to "hospital" includes "critical access hospitals" as defined in Montana Code Annotated § 50-5-101(18).

maintain that the facts material to the claims at issue are undisputed, certain facts cited by Defendants must be rejected as inconsistent with the record. (Pls.' SUF, Doc. 83).

The party moving for summary judgment bears the burden of establishing the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Throughout their brief and Statement of Undisputed Facts, Defendants' selectively quote portions of discovery responses, documents, and testimony to support their inaccurate assertions. *See* Pls.' and Plaintiff-Intervenor's Statement of Disputed Facts ¶¶ 19-20, 23-24, 26-28, 31-32, 34-37, 39-41, 43, 48-49, 53, 55, 57-59, 61, 65, 67-68, 73, 75-77, 79, 82, 87-88, 92-93, Sept. 16, 2022 ("SDF"). Defendants' spin on the "facts" is insufficient to meet their burden and summary judgment should be denied.

## B. Defendants are not entitled to summary judgment on Plaintiffs' preemption claim under the Americans with Disabilities Act ("ADA").

Defendants' sole argument for summary judgment on Plaintiffs' ADA preemption claim is that there are not sufficient facts to support it. (Doc. 92 at 10-12). Not only does this argument conflate standing and the underlying preemption claim, it ignores the undisputed facts. Plaintiffs have established undisputed facts sufficient to demonstrate that MCA 49-2-312 is preempted by the ADA.

Defendants' assertion that "*no one—including the individual Plaintiffs—has requested a reasonable accommodation based on the vaccination or immunity*

*status of healthcare workers,*" is patently false.  (Doc. 92 at 9).  Five Valleys

testified it had an employee request an accommodation based upon the vaccination

status of co-workers.  SDF ¶¶ 40, 43, 112.  The Clinic testified it was aware of

conversations between patients and their care team regarding accommodations

related to vaccination status of Clinic employees and that it attempted to

accommodate those requests.  SDF ¶¶ 58, 59, 61, 108.  Providence testified that it

was aware of requests by patients for accommodations based upon vaccination

status of its employees.  SDF ¶¶ 75, 109.  Providence also had an employee quit

because it could not guarantee that the employee would only work with vaccinated

staff.  SDF ¶ 110.  Mr. Carpenter and Mrs. Page had discussions with their

providers regarding their providers' vaccination status.  SDF ¶¶ 23, 24, 121, 133.

In fact, the Montana Human Rights Bureau ("HRB") recognized that

accommodations for disabled individuals can be related to vaccination status.  SDF

¶ 113; (*see also* Doc. 86-32 at 47 (EEOC recognizing vaccination status can impact

ADA undue hardship analysis)).  Defendants' misrepresentations of Plaintiffs'

discovery responses and testimony are insufficient to support summary judgment,

particularly where the undisputed facts prove their assertion is blatantly incorrect.

　　In addition, Defendants' heavy reliance on *E.T. v. Paxton*, No. 21-51083,

2022 U.S. App. LEXIS 20437 (5th Cir. 2022) is misplaced, as they conflate

standing and the underlying preemption claim.  (Doc. 35).  In *E.T.*, the Fifth

Circuit analyzed whether the plaintiffs had standing, finding they had not presented an "injury in fact." 2022 U.S. App. LEXIS 20437, at *6-8. "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citations omitted); *see also Nordstrom v. Ryan*, 856 F.3d 1265, 1270-1271 (9th Cir. 2017) (applying the law of the case doctrine to decisions related to standing). Here, this Court has already ruled that Plaintiffs have standing. (Doc. 35). Specifically, this Court noted that the alleged injury for the institutional Plaintiffs was "not being able to inquire about the vaccination status of or require vaccinations for healthcare workers to reduce transmission risk." (Doc. 35 at 10). This "injury in fact" has been conclusively established through discovery in this case. SDF ¶¶ 98-106.

In addition to the substantial risk of harm related to the increased transmission of vaccine-preventable diseases, Plaintiffs also face injury in fact from civil and criminal liability because of MCA 49-2-312. *See Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383,392 (1988) (injury in fact requirement is met where "the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution") (citations omitted); *Frazier v. Boomsma*, No. CV 07-08040-PHX-NVW, 2007 U.S. Dist. LEXIS 72427, at *21-23 (D. Ariz. Sep. 27,

2007).  In *E.T.*, the plaintiffs did not face civil or criminal liability because of the state law.  *See E.T. v. Morath*, 571 F.Supp. 3d 639, 646 (W.D. Tex. Nov. 10, 2021) (plaintiffs were seven students with disabilities).  Plaintiffs need not "await the consummation of threatened injury to obtain preventive relief."  *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979).  *See also Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1015 (9th Cir. 2013).

