Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | CV 21-108-M-DWM |
| Plaintiffs, | |
| and | |
| MONTANA NURSES ASSOCIATION, | PLAINTIFFS' COMBINED BRIEF IN RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE |
| Plaintiff-Intervenors, | |
| v. | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................1

II.  LEGAL STANDARDS ...........................................................2

III. ARGUMENT ........................................................................3

    A.   DEFENDANTS' MOTION TO EXCLUDE DR. WILSON ...............3

    B.   DEFENDANTS' MOTION TO EXCLUDE DR. STEPHENS............4

    C.   DEFENDANTS' MOTION TO EXCLUDE DR. KING, OR LIMIT
        HIS TESTIMONY ................................................................8

    D.   DEFENDANTS' MOTION TO LIMIT THE TESTIMONY OF DR.
        TAYLOR .........................................................................12

    E.   DEFENDANTS' MOTION TO LIMIT THE TESTIMONY OF DR.
        HOLZMAN .......................................................................15

    F.   DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF VICKY
        BYRD'S TESTIMONY .........................................................15

    G.   DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF THEIR
        30(b)(6) WITNESSES' TESTIMONY .............................................15

    H.   DEFENDANTS' MOTION TO EXCLUDE EVIDENCE RELATED
        TO PLAINTIFFS' INVOCATION OF THE FIFTH AMENDMENT
        .....................................................................................22

IV.  CONCLUSION.....................................................................28

CERTIFICATE OF COMPLIANCE................................................29

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Babbitt v. UFW Nat'l Union*,
  442 U.S. 289, 298 (1979)..................................................................24

*Cates v. CCA of Tenn., LLC*,
  No. CV 15-12-BLG-SPW-CSO, 2016 U.S. Dist. LEXIS 93679,
  at *8-9 (D. Mont. July 19, 2016) ........................................................8

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579, 588 (1993)......................................................3-4, 11-12

*Doe v. Glanzer*,
  232 F.3d 1258, 1264-67 (9th Cir. 2000) .............................................24

*Lo v. United States*,
  No. 2:17-cv-01202-TL, 2022 U.S. Dist. LEXIS 63229,
  at *4-5 (W.D. Wash. 2022) ..................................................................3

*McBroom v. Ethicon, Inc.*,
  No. CV-20-02127-PHX-DGC, 2021 U.S. Dist. LEXIS 123510,
  at *5 (D. Ariz. 2021) .........................................................................11

*Messick v. Novartis Pharm. Corp.*,
  747 F.3d 1193, 1196 (9th Cir. 2014) .................................................4, 5

*Primiano v. Cook*,
  598 F.3d 558, 565 (9th Cir. 2010) .....................................................5, 6

*Snapp v. United Transp. Union*,
  889 F.3d 1088 (9th Cir. 2018) ........................................................16-17

*United States v. Flores*,
  901 F.3d 1150, 1165 (9th Cir. 2018) ...................................................3

*United States v. Heller*,
   551 F.3d 1108, 1112 (9th Cir. 2009) ...................................................................3

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006, 1015 (9th Cir. 2013) ................................................. 23-24, 27

*Wilmington Sav. Fund Soc'y, FSB v. Hutchins*,
   No. CV 1800346 JCH/JHR, 2020 U.S. Dist. LEXIS 68835,
   at *19 (D.N.M. Apr. 20, 2020) ..........................................................................17

*Zeleny v. Newsom*,
   No. 17-cv-07357-RS (TSH), 2020 U.S. Dist. LEXIS 100944
   (N.D. Cal. June 9, 2020) ...................................................................................17


**Statutes**

Federal  Fule of Evidence 701 ...................................................................................16

Federal Rule of Evidence 602 ...................................................................................16

Federal Rule of Evidence 702 .............................................................................4, 16

Mont. Code Ann. § 49-2-312 ................................................ 1, 8, 14, 16, 18-23, 27

Mont. Code Ann. § 49-2-601 ....................................................................................23

**Other Authorities**

*Legal Conclusion*, Black's Law Dictionary 11th ed. (2019) ...................................17

*Statement of Fact*, Black's Law Dictionary 11th ed. (2019)....................................17

INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| 8 | Deposition of David B. King, M.D. | 8-1 to 8-8 |
| 9 | Deposition of Montana Department Public Health and Human Services | 9-1 to 9-7 |

## I.   INTRODUCTION

Defendants' eight motions in limine present insufficient legal grounds to exclude highly relevant and competent evidence, and each should be denied. Defendants' motions highlight a fundamental flaw in Defendants' case. Throughout this case, Defendants have attempted to focus solely on COVID-19 and the COVID-19 vaccine, failing to embrace the indisputable fact that Montana Code Annotated § 49-2-312 ("MCA 49-2-312") applies to all diseases and all vaccines.  Defendants' motions in limine continue this trend, attempting to exclude otherwise uncontroverted evidence pertaining to the deadly nature of diseases other than COVID-19, the well-accepted and time-tested vaccines that control those diseases, and the utility of requiring vaccines in healthcare settings.  This strategy continues despite the fact that Defendants' own expert witness acknowledges that certain vaccines are highly effective at eliminating the risk and spread of disease and that they should be required in the healthcare setting.  (Pls.' SUF, Doc. 83 at ¶ 23).

