AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
*Solicitor General*
CHRISTIAN B. CORRIGAN
*Deputy Solicitor General*
BRENT MEAD
*Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

MONTANA MEDICAL ASSOCIATION, ET. AL.,

*Plaintiffs*,

and

MONTANA NURSES ASSOCIATION,

*Plaintiff-Intervenors*,

v.

AUSTIN KNUDSEN, ET AL.,

*Defendants*.

No. CV-21-108-M-DWM

**DEFENDANTS' COMBINED REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE**

## INTRODUCTION

Plaintiffs and Intervenor present multiple medical professionals who offered expert opinions on technical, scientific questions—like heightened risk of infection, variable efficacy of different vaccines, and infection control across multiple healthcare settings—all based upon their general clinical experience. According to them, these questions can be answered solely through experience, rather than a discernable scientific methodology. *E.g.*, Doc. 121 at 10; Doc. 128 at 3. Plaintiffs conclude that because the opinions are correct, methodology must be irrelevant. Doc. 121 at 6. But self-serving circularity is not the standard. *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("We took pains to point out that the problem was methodology, not the conclusion to which the evidence would lead."). Defendants acknowledge the lower bar for admissibility in bench trials, Doc. 100 at 7, but that bar doesn't disappear. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859–60 (9th Cir. 2014) (affirming exclusion of unreliable and speculative expert testimony before a bench trial). Plaintiffs' and Intevernor's experts offered unsupported and unreliable opinions ungrounded in any methodology.

Defendants also sought exclusion of Plaintiffs' inappropriate attempts to elicit legal conclusions during 30(b)(6) depositions and then use that testimony as foundation for "undisputed facts." Doc. 112. Defendants dispute many of the legal conclusions at issue and this Court should rely on the legal briefing in front of it, not Plaintiffs inartful use of non-facts.

Finally, the corporate plaintiffs in this case all had their counsel and Rule 30(b)(6) witnesses invoke the Fifth Amendment during depositions. This privilege doesn't extend to corporate entities and this Court should draw all proper adverse inferences against the improper invocations. Doc. 114. Plaintiffs effectively concede the issue regarding Providence, Doc. 121 at 30, and admit their current vaccination policy gives them access to employees' immunity statuses. This astoundingly defeats their arguments in briefing—and in this case—that federal law preempts HB 702 because the latter prevents them from obtaining knowledge of employees' immunity status. Doc. 82 at 20; Doc. 85 at 30–31.

## BACKGROUND

Defendants filed seven motions in limine to exclude or limit Plaintiffs' and Intervenor's unsupported expert opinions and exclude

improperly elicited testimony from Defendant's Rule 30(b)(6) witnesses. Docs. 99, 101, 103, 105, 107, 109, 111.[1] Defendants also filed a motion in limine regarding the Institutional Plaintiffs invocation of the Fifth Amendment during Rule 30(b)(6) depositions. Doc. 113.

Plaintiffs and Intervenor filed combined responses to the motions. Docs. 121, 128. Defendants now file a combined reply in support.

## ARGUMENT

Fundamentally, Plaintiffs' and Intervenor's experts offer broad, sweeping generalizations that cannot reasonably be supported through specialized experience alone. The failure to support their conclusions through reliable and discernable methodologies requires this Court to exclude or limit Plaintiffs' and Intervenor's experts.

Plaintiffs cite *Primiano*, 598 F.3d at 565, for the broad proposition that medical experts can rely on experience alone. Doc. 121 at 10. But

[1] Contrary to Intervenor's baseless claims, Doc. 128 at 2, these motions complied with this Court's rules on "serial motions." Each motion properly identified a discrete subject for exclusion or limitation and Intervenor doesn't argue, for example, why it would be proper to combine a motion in limine related to Defendants' Rule 30(b)(6) witnesses with a motion to exclude Dr. Wilson. This Court shouldn't penalize thoroughness and attention to detail, as Intervenor urges.

*Primiano*'s facts matter and—like most cases Plaintiffs cite—undermine their argument. 598 F.3d at 566 (the elbow replacement specialist testified only about elbow replacements). The specialist in *Primiano* testified about his specialty and, specifically, *his* method of comparing the elbow replacement in that case to elbow replacements, generally. *Id.* at 567. That's why the elbow expert's testimony was admitted.

