AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
  Solicitor General
CHRISTIAN B. CORRIGAN
  Deputy Solicitor General
BRENT MEAD
  Assistant Solicitor General
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
david.dewhirst@mt.gov
christian.corrigan@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, ET. AL., | No. CV-21-108-M-DWM |
| *Plaintiffs,* | |
| and | **DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| MONTANA NURSES ASSOCIATION, | |
| *Plaintiff-Intervenors,* | |
| v. | |
| AUSTIN KNUDSEN, ET AL., | |
| *Defendants.* | |

## INTRODUCTION

At the heart of this dispute is a disagreement over the public's interest in ensuring Montanans don't face discrimination over their private medical choices.  Plaintiffs claim the State can "never" act against their view of public health.  Doc. 119 at 25.  But our society exists in a representative government.  The elected and accountable branches of government protected Montanans from a growing wave of discrimination.  Doc. 92 at 9.  That decision rests solely with elected representatives.

After copious discovery and briefing, nothing changes that basic fact.  The peoples' representatives protected Montanans from discrimination.  That choice remains valid and constitutional.

## ARGUMENT

## I. HB 702 isn't preempted by federal law

### A. Americans with Disabilities Act

Defendants are entitled to summary judgment on claims I and II because Plaintiffs and Intervenor cannot establish facts necessary to make out necessary elements of their claim.  Doc. 92 at 11–23.  This Court cannot preempt Montana's antidiscrimination law based on such factually deficient claims.  *Id.*

The lack of necessary evidence defeats Plaintiffs' claim because they must show a prima facie case under the Americans with Disabilities Act to reach whether the requested accommodation in that case requires preemption of HB 702. Doc. 92 at 13–21. It's undisputed that the accommodation process requires case and circumstance specific facts to determine whether the requested accommodation is reasonable. *E.g.*, Doc. 120, ¶¶ 42, 60, 78. Here, because no documented request exists, the Court cannot undertake the necessary accommodation-by-accommodation factual findings prerequisite to reaching the preemption question.

Plaintiffs spill much ink on why this argument simply rehashes standing. Doc. 119 at 11–13. Plaintiffs miss the point. The Ninth Circuit requires a prima facie showing as a necessary requirement of any Americans with Disabilities Act claim—even a preemption claim. Doc. 92 at 13–14; *see Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996). Defendants noted that while the Fifth Circuit treats this requirement as a standing issue, it intertwines with the merits. Doc. 92 at 14 n.2. Under either framework, Plaintiffs cannot meet their ultimate burden in this case because they don't possess any documented accommodation requests.

Plaintiffs and Intervenor failed to present a single documented request for accommodation under the Americans with Disabilities Act. Doc. 131 at 10–13; Doc. 93, ¶ 84.  Plaintiffs' belated attempts to buttress the undisputed record—through half-hearted affidavits and statements—self-acknowledges their failure to produce even *one* specific documented accommodation request.  Doc. 127, ¶ 12; Doc. 92 at 16.

Regarding Five Valleys, the undisputed record shows Five Valleys didn't possess a single documented accommodation request by patients or employees made under the Americans with Disabilities Act.  Doc. 93, ¶¶ 40, 43.  Plaintiffs disputed facts don't dispute this.  Doc. 120, ¶¶ 40, 43, 111–12.  Instead, Five Valleys' testimony highlights the lack of specificity or documentation related to accommodation requests.  Doc. 95-1 at 54 ("I cannot give you specific examples" of patient requests for accommodations).  The one alleged employee-related request was for a leave of absence, which—in apparent compliance with the Americans with Disabilities Act—was granted.  Doc. 120, ¶ 43; Doc. 95-1 at 58.  When faced with discovery requests, Five Valleys produced no documentation substantiating this or any other accommodation request.  Doc. 93, ¶ 43.

Western Montana Clinic likewise asserts "it was aware of conversations," Doc. 119 at 11, but failed to provide any documented accommodation requests. Doc. 93, ¶ 59; *see also* Doc. 94.9 at 33–34; Doc. 94.9 at 34–35. Plaintiffs' disputed facts, Doc. 120, ¶¶ 58, 59, 61, 108, don't affect the material undisputed facts that Western Montana failed to produce a single documented accommodation request related to the immunity or vaccination status of its employees. Doc. 93, ¶ 59.

