Justin K. Cole
Kathryn S. Mahe
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT 59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jkcole@garlington.com
ksmahe@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al.,<br><br>  Plaintiffs,<br><br>and<br><br>MONTANA NURSES ASSOCIATION,<br><br>  Plaintiff-Intervenors,<br><br>v.<br><br>AUSTIN KNUDSEN, et al.,<br><br>  Defendants. | CV 21-108-M-DWM<br><br><br>REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

MCA 49-2-312's unprecedented restriction on the utilization of vaccines to prevent diseases runs afoul of federal law and denies equal protection to similarly situated healthcare entities and patients. Defendants appear to be litigating a

different case—one that ignores the facts[1], ignores the pleadings[2], and is solely about COVID-19[3]. When the actual facts and pleadings are considered, MCA 49-2-312 should be enjoined as a matter of law.

This case does not rise or fall on disputed facts–it is about a law that cannot survive constitutional scrutiny. Defendants do not contend a trial is necessary to resolve disputed facts and seek summary judgment on the same claims. Their own medical experts agree vaccines work, and an individual's immunity status impacts disease transmission. This leaves only application of the law.

MCA 49-2-312 is preempted by the Americans with Disabilities Act ("ADA"), and unconstitutionally denies equal protection to patients, physician offices, and hospitals. To avoid needless repetition, Plaintiffs incorporate their prior briefing and the briefing of Plaintiff-Intervenor.

A.   **There are no material facts genuinely in dispute.**

Though Defendants "dispute" nearly all of Plaintiffs' facts, they do so through conclusory arguments, spurious statements of unrelated facts,

---

[1] Plaintiffs presented uncontested facts that employees and patients have requested accommodations based upon vaccination status. (Doc. 120, ¶¶23-24, 40, 43, 58-59, 61, 75, 107, 109-110, 112, 121, 133).

[2] Plaintiffs have repeatedly alleged that MCA 49-2-312 violates equal protection principles because it treats offices of private physicians differently than other healthcare facilities. (Doc. 37, ¶¶63, 71; Doc. 70, 20; Doc. 74, 10; Doc. 23, 32-33).

[3] MCA 49-2-312 undisputedly applies to all vaccines. (Doc. 83, ¶96).

misstatements of the record, and inappropriate legal arguments[4]. (Doc. 132). These skewed attempts to dispute facts for the mere sake of resisting Plaintiffs' motion do not create a genuine issue, and Defendants do not argue such. (Doc. 131). Similarly, the volume of the submissions is not indicative of a genuine issue for trial. Defendants' entire opposition rests on their argument that Plaintiffs have failed to establish enough facts to support their claims. As established throughout Plaintiffs' briefing, sufficient undisputed facts exist to establish MCA 49-2-312 is preempted by the ADA and is unconstitutional.

Where the moving party has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Wäschle v. Winter Sports, Inc.*, 127 F. Supp. 3d 1090, 1094 (D. Mont. 2015) (citation omitted). "Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered." *Id.* at 1093. "Furthermore, a party cannot manufacture a genuine issue of material fact

---

[4] Defendants improperly inject legal arguments into their Disputed Statement of Facts. (Doc. 131).

merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The Court should reject Defendants' attempts to "dispute" Plaintiffs' facts. Defendants' "citations" do not stand for the propositions they claim—if they cite any facts at all. For example, Defendants "dispute" that "[h]ealth conditions such as cancer, kidney transplant, diabetes, and other diseases are physical impairments that impact one or more major life activity." (Doc. 132, ¶9). But, their dispute is based upon the allegation that "physical impairment" is a term of art under the ADA. (Doc. 132, ¶9). Defendants present no evidence that the conditions are not physical impairments or that they do not impact major life activities. In another example, Defendants "dispute" that "Pertussis is a highly contagious disease that is fatal in young infants," but cite no factual record. (Doc. 132, ¶17). Instead, they dispute that "Montana experiences a high number of cases of pertussis," which is unrelated to the fact presented. In one of the most stunning examples of Defendants' analytical gymnastics, they dispute that "[i]nfectious disease prevention is critical in healthcare settings." (Doc. 132, ¶18). Again, Defendants cite no record related to this fact, instead claiming infectious disease prevention should be balanced against other factors. (Doc. 132, ¶18). Defendants' Disputed Statement of Facts is replete with manufactured, unsupported, and unrelated "disputes," which are insufficient to defeat summary judgment. (*See* Doc. 132).

