Raph Graybill
GRAYBILL LAW FIRM, PC
300 4th Street North
Great Falls, MT 59403
Phone: (406) 452-8566
Email: rgraybill@silverstatelaw.net

*Attorney for Plaintiff-Intervenor*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> and <br><br> MONTANA NURSES ASSOCIATION, <br><br> Plaintiff-Intervenor <br><br> v. <br><br> AUSTIN KNUDSEN, Montana Attorney General, and LAURIE ESAU, Montana Commissioner of Labor and Industry, <br><br> Defendants. | Cause No. 9:21-cv-108 <br><br> Hon. Donald W. Molloy <br><br><br><br> **PLAINTIFF-INTERVENOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

This case should be resolved at summary judgment because it turns on legal issues: whether Montana Code Annotated § 49-2-312 denies equal protection and whether it is preempted by federal law. The claims require Plaintiffs and the Nurses to establish certain predicate facts before the Court can reach the legal issues. But after marathon discovery, exhaustive briefing, and Defendants' own cross-motion for summary judgment, the basic facts that underpin the Nurses' and Plaintiffs' motions for summary judgment are not in genuine dispute. Because there is no genuine issue of material fact, the Court should resolve the legal issues at summary judgment and grant Plaintiffs' and the Nurses' motions.

To avoid redundancy and because many of Defendants' arguments have already been addressed through the Nurses' Response to Defendants' Cross-Motion for Summary Judgment, Doc. 118 ("Nurses' Response"), the Nurses incorporate those arguments as well as the arguments in Plaintiffs' Reply In Support of Motion for Summary Judgment ("Plaintiffs' Reply"), filed concurrently herewith.

## I.   EQUAL PROTECTION

To succeed on their equal protection claims, the Nurses must establish as a factual matter that their members in Exempted Facilities are similarly situated in all *relevant* respects to nurses who do not work in Exempt Facilities. *Goble v. Montana State Fund*, 2014 MT 99, ¶ 29, 374 Mont. 453, 325 P.3d 1211 ("two

1

groups are similarly situated if they are equivalent in all *relevant* respects other than the factor constituting the alleged discrimination" (emphasis added)). The rest of the equal protection analysis presents legal determinations for the Court: whether and which rights the Exempted Facilities distinction burdens, the appropriate level of scrutiny to apply, and whether the distinction can survive the appropriate level of scrutiny.

At summary judgment, the Nurses have carried both their initial burden of production and the burden of persuasion that their members who work in Exempted Facilities are similarly situated in all relevant respects to those who work in other healthcare settings. Dr. Holzman, an experienced preventive medicine and public health doctor who served with the Centers for Disease Control and Prevention ("CDC") and as Defendants' own State Medical Officer, testified that in his experience, "healthcare workers in long term care settings face the same or similar workplace risks associated with vaccine-preventable disease as those who do not work in long term care settings." Doc. 86-3 at 11. *See also* Doc. 122-13 (Holzman Dep. excerpts elaborating on relevant similarities in the risk of vaccine-preventable disease shared by Exempted Facilities and other healthcare settings in Montana). And Vicky Byrd, an experienced nurse and CEO of the Montana Nurses Association who has visited with thousands of Montana nurses about their working conditions, testified that based on her experience and personal

2

knowledge, "nurses in hospitals, the offices of private physicians, APRN clinics, nursing homes, long-term care facilities, assisted living facilities, and other healthcare settings" are vulnerable to vaccine-preventable disease, "treat patients in varying degrees of health," "interact in close quarters for extended periods of time with coworkers and with patients," "are all the subject of CDC guidance, including CDC guidance on the immunization of health care workers," and "face the same workplace risks from vaccine-preventable disease."  Doc. 85-1 at 4-5 (Declaration of Vick Byrd ("Byrd Decl.")).

Defendants offer *nothing* in response that contradicts the testimony of Dr. Holzman or Ms. Byrd, or puts it at issue.  Instead, Defendants argue that Exempted Facilities and other healthcare settings are regulated differently by the State of Montana.  But Defendants do not explain why different regulatory treatment is relevant to the Nurses' claims.  The Nurses do not challenge the way Exempted Facilities are licensed, for example.  Their claim is that the risk of vaccine-preventable disease is the same in Exempted Facilities as it is in other facilities— that the statute's distinction between the two is arbitrary and burdens the Nurses' rights.  The only testimony about the actual conditions inside these two workplaces comes from the Nurses.  Nothing Defendants identify contradicts the testimony of Dr. Holzman and Ms. Byrd that healthcare workers in both settings are vulnerable to vaccine-preventable disease, treat patients with a diverse range of health risks,

3

and spend extended periods in close quarters with patients and coworkers. The Nurses carry their burden; there is no genuine issue for trial.