Moreover, *E.T.* is not binding authority on this Court and other courts have come to the opposite conclusion regarding injury in fact.  *See Arc of Iowa v. Reynolds*, 24 F.4th 1162, 1169-1170 (8th Cir. 2022) (finding substantial risk of bodily harm from COVID-19 for individuals with disabilities independently satisfies injury in fact); *Seaman v. Virginia*, No. 3:22-cv-00006, 2022 U.S. Dist. LEXIS 52136, at *30-32 (W.D. Va. March 23, 2022) (finding injury in fact satisfied by the significant risk of bodily harm to individuals with disabilities if they contract COVID-19).  *See also DOC v. New York*, 139 S. Ct. 2551, 2565 (2019) (noting that future injuries may constitute injury in fact if "there is a substantial risk that the harm will occur").  Here, the risk of injury is even more substantial than in these cases and *E.T.* because the harm caused by MCA 49-2-312 is not limited to COVID-19.  MCA 49-2-312 exposes Plaintiffs to criminal and civil liability, conflicting obligations under federal law, and a substantial risk of harm from all vaccine-preventable diseases.

Regardless of Defendants' attempts to re-argue standing, Plaintiffs in this case have provided undisputed, specific facts to illustrate that MCA 49-2-312 conflicts with the ADA.  The presumption against preemption is overcome where "'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" *Hillsborough Cty. v. Auto. Med. Labs., Inc.,* 471 U.S. 707, 713 (1985) (internal citations omitted) (emphasis added). Plaintiffs have provided undisputed facts that hospitals and physician offices employ disabled employees and treat disabled patients as public accommodations. SDF ¶¶ 99-100.  The individual Plaintiffs have disabilities, as defined by the ADA. SDF ¶¶ 104, 115, 124, 130, 134, 138.  The individual Plaintiffs, as well as other members of the public and employees of hospitals and physician offices, are more susceptible to vaccine-preventable illnesses and have a substantial risk of increased serious harm or death from such illnesses, due to their disabilities.  SDF ¶¶ 100-105, 115-117, 124-125, 130, 134, 138.  Those individuals should not be exposed to unvaccinated healthcare workers.  SDF ¶¶ 105, 116-117, 124-125, 131.  Patients in Montana, including those treated at Providence, Five Valleys and the Clinic, have sought the accommodation of only being treated by vaccinated staff.  SDF ¶¶ 107-109, 111.  Additionally, employees have sought accommodations related to the vaccination status of healthcare workers.  SDF ¶¶ 110, 112.  Prior to MCA 49-2-

312, physician offices and hospitals were permitted to, and did, treat vaccinated and unvaccinated staff differently.  SDF ¶¶ 58-59, 152.  Plaintiffs have conclusively established that MCA 49-2-312 prevents them from accommodating individuals with disabilities that require accommodations based upon the vaccination status of staff.

Defendants' arguments regarding changes in policies similarly misses the mark.  Defendants confusingly appear to claim that because the institutional Plaintiffs do not have any policies that violate MCA 49-2-312, they cannot establish that statute conflicts with the public accommodation requirements of the ADA.  (Doc. 92 at 14).  ADA public accommodation requirements do not solely apply to policies.  The ADA is aimed at providing individuals with disabilities "the full and equal enjoyment" of public accommodations and requires public accommodations to make "reasonable modifications" and "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals[.]"  42 U.S.C. §§ 12182(a), (b)(2)(A)(ii), (iii); 28 C.F.R. § 35.130(b)(7).  Here, it is irrelevant whether the institutional Plaintiffs currently have policies that violate

MCA 49-2-312.[3]  MCA 49-2-312 conflicts with the ADA because the institutional Plaintiffs are prohibited from taking necessary steps to accommodate patients with disabilities.  MCA 49-2-312 prevents hospitals and physician offices from definitively knowing their staff's vaccination status and from removing nonvaccinated workers from providing direct patient care.  As such, it conflicts with the reasonable accommodation requirement of the ADA and is preempted.