As set forth in Plaintiffs' Motion for Summary Judgment, the material facts bearing upon Plaintiffs' challenge to MCA 49-2-312 are not in dispute and Plaintiffs are entitled to declaratory and injunctive relief.  (Doc. 82).  Those facts are not only undisputed, they are admissible and Defendants' attempts to exclude such evidence should be denied.

1

Defendants filed the following motions in limine:

1. Motion to exclude Plaintiff-Intervenor's expert Dr. Lauren Wilson's opinions in their entirety.  (Doc. 99).

2. Motion to exclude Plaintiffs' neonatology and pediatric expert Dr. Bonnie Stephens' opinions in their entirety.  (Doc. 101).

3. Motion to exclude Plaintiffs' expert Dr. David King's opinions in their entirety, or alternatively certain select paragraphs in his expert report. (Doc. 103).

4. Motion to exclude select paragraphs from the report of Plaintiffs' infectious disease expert Dr. David Taylor.  (Doc. 105)

5. Motion to exclude select paragraphs from the report of Plaintiff-Intervenor's expert Dr. Greg Holzman.  (Doc. 107)

6. Motion to limit the testimony of Montana Nurses' Association CEO Vicky Byrd.  (Doc. 109).

7. Motion to exclude portions of the Rule 30(b)(6) testimony of Defendants' own witnesses, the Attorney General's Office("AG"), Montana Department of Labor and Industry ("DLI"), Human Rights Bureau ("HRB"), and Montana Department of Public Health and Human Services ("DPHHS").  (Doc. 111).

8. Motion to limit testimony from Five Valleys Urology, Western Montana Clinic, and Providence.  (Doc. 113).

Because Defendants' motions are duplicative in scope, legal authority, and argument, Plaintiffs respond to all eight in this combined response brief.

## II.    LEGAL STANDARDS

A motion in limine should not be used to resolve factual disputes, weigh evidence, or as a substitute for a motion for summary judgment.  *Lo v. United*

*States*, No. 2:17-cv-01202-TL, 2022 U.S. Dist. LEXIS 63229, at *4-5 (W.D. Wash. 2022) (citation omitted).  In the case of a bench trial, "a threshold ruling is generally superfluous." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009); *see also Lo*, 2022 U.S. Dist. LEXIS 63229, at *5 ("[T]he first purpose of a motion in limine, protecting the jury, is inapplicable in the context of a bench trial.") (citation omitted).  Applicable here, "*Daubert* barriers are even more relaxed in a bench trial situation." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (citation omitted).  The purpose of a *Daubert* motion (challenging the admissibility of expert testimony) is to "protect juries from being swayed by dubious [expert] testimony[;]" as such, in a bench trial, "there is less need . . . to keep the gate when the gatekeeper is keeping the gate only for himself." *Lo*, 2022 U.S. Dist. LEXIS 63229, at *4 (*quoting Flores*, 901 F.3d at 1165).

## III.   ARGUMENT

## A.   DEFENDANTS' MOTION TO EXCLUDE DR. WILSON

Plaintiffs incorporate the authorities and arguments of Plaintiff-Intervenor with respect to Defendants' motion to exclude Plaintiff-Intervenor's expert witness Dr. Wilson.  Dr. Wilson, a practicing pediatrician in Missoula, is sufficiently qualified to offer the opinions set forth in her report.  For similar reasons to those set forth below related to Dr. Stephens, Dr. Wilson's opinions are admissible.  Dr. Wilson's opinions are well within her expertise and direct experience as a pediatric

3

specialist physician.  At best, Defendants' arguments that her opinions are "unreliable" and "unhelpful" go to the weight of Dr. Wilson's opinions, not their admissibility.  Defendants' motion should be denied.

## B.   DEFENDANTS' MOTION TO EXCLUDE DR. STEPHENS

Defendants' motion to exclude the opinions of Dr. Stephens should be denied.  Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Expert testimony must be "both relevant and reliable," and Rule 702 is applied with a "liberal thrust" favoring admission.  *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 588 (1993)).  The relevancy bar is low, demanding only that the evidence "logically advances a material aspect of the proposing party's case." *Messick*, 747 F.3d at 1196.  The opinion testimony and knowledge underlying it need only have a "valid connection to the pertinent inquiry."

4

*Messick*, 747 F.3d at 1197.  There is "nothing wrong" with a doctor relying on extensive clinical experience when developing expert medical opinions.  *Messick*, 747 F.3d at 1198. *See also Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("A trial court should admit medical expert testimony if physicians would accept it as useful and reliable, but it need not be conclusive because medical knowledge is often uncertain") (internal quotation marks omitted).  A physician's clinical experience supports admission of the physician's opinions even in the absence of citation to specific medical literature.  *Primiano*, 598 F.3d at 565.

Dr. Stephens' opinions are narrowly focused on key issues that are relevant to Plaintiffs' claims and for which Dr. Stephens is appropriately qualified.  Dr. Stephens is eminently qualified to testify as to the appropriate standards of treating infants in a Neonatal Intensive Care Unit ("NICU") and similar settings, as well as the appropriateness and use of vaccines and other infection prevention measures in these pediatric and neonatal critical care settings.  (*See* Stephens CV, Doc. 86-4 at 8-19.)  As set forth in her CV, Dr. Stephens is triple boarded in Pediatrics, Developmental-Behavioral Pediatrics, and Neonatal-Perinatal Medicine. (Stephens CV, Doc. 86-4 at 11).  Dr. Stephens obtained her medical degree from Northwestern University Medical School and performed her pediatric residency at the Children's Memorial Hospital in Chicago from 1997-2000.  (Stephens CV, Doc. 86-4 at 8).  She performed two separate three-year fellowships, in

5

Neonatal/Perinatal Medicine and Developmental/Behavioral Pediatrics.  (Stephens CV, Doc. 86-4 at 11).  To the extent Defendants challenge Dr. Stephens' credentials and experience to testify on the matters on which she has dedicated her professional career, Defendants' motion falls flat.