The expert opinion in *Primiano* is markedly narrower than the opinions offered by Plaintiffs' and Intervenor's experts. Doc. 100; Doc. 102; Doc. 104; Doc. 106; Doc. 108. Plaintiffs' experts offer ranging opinions beyond any knowledge limited to their specialties. *E.g.*, Doc. 102 at 9 (Dr. Stephens relied on "general knowledge" to formulate her opinions). Such opinions lack the requisite level of reliability. *See Doyle v. Chrysler Grp. LLC*, 2015 U.S. Dist. LEXIS 12858, at *18 (C.D. Cal. Jan. 21, 2015) (excluding expert opinion because it "appear[ed] to be based more on [the doctor's] personal experience and/or speculation than it is based on data and analysis.").

## I. The Court should exclude or limit Plaintiffs' experts' testimony

### A. Dr. Stephens

Contrary to Plaintiffs' representations, Dr. Stephens plainly offered opinions that far exceed her experience. Doc. 102. This Court should grant Defendants' motion in limine because Dr. Stephens' opinions aren't limited to "certain clinical settings," Doc. 121 at 13, and instead expound unfounded opinions on all health care settings relating to all vaccines. She simply fails to set forth a reliable methodology for her views.

Plaintiffs continually highlight Dr. Stephens' subspecialty, Doc. 121 at 13, but ignore that she offered opinions implicating settings beyond that subspecialty. Doc. 86.4, ¶¶ 10–11 (cancer settings), 12 (all health care facilities), 13 (hospital-wide settings).

Her personal experience doesn't entail research or publication related to the efficacy of any vaccine. Doc. 102 at 10. Plaintiffs counter that her experience qualifies her to speak to the efficacy of the pertussis vaccine. Doc. 121 at 12. This ignores, however, that she speaks to *all* vaccine preventable diseases, Doc. 86.4, ¶ 11; and it ignores her

acknowledgment that she isn't up to date on research related to the waning efficacy of the pertussis vaccine. Doc. 102 at 9.

Plaintiffs, notably, fail to defend the parts of Dr. Stephens' opinions that express legal conclusions related to purported conflicts between state and federal law. Doc. 121 at 13; Doc. 86.4, ¶¶ 11, 14 (Americans with Disabilities Act), 17–18 (conditions of participation in Medicare and Medicaid).

If the Court doesn't exclude Dr. Stephens' opinions *in toto*, then it must at least limit her opinions to those specific settings in which she practices and only to the specific opinions related to that practice. If the Court narrows its focus thusly, it will find few—if any—opinions left.

But for the reasons previously argued, the Court should exclude her opinions in toto. Doc. 102.

**B. Dr. King**

Plaintiffs ignore the sheer sweep of Dr. King's opinions and that those opinions largely lack any support. Doc. 104 at 6 (highlighting specific opinions that lack a reliable methodology). For example, he states that unvaccinated health care workers, for any disease, disregard the safety of patients. Doc. 86-1, ¶ 46. But the undisputed record shows that

healthcare providers' staff vaccination policies are permissive, allow broad exceptions, and don't cover all (or most) vaccines. Doc. 93, ¶¶ 79, 85–86, 88. Surely, if Dr. King offered an opinion that contradicted Plaintiffs' and Intervenor's position, he would have cited or referenced some evidentiary support—but he didn't. Doc. 104 at 7–8. Instead, by his own admission, this was his personal opinion. Doc. 104 at 8.

Plaintiffs tellingly fail to address the substance of Defendants' arguments related to non-COVID-19 diseases. Doc. 121 at 15. Dr. King's own report acknowledges—albeit in highly generalized terms—diseases vary in characteristics like mutability and infectiousness, which in turn affects immunity durability. Doc. 86-1, ¶ 22. But Dr. King doesn't support his opinions regarding non-COVID-19 related illnesses. Doc. 104 at 9.