Providence, too, failed to provide any such documentation. Doc. 131 at 11 n.2 (citing relevant portions of the record). Plaintiffs hide behind their evidentiary failures with new declaratory statements. Doc. 120, ¶ 110. But Providence's new statement simply says, "Providence had an employee quit because they could not guarantee they would only work with vaccinated staff." *Id.* Was that employee a qualified disabled individual under the Americans with Disability Act? Did the employee submit a reasonable accommodation request? Would such a requested accommodation be reasonable—even absent HB 702? Plaintiffs quite simply cannot make their case because of their evidentiary deficiencies. Doc. 92 at 13–21.

Finally, neither the Individual Plaintiffs nor Intervenor produced any accommodation requests made under the Americans with Disabilities Act. Doc. 94.9 at 20 (the Individual Plaintiffs did not possess any documents related to requests made under the Americans with Disabilities Act); Doc. 120, ¶ 84.

Plaintiffs' cited cases demonstrate Defendants' point: one must establish a prima facie Americans with Disabilities Act case as a prerequisite for their preemption claim. *See Seaman v. Virginia*, 2022 U.S. Dist. LEXIS 52136 at *57–58, 60 (W.D. Va. March 23, 2022) (plaintiffs made specific modification requests at specific school); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 165–66 (2d Cir. 2013) (remanding to determine whether the requestor was a qualified individual and whether the request was a reasonable modification); *see also* Doc. 131 at 14–15 (detailing other cases cited by Plaintiffs likewise required plaintiffs in those other cases meet the elements of an Americans with Disabilities Act claim).[1]

---

[1] Plaintiffs cite a now-vacated opinion, which this Court should ignore. *See Arc of Iowa v. Reynolds*, 24 F.4th 1161 (8th Cir. Jan. 25, 2022) *vacated by Arc of Iowa v. Reynolds*, 2022 WL 898781 (8th Cir. Mar. 22, 2022). Doc. 119 at 13.

As previously argued, Plaintiffs rely almost exclusively on Title II cases, while bringing Title I and Title III claims.  Doc. 131 at 9–10.  This results in some confusion because they seek a modification from a government program—HB 702—but fail to bring that challenge.  Instead, they ask this Court to authorize a blanket preemption against HB 702 for accommodation requests that haven't been made.  The proper course is for this Court to deny the blanket request and limit its analysis to the specifics of an individual requested accommodation.  Doc. 131 at 18–19; *see also Seaman*, 2022 U.S. Dist. 52136 at *78–79.

Plaintiffs fail to support their blanket request with any authority that this Court can reach beyond specific accommodation requests in the record.  Because the record contains no such documented specific accommodation requests, Plaintiffs cannot establish the elements of a prima facie case.  Without that, this Court cannot determine whether HB 702 prevents all reasonable accommodations to a specific individual after a specific request.

Defendants are entitled to summary judgment on Counts I and II.

**B. Occupational Safety and Health Act**

Plaintiffs feign consternation over an alleged conflict between HB 702 and the General Duty Clause.  But they cannot show that the Occupational Safety and Health Act requires them to mandate any vaccination or treat employees differently based on vaccination status.  Absent that showing, Plaintiffs have no claim.

The Institutional Plaintiffs put forth several alleged examples of prior vaccination policies that they claim kept them in compliance with the General Duty Clause.  *See* Doc. 119 at 17–18.  For example, they claim Providence required proof of vaccination for MMR, Varicella, and Hepatitis B.  *Id.* at 18.  Similarly, they claim Western Montana Clinic tracked influenza vaccination status and took "additional steps" if employees weren't vaccinated.  *Id.*  They claim Five Valleys required employees to receive the Hepatitis B vaccine.  *Id.* at 17.  As discussed below, these alleged examples are nullified by the fact that employees were permitted to decline each vaccination.