Defendants have not raised a *genuine* issue for trial.  After a marathon of discovery by Defendants, there is no genuine dispute that vaccines are effective at preventing severe disease and disease spread, and that a healthcare provider's immunity status matters when it comes to caring for patients and working safely in healthcare settings.  Plaintiffs' experts agree that (1) vaccines help prevent disease, (2) vaccination/immunity status of healthcare providers matters when treating immunocompromised patients with disabilities and working with immunocompromised coworkers, and (3) medical standards of care require knowing the actual–not presumed–immunization status of healthcare workers.  Plaintiff-Intervenor's equally well-qualified experts concur.  (Doc. 83, ¶¶1-18, 23-44).

Most importantly, Defendants' own experts do not dispute these facts.  Dr. Duriseti, recognizing the efficacy of the Measles and Hepatitis B vaccines, opines that "clearly demonstrated reduction in transmission with high community vaccination rates requires more consideration than one's personal autonomy."  (Doc. 83, ¶30).  This is because, "vaccine or infection induced antibodies <u>can perform a pivotal role in preventing infection</u>."  (Doc. 83, ¶27) (emphasis added).  He goes further: "caregivers who do not accept such 'sterilizing vaccines' where said vaccination can markedly attenuate transmission when community vaccine coverage is more than 90%, <u>may need to accept special precautions when caring</u>

for vulnerable populations," i.e., nonvaccinated healthcare workers need to be treated differently. (Doc. 83, ¶31-32) (emphasis added). It is undisputed that certain vaccines are so effective they should be utilized in healthcare settings despite concerns regarding individual autonomy.

There is also no dispute that masks are not equally effective to vaccination, as Defendants have insinuated. Plaintiffs' other expert has testified:

> … according to a comprehensive evidence summary of masks effectiveness in the context of the flu – a virus that shares many physical properties with the SARS-CoV-2 virus and is transmitted similarly to SARS-CoV-2 – high-quality evidence finds <u>no effect of masks on the spread of disease, even when the masks are employed by health care workers who are trained to use them properly</u>.

(Doc. 83, ¶48) (emphasis added). As to vaccines and immunity status, Dr. Bhattacharya's opinions address only COVID-19 and fail to create a genuine dispute as to other vaccines. Defendants have been so focused on resisting COVID-19 vaccine mandates they have failed to appreciate what Plaintiffs' claims are, or what MCA 49-2-312 actually does.

Plaintiffs have established MCA 49-2-312, which prohibits certain portions of Montana's healthcare community from utilizing the undeniably effective tool of vaccination, causes real and undeniable harms. Defendants have not created any <u>genuine</u> issue of material fact and summary judgment is appropriate.

## B.     MCA 49-2-312 is preempted by the ADA.

Defendants do not attempt to raise a genuine issue regarding Plaintiffs' ADA preemption claims—arguing only that Plaintiffs fail to establish a prima facie claim.  Defendants misconstrue the nature of Plaintiffs' ADA preemption claim and, in doing so, fail to rebut Plaintiffs' motion.  Plaintiffs have established a prima facie case for ADA preemption, under both Title I and Title III.