The remainder of the Defendants' arguments on equal protection are legal and are largely addressed in the Nurses' Response and Plaintiffs' Reply. The Nurses join those arguments and supplement them below.

### A. The Nurses still have standing

Defendants assert that the Nurses do not have standing on their equal protection claims because the challenged law regulates employer conduct, not employees. This argument overlooks the Nurses' Advanced Practice Registered Nurse ("APRN") members who own their own practices and are themselves employers, subject to § 49-2-312 directly. Setting aside the APRN members, it is well settled that a plaintiff has standing to challenge laws that burden the plaintiffs' rights directly, even if the law purports to regulate others. *See* Nurses' Response, Doc. 118 at 15-18 (addressing Defendants' argument). The Nurses allege that their own rights are affected by the challenged law. And "[o]nce it is established that a party can properly ask a court to consider the validity of a governmental act, the threshold standing doctrines ascribed to Article III ordinarily should be satisfied." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.9.2 (3d ed.). There is no special rule applicable to equal protection cases, as Defendants argue, that a plaintiff only has standing if she is the object of the

challenged law. The cases Defendants cite do not stand for this proposition, either. Rather, the Nurses have plainly established standing on their equal protection claims under ordinary principles of constitutional standing. The Nurses' members have a legally-cognizable injury in fact (the violation of their constitutional rights and the increased risk of obtaining a vaccine-preventable disease because of § 49-2-312) that is fairly traceable to the Defendants' conduct (Defendants enforce § 49-2-312) and redressable by a favorable decision by the Court (an injunction against the statute will alleviate the injury). The Nurses still have standing on their equal protection claims.

### B. Strict scrutiny applies under the Montana Constitution

As this Court has already held, strict scrutiny applies to the Nurses' state constitutional claims because § 49-2-312 burdens their fundamental rights under Article II, Section 3 of the Montana Constitution to seek health and employment. Consistent with this Court's prior ruling, the Montana Supreme Court restated just *last week* that strict scrutiny applies to such claims: where a right is "found at Article II, Section 3 of Montana's Constitution . . . *any statute or rule which implicates that right must be strictly scrutinized*." *Montana Democratic Party et al., v. Jacobsen*, 2022 MT 184, ¶ 18 (emphasis added) (quoting *Mont. Env't Info. Ctr. v. Dep't of Env't Quality*, 1999 MT 248, ¶ 63, 296 Mont. 207, 988 P.2d 1236). That is because "[a] right is fundamental if it is found in the Montana

5

Constitution's Declaration of Rights." *Id.* (citing Mont. Const., art. II).

Notwithstanding the above, Defendants seek reconsideration of the Court's prior ruling on two arguments: that the phrase "in all lawful ways" in Article II, Section 3 gives the legislature a blank check to undermine the rights to seek health and employment, and that the Nurses have not demonstrated that § 49-2-312 burdens either right. Neither is correct.

On the first argument, the Montana Supreme Court is clear: for the rights "found at Article II, Section 3 of Montana's Constitution . . . any statute or rule which implicates that right must be strictly scrutinized." *Montana Democratic Party*, ¶ 18 (citation omitted). And as described in detail in Plaintiff's Response, the "lawful ways" language does not empower the legislature to pass *any* law that burdens the substantive rights provided in Article II, Section 3. The Montana Supreme Court in *Montana Democratic Party* rejected a similar argument that an affirmative grant of power to the legislature in one part of the constitution would allow the legislature, carte blanche, to undermine protections secured by the Declaration of Fundamental Rights in Article II. *Id.*, ¶ 36. The same logic defeats Defendants' arguments here: their mile-wide reading of the "lawful ways" language would render the constitutional protections in Article II, Section 3 meaningless anytime the Montana legislature feels like ignoring them. That is not how "fundamental rights" work. The legislature must have a compelling reason to

burden the right, and must do so in a way that is narrowly tailored to the compelling objective. Not any law will do.

On the second argument, Plaintiffs have plainly carried their burden of persuasion that § 49-2-312 burdens their rights to seek health and employment.[1] There is no genuine issue—and no contradictory evidence from Defendants—that ordinary workplace vaccination requirements are an essential component of infection control and workplace safety in healthcare settings. Doc. 83 ("Pl's SUF") 3,25,27; Holzman Dec., Doc. 86-3 at 7-11. Even Defendants' own expert agrees that ordinary workplace immunizations should be required. Duriseti Report, Doc. 86-6 at 25. Workplace vaccination requirements are infection control tools that promote and secure the Nurses' constitutional rights to seek health and employment. By making the infection control tools *illegal*, § 49-2-312 burdens those rights.