Plaintiffs have established that MCA 49-2-312 prevents and impedes hospitals and physician offices from engaging in the interactive process with, and reasonably accommodating, their employees and patients with disabilities.  Where a state law prevents or limits considering whether a particular accommodation (such as masking or vaccination) would be necessary as a "reasonable modification," the law is preempted.  *See Seaman,* 2022 U.S. Dist. LEXIS 52136, at *54-55; *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013) (finding the ADA's reasonable modification requirement preempts inconsistent state laws).  Accommodating requests of patients with disabilities to be treated by only vaccinated staff requires knowing the vaccination status of staff and removing nonvaccinated staff from those patient interactions.  Moreover, when

---

[3] Though, Defendants appear to take an inconsistent position in their motion in limine (Doc. 111, 112), purportedly asking the Court to infer that the institutional Plaintiffs' pre-HB 702 policies, which conflict with MCA 49-2-312, have not changed.

employees with disabilities seek the accommodation of not being exposed, or limiting exposure, to nonvaccinated staff, MCA 49-2-312 prohibits and impedes the interactive and reasonable accommodation process. Hospitals and physician offices cannot require disclosure of other employees' vaccination status to consider potential reasonable accommodations for the disabled employee and cannot require nonvaccinated staff to take measures to protect the disabled employee.

Defendants have failed to establish they are entitled to summary judgment on Plaintiffs' ADA preemption claim. In fact, their motion further illustrates that MCA 49-2-312 prohibits and impedes compliance with the ADA and supports summary judgment in favor of Plaintiffs. (*See* Doc. 82).

## C. Defendants are not entitled to summary judgment based upon preemption under the Occupational Safety and Health Act ("OSH Act").

Defendants have not met their burden on summary judgment, as the "facts" they cite are inaccurate and they are not entitled to judgment as a matter of law.

Defendants claim they are entitled to summary judgment because Plaintiffs have not required vaccinations and do not include disclosure of vaccination status as part of their OSH Act compliance plans. (Doc. 92 at 17). Those statements are undisputedly inaccurate. For example, Five Valleys OSHA manual requires employees receive a Hepatitis B vaccine, provide proof of complete Hepatitis B vaccination series, provide proof that the employee is immune, or provide

documentation indicating the employee has declined to be vaccinated for Hepatitis B.  SDF ¶¶ 48-49, 139-141.  If exposure occurs, the manual provides that Five Valleys must assess the employee's immunity status and obtain a history of Hepatitis B vaccination for the employee.  SDF ¶¶ 48-49, 139-141.  The Employee Medical Record form requires the employee provide a "[h]istory of [Hepatitis B] vaccination (date received, or if not received, a brief explanation of why not)."  SDF ¶ 141.  Five Valleys also required its providers to have privileges at hospitals as a condition of employment and those hospitals required proof of immunization in order to obtain privileges.  SDF ¶¶ 34-35.  Additionally, prior to MCA 49-2-312, Providence required potential employees to provide:  proof of vaccinations for MMR, Varicella, and Hepatitis B; a titer demonstrating sufficient immunity status; or, a written vaccine declination.  SDF ¶ 79.  If the potential employees declined vaccination, it could limit their work locations and might require additional PPE, depending on their position.  SDF ¶ 79.  Similarly, the Clinic, prior to MCA 49-2-312, tracked whether employees were vaccinated for influenza.  SDF ¶¶ 55, 57-59.  If the flu reached a certain level of community prevalence, the Clinic would take additional steps to protect employees and patients from those who were not vaccinated.  SDF ¶¶ 57-59.

    As a matter of law, MCA 49-2-312 conflicts with the OSH Act.  Under the OSH Act, employers are required to "provide a workplace that is 'free from

recognized hazards that are causing or are likely to cause death or serious physical harm to [its] employees' (the 'general duty' clause) and 'comply with occupational safety and health standards promulgated' by the Occupational Safety and Health Administration (OSHA)." *Flower World, Inc. v. Sacks*, 43 F.4th 1224 (9th Cir. 2022) (quoting 29 U.S.C. § 654(a)). "OSHA is charged with regulating 'occupational' hazards and the safety and health of 'employees.'" *Nat'l Fed'n of Indep. Bus. v. DOL, OSHA,* 142 S. Ct. 661, 665 (2022) (citations omitted). Diseases constitute workplace hazards under the OSH Act where the diseases pose "a special danger because of the particular features of an employee's job or workplace[.]" *Id.* at 665-66. The Supreme Court has recognized that healthcare workers are generally required to be vaccinated against diseases—thus, recognizing diseases are a workplace hazard specific to healthcare workers. *Biden v. Missouri*, 142 S. Ct. 647, 653 (2022); *see also* 29 C.F.R. § 1910.1030.

OSHA has implemented standards related to vaccination of healthcare workers. OSHA has recognized that healthcare workers face a risk of "contact with blood or other potentially infectious materials that results from the performance of [their] duties." 29 C.F.R. § 1910.1030(b). OSHA requires healthcare employers to make the Hepatitis B vaccine available to all employees who have occupational exposure. 29 C.F.R. § 1910.1030(f)(1)-(2). It further requires employers to maintain records of the employee's vaccination status. 29

C.F.R. §§ 1910.1030(f)(4) & 1910.1030(h)(1)(ii)(B).  Moreover, OSHA has also

recognized COVID-19 as a workplace hazard for healthcare workers.  29 C.F.R. §

1910.502[4]; *see also Nat'l Fed'n*, 142 S. Ct. at 665 (noting OSHA has the authority

"to regulate occupation-specific risks related to COVID-19").