So too does Defendants' attempt to argue that Dr. Stephens has insufficient "facts or data" to support her opinions.  Dr. Stephens has over 20 years of experience as a pediatrician, and has practiced as a neonatologist in Missoula since 2011.  She currently serves as the Chief Medical Officer of Community Medical Center and has served as the Medical Director of the hospital's NICU for the past 11 years.  She has extensive and direct experience treating vulnerable and sick infants and kids in intensive care settings, and is highly knowledgeable of the appropriate standards of care applicable to those settings.  Dr. Stephens' report is based on her expertise in her clinical field as a neonatologist and developmental and behavioral pediatrician.  (Dep. Stephens 16:6-8, Doc. 115-2 at 3).  Her opinions pertaining to the vulnerability of individuals to infectious disease, that it is crucial for patient safety to remain current on vaccination, the danger Pertussis poses to infants, the schedule for when infants receive certain vaccinations, the risks to patients in clinical care settings, and the safety and efficacy of vaccines are all well within her clinical expertise and experience. *See Primiano*, 598 F.3d at 565.

6

Defendants' assertion that Dr. Stephens' opinions with respect to the TDaP vaccine lack "any methodology" is inconsistent with her testimony and simply false. Defendants suggest that Dr. Stephens did not look at any recent studies concerning the waning efficacy of the Pertussis vaccine (Doc. 102 at 9), but her deposition testimony specifically cites the waning protection of TDaP and the need for boosters every ten years. (Dep. Stephens 41:21-42:21, Doc. 115-2 at 8). Hence the importance of confirming a provider's current vaccination status when treating vulnerable infants in a NICU. Likewise, Defendants aver that when discussing the COVID-19 vaccine, Dr. Stephens "retreated to her personal knowledge." (Doc. 102 at 9). To the contrary, Dr. Stephens relies on her *professional* knowledge and expertise, and specifically the knowledge of vaccination rates of healthcare employees in her own institution, for which she has direct oversight as CMO. (Dep. Stephens 27:22-28:1, Doc. 115-2 at 8).

Defendants also misconstrue what constitutes a "legal conclusion" and what constitutes appropriate medical expert opinion. Defendants contend that Dr. Stephens' (and Plaintiffs' other experts') opinions as to the appropriate medical standard of care are improper legal conclusions. (Doc. 102 at 10). The opposite is true. In a medical malpractice case, the standard of care must be established by competent expert testimony from an appropriately situated and experienced physician. *Cates v. CCA of Tenn., LLC*, No. CV 15-12-BLG-SPW-CSO, 2016

U.S. Dist. LEXIS 93679, at *8-9 (D. Mont. July 19, 2016) (duty in a medical malpractice case must be established by expert testimony).  Dr. Stephens' opinion that applicable standards of care when treating infants in the NICU include ensuring all staff who are treating these vulnerable patients are vaccinated is directly relevant to the harms caused by MCA 49-2-312 and Plaintiffs' challenge to the statute.  While undisputed in this case and generally (if not universally) accepted in the medical community, to the extent this subject matter falls outside a layperson's knowledge, the appropriate way to establish this evidence is through competent medical expert opinion.

Dr. Stephens is a highly qualified subspecialist physician who has extensive experience treating infants and children in Montana.  Her opinions are narrowly focused on the medical facts that will assist the Court in resolving Plaintiffs' challenge to MCA 49-2-312.  Dr. Stephens' opinions highlight the specific and irreparable harms MCA 49-2-312 has on certain clinical settings, such as the NICU, given the indisputable fact that Pertussis (as well as other deadly, vaccine-preventable diseases) causes a direct and substantial threat to infants.  Dr. Stephens' opinions should be permitted, and Defendants' motion should be denied.

## C.  DEFENDANTS' MOTION TO EXCLUDE DR. KING, OR LIMIT HIS TESTIMONY

Defendants' challenge to Dr. King's opinions fails for similar reasons.  Dr.

King's experience as a clinician in Montana and as the former Medical Director of Bozeman Health's clinical research program sufficiently qualifies him to render the opinions set forth in his report. Dr. King has been a practicing physician in Montana for over 40 years. (King CV, Doc. 86-1 at 24). He obtained his board certification following his Family Medicine residency in 1984. (King CV, Doc. 86-1 at 24). He had approximately five years' experience as the Medical Director of the clinical research department at Bozeman Health, where he was directly involved in clinical trials of the Pfizer COVID-19 vaccine. (King CV, Doc. 86-1 at 24-25).