As for Dr. King's bias, Plaintiffs fail to respond to Dr. King's admission that the overt hostility pervading his personal opinions clouds his professional judgment. Doc. 104 at 10–11. That doesn't go to weight, it goes to admissibility. *Ollier*, 768 F.3d at 861 (citing *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("personal opinion testimony is inadmissible as a matter of law under Rule 702").

For the reasons previously argued, the Court should grant Defendants' motion to exclude or limit Dr. King's testimony. Doc. 104.

**C. Dr. Taylor**

Dr. Taylor's opinion on childhood vaccinations contains an admitted—and fatal—analytical leap and this Court should exclude that opinion. Doc. 106 at 7, 9. Plaintiffs' rebuttal attempt fails for the simple reason that it contradicts Dr. Taylor's own testimony: they suggest that a cited report supports Dr. Taylor's conclusions, while Dr. Taylor himself admitted it didn't. *Compare* Doc. 121 at 18 to Doc. 106 at 7; *see also* Doc. 93, ¶¶ 3–6. The Court should grant Defendants' motion on this point.

As to the remaining paragraphs at issue, Plaintiffs state that each paragraph is supported by "sound science" and "medical literature." Doc. 121 at 19. But they aren't. Doc. 106 at 9–11. That was the point of Defendants' motion in limine: Dr. Taylor didn't support his opinions through sound science and medical literature—his opinions lacked any reliable methodology. Doc. 106 at 11. Reciting a general history of vaccine development is interesting, but it doesn't establish expertise to speak authoritatively about each vaccine's efficacy in preventing disease transmission and infection. Plaintiffs point to no methodology used by

Dr. Taylor to substantiate the non-COVID-19 opinions because they cannot—it simply doesn't exist in his report. Doc. 106 at 9–11. For that reason, and reasons previously argued, the Court should grant Defendants' motion. Doc. 106.

## II. The Court should exclude or limit Intervenor's experts' testimony

### A. Dr. Wilson

The Court should grant Defendants' motion to exclude Dr. Wilson's testimony. Doc. 99. By her own admission, she testified on topics about which experience had not qualified her. Doc. 100 at 11 (Dr. Wilson is not a basic researcher, vaccine expert, virologist, public health expert) (citing Wilson Dep. 43:1–43:10; 15:12–16:2). Dr. Wilson and opposing counsel made clear she was not offering any opinions on vaccine efficacy. Doc. 100 at 13. Yet her expert report purports to do just that. Doc. 100 at 12.

Plaintiffs and Intervenor fail to offer any rebuttal to this facial mismatch between the subject of Dr. Wilson's report and the admitted limitations of her expertise. Doc. 121 at 8–9; Doc. 128 at 3–4. For the reasons previously argued, this Court should exclude Dr. Wilson's testimony. Doc. 100.

**B. Dr. Holzman**

Dr. Holzman's experience doesn't qualify him to pontificate on broad scenarios across a variety of healthcare settings. Doc. 108 at 7–8; *see also* Doc. 85-3 at 2 ("not all workers in the same healthcare facility, not all individuals with the same job title, and not all healthcare facilities will be at equal risk of occupational exposure to infectious agents."). Intervenor's own exhibits demonstrate the need to specify sound methodology when articulating the risks of occupational exposure to infectious agents. Doc. 85-3 at 2. Dr. Holzman fails to provide any, which renders his opinions inadmissible. Doc. 108.

Intervenor also incorrectly attempts to use Dr. Holzman to supply the Court with ultimate legal conclusions. Doc. 128 at 5; *see Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (Courts must exclude "ultimate issue of law" testimony because it "invade[s] the province of the trial judge."). What constitutes a "known hazard" directly implicates the legal question at issue in the Occupational

Safety and Health Act preemption claim. Doc. 108 at 9.[2] These legal conclusions are simply inadmissible.

**C. Vicky Byrd**

In their interrogatories, Defendants used the precise words Intervenor employed in its complaint. Doc. 110 at 4. Intervenor now complains it must "guess at" what those terms mean. Doc. 128 at 8. Such evasive responses strain credulity.