Even taking Plaintiffs' factual examples as true, the variation in vaccination policies between Institutional Plaintiffs demonstrates that the General Duty Clause doesn't require them to mandate vaccinations

or treat employees differently.  After all, if Providence is correct that the General Duty Clause required proof of vaccination for MMR and Varicella, then neither Five Valleys nor Western Montana were compliant. And Providence had no influenza vaccination mandate while Western Montana did, so was Providence noncompliant with the General Duty Clause?  The logic of Plaintiffs' arguments leads to a self-admission that they all were noncompliant with the General Duty Clause prior to HB 702.[2]

Next, Plaintiffs' factual contentions are … poorly contended.  Their characterization that Five Valleys' Occupational Safety and Health Act policy manual *requires* the Hepatitis B vaccination is laughably false. Doc. 119 at 17–18.  The bloodborne pathogen standard requires employers to *offer* the Hepatitis B vaccination free of charge to all workers who have occupational exposure.  *See* 29 C.F.R. §§ 1910.1030(f)(1)(i), 1910.1030(f)(1)(ii)(A).  Under that standard, workers may decline the

---

[2] This creates serious causation and redressability issues for Plaintiffs if the alleged workplace hazards aren't being caused by HB 702 and won't be redressed by a favorable ruling.

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT | 9

vaccination by signing a declination form. *See* 29 C.F.R. §§ 1910.1030(f)(2)(iv); 1910.1030 App.A (Hepatitis B declination form).

Plaintiffs admit that Five Valleys' Occupational Health and Safety policy allows employees to decline the Hepatitis B vaccine. Doc. 119 at 17–18. Five Valleys can't believe that the General Duty Clause mandates staff Hepatitis B vaccinations if both its policy manual and 29 C.F.R. § 1910.1030(f)(2)(iv) permit employees to decline the vaccine for any reason.

Plaintiffs claim "Five Valleys also required its providers to have privileges at hospitals as a condition of employment and those hospitals required proof of immunization in order to obtain privileges." Doc. 119 at 18. But that doesn't speak to whether the Occupation Health and Safety Act requires mandatory vaccinations.

Plaintiffs' recognition that the Agency "has implemented standards related to vaccination of healthcare workers" defeats their own argument. Doc. 119 at 19. If the Occupational Safety and Health Act mandated vaccinations for workplace safety due to bloodborne pathogens, the regulations would say so. But they don't. *See* 29 C.F.R. § 1910.1030(f); *cf. Flower World, Inc. v. Sacks*, 43 F.4th 1224 (9th Cir. 2022). It strains

credulity to believe the General Duty Clause imposes a more stringent vaccination regime on healthcare employers than the specific regulations.

Finally, Plaintiffs half-heartedly recycle an argument made by Intervenor, claiming that there's a conflict because "healthcare workers are generally required to be vaccinated against diseases." Doc. 119 at 19. Plaintiffs overlook that the Supreme Court characterized the Agency's Emergency Temporary Standard as "a significant encroachment into the lives—and health—of a vast number of employees." *NFIB v. DOL, OSHA*, 142 S. Ct. 661, 665 (2022). The Court noted that the Agency could regulate "occupation-specific risks related to COVID-19" and "targeted regulations are plainly permissible." *Id.* at 665–66. This cuts sharply against Plaintiffs' speculation that the General Duty Clause applies.

The Court should grant summary judgment for Defendants on Claims III and IV.

## C. Centers for Medicare and Medicaid Services Regulations

Plaintiffs have not carried their burden to overcome the presumption against preemption.  *See Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1209 (9th Cir. 2009).  Nor can they.

Once again, Plaintiffs rely solely on generic platitudes about vaccines being "nationally recognized means of infection control."  Doc. 119 at 14.  They, in turn, ask this Court to ignore that the plain terms of 42 C.F.R. §§ 482.41 and 482.42 say nothing about vaccination or anti-discrimination laws.  They want the Court to ignore that prior to the November 2021 Centers for Medicare and Medicaid Services COVID-19 vaccination requirement, it had *never* required any health care staff vaccination as a condition of participation.  86 Fed. Reg. 61,555 (Nov. 5, 2021).

Like Plaintiffs' faux conflict with the Occupational Health and Safety Act, the variation in vaccination policies between Institutional Plaintiffs demonstrates that the 42 C.F.R. §§ 482.41 and 482.42 don't require them to mandate vaccinations or treat employees differently.  *See* Part I.B. above.  If Plaintiffs' rationale holds up, then each of them was noncompliant with the conditions of participation prior to HB 702.