Defendants' insistence that Plaintiffs must present facts necessary to prove a claim of discrimination should be rejected.  To establish preemption, Plaintiffs need not prove that in one particular case an individual was discriminated against sufficient to sustain a private ADA claim.  Rather, as Plaintiffs have done, Plaintiffs need only show that MCA 49-2-312 conflicts with the ADA's requirements and objectives.  Plaintiffs must show (1) there are disabled, immunocompromised individuals who seek healthcare and/or work in healthcare settings in Montana; (2) individuals who are immunocompromised are particularly vulnerable to vaccine-preventable diseases; and (3) the vaccination and/or immunity status of healthcare workers who come into contact with those immunocompromised individuals is medically significant, such that it impacts the reasonable accommodation process under the ADA.  (Doc. 83, ¶¶1-17, 23-34, 36, 39-44, 46-49).  These facts exist, are of record, and are not credibly disputed.

Plaintiffs need not await consummation of penalties under MCA 49-2-312, or an ADA discrimination claim to obtain injunctive relief. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013). It is undisputed that accommodation requests based upon vaccination status have been made, triggering the ADA. (Doc. 83, ¶36; Doc. 120, ¶107-112, 121, 133). Defendants cannot ignore that vaccination/immunity status matters, particularly in the context of transmitting diseases in healthcare settings where sick people seek treatment. And, they cannot ignore that it matters when complying with the ADA as an employer or public accommodation.

Defendants' attempt to distinguish between Title I, II, and III of the ADA misses the mark. The ADA's broadly stated intent "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" applies with equal force to the prohibitions under Titles I, II, and III. *See* 42 U.S.C. §§ 12101(b)(1). As the Ninth Circuit noted, "the House Judiciary Committee stated that 'Title II should be read to incorporate provisions of titles I and III which are not inconsistent with the regulations implementing Section 504 of the Rehabilitation Act of 1973.'"). *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 (9th Cir. 2010) (quotation omitted)); *see also Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 158 n.6 (2d Cir. 2013) (Title II's prohibitions are to be "identical to those set out in the applicable

provisions of titles I and III"); *Theriault v. Flynn*, 162 F.3d 46, 53 n.10 (1st Cir. 1998) ("Congress clearly did not intend to give public entities more latitude than private parties to discriminate against the disabled").

Defendants also apply the wrong standard for conflict preemption, contending MCA 49-2-312 is preempted only if it prohibits "all" reasonable accommodations. A statute is preempted when it "stands as an obstacle" to the accomplishment and execution of "the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). "A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach that goal." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103, (1992).

The EEOC has issued specific guidance that an immunocompromised individual's request for reasonable accommodations based upon an increased risk of contracting disease triggers the obligations under the ADA. (Doc. 83, ¶79). But, in Montana, when immunocompromised individuals make such a request of their healthcare provider, the provider is unable to comply with the ADA or risk violating MCA 49-2-312. Physician offices are unable to even engage in the interactive process and consider treating unvaccinated individuals differently in order to reasonably accommodate immunocompromised patients or staff. Failing to engage in the interactive process, itself, violates the ADA. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). The ADA preempts state

laws when necessary to effectuate a reasonable accommodation. *Mary Jo*, 707 F.3d at 164.

Defendants also continue to misconstrue–to the point of outright ignoring– MCA 49-2-312's actual prohibitions. Defendants insinuate the only way MCA 49-2-312 is violated is if a healthcare provider has an absolute vaccination requirement—vaccination or termination. Yet, MCA 49-2-312 prohibits much more than firing an individual who refuses to get vaccinated. The statute prohibits treating an individual differently *in any manner* based upon vaccination *or immunity* status, even when necessary to protect a vulnerable individual from disease. (*See* Doc. 83, ¶73).

The ADA requires accommodating and engaging in the interactive process with individuals with disabilities. MCA 49-2-312 prohibits considering (and knowing) vaccination status in attempting to accommodate such individuals. Plaintiffs have shown that for certain individuals, vaccination status must be considered as part of the accommodation process. MCA 49-2-312 stands as an obstacle to the ADA.