Defendants argue from a series of "what about this" assertions that fail to address, or put at issue, that the statute burdens the Nurses' rights. Defendants' contrary examples are straw men. They have no response to the undisputed fact that masks are no substitute for immunizations that protect against blood-borne

---

[1] Defendants argue that the right to employment is a new assertion. They misapprehend the Complaint. The statute's adverse effect on Nurses' employment opportunities undergirds virtually all of the Nurses' claims; it appears throughout. *See generally* Doc. 38.

pathogens like Hepatitis B. Defendants do not contradict that the TDAP and MMR vaccines, for example, are effective at reducing the risks of Diphtheria, Pertussis, Measles, Rubella and other diseases in the workplace. And Defendants do not contradict through evidence that actual knowledge of an employee's immunity status is a crucial, irreplaceable, and indispensable tool in arresting outbreaks of vaccine-preventable disease. On the factual predicates necessary to show that § 49-2-312 burdens the fundamental rights to seek health and employment under the Montana Constitution, the Nurses carry their burden of persuasion. On the legal issue, there is little question that the statue at issue burdens these rights for the Nurses. Accordingly, strict scrutiny applies to the Nurses' equal protection claim under the Montana Constitution.

### C. The statute fails under any standard of review

As discussed at length in prior briefing, the distinction between Exempted Facilities and others does not withstand any level of scrutiny—much less strict scrutiny on the Nurses' state law claim—because its stated objective has zero relationship to the policy.

On equal protection review, the best evidence of the state interest advanced by a challenged distinction is the policy itself and the reasons given by the legislative body that adopted it. *Hensley v. Montana State Fund*, 2020 MT 317, ¶ 27, 402 Mont. 277, 477 P.3d 1065 (looking to statute's declaration of policy for

state interest); *Henry v. State Comp. Ins. Fund*, 1999 MT 126, ¶ 34, 294 Mont. 449, 982 P.2d 456 (same). The statute at issue in this case states its purposes as promoting the privacy of medical records—an objective that has nothing to do with banning ordinary vaccination requirements in most healthcare settings, while permitting them in Exempted Facilities. Pl's SUF 84. Likewise, the objective offered by the Governor—whose amendatory veto is the reason the distinction entered the statute—has no relationship to the distinction either. If the goal is to facilitate compliance with CMS requirements, or CDC guidance, it makes no sense to draw the distinction the statute does between Exempted Facilities (some, but not all, of which must comply with CMS conditions of participation and all of which are subject to CDC guidance) and other settings (most of which *do* have to comply with CMS conditions, and all of which are also subject to CDC guidance). The absence of any rational relationship between the distinction and the policy is fatal on any level of review.

While the parties agree that rational basis review applies to the Nurses' federal claim, Defendants make little effort to satisfy the demanding requirements to show a compelling interest under Montana law. *See Armstrong v. State*, 1999 MT 261, ¶ 41 n.6, 296 Mont. 361, 989 P.2d 364. First, Defendants cite federal case law holding that states generally have an interest in preventing discrimination; but the cases cited do *not* stand for the proposition that a state can invent, from

whole cloth, new suspect classes like "immunity status" with no finding of historic discrimination. These bare assertions based on inapposite case law do not establish "some interest of the highest order and not otherwise served, or the gravest abuse, endangering a paramount government interest" necessary to demonstrate a compelling interest under Montana law. *Id.* The same is true for Defendants' thin effort to re-cast the statute as a pro-employment measure. Put differently, an interest is not "compelling" merely because, in litigation, Defendants say it is. The closest Defendants come is their argument that the statute protects medical privacy. Yet this fails to demonstrate a compelling interest too, because the statute does not actually enact any new *privacy* protections for medical records. And Montana law and federal medical privacy law already create a thick overlay of protections for the kinds of harms Defendants try to shoehorn into the statute in their briefing. *Id.* (interest must be of the "highest order and not otherwise served").

## II. PREEMPTION

### A. ADA

The Nurses join and incorporate by reference their moving arguments, the arguments in the Nurses' Response, and in Plaintiffs' Reply. In addition, Defendants fail to explain how the Nurses' support for appropriate exemptions from vaccination requirements undermines their ADA claims. The Nurses have always supported the ability for their members to obtain appropriate medical and

religious exemptions—this is part of the established order that accompanies workplace vaccination requirements everywhere in America. If you can't take a vaccine for a bona fide medical or religious reason, you don't have to. But the statute at issue here goes much further, and bars all vaccination requirements in the first place. It is the vast prohibition in § 49-2-312 that runs afoul of the ADA.

### B. OSH Act

To succeed on their OSH Act preemption claim, the Nurses must establish that vaccine-preventable disease is a recognized hazard in the workplace likely to cause death or serious injury, and that § 49-2-312 interferes with healthcare settings and their ability to free the workplace of that hazard. *See Donovan v. Royal Logging Co.*, 645 F.2d 822, 829 (9th Cir. 1981). Defendants do not contest this basic framework. Rather, they argue that healthcare settings in Montana did not require ordinary workplace immunizations before § 49-2-312. *Ergo*, they say, immunization requirements have no relationship to the general duty clause.