      MCA 49-2-312 precludes healthcare employers from enforcing policies or

procedures that minimize the transmission of vaccine-preventable diseases,

including Hepatitis B and COVID-19, in the workplace.  MCA 49-2-312 prohibits

employers from obtaining accurate records regarding their staff's vaccination

status and from making changes to the terms or conditions of employment (such as

additional PPE or testing) based upon vaccination status.  It is undisputed that

vaccination is a feasible means of abating the hazard caused by vaccine-

preventable diseases.  SDF ¶¶ 98, 106.  MCA 49-2-312 frustrates the OSH Act

and OSHA's clear and unambiguous objective of preventing transmission of

communicable disease in the healthcare industry.  As such, summary judgment in

favor of Defendants on Plaintiffs' OSHA claims is improper.

---

[4] Although portions of the OSHA's Emergency Temporary Standard for
healthcare workers have lapsed, COVID-19 was still recognized as a workplace
hazard by OSHA.  Moreover, OSHA has stated "the terms of the Healthcare ETS
remain relevant in general duty cases in that they show that COVID-19 poses a
hazard in the healthcare industry and that there are feasible means of abating the
hazard." https://www.osha.gov/coronavirus/ets, last visited September 9, 2022.

**D.     Plaintiffs' CMS claims survive summary judgment.**

Defendants' Motion for Summary Judgment related to Plaintiffs' CMS claims[5] also fails as a matter of law.  MCA 49-2-312 stands as an obstacle to compliance with CMS conditions of participation and, therefore, is preempted.

As noted above, conflict preemption arises "when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" *Hillsborough,* 471 U.S. at 713 (internal citations omitted) (emphasis added).  "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).  The intended purpose of the CMS conditions of participation "is to ensure that healthcare providers who care for Medicare and Medicaid patients protect their patients' health and safety." *Biden*, 142 at 650.  Those "conditions have long included a requirement that certain providers maintain and enforce an 'infection prevention and control program designed. . . to help prevent the development and transmission of communicable diseases and infections.'" *Id*. at 651 (citations omitted).  "[E]nsuring that providers take steps to avoid transmitting a dangerous

---

[5] Defendants do not move for summary judgment on the claim that MCA 49-2-312 is preempted by the CMS COVID-19 vaccine mandate (42 C.F.R. § 481.42(g) (hospitals); 42 C.F.R. § 481.640(f) (critical access hospitals)). (Doc. 92).

virus to their patients is consistent with the fundamental principle of the medical profession:  first, do no harm."  *Id.* at 652.

MCA 49-2-312 stands as a clear and manifest obstacle to the purpose of the CMS conditions of participation by prohibiting participating facilities from utilizing an essential tool of disease prevention and control—vaccines.  *See e.g. Tohono O'odham Nation v. City of Glendale*, 804 F.3d 1292, 1300-1301 (9th Cir. 2015).  42 C.F.R. § 482.41 requires that hospitals "must be … maintained to ensure the safety of the patient[.]"  Similarly, 42 C.F.R. § 482.42 requires hospitals "have active hospital-wide programs for the surveillance, prevention, and control of [Healthcare-Associated Infections] and other infectious diseases."  It further provides that the hospital's "programs must demonstrate adherence to nationally recognized infection prevention and control guidelines[.]"  42 C.F.R. § 482.42.  It goes on to state that the infection prevention and control program must employ "methods for preventing and controlling the transmission of infections within the hospital and between the hospital and other institutions and settings."  42 C.F.R. § 482.42(a)(2).

It is undisputed that vaccines are a nationally recognized means of infection control.  SDF ¶¶ 98, 106.  *See also Biden*, 142 S. Ct. at 653.  Vaccines are undisputedly, and nationally recognized as, effective at preventing transmission of infectious diseases, such as Measles, Mumps, Rubella, Polio, Varicella, Pertussis,

Hepatitis B, etc.  SDF ¶¶ 98, 106.  42 C.F.R § 482.42 requires hospitals adhere to such nationally recognized standards.  MCA 49-2-312 prohibits hospitals from meaningfully addressing the infection risk posed by nonvaccinated staff.  In fact, it prevents them from even obtaining accurate information regarding their staff's vaccination status.  Accordingly, MCA 49-2-312 conflicts with, and stands as an obstacle to, hospitals implementing infection prevention and control programs required by 42 C.F.R § 482.42.