For the same reasons the Court should reject the wholesale challenge to Dr. Stephens' opinions, the Court should also find that Dr. King's opinions are supported by sufficient credentials, clinical and professional experience, and appropriate facts and data. Dr. King is sufficiently qualified to render the otherwise unchallenged opinions regarding the safety and efficacy of vaccines. Dr. King is qualified to testify to the fact that vaccine-preventable diseases are dangerous and can cause death, and that vaccination reduces that risk of harm. Dr. King's decades of clinical experience caring for patients in Montana, as well as his specific experience as the medical director of clinical research at a Montana hospital, sufficiently qualifies him to render these opinions. Dr. King has diverse clinical experience, having worked at, and treated patients in, hospital settings,

9

private physician clinic settings, urgent care, skilled nursing, as well as hospice. (King CV, Doc. 86-1 at 24). Dr. King studied the COVID-19 vaccine directly when conducting the clinical trials for the Pfizer vaccine. Substantively, his opinions are both directly relevant to the claims at issue, and undisputed by Plaintiffs' expert witnesses. Defendants' contention that these opinions are "unreliable and unhelpful" should be soundly rejected.

Tellingly, Defendants focus their argument on attempting to exclude opinions related to diseases other than COVID-19. Dr. King is sufficiently qualified and has direct professional experience supporting all of his opinions, including those implicating other vaccines. While he has had the ability to study COVID-19 and available vaccines for COVID-19 within the last two years, he has four decades of experience with other vaccine-preventable diseases and the effects they have on his patients, nursing home residents, and others.

Defendants' attempt to discredit Dr. King's scientific opinions by claiming bias should be rejected. Defendants mischaracterize Dr. King's testimony, insinuating Dr. King relied on only certain studies and ignored others. (Doc. 104 at 8-9). In pages not submitted with Defendants' motion, Dr. King explained that he did not have any bias against, nor did he filter out or ignore, contrary data. 2d Found. Decl. Kathryn Mahe ¶ 9, Sep. 16, 2022 ("2d Decl. Mahe"), Ex. 8: Dep. David B. King 142:9-143:14, Aug. 2, 2022 ("Dep. King"). Additionally, his

10

opinions are further supported by his extensive career as a practicing physician in Montana.  Dep. King 142:25-143:14 ("[Y]ou can't summarize a medical career by stating what studies you just read.  My belief in vaccination begins with standing in the hallway of my school with parents applauding, getting my oral polio vaccine.  It continues through my experiences both as a victim of disease and as a preventer of disease.  I did that every day for multiple decades.").  Moreover, "[n]othing in Rule 702 or *Daubert* 'requires an expert to consider every single article on a topic in order to be admitted as an expert.'"  *McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 U.S. Dist. LEXIS 123510, at *5 (D. Ariz. 2021) (citation omitted).

Defendants also attempt to claim bias from selectively quoted portions of Dr. King's testimony whereby Defendants attempted to paint Dr. King as politically motivated.  Not only do these arguments misconstrue Dr. King's deposition testimony (*see, e.g.,* Dep. King 90:8-14, Doc. 115-3 at 7, providing context for Dr. King's comments), if anything they challenge the weight of his opinions, not their admissibility.  *See McBroom*, 2021 U.S. Dist. LEXIS 123510, at *5 (collecting cases demonstrating that these types of arguments go to weight of an expert's opinions, not admissibility).  These types of arguments are insufficient to exclude an expert's opinions through a motion in limine.

Dr. King, like Plaintiffs' other expert witnesses, is highly qualified to render

11

the opinions set forth in his report and Defendants' motion should be denied.

## D.   DEFENDANTS' MOTION TO LIMIT THE TESTIMONY OF DR. TAYLOR

Perhaps recognizing Dr. Taylor's exceptional qualifications and bases for his opinions, Defendants challenge only five paragraphs of Dr. Taylor's report.  (Doc. 105) (seeking to exclude paragraphs 23, 24, 49, 55, and 56).  Defendants rely on the same flawed *Daubert* challenge, which should be summarily denied.

Dr. Taylor has dedicated his career to the study of infectious diseases and the vaccines that prevent them.  He obtained his medical degree from Harvard Medical School in 1974, and a Master of Science degree in Medical Parasitology from the London School of Hygiene and Tropical Medicine in 1978.  (Taylor Report, Doc. 86-2 at 38).  He is fellowship trained and boarded in both Internal Medicine and Infectious Disease.  He is a Fellow in both the American College of Physicians and the Infectious Disease Society of America.  (Taylor CV, Doc. 86-2 at 40).  His 22-year military service concluded with 9 years of service as a Colonel in the U.S. Army.  (Taylor CV, Doc. 86-2).  His extensive professional experience includes his work at the Walter Reed Army Institute of Research in Washington, D.C. as Chief of the Department of Clinical Trials and Acting Director of the Division of Communicable Diseases and Immunology.  (Taylor Report, Doc. 86-2 at 39).  He has extensive international experience, including serving as a WHO

12

consultant to the oral typhoid vaccine trial in Indonesia in the 1980's. (Taylor

Report, Doc. 86-2 at 40). He currently serves as the Director of Clinical Research

at Bozeman Health. (Taylor Report, Doc. 86-2 at 39). His CV sets forth his

extensive list of publications on the topics of vaccines, infectious disease,

epidemiology, and others. Dr. Taylor is exceedingly well qualified to offer his

competent and relevant expert opinions regarding infectious disease and

vaccinations.

The Court should reject Defendants' challenge to paragraph 23 of Dr.

Taylor's expert report, whereby Dr. Taylor opines that the COVID-19 epidemic

has had both direct and indirect impacts on childhood immunizations for other

diseases. In support of this opinion, Dr. Taylor cites the alarming CDC report

indicating that there has been a recent and significant drop in kindergarten

vaccination rates. (Taylor Report, Doc. 86-2 at ¶ 23[1]). His opinion that COVID-

19 vaccine hesitation can influence acceptance of the routine childhood

immunizations is supported not only by his extensive professional expertise and

experience, it is also directly supported by the CDC report cited in paragraph 23.