Intervenor's complaint alleges that HB 702 prevents them from "observing and enforcing infection disease prevention protocols." Doc. 38, ¶ 20(c). Defendants sought written discovery on that precise issue. Doc. 110 at 4. After a non-response in discovery, Vicky Byrd testified that "vaccination requirements for healthcare workers are an essential component of infection control plans in healthcare settings …." Doc. 85-1, ¶ 19. Defendants unambiguously sought discovery on this precise topic and Intervenor stonewalled; Intervenor cannot shirk its obligations to

---

[2] Intervenor incorrectly conflates Defendants' linkage of "known hazard" and the Occupational Safety and Health Act with Dr. Holzman's separate legal conclusion that healthcare workers in long term care facilities face the same risks as other healthcare workers. Doc. 128 at 5. The Court should exclude both legal conclusions.

respond to discovery requests and then later introduce evidence on that subject. The Court should grant Defendants' motion in limine for this reason and reasons previously argued. Doc. 110.

## III. The Court should grant Defendants' other motions in limine.

### A. The Court should exclude improperly elicited Rule 30(b)(6) testimony.

Plaintiffs' oppositional response makes clear the necessity of excluding the testimony at issue. Doc. 121 at 21 n. 3 (asserting Plaintiffs seek to bind Defendants to the legal conclusions elicited during Rule 30(b)(6) depositions). As Defendants argued, 30(b)(6) depositions cannot be used to bind parties' legal positions and the Court should exclude any testimony as to legal conclusions or legislative facts. Doc. 112 at 5; *see also* Doc. 132, ¶ 86 (quoting Intervenor's counsel) ("If someone wanted to know MNA's position about the interaction of state and federal law and the United States Constitution's supremacy clause, you'd refer them to MNA's legal pleadings, wouldn't you?").

Plaintiffs' unquestionably sought testimony related to a legal conclusion and then dressed up the legal conclusion as fact. Doc. 112. That doesn't make it so. Defendants objected to each "fact" referenced in Doc.

112 in their Statement of Disputed Facts. Doc. 132. This Court should grant Defendants' motion.

Plaintiffs repeatedly sought testimony from the Human Rights Bureau on its interpretation of law. Doc. 121 at 24. They couch such questions as "factual testimony regarding its interpretation" of law. *Id.* That's a legal conclusion by any measure. The object of the testimony makes this clear. Plaintiffs sought an affirmative statement on what constitutes discrimination, but that is a conclusion about whether certain actions violate a legal duty. Doc. 132, ¶¶ 45, 69–71; *see also* Doc. 132, ¶ 9 (raising similar objections to the call for a legal conclusion as to what constitutes a physical impairment). Plaintiffs ignore that their questions repeatedly asked the Bureau's witness to state her conclusion based on hypothetical scenarios. *Compare* Doc. 121 at 24 to Doc. Doc. 86-14 at 51:5–6 (witness declined to offer a definitive conclusion without specific facts). Defendants answered questions about the investigative process and only properly seek to exclude Plaintiffs' questions that stray into impermissible areas. The Court should grant Defendants' motion related to the Human Rights Bureau.

For reasons previously argued, the Court should also grant the motion as it relates to the Department of Public Health and Human Services' testimony. Doc. 112 at 9; Doc. 132, ¶¶ 92–93 (Plaintiffs' question inappropriately called for testimony as to legal consequences of non-compliance with federal rules); *see also* Doc. 132, ¶ 87 (Plaintiffs misstate the testimony of the Department).

Plaintiffs need only look to the words of Intervenor's counsel to understand where they need to turn to understand Defendants' position in this litigation. *See* Doc. 132, ¶ 86. The continued insistence on admitting legislative facts and legal conclusions over the objections of Defendants should come to an end. Doc. 121 at 26–27. Defendants properly objected to the calls to elicit such testimony during the Department of Justice and Department of Labor depositions and for the reasons previously argued, this Court should exclude such testimony. Doc. 112 at 8–9; Doc. 132, ¶¶ 20, 78, 81–82, 85–86. Such testimony is not factual, it is clearly intended to bind the legal position of Defendants, and it should be excluded. Doc. 121 at 21 n.3, 26–27.