Nevertheless, prior to HB 702 and COVID-19, Plaintiffs' staff vaccination policies never triggered a complaint, citation, or violation of the conditions of participation.  Doc. 93 at ¶¶ 44, 46, 62, 80, 91–93.   The facts offered by Institutional Plaintiffs either expose the fraudulence of their current theory or reveal a past chronic failure to "ensure the safety of the patients" or failure to employ "methods for preventing and controlling the transmission of infections within the hospital and between the hospital and other institutions and settings."  Plaintiffs' patients need not fear—it's the former.

Plaintiffs also fail to respond to Defendants' argument that HB 702 doesn't significantly alter the vaccination scheme for healthcare.  *See* Doc. 92 at 30–31 (citing 86 Fed. Reg. at 61568).

Defendants are entitled to summary judgment on Claims VIII(a) and VIII(b).

## II. Right to Seek Health

Defendants incorporate arguments made in their reply to Intervenor's response filed contemporaneously.

Plaintiffs' right to seek health" argument rests on unsupported allegations contrary to the facts and law.  Doc. 119 at 25 ("A statute, such

as MCA 49-2-312, which increases the risk of transmission and prevalence of infectious diseases can never be said to be in the interest of public health and safety.").  First, MCA § 49-2-312's plain text leaves in place previous school and daycare vaccination requirements.  Doc. 93 at ¶¶ 2–4.  Plaintiffs' experts and witnesses routinely related their unfounded fears over reduced vaccination rates to school age vaccinate rates.  Doc. 93, ¶¶ 20, 74; Doc. 104 at 9; Doc. 106 at 6–7.  But the undisputed facts show that medical and religious exemptions in Montana schools *decreased* in 2021.  Doc. 93, ¶ 6.  In other words, as a factual matter, HB 702 didn't increase the rate of exemptions from required school vaccinations.  Second, Plaintiffs fail to support their extraordinarily broad claim that HB 702 has a traceable impact on transmission and prevalence of disease with any citation to the record.  Because they cannot.  *E.g.*, Doc. 132 at ¶ 17 (noting a single reported pertussis case in Montana in 2021).  Further, antidiscrimination laws apply even in infectious disease cases.  *See Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 284 (1987).  Finally, the State's police power includes authority to prohibit compulsory vaccination.  *Brnovich v. Biden*, 562 F.Supp 3d 123, 156–57 (D. Ariz. 2022).  Plaintiffs' statement that the police power can "never" be used to ends

with which their cherry-picked medical community members disagree misapprehends the nature of the police power.  *See Gonzales v. Carhart*, 550 U.S. 124, 163 (2007); *Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997).

## III. Equal Protection

### A. The Individual Plaintiffs cannot demonstrate standing.

Plaintiffs apparently believe they're entitled to a free pass on standing at every stage of litigation based on allegations made in their complaint.  *See* Doc. 119 at 28.  Article III demands more.  *See Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005, 1012 (9th Cir. 2018).

As discussed in Defendants' Response, the Individual Plaintiffs lack standing because only those personally denied equal treatment have a cognizable injury under Article III.  *See* Doc. 131 at 20–21.  HB 702 doesn't regulate patients, it regulates providers.  They have no injury because they lack a protected interest.  *See Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879, 904 (9th Cir. 2018).  The Individual Plaintiffs lack standing.

## B. Plaintiffs aren't similarly situated.

Plaintiffs refer repeatedly to themselves as "similarly situated" to those facilities HB 702 exempts; but repetition isn't a substitute for correctness. Institutional Plaintiffs' entire argument boils down to this: since all healthcare facilities treat immunocompromised patients, they're automatically similarly situated. But that isn't enough to establish that they are "arguably indistinguishable" from the exempt facilities. *See Hill St. Health Servs. LLC v. Cty. of L.A.*, 2016 U.S. Dist. LEXIS 192359, at *21 (C.D. Cal. Nov. 16, 2016).

Plaintiffs claim that "[t]he fact they fall under different licensure statutes is irrelevant in terms of whether they are similarly situated." Doc. 119 at 32–33. That's untrue. It's highly relevant to the inquiry and precludes them from being similarly situated. *See Taylor v. San Diego Cnty.*, 800 F.3d 1164, 1169 (9th Cir. 2015).