## C. MCA 49-2-312 denies equal protection to physician offices, hospitals, and their patients.

Amazingly, Defendants claim that Plaintiffs have "add[ed] a new claim that wasn't asserted in their complaint," alleging Plaintiffs did not plead that physician

offices are treated differently than "healthcare facilities" under MCA 49-2-312. (Doc. 131, 24). This assertion is demonstrably inaccurate. This claim has always been a central part of Plaintiffs' equal protection claim. Plaintiffs plead that MCA 49-2-312 "draws an unreasonable and baseless distinction between clinics in which physicians treat patients, and other licensed health care facilities." (Doc. 37, ¶¶63, 71; *see also* Doc. 70, 20; Doc. 74, 10; Doc. 23, 32-33).

Likewise, Defendants' effort to re-litigate the issue of standing[5] is insufficient to defeat summary judgment. To avoid repetition, Plaintiffs incorporate their prior arguments regarding standing. (*See* Docs. 23, 119, 121).

Defendants confusingly claim the individual Plaintiffs are not harmed by MCA 49-2-312 because they are not subject to legal penalties. (Doc. 131, 20-21). The individual Plaintiffs do not have to be subject to legal penalties to assert an equal protection claim—instead, they must show they have been, or will be, injured due to denial of equal protection under the law. *See Warth v. Seldin*, 422 U.S. 490, 500-501 (1975). Defendants misconstrue *Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879 (9th Cir. 2018). There, the Ninth Circuit found that the union did not have standing because it did not have a "right to 'obtain' funding"

---

[5] "[O]nce the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993).

and, therefore, could not show it was deprived of a right guaranteed to others who were similarly situated. *Interpipe*, 898 F.3d at 904. Here, the individual Plaintiffs have demonstrated that MCA 49-2-312 unconstitutionally burdens a cognizable right—the right to seek health care. They are patients who seek healthcare from physician offices and hospitals. MCA 49-2-312 denies them the right to seek healthcare in the same manner as patients of Exempted Facilities because vaccination status of staff cannot be taken into account in their care. (Doc. 83, ¶5).

Because Defendants' sole opposition to the individual Plaintiffs' equal protection claim is based upon standing, they have failed to address the fact that MCA 49-2-312 cannot satisfy strict scrutiny. (Doc. 131). Defendants do so at their peril. By providing no rebuttal, Defendants concede Plaintiffs' arguments are well-taken. Given the Court has already ruled that strict scrutiny applies to these claims, Defendants' failure to rebut this aspect is dispositive. Doc. 35, 15.

Additionally, Defendants' argument that the institutional Plaintiffs are not similarly situated should be disregarded. (*See* Doc. 119, 23-24). The undisputed facts establish that physician offices, hospitals, nursing homes, long term care facilities and assisted living facilities are similarly situated in all *relevant* respects. (Doc. 83, ¶¶50-57). Defendants' reliance on licensing regulations to draw an illusory distinction between physician offices, hospitals, and Exempted Facilities is misplaced. For instance, Defendants cite Montana Administrative Rule

37.106.313, but this standard applies to "[a]ll health care facilities," including hospitals. Montana Administrative Rule 37.106.2855 likewise provides Defendants no support, as that same regulatory scheme specifically requires hospitals to comply with all of the Conditions of Participation, including the infection prevention regulations at 42 CFR § 482.42. *See* Admin. R. Mont. 37.106.401. Moreover, the minor regulatory differences noted by Defendants do not create a difference in any *relevant* respect. *See Harrison v. Kernan*, 971 F.3d 1069 (9th Cir. 2020); Admin. R. Mont. 24.156.101, et seq. (physician regulations). The regulatory scheme only further shows that all healthcare providers have sufficiently similar interests in preventing transmission of infectious disease. (*See* Doc. 119, 24-25).

Defendants have failed to establish that MCA 49-2-312 meets rational basis scrutiny. As previously set forth, the bases for the distinctions identified by Defendants are arbitrary and unreasonable, antithetical to public health, and unrelated to the arbitrary classifications drawn by the statute. The only basis identified by Defendants in discovery was the alleged ability to comply with CMS regulations, precluding Defendants' new arguments. (Doc. 83, ¶85). Regardless, many of Defendants' new "bases" relate solely to COVID-19, illustrating they are not rationally related MCA 49-2-312 as it applies to all vaccines.