As an initial matter, there is no genuine dispute that (1) Montana healthcare settings routinely required a range of ordinary vaccinations as a condition of employment before § 49-2-312, and (2) these requirements play a leading role in freeing healthcare workplaces from the recognized hazard of vaccine-preventable disease. *See, e.g.*, Doc 86-3 at 7-11; Nurses' Response at 7-9 (summarizing undisputed Byrd and Wilson deposition testimony). Neither is "hypothetical," and

the random, misleading factual assertions that Defendants make in response do not put either at issue. Their own expert agrees that some vaccines should be required. Doc. 86-6 at 25.

Defendants' only other argument is that OSHA has not made an enforcement action in connection without an outbreak of vaccine-preventable disease in Montana, yet. But this is another repackaging of Defendants' tired standing arguments—that a plaintiff must suffer actual enforcement to establish an injury. Not so. And there can be little doubt that if Montana healthcare settings begin to show widespread outbreaks of Measles, Pertussis, Hepatitis B, and Diphtheria, OSHA will take an interest. Defendants do not appear to dispute that these types of diseases are, in fact, recognized hazards in the healthcare workplace. The Nurses are not required to suffer widespread outbreaks of the illnesses these vaccines target in order to succeed on their preemption claims.

At bottom, Defendants' OSH Act arguments turn on the unsupported assertion that vaccines play no substantial role in freeing the workplace from vaccine-preventable disease. But the only direct, relevant evidence on this score favors the Nurses and is not in genuine dispute. Section 49-2-312 *un*-solves an old workplace problem unique to healthcare settings—vaccine-preventable disease. In so doing, it stands in the way of employers' obligations under the general duty clause and is preempted.

### C. CMS Rule

On the CMS Rule, Defendants rehash a series of arguments presented in a pending petition for *certiorari* in *Missouri v. Biden*, No. 21-1463—arguments the Supreme Court already rejected when it allowed the CMS rule to go into effect under its earlier decision in *Biden v. Missouri*, 142 S. Ct. 647 (2022). The petition essentially seeks another bite at the apple on the same claims.

The merits of Defendants' assertions are no longer open questions following the Supreme Court's January decision.[2] The Supreme Court has already rejected Defendants' argument that the Rule exceeded CMS's statutory authority. *See id.* at 652-53. It also concluded that "the interim rule is not arbitrary and capricious." *Id.* at 653.

The Rule does not violate the Tenth Amendment, either. First, the funds at issue in the Rule largely go to private actors rather than state actors, and thus Defendants' Spending Clause arguments are inapposite because the doctrine they cite applies only to state-received funds. *See South Dakota v. Dole*, 483 U.S. 203, 207 (1987). For those funds that do go to the State of Montana, the Supreme Court has concluded that the Rule is a permissible condition of participation. *Biden*, 142

---

[2] For an extended discussion of Defendants' arguments recycled from the Petition, see Brief of the United States in Opposition at 20-23, available at
https://www.supremecourt.gov/DocketPDF/21/21-1463/228496/20220621153030510_No.%2021-1463%20Missouri%20v.%20Biden%20-%20final.pdf

S. Ct. at 650.  Second, the Rule does not commandeer the State of Montana because the Rule applies evenly to state and private actors, *see Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1478 (2018), and because the surveying agreements with the State of Montana to enforce the rule are voluntary.  *See* 42 U.S.C. 1395aa(a).  Third, the rule does not violate the Tenth Amendment because CMS programs are established under Congress's Spending Clause powers, which empower Congress to impose conditions on the receipt of federal funds even in areas "historically of state concern."  *Sabri v. United States*, 541 U.S. 600, 608 n.* (2004).

### III.  SCOPE OF RELIEF

Contrary to Defendants' arguments, the requested relief is not complicated.  Defendants' enforcement agency, the Montana Human Rights Bureau, had no difficulty in discovery identifying its discrimination findings that arose from "healthcare settings," and Defendants offer no reason why the agency would struggle to comply with an injunction on similar terms in the future.  The requested relief is precise, targeted, and easy to follow: Defendants should be enjoined from enforcing § 49-2-312 in employment-related matters arising from healthcare settings.

### IV.  CONCLUSION

The motion should be granted.

14

DATED this 30th day of September, 2022.

/s/ Raph Graybill
Raph Graybill

Attorney for Plaintiff-Intervenor

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Brief in Support of Motion for Summary Judgment is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365, is 3209 words long, excluding Caption, Certificate of Service and Certificate of Compliance.

/s/ Raph Graybill
Raph Graybill

Attorney for Plaintiff-Intervenor

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

/s/ Raph Graybill
Raph Graybill

Attorney for Plaintiff-Intervenor