Furthermore, as noted above, Defendants "facts" regarding vaccination policies prior to MCA 49-2-312 are inaccurate.  SDF¶¶ 34-35, 48-49, 55, 57-59, 73, 79.  Providence required proof of numerous vaccinations or immunity status prior to MCA 49-2-312.  SDF ¶ 73.  And, vaccination status could have limited work locations or required employees to don additional PPE.  SDF ¶¶ 73, 79.  MCA 49-2-312 impacts patient safety as described herein and, as such, is preempted by the CMS conditions of participation.

**E.  Defendants are not entitled to summary judgment on the individual Plaintiffs' claims related to violation of the Montana Constitutional right to a safe and healthy environment.**

Article II, section 3 of the Montana Constitution establishes the inalienable "right to a clean and healthful environment" including "seeking [] safety, health and happiness in all lawful ways."  Mont. Const. art. II, § 3.  The Montana Supreme Court has recognized that an individual has a fundamental right to obtain

medical treatment. *Mont. Cannabis Indus. Ass'n v. State*, 2012 MT 201, ¶ 23, 366 Mont. 224, 286 P.3d 1161.  MCA 49-2-312 violates the individual Plaintiffs' right to "seek health" by jeopardizing their ability to obtain safe medical treatment.

As they have done throughout this case, Defendants confuse MCA 49-2-312's purported exercise of police power and protecting the public health.  (Doc. 92 at 32).  While a state's police power may "embrace [ ] such reasonable regulations established directly by legislative enactment <u>as will protect the public health and safety,</u>" the power exercised in MCA 49-2-312 does the opposite of protecting public health and safety. *Jacobson v. Massachusetts*, 197 U.S. 11, 22 (1905) (emphasis added).  Instead, MCA 49-2-312 <u>removes protection of public health and safety</u> in the name of individual privacy.  Ironically, the case cited by Defendants, *Wiser v. State*, supports the notion that the right of privacy does not, and cannot, be utilized in a manner that infringes upon public health.  2006 MT 20, ¶¶ 17-18, 331 Mont. 28, 129 P.3d 133 (finding the individual's right of privacy to seek medical care from unlicensed individuals did not trump the interest in public health).

Defendants attempt to ignore the real and substantial harm to public health and safety that is caused by MCA 49-2-312 by arguing that nondiscrimination laws advance public welfare.  (Doc. 92 at 33).  This argument ignores the fact that the interests served by nondiscrimination laws do not trump public health and safety.

*See* 42 U.S.C. § 12113 (providing a defense to an ADA claim if individual poses "a direct threat to health or safety" of others); Mont. Admin. R. § 24.9.613 (providing defense to disability claim under Montana Human Rights Act if individual poses "a significant risk of substantial harm to the health and safety" of others); *Dothard v. Rawlinson*, 433 U.S. 321, 336-337 (1977) (recognizing the bona fide occupational qualification ("BFOQ") defense can apply in sex discrimination cases where sex poses a threat to safety); *W. Air Lines v. Criswell*, 472 U.S. 400 (1985) (recognizing BFOQ defense can apply in age discrimination claims where age poses a threat to safety); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death").  A statute, such as MCA 49-2-312, which increases the risk of transmission and prevalence of infectious diseases can never be said to be in the interest of public health and safety.  *See Jacobson*, 197 U.S. at 25.  The State cannot use the police power to harm public health and safety.  This is particularly true where the statute also runs afoul of other nondiscrimination laws, such as the ADA.  Accordingly, Defendants are not entitled to summary judgment as a matter of law.

Further, the undisputed facts illustrate that the individual Plaintiffs' right to seek health has been infringed upon by MCA 49-2-312.  Without directly stating it,

the premise of Defendants' argument is that vaccines are ineffective.  This is demonstrably false.  *See Jacobson*, 197 U.S. at 30-33; *Biden v. Missouri*, 142 S. Ct. at 653; SDF ¶¶ 98, 106.  Vaccinations undisputedly reduce the risk of contracting and transmitting vaccine-preventable disease and reduce the risk of severe illness.  SDF ¶¶ 98, 106.  Healthcare workers are more likely to be exposed to infectious diseases than the general population, which is why vaccine mandates are a staple of healthcare in America.  SDF ¶ 101.  *Biden v. Missouri*, 142 S. Ct. at 653.  The individual Plaintiffs have established they are at a higher risk of death and serious illness.  SDF ¶¶ 116, 118-119, 125-126, 130-131, 134.  They have avoided seeking healthcare based upon the risk posed by nonvaccinated healthcare workers.  SDF ¶¶ 119, 127-128, 132, 136.  Defendants' own expert recognized that the "clearly demonstrated reduction in transmission with high community vaccination rates requires more consideration than one's personal autonomy." SDF ¶ 106.  MCA 49-2-312 increases the risk patients face by preventing healthcare employers from mandating that their employees be vaccinated or, at a minimum, removing nonvaccinated workers from direct care of patients with disabilities. Accordingly, it infringes upon their right to seek safe healthcare.