Paragraph 24 of Dr. Taylor's report further explains that vaccination coverage

among kindergartners nationwide for the 2020-21 school year dropped an entire

---

[1] Pages 11 and 12 of Dr. Taylor's report were inadvertently filed out of order.

percentage point, below the CDC's target immunization rate of 95%--the level needed to disrupt disease transmission and prevent outbreaks.  (Taylor Report, Doc. 86-2 at ¶ 24).  The concerns drawn from these indisputable facts are far from an "analytical leap," and drive directly at the dangers MCA 49-2-312 poses to public health.  To the extent Defendants cast doubt on the weight of this particular opinion, such a challenge does not impact its admissibility.

Defendants also challenge paragraphs 24, 49, 55, and 56 of Dr. Taylor's report.  Each of the opinions set forth in these paragraphs is supported by sound science, medical literature, and/or Dr. Taylor's extensive professional expertise and experience.  Defendants' conclusory contention that these opinions lack a reliable foundation ignore Dr. Taylor's report, the facts and data cited therein, and Dr. Taylor's credentials and qualifications.  Defendants' argument that Dr. Taylor's report only presents data and analysis on the COVID-19 vaccine misstates his report and appears to take each paragraph in a vacuum.  (*See* Taylor Report, Doc. 86-2 at ¶¶ 6-22) (discussing vaccines for Smallpox, Diphtheria, Tetanus and Pertussis, Polio, Measles, Mumps and Rubella, Haemophilus Influenza Type B, Hepatitis B, Varicella, Rotavirus, Hepatitis A, Pneumococcal, HPV, and Influenza).  The mere fact that Defendants cannot dispute these opinions does not constitute grounds for excluding them.

Defendants' motion should be denied.

14

## E.   DEFENDANTS' MOTION TO LIMIT THE TESTIMONY OF DR. HOLZMAN

Plaintiffs incorporate the authorities and arguments of Plaintiff-Intervenor with respect to this motion.  Like Plaintiffs' and Plaintiff-Intervenor's other experts, Dr. Holzman is uniquely qualified to offer the opinions set forth in his report.  He has sufficient foundation and credentials by virtue of his training and experience as a board-certified family practice physician, preventive medicine specialist, and former State Medical Officer for DPHHS.  Defendants' motion should be denied.

## F.   DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF VICKY BYRD'S TESTIMONY

Plaintiffs' position is that this motion should be denied.  Given this motion implicates Plaintiff-Intervenor's witness, Plaintiffs incorporate the authorities and arguments of Plaintiff-Intervenor with respect to this motion.

## G.   DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF THEIR 30(b)(6) WITNESSES' TESTIMONY

Defendants attempt to exclude the testimony of their own witnesses because they claim the testimony amounts to improper legal conclusions.  As with Defendants' other motions, this should be denied.

Defendants have not cited any rule of evidence that would make the testimony they seek to exclude inadmissible.  (Doc. 112).  Instead, Defendants

15

focus on whether the information was appropriately derived from their 30(b)(6) witnesses[2].  While Defendants' arguments relate to whether the testimony is binding[3] upon them, they have not established that such testimony is inadmissible.

Witnesses may testify as to matters upon which they have personal knowledge.  Fed. R. Evid. 602.  Opinion testimony by lay witnesses is permitted when it is rationally based upon the witnesses' perception, helpful to understanding testimony or a fact in issue, and not based upon specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.  Moreover, qualified witnesses are permitted to offer opinion testimony based upon specialized knowledge.  Fed. R. Evid. 702.

Defendants rely on inapplicable cases to support their attempted exclusion of their 30(b)(6) witnesses' testimony.  Initially, Defendants' reliance on *Snapp v. United Transp. Union* is misplaced.  889 F.3d 1088 (9th Cir. 2018).  The issue in *Snapp* was whether a party could put on evidence that differed from its 30(b)(6) witnesses' testimony.  There, the Ninth Circuit found that the jury was permitted to

---

[2] Plaintiffs sought to take the depositions of Austin Knudsen and Laurie Esau.  Defendants refused to produce them for deposition, instead indicating they would produce a 30(b)(6) witness for the Montana Human Rights Bureau and the Attorney General's Office.

[3] Plaintiffs submit that this testimony is binding on Defendants, as the entities deposed are charged with application and enforcement of MCA 49-2-312.  However, that is not currently at issue in Defendants' motion.

hear differing evidence.  *Snapp*, 889 F.3d at 1104.  The mere fact that the

testimony may not "'bind [the party] in the sense of a judicial admission[,]'" does

not make the testimony inadmissible.  Similarly, in *Zeleny v. Newsom*, the district

court was considering a motion to compel 30(b)(6) testimony, not whether 30(b)(6)

testimony was admissible.  No. 17-cv-07357-RS (TSH), 2020 U.S. Dist. LEXIS

100944 (N.D. Cal. June 9, 2020).  The district court found that the 30(b)(6) notice

was deficient, and that the plaintiff was not using the deposition to obtain factual

testimony.  Therefore, the court denied the motion to compel.  *Zeleny,* 2020 U.S.

Dist. LEXIS 100944.