### B. The Court should grant Defendants' motion related to Plaintiffs invoking the Fifth Amendment.

Defendants moved the Court to draw adverse inferences based on Plaintiffs' invocation of the Fifth Amendment. Doc. 113. Plaintiffs effectively concede the point as it relates to Providence. Doc. 121 at 30. Providence's current vaccination policy allows Providence to track individuals' vaccination and immunity statuses. *Id.*; *see also id.* at n.7. Plaintiffs' admission directly contradicts arguments made in other briefing. *E.g.*, Doc. 82 at 20; Doc. 85 at 30–31. In other briefing, Plaintiffs allege that HB 702 denies them this information, which forms the basis of their Americans with Disabilities Act and Occupational Health and Safety Act preemption claims. Doc. 82 at 20; Doc. 85 at 30–31. The Court should grant the motion for the reasons previously argued, Doc. 114, and insofar as Plaintiffs' claims rely on the assertion that they cannot track vaccination status, the Court should grant summary judgment to Defendants. Doc. 91.

#### *1. Providence*

Plaintiffs apparently accede to Defendants' motion related to Providence. Doc. 121 at 30 ("As to the policy directly implicated by

Defendants' motion, it is clear the vaccination requirements set forth in this policy are currently in effect."). In essence, Providence currently employs a policy by which they track individuals' vaccination status for a host of diseases, through proof of immunity or declination forms. Doc. 95-1 at 426–431. This, of course, undercuts Plaintiffs' central argument that HB 702 prevents them from doing just that. Doc. 82 at 15, 20; Doc. 119 at 16. This policy also preexisted HB 702. Doc. 114 at 8. Providence follows the same policy today as it did before HB 702. Providence has the same access to information today as it did before HB 702's enactment. This undercuts their claims that HB 702 denies them necessary information related to their preemption claims. Doc. 82 at 20; Doc. 85 at 30–31.

***2. Five Valleys Urology***

Plaintiffs only dispute the motion as it relates to Five Valleys Urology based on relevancy. Doc. 121 at 30–31. For the reasons previously argued, this Court should grant Defendants' motion. Doc. 114 at 9–10.

***3. Western Montana Clinic***

Western Montana Clinic testified that, from January 1, 2021 to the passage of HB 702, it did not receive any reasonable accommodation

requests from employees based on the vaccination status of other employees. Doc. 114 at 12. Consistent with that testimony and discovery responses, Doc. 94-9 at 33–34, this Court should infer Western Montana Clinic has not had that situation arise post-HB 702. Doc. 114 at 12. This strikes directly at Plaintiffs' ability to meet the essential elements of one of their preemption claims. Doc. 92 at 17–21.

Plaintiffs respond with seemingly inconsistent, and irrelevant, testimony related to patient accommodations—not employee accommodations. Doc. 121 at 32. On one hand, "Clinic could not know whether any one of its thousands of patients made a [reasonable accommodation] request in a patient visit," and that "patients did not specifically invoke the Americans with Disabilities Act." Doc. 121 at 32; *see also* Doc. 93, ¶ 59. On the other, Western Montana Clinic claims it did provide such patient accommodations. Doc. 121 at 32. But Western Montana Clinic invoked the Fifth Amendment related to employee, not patient, accommodations. Doc. 114 at 12. The Court should draw the logical adverse inference from Western Montana Clinic's non-response that Western Montana Clinic hasn't had an employee request for accommodation, which undermines their Title I Americans with Disability Act claim.

## CONCLUSION

For the reasons stated, the Court should grant Defendants' motions in limine. Docs. 99, 101, 103, 105, 107, 109, 111, 113.

DATED this 30th day of September, 2022.

Austin Knudsen
Montana Attorney General

DAVID M.S. DEWHIRST
Solicitor General

CHRISTIAN CORRIGAN
Deputy Solicitor General

*/s/Brent Mead*
BRENT MEAD
*Assistant Attorney General*
P.O. Box 201401
Helena, MT 59620-1401
david.dewhirst@mt.gov
christian.corrigan@mt.gov.
brent.mead2@mt.gov

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 3,189 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/ *Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 30, 2022

/s/ *Brent Mead*
BRENT MEAD