## C. HB 702 Satisfies Rational Basis

Plaintiffs again offer this Court a tortured understanding of the State's police power and the Equal Protection analysis. They claim— astonishingly—that "[e]levating individual interests over public health cannot, as a matter of law, be in the public good and thereby may not

serve as a rational basis." Doc. 119 at 36. But that's bad philosophy masquerading as law. It won't surprise the Court that Plaintiffs offer nothing to support their proposition. Because no court in America has ever done analysis like that.

Plaintiffs claim "[g]iven MCA 49-2-312 indisputably harms public health, *Jacobsen* cannot be ignored in determining whether the statute survives rational basis scrutiny." Doc. 119 at 33. As discussed in Part II, HB 702 is a valid exercise of the police power, and Plaintiffs haven't proven HB 702 harms public health. *See also* Doc. 131 at 25-27 (discussing Plaintiff's interpretation of *Jacobsen* and the police power).

The State may, nevertheless, implement different regulatory schemes for different entities. *See First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1279 (9th Cir. 2017). It may also hold some types of medical facilities to a more stringent regulatory scheme than others—even if they perform similar services. *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 537, 545 (9th Cir. 2004).

Plaintiffs' response is to ignore controlling caselaw and repeat the hotly disputed proposition that HB 702 "indisputably" harms public health; Plaintiffs face an enormous burden to prevail under rational

basis—and that "argument" doesn't cut it.  *See* Doc. 119 at 33–34, *id.* at 35–36; *but see Boardman v. Inslee*, 978 F.3d 1092, 1118 (9th Cir. 2020) (Plaintiffs must negate every conceivable basis which might support it, whether or not the basis has a foundation in the record).

Under rational basis, it doesn't matter whether some parties think HB 702 harms public health (it doesn't).  What matters is that the State has balanced interests including public health, nondiscrimination, and privacy, and decided on this policy.  If HB 702's sole rationale was that it improved public health *and* Plaintiffs conclusively negated every conceivable basis for that rationale, then their theory might have legs.   But HB 702 serves important state interests other than (and in addition to) public health.  *See* Doc. 131 at 27–30 (discussing State's interests).

Plaintiffs noticeably don't expend much effort attacking the exemption contained in § 49-2-313, just HB 702's general rationale.  After they finish rehashing arguments that they lost—decisively—when the law was being made, they finally get around to discussing the exempted facilities.

Defendants have made clear that the Governor's Amendatory Veto was due to potential compliance with Conditions of Participation for Medicare and Medicaid.  *See* Doc. 92 at 40–41; Doc. 131 at 31–35.

Regarding the unique concerns surrounding residential facilities, Plaintiffs claim Defendants' "fail to establish this bare assertion with citation to the facts, and the undisputed facts belie this conclusory statement."  Doc. 119 at 35.  Wrong again.  Defendants have pointed out repeatedly that those concerns were espoused by the Centers for Medicare and Medicaid Services.  *See* Doc. 93 at ¶¶ 13–14; *see also* Doc. 131 at 33. It also doesn't need to be in the record.  *Boardman*, 978 F.3d at 1118.

As discussed previously, Doc. 131 at 31–32, Plaintiffs' argument that the law jeopardizes hospitals' reliance on Medicare and Medicaid funding lacks substantiation and constitutes improper second guessing of the Legislature's prerogative.  *See FCC v. Beach Commc'ns*, 508 U.S. 307, 320 (1993).

## CONCLUSION

The Court should grant Defendants' Motion for Summary Judgment.

DATED this 30th day of September, 2022.

Austin Knudsen
Montana Attorney General

DAVID M.S. DEWHIRST
  *Solicitor General*

CHRISTIAN CORRIGAN
  *Deputy Solicitor General*

*/s/Brent Mead*
BRENT MEAD
  *Assistant Attorney General*
P.O. Box 201401
Helena, MT 59620-1401
david.dewhirst@mt.gov
christian.corrigan@mt.gov.
brent.mead2@mt.gov

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 3,246 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/ *Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: September 30, 2022          /s/ *Brent Mead*
BRENT MEAD