Equally, the interest in preventing discrimination cannot be rationally related to MCA 49-2-312's prohibitions as it precludes compliance with the ADA and, therefore, causes discrimination.  Preventing discrimination at the expense of public health is not rational.  (*See* Doc. 119, 16-17).

Defendants offer three additional potential rationales for the distinction—the rights to pursue employment, to privacy, and to reject medical treatment.  However, the same problem dooms each:  they do not bear a rational relationship to the distinctions drawn by the statute.  These generic assertions, which are unmoored from the legislative history and largely absent from its text, do not account for MCA 49-2-312's broad prohibition on all differential treatment based upon immunity status and all immunizations.  It cannot be said that employees have a greater right to pursue employment in Exempted Facilities, than in hospitals and physician offices.  *Mont. Cannabis Indus. Ass'n v. State*, 2012 MT 201, ¶20 (the right to pursue employment does not equate to a right to pursue a particular employment or one free of regulation).  Similarly, the right to privacy argument fails as described in prior briefing.  (*See* Doc. 82, 31-36; Doc. 119, 24).  *Tuscon Woman's Clinic v. Eden* is inapposite as rational basis was only present there because "the law [was] facially related to health and safety issues."  379 F.3d 531, 546 (9th Cir. 2004).  When scrutinizing the classification of providers, the asserted state interest was "the desire to protect the health and welfare of women seeking

abortions." *Id.* at 547.  MCA 49-2-312 can find no such support.  Despite multiple attempts[6] Defendants cannot articulate a basis sounding in public health for removing the ability to utilize vaccination from certain healthcare providers.  Likewise, the right to reject medical treatment fails as MCA 49-2-312 does not solely apply to mandates (violation can occur for requiring nonvaccinated individuals to wear additional PPE) and it is not rational that employees of hospitals and physician offices have a greater right to reject medical treatment than those of Exempted Facilities.  (*See* Doc. 119, 18-19).  Plus, this right is still subject to the "'interest in protecting public health.'" *Mont. Cannabis*, ¶24 (citation omitted).

As detailed in other briefing, rational basis cannot be established based upon the need to comply with CMS regulations.  (*See* Doc. 119, 34-35).  Defendants provide no rational reason for including assisted living facilities as an Exempted Facility or excluding hospitals.  (*See* Doc. 82, 34-35).

D.     **Plaintiffs are entitled to a permanent injunction.**

In their response, Defendants failed to address permanent injunctive relief related to the CMS COVID-19 vaccination mandate.  (Doc. 131).  However, likely due to word limits, they address this claim in response to Plaintiff-Intervenor's

---

[6] Defendants rely on dicta from *Brnovich v. Biden*, that contains no legal support.  562 F. Supp. 3d 123, 157 (D. Ariz. 2022).

motion.  (Doc. 130, 28-34).  Plaintiffs incorporate Plaintiff-Intervenor's arguments in this regard.  Given Plaintiffs have otherwise established the merits of this claim, unrebutted by Defendants[7], a permanent injunction is appropriate.

Further, Defendants do not present any argument regarding the elements required for a permanent injunction related to Plaintiffs' other claims.  Plaintiffs are entitled to summary judgment on Claims I, II, V, VI, VII, and VIII and a permanent injunction is appropriate.

DATED this 30th day of September, 2022.

    /s/  Kathryn S. Mahe
Attorneys for Plaintiffs

---

[7] Defendants did not move for summary judgment on this claim.  (Doc. 91).

4880-8625-3876

16

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Reply Brief in Support of Plaintiffs' Motion for Summary Judgment is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 3244 words long, excluding Caption, Certificate of Service and Certificate of Compliance.

    /s/  Kathryn S. Mahe
Attorneys for Plaintiffs