Healthcare, unlike other services, is not always optional.  SDF ¶¶ 118-119, 123, 126-127, 136.  MCA 49-2-312 has placed these patients on the horns of a dilemma—either they can receive potentially life-saving healthcare treatment and

risk exposure to nonvaccinated healthcare workers; or, they can avoid potentially life-saving healthcare treatment and minimize exposure to nonvaccinated individuals.  SDF ¶¶ 118-119, 126-127, 136.  Contrary to Defendants' arguments, MCA 49-2-312 does not solely protect an individual's right to reject medical treatment by prohibiting vaccine mandates.  (Doc. 92 at 35).  Rather, it prevents employers from treating nonvaccinated individuals in <u>any</u> different manner.  The Clinic and Five Valleys, as offices of private physicians, cannot even require nonvaccinated people to mask, socially distance, or remove them from direct patient care.  Additionally, Defendants' argument is illogical, as the Montana Legislature has chosen (in furtherance of public health) to infringe upon the alleged right to reject medical treatment by requiring vaccinations in daycares and schools.  *See* Mont. Code Ann. §§ 20-5-403, 52-2-735; Mont. Admin. R. § 37.95.140.

Defendants have failed to meet their burden and they are not entitled to summary judgment.

**F.    Defendants are not entitled to summary judgement on Plaintiffs' equal protection claims.**

Equal protection claims are evaluated under a three-step process: (1) identification of classes involved and determination if they are similarly situated; (2) a determination of the appropriate level of scrutiny; and (3) application of the appropriate level of scrutiny.  *Hensley v. Mont. State Fund*, 2020 MT 317, ¶ 18,

402 Mont. 277, 477 P.3d 1065; *Gallinger v. Becerra,* 898 F.3d 1012, 1016 (9th Cir. 2018). Defendants purportedly seek summary judgment on the individual Plaintiffs' equal protection claims as well as the institutional Plaintiffs' claims.

As to the individual Plaintiffs' claims, Defendants attempt only to reassert their standing challenge. Not only does this argument improperly retread ground previously resolved, Defendants misapprehend the individual Plaintiffs' claims, ignore the undisputed record, and misapply the law. Defendants' reliance on *Coal. of Clergy v. Bush* is misplaced – that case found that a collation of clergy, lawyers and law professors did not have third-party standing to bring a habeas petition on behalf of post-9/11 Taliban and Al Qaeda detainees to assert the detainees' constitutional rights. 310 F.3d 1153, 1164 (9th Cir. 2002) ("Because neither the Coalition nor any of its members has a relationship with the detainees, it cannot assert third-party standing on their behalf. Absent injury-in-fact and any relationship to the detainees, we find no third-party standing.") Here, the individual Plaintiffs have direct – not third-party – standing to challenge the harmful effects of MCA 49-2-312.

As described above, the individual Plaintiffs have established injury in fact. The individual Plaintiffs are immunocompromised, more susceptible to diseases, at a higher risk of harm from such diseases, and need to avoid contact with unvaccinated individuals to protect themselves. SDF ¶¶ 102-103, 105, 115-117,

124-125, 127, 130-131, 134, 136, 137.  These individuals must minimize contact with unvaccinated healthcare workers, and have avoided or delayed healthcare given exposure risk posed by unvaccinated individuals.  SDF ¶¶ 119, 127-128, 132, 136.  The individual Plaintiffs have standing to assert their equal protection challenge, which is independent from the institutional Plaintiffs' equal protection challenge.

Because Defendants rest on their standing argument with respect to the individual Plaintiffs, Defendants do not address, and thereby fail to carry, their burden on summary judgment as to the substance of the individual Plaintiffs' equal protection claims.  As set forth in Plaintiffs' Motion for Summary Judgment, the undisputed facts show that MCA 49-2-312 improperly creates classifications of patients depending upon where such patients receive care.  (Docs. 81, 82).  Patients of a nursing home, long-term care facility, or assisted living facility ("Exempt Facilities") may be treated in a safer environment because these types of facilities may mandate vaccines, by operation of the exemption created in MCA 49-2-313.  Patients of a hospital (such as Providence) or physician office (such as Five Valleys and the Clinic) are treated differently than patients of an Exempted Facility, as hospitals and physician offices are prohibited from ensuring patients are treated by vaccinated staff.  Patients of a physician office are not even entitled to the "reasonable accommodation measures" permitted to a hospital or "health

care facility" under MCA 49-2-312(3)(b), further implicating these patients'

fundamental right to seek health under the Montana Constitution.  Plaintiffs have

established that these classes of patients are similarly situated in all relevant

respects.  SDF ¶¶ 99-100, 145-150, 153-160.