 Again, Defendants misconstrue factual testimony about the application and

enforcement of the law as a legal conclusion.  Factual testimony regarding how the

law is being interpreted, applied, and enforced does not constitute inadmissible

legal conclusions.  "A legal conclusion is a 'statement that expresses a legal duty

or result but omits the facts creating or supporting the duty or result' whereas

a statement of fact is a 'declaration that asserts or implies the existence or

nonexistence of a fact.'"  *Wilmington Sav. Fund Soc'y, FSB v. Hutchins*, No. CV

1800346 JCH/JHR, 2020 U.S. Dist. LEXIS 68835, at *19 (D.N.M. Apr. 20, 2020)

(citing *Legal Conclusion*, Black's Law Dictionary 11th ed. (2019); *Statement of

Fact*, Black's Law Dictionary 11th ed. (2019)).  None of the testimony at issue

would invade the province of the judge to determine the law.

17

Statements related to how the HRB enforces and investigates complaints for violations of MCA 49-2-312 are not legal opinions and are admissible. For example, the fact that the HRB applies guidance from the Equal Employment Opportunities Commission when it does not conflict with state law is not a legal conclusion. (Pls.' SUF, Doc. 83 ¶ 78). Rather, it is a description of how the HRB exercises its enforcement authority. Ms. Beck is an attorney and has been with the HRB for twenty years, acting as Chief for ten years. Dep. HRB 24:22-25:6, Doc. 95-1 at 638-639). Ms. Beck was designated by Defendants to testify on behalf of the HRB, an agency of the Montana Department of Labor and Industry ("DLI"). (Dep. HRB 12:10-20, 26:3-11, Doc. 86-14 at 3, 7). The HRB is "tasked with enforcing the Montana Human Rights Act [("MHRA")] and the statutes involved there." (Dep. DLI 16:18-21, Doc. 86-10 at 5). DLI repeatedly deferred to the HRB. (*See, e.gs.,* Dep. HRB 22:3-10; 25:2-26:6; 28:8-10; 30:9-17; 32:8-21; 34:20-35:1 Doc. 95-1 at 7-10).

Factual information regarding how the HRB interprets the ADA or the MHRA is not a legal conclusion. Instead, it describes facts explicitly within the HRB's purview. Part of the HRB's process in investigating ADA claims is determining whether an individual is disabled and whether there was a failure to engage in the interactive process. (Dep. HRB 90:12-25, 92:4-8, Doc. 86-14 at 18). Accordingly, the HRB's factual testimony related to how it makes those

18

determinations is admissible.  (*See* Dep. HRB 90:12-91:10, 92:17-93:21, 94:13-17, Doc. 86-14 at 18-19), referenced in (Pls.' SUF, Doc. 83 at ¶¶ 9, 45).  It is also the HRB's role to determine whether there is reasonable cause to believe a violation of MCA 49-2-312 has occurred.  (Dep. HRB 28:24-29:3, Doc. 86-14 at 7-8).  Thus, the HRB's factual testimony regarding its interpretation that removing an unvaccinated individual from direct patient care, requiring only unvaccinated employees to wear masks[4], or terminating an unvaccinated individual could constitute discrimination is appropriate.  (Pls.' SUF, Doc. 83 at ¶¶ 69-71).  Moreover, the statement of fact that certain conditions are "physical impairments that impact one or more major life activities," is not a legal conclusion.  (Pls.' SUF, Doc. 83 at ¶ 9).

Likewise, the manner in which DPHHS carries out its survey efforts to determine compliance with Centers for Medicaid and Medicare ("CMS") conditions of participation is not a legal conclusion.  DPHHS contracts with CMS to provide surveys to determine compliance with CMS conditions of participation.  2d Decl. Mahe, ¶ 10, Ex. 9: Dep. DPHHS Services 24:9-25:17, Aug. 18, 2022.

---

[4] To the extent Defendants' motion also seeks to exclude testimony from the AG that "[s]ome examples of vaccination-based discrimination include, but are not limited to, requiring only staff who have not received the COVID-19 vaccine to wear a mask[,]" that factual testimony is admissible as it was a direct quote taken from a letter sent by the AG.  (Dep. AG 51:21-52:2-22, Doc. 86-15 at 12); (Doc. 86-28).

19

DPHHS factually testified that it "was required to check vaccine compliance upon any recertification surveys, initial surveys, or complaint surveys."  Dep. DPPHS 27:6-18.  DPHHS then factually testified regarding the guidance it put out on how hospitals could comply with the CMS vaccine mandate and MCA 49-2-312.  (Pls.' SUF, Doc. 83 at ¶ 87) (Dep. DPHHS 89:2-13).  DPHHS testified that it provided guidance that hospitals, when faced with the question of whether to comply with MCA 49-2-312 or the CMS COVID-19 vaccine mandate, should follow the CMS mandate.  (Pls.' SUF, Doc. 83 at ¶ 87) (Dep. DPHHS 89:2-13).  Again, this is factual testimony about the guidance provided by DPHHS regarding the conditions of participation.  Similarly, DPHHS was asked the factual question regarding what penalties were available if there are deficiencies that are not corrected.  Dep. DPHHS 26:17-23.  DPHHS testified, without objection, that losing Medicare and Medicaid reimbursement was a potential penalty.  Dep. DPHHS 26:25-5.  DPHHS again testified, without objection, that the ultimate penalty[5] for failing to comply with the conditions of participation is termination from the Medicaid and Medicare programs.  (Pls.' SUF, Doc. 83 at ¶¶ 92-93) (Dep. DPHHS 51:17-20).