As the Court previously found, the individual Plaintiffs' equal protection

challenge implicates a fundamental right under the Montana Constitution. (*See*

Doc. 35 at 15).  Because a fundamental right is implicated, MCA 49-2-312 is

evaluated under strict scrutiny.  To satisfy strict scrutiny, Defendants bear the

burden of establishing MCA 49-2-312 "is 'narrowly tailored' to advance a

'compelling' state interest."  *Brach v. Newsom*, 6 F.4th 904, 931 (9th Cir. 2021)

(citation omitted); *Jaksha v. Butte-Silver Bow Cty.*, 2009 MT 263, ¶ 17, 352 Mont.

46, 214 P.3d 1248.  Because Defendants do not even address the individual

Plaintiffs' claims, they have failed to carry this heavy burden.  To the extent

Defendants seek summary judgment on the individual Plaintiffs' equal protection

claim, the motion should be denied.

Defendants' arguments as to the institutional Plaintiffs' claims fail as well.

Plaintiffs have established that MCA 49-2-312 arbitrarily carves Montana

healthcare entities into three categories, treating each differently with respect to

how these providers can utilize vaccination and/or immunity status of their staff to

protect their patients and fellow co-workers: (1) physician offices (Clinic and Five

Valleys); (2) healthcare facilities (Providence); and (3) Exempted Facilities.

The statutory scheme discriminates against the institutional Plaintiffs in two distinct ways – first, the law discriminates against physician offices and "health care facilities" as compared to the Exempted Facilities by operation of MCA 49-2-313.  Exempted Facilities can follow Centers for Disease Control and Prevention ("CDC") and CMS guidance and regulations to protect their patients and staff, without running afoul of MCA 49-2-312; physician offices and hospitals may not. Second, the statute discriminates against physician offices as compared to "health care facilities," as physician offices are excluded from the exception in MCA 49-2-312(3)(b), depriving physician offices the ability to protect patients and staff from communicable disease if such an action results in treating an unvaccinated staff member differently.

Contrary to Defendants' conclusory arguments, Plaintiffs have also established that these classes of healthcare entities are similarly situated in all relevant respects.  SDF ¶¶ 99-100, 145-150, 153-160.  It is undisputed that hospitals, physician offices, and Exempted Facilities treat similarly situated patients, and do so through similar health care providers.  SDF ¶¶ 99, 146-148, 153-158.   In fact, hospitals and physician offices often treat the exact same patients as Exempted Facilities and even share staff, on occasion.  SDF ¶¶ 99, 146-148, 153-158.  Hospitals and physician offices can even be located in the same

physical facility.  SDF ¶¶ 149-150.  Vulnerable and immunocompromised

individuals seek healthcare from Montana physicians, hospitals and other

healthcare facilities.  SDF ¶¶ 99, 154, 156-157.  Defendants do not attempt to

demonstrate otherwise.

Instead, Defendants point out that physician offices and "healthcare

facilities" are licensed under different sections of the Montana code.  (Doc. 92 at

38).  This argument misses the mark.  Montana's licensure definitions do not help

Defendants' cause, and instead supports denial of Defendants' motion.  "Health

care facilities" are broadly defined to include "all or a portion of an institution,

building, or agency … that is used, operated, or designed to provide health

services, medical treatment, or nursing, rehabilitative, or preventive care to any

individual."  Mont. Code Ann. § 50-5-101(26)(a).  This includes, as one example,

an infirmary located in a university for the treatment of the sick or injured, which

can include outpatient care only (such as a clinic located inside a university).

Mont. Code Ann. § 50-5-101(32).  There is no functional difference between a

private physician office and a physician clinic located in a university.  Yet, under

MCA 49-2-312, the facilities are not treated equally under the law.  There is no

dispute that all of these facilities have the same interest in preventing the spread of

communicable diseases to their patients and staff.  SDF ¶ 160.  The fact they fall

under different licensure statutes is irrelevant in terms of whether they are similarly

situated.  Defendants have not, and cannot, establish that hospitals, physician offices, and Exempted Facilities are not similarly situated in meaningful respects.