---

[5] SUF Paragraph 92 also cites factual evidence depicting the Montana State Hospital's involuntary termination from Medicare and Medicaid due to violations of the conditions of participation.  (Doc. 83 at 21; citing Doc. 86-19).

Also, whether keeping workers healthy and safe is in the interest of DLI is not a legal conclusion.  (Pls.' SUF, Doc. 83 at ¶ 20).  DLI testified that it operates the Montana Safety and Health Bureau and the purpose of that bureau is to help improve safety and health in the workplace.  (Dep. DLI 50:11-18, Doc. 86-10 at 14).  DLI agreed, without objection, that the health of workers in Montana is important.  (Dep. DLI 50:19-22, Doc. 86-10 at 14).  Then, DLI testified, without objection, that keeping workers healthy and safe was in the interest of DLI.  (Dep. DLI 50:23-51:7, Doc. 86-10 at 14).  There is nothing inadmissible about this testimony.

Testimony from the AG and DLI regarding the fact that they intend to, and actively are, enforcing MCA 49-2-312 does not amount to a legal conclusion. (Pls.' SUF, Doc. 83 at ¶ 81).  It is factual that the HRB is actively investigating and enforcing claims of violations of MCA 49-2-312.  It is factual that DLI is sending enforcement letters to entities it believes are out of compliance with the law.  (Pls.' SUF, Doc. 83 at ¶ 81).  And, it is factual that there are criminal penalties associated with violations of MCA 49-2-312, which the AG indicated they could use.  (Pls.' SUF, Doc. 83 at ¶ 82).

Similarly, testimony and evidence that the DLI and AG have recognized the conflict between federal vaccination mandates and penalties imposed on employers by MCA 49-2-312 is factual.  (Pls.' SUF, Doc. 83 at ¶ 86).  These are not legal

21

conclusions, but rather factual admissions that go directly against the position Defendants are taking in this lawsuit.  Moreover, the fact that the AG does not know the basis for disparate treatment of different healthcare entities under MCA 49-2-312 can hardly be said to be a legal[6] conclusion.  (Pls.' SUF, Doc. 83 at ¶ 85). Instead, it is a statement that the AG does not know the factual reasons for the differentiation in the law.

Accordingly, Defendants' motion should be denied.

## H.    DEFENDANTS' MOTION TO EXCLUDE EVIDENCE RELATED TO PLAINTIFFS' INVOCATION OF THE FIFTH AMENDMENT

This motion seeks adverse inferences that the institutional Plaintiffs' pre-MCA 49-2-312 policies did not change after the law was passed, based upon the limited invocation of the Fifth Amendment testimonial privilege asserted to a narrow set of questions during the depositions of Providence, Five Valleys, and the Clinic.  This motion should be denied.  Defendants' motion misconstrues the depositions, and, in any event, the relief requested by Defendants is not necessary as all three of these institutional Plaintiffs produced both pre- and post-MCA 49-2-312 policies regarding vaccination and infectious disease control.  The specific

---

[6] Though it should also be noted that the AG 30(b)(6) witness was a lawyer. (Dep. AG 24:16-26:7, Doc. 86-15 at 5-6).

22

questions and answers raised by Defendants in their motion do not serve as a basis for the relief requested.

As an initial matter, Plaintiffs did not and are not using the Fifth Amendment as both a sword and a shield.  A violation of the MHRA, including a violation of MCA 49-2-312, carries the potential for criminal penalties.  Mont. Code Ann. § 49-2-601.  These entities' designees were deposed by the Attorney General and Solicitor General of Montana, the agencies who may enforce the criminal components of this particular statute.  As to specific questions implicating whether current policy or practice may run afoul of MCA 49-2-312, certain of the corporate designees invoked their individual testimonial privilege against self-incrimination.  However, none of the institutional Plaintiffs resisted production of their policies on this basis, and instead, all policies were provided.  Plaintiffs attempted to strike an appropriate balance between providing all applicable information to show pre- and post-MCA 49-2-312 policies, stopping short of having to provide direct testimony that could be construed as an admission that the designee is currently violating the law.

Defendants' motion serves as an attempt to further challenge the institutional Plaintiffs' standing in this case.  But these Plaintiffs have standing regardless of what their current policies say related to requiring proof of vaccination or immunity status to certain diseases.  (*See* Doc. 35 at 10-11); *see also Valle del Sol*

23

*Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) ("It is well-established that, although a plaintiff 'must demonstrate a realistic danger of sustaining a direct injury as a result of a statute's operation or enforcement,' a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief.") (*citing Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)).  As established through the briefing in this case (Docs. 81-83), the institutional Plaintiffs are directly harmed by MCA 49-2-312's prohibitions, which directly impact these entities' ability to protect their patients and staff from communicable diseases, comply with federal law, and exercise appropriate medical judgment in their delivery of care.

Evaluating Defendants' motion question-by-question, Defendants are not entitled to the relief requested.  *See Doe v. Glanzer*, 232 F.3d 1258, 1264-67 (9th Cir. 2000) (request for adverse inference based on invocation of Fifth Amendment evaluated case-by-case with a balancing test weighing the need for the information being sought, as well as admissibility at trial).  As to Providence, the only question at issue is whether the policy titled "Immunization Requirements for Physicians and Allied Health Professionals" with a stated effective date of May of 2022 is currently in effect.  (*See* Doc. 95-1 at 426-31).  Defendants' requested remedy is to infer that this policy is, indeed, still in effect.  (Doc. 114 at 8).  Plaintiffs do not take the position that this policy is not the policy currently in effect at Providence.