The Court should further reject Defendants' argument that the statute's unequal treatment of similarly situated classes of healthcare entities is supported by a rational basis.  Defendants ignore that MCA 49-2-312 is fundamentally at odds with the State's traditional police powers.  *Jacobson*, 197 U.S. at 22.  Defendants do not, and cannot, dispute that MCA 49-2-312 harms the public health in the name of individual privacy.  In fact, Defendants make no attempt to discuss the proper role of the State's police power or the impact of *Jacobsen* on the scrutiny of MCA 49-2-312.  Given MCA 49-2-312 indisputably harms public health, *Jacobsen* cannot be ignored in determining whether the statute survives rational basis scrutiny.

Defendants do not cite a single case in which a court has upheld – under rational basis scrutiny or otherwise – a law that harms public health and wellbeing in the name of individual rights.  Defendants cite *Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, but in that case, the Ninth Circuit upheld the district court's dismissal of a claim that state-imposed COVID-19 restrictions on business violated an individual company's substantive due process rights.  4 F.4th 747, 758 (9th Cir. 2021) (stating "[t]here is a legitimate state interest in <u>preventing</u> the spread of COVID-19, a deadly contagious disease.") (emphasis added).

Defendants' reliance on *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology* is similarly misplaced.  There, the Ninth Circuit affirmed dismissal of a claim that individual rights were infringed by California's mental health licensing laws regulating the practice of psychology and other professions, finding that "[b]ased on the health and welfare of its citizens, California certainly has a 'conceivable rational basis' for regulating the licensing of psychologists, and therefore, psychoanalysts." *Nat'l Ass'n*, 228 F.3d 1043, 1051 (9th Cir. 2000). *Tucson Woman's Clinic v. Eden* likewise noted that the law at issue was "facially related to health and safety issues" when applying constitutional scrutiny.  379 F.3d 531, 546 (9th Cir. 2004).

In contrast, MCA 49-2-312 is antithetical to public health and thereby cannot be supported by a rational basis.  Each of the stated interests noted in Defendants' briefing presents an irrational and insufficient basis for the arbitrary treatment of healthcare entities under MCA 49-2-312.  First, the Governor's amendatory veto and stated basis of allowing Exempted Facilities to comply with forthcoming federal COVID-19 vaccination requirements fails, as a matter of law, to justify a rational basis.  Defendants argue that there was "ample reason" for the legislature to "suspect" that the Exempted Facilities specifically would be subject to COVID-19 vaccination requirements, citing only to a 53 second local news report in support.  (Doc. 92 at 41).  But there is not now, nor was there when this

statute was passed, a dispute that hospitals also critically rely on Medicare and Medicaid funding and must be permitted to follow CMS regulations and guidance. SDF ¶¶ 165-168.  Moreover, assisted living facilities–one of the Exempt Facilities–are not CMS-certified facilities that are required to follow the CMS Conditions of Participation.  SDF ¶ 164.  Because MCA 49-2-312 and 313 do not differentiate between entities based upon their CMS participation, future regulation of CMS participating entities cannot serve as a rational basis for the classifications drawn by MCA 49-2-312 and 313.

Second, Defendants argue that MCA 49-2-312's unequal treatment is rational because the core services and populations served by these healthcare entities is "generally different."  (Doc. 92 at 42).  But Defendants fail to establish this bare assertion with citation to the facts, and the undisputed facts belie this conclusory statement.  SDF ¶¶ 99-100, 145-150, 153-160.  As set forth above, physician offices, hospitals, and Exempted Facilities treat similarly situated patients utilizing similarly situated healthcare providers; and, in fact, the same patient residing in an Exempted Facility can, and often is, treated by an Exempted Facility, hospital and a physician office.  SDF ¶¶ 99-100, 145-150, 153-160.

Finally, Defendants generally point to the State's interest in preventing discrimination and protecting individual right to privacy.  But as Plaintiffs establish above and in their Motion for Summary Judgment, the State is not at

liberty to enact its police power in a manner that harms the public health and welfare.  (*See* Doc. 82).  Elevating individual interests over public health cannot, as a matter of law, be in the public good and thereby may not serve as a rational basis.

## III.     CONCLUSION

For the foregoing reasons, Defendants are not entitled to summary judgment on Plaintiffs' claims, and Defendants' motion (Doc. 91) should be denied.  Instead, the Court should enter summary judgment in favor of Plaintiffs based upon the undisputed material facts of record.  (*See* Docs. 81-83).

DATED this 16th day of September, 2022.

_____/s/  Kathryn S. Mahe_____
Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Plaintiffs' Brief in Opposition to Defendants' Motion for Partial Summary Judgement is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 6,248 words long, excluding Caption, Certificate of Service and Certificate of Compliance.

/s/  Kathryn S. Mahe
Attorneys for Plaintiffs