24

In fact, during Providence's deposition, Providence testified as to the substance of the document and Providence's policies with respect to the Hepatitis B, influenza, TDaP, and COVID vaccines.  (Dep. Providence 31:11-37:7, Doc. 95-1 at 361-67). To the extent Defendants seek an adverse inference as to all of Providence's policies, such an inference would be overly broad and inappropriate.  As to the policy directly implicated by Defendants' motion, it is clear the vaccination requirements set forth in this policy are currently in effect.[7]

As to the one question placed at issue from Five Valley's deposition, this subject matter is irrelevant.  The subject matter of the question was whether Five Valleys takes special precautions based upon a *patient's* vaccination status.  (Doc. 114 at 9-10).  This case involves what precautions a healthcare entity should be able to take with respect to *staff* vaccination status.  Plaintiffs do not challenge the law insofar as it impacts a patient's vaccination status; the institutional Plaintiffs treat sick patients regardless of whether they are vaccinated or not.  *See* Second Am. Compl. (Doc. 37 at 26-28) (challenging only the phrases "employment opportunities" and "advantages [and] privileges" (to the extent such advantages

---

[7] Plaintiffs note that this policy requires, "as a condition of initial appointment and reappointment for continued affiliation with St. Patrick Hospital," documentation of immunity or proof of vaccination for certain diseases, noting the requirements are "necessary to be in compliance with The Joint Commission infection control standards and CDC recommendations."  (Doc. 95-1 at 426).

and privileges implicate employment opportunities) in MCA 49-2-312(1)(a)").

Notwithstanding, Plaintiffs oppose the broad sweeping relief sought by Defendants

of excluding "any testimony or evidence from Plaintiffs" to the contrary, and

object to the characterization that Five Valleys lacks standing on this basis.

As to the Clinic, Defendants misconstrue the testimony of the Clinic's

designee, and contrary to Defendants' characterization, the Clinic did substantively

answer Defendants' questions.  Defendants first cite to the question posed at page

69:2-8 of the Clinic's deposition.  (Doc. 95-1 at 136).  But the Fifth Amendment

privilege was not invoked to this question.  Instead, Plaintiffs' counsel posed a

question to Defendants' counsel regarding the scope of the question, and

Defendants' counsel thereafter changed the time period to "January 1st 2019 to

January 1st, 2021" (i.e. pre-MCA 49-2-312).  (Dep. Clinic 69:2-70:14).  The Clinic

did not invoke the Fifth Amendment at any point during this line of questioning.

For this reason, Defendants' motion as to this question should be denied.

The second question identified by Defendants appears at page 84 of the

Clinic's deposition, whereby Defendants asked whether the Clinic provided

reasonable accommodations to employees or contractors based upon the

vaccination status of another Clinic employee.  (Doc. 114 at 11).  Defendants'

request an adverse inference that, because the Clinic did not have a situation where

a reasonable accommodation request was made to an employee based on another

26

employee's vaccination status, the Clinic "has not had that circumstance arise post-HB 702." (Doc. 114 at 12).  This request should be denied for two reasons.  First, it misconstrues the witnesses' additional deposition testimony.  (Dep. Clinic 77-78:9, Doc. 95-1 at 138) (testifying that the Clinic could not know whether any one of its thousands of patients made a request in a patient visit); (Dep. Clinic 61:11-21, Doc. 95-1 at 134) (testifying the Clinic took steps to protect others from staff that was not vaccinated for influenza); (Dep. Clinic 80:14-81:2, Doc. 95-1 at 138-139) (describing patient accommodations); (Dep. Clinic 89:12-90:2, Doc. 95-1 at 141) (testifying that patients did not specifically invoke the ADA, but conversations had occurred between patients and their care team regarding the vaccination status of Clinic employees and accommodating those requests).  To the extent Defendants seek an inference that there have not been any reasonable accommodation requests post-MCA 49-2-312, such an inference should be denied as it is inconsistent with the Clinic's testimony.

Second, such an inference is not relevant.  It matters not whether the Clinic has had a reasonable accommodation request based upon a staff member's vaccination status post-MCA 49-2-312; what matters is that MCA 49-2-312 deprives the Clinic of its ability to respond to that reasonable accommodation request in a manner required by the ADA, or even engage in the interactive process required by the ADA.  (*See* Doc. 82 at 19-23); *Valle del Sol Inc.*, 732 F.3d at 1015.

27

For these reasons, Defendants' motion in limine seeking adverse inferences against Providence, Five Valleys, and the Clinic should be denied.

## IV.   CONCLUSION

Defendants' motions in limine (Docs. 99, 101, 103, 105, 107, 109, 111, 113) should be denied.

DATED this 16th day of September, 2022.


/s/  Kathryn S. Mahe
Attorneys for Plaintiffs

28

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Plaintiffs and Plaintiff-Intervenor's Brief in Response to Defendants' Motions in Limine is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 6,244 words long, excluding Caption, Certificate of Service and Certificate of Compliance.

　　　　　　　　　　　/s/  Kathryn S. Mahe
　　　　　　　　　　Attorneys for Plaintiffs