IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA MEDICAL ASSOCIATION, et al., | CV 21–108–M–DWM |
| Plaintiffs, | |
| and | OPINION and ORDER |
| MONTANA NURSES ASSOCIATION, | |
| Plaintiff-Intervenor, | |
| vs. | |
| AUSTIN KNUDSEN, et al., | |
| Defendants. | |

Defendants Austin Knudsen, in his official capacity as the Montana Attorney General, and Laurie Esau, in her official capacity as the Montana Commissioner of Labor and Industry, (collectively "Defendants"), seek eight in limine rulings: (1) to exclude the expert testimony of Dr. Lauren Wilson, (Doc. 99); (2) to exclude the expert testimony of Dr. Bonnie Stephens, (Doc. 101); (3) to exclude, or

1

alternatively limit, the expert testimony of Dr. David King, (Doc. 103); (4) to limit the expert testimony of Dr. David Taylor, (Doc. 105); (5) to limit the expert testimony of Dr. Gregory Holzman, (Doc. 107); (6) to exclude portions of the testimony of Vicky Byrd, (Doc. 109); (7) to exclude portions of Rule 30(b)(6) testimony of various State of Montana agencies, (Doc. 111); and (8) to limit testimony from Plaintiffs Five Valleys Urology, Western Montana Clinic, and Providence based on their invocation of the Fifth Amendment, (Doc. 113).[1] With limited exception, the motions are denied.

## Legal Standard

"A motion in limine is a procedural mechanism to limit in advance [of trial] testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009); *see* Fed. R. Evid. 401, 403. Such motions "should not be used to resolve factual disputes, weigh evidence, or as a substitute for a motion for summary judgment." *Lo v. United States*, 2022 WL 1014902, *2 (W.D. Wa. April 5, 2022). Unless the evidence is "inadmissible on all potential grounds[,] . . . evidentiary rulings should be deferred until trial so that questions of foundation,

---

[1] Plaintiff-Intervenor argues that Defendants' motions violate Local Rule 7.1(d)(2)(D), which provides that "[f]iling serial motions to avoid word limits may result in denial of all such motions." Considered together, the briefs for all Defendants' motions in limine contain 15,411 words. And, at least some of those motions, especially those concerning expert witness challenges, cover very similar ground. Nonetheless, the issues are addressed on their merits in an effort to streamline trial in this matter. *See* Fed. R. Evid. 611(a).

2

relevancy and potential prejudice may be resolved in proper context." *BNSF Ry. Co. v. Quad City Testing Lab., Inc.*, 2010 WL 4337827, *1 (D. Mont. Oct. 26, 2010) (quotations and citation omitted). Moreover, in limine rulings are considered "generally superfluous" in the context of a bench trial, *Heller*, 551 F.3d at 1112, and a court's ruling on a pre-trial motion in limine may be changed based on the evidence actually presented, "even if nothing unexpected happens at trial." *Luce v. United States*, 469 U.S. 38, 41–42 (1984).

## ANALYSIS

### I. Expert Witnesses

Defendants' attempt to limit Plaintiffs' expert opinion evidence is generally unpersuasive as their challenges go to the weight, not the admissibility, of that evidence. With the limited exception of one opinion by one expert, Defendants' motions are denied as outlined below.

Under Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

3

> (d) the expert has reliably applied the principles and methods to the facts of the case.

In its gatekeeping role, the district court must determine the proffered opinions are both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Expert opinions are relevant if they "logically advance a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (quotation marks omitted). Expert opinions are reliable if they are the product of sound methods and principles. *Id.* The focus is on the expert's process, not the correctness of his or her conclusions. *Daubert*, 509 U.S. at 595. In this context, the district judge is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010) (quotation marks omitted). "For scientific opinion, the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one." *Id.* at 565. The district court only need "assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* (quotation marks omitted). A physician's experience supports admission of a physician's opinions even absent specific citations to medical data. *Id.*

"Expert testimony concerning an ultimate issue is not per se improper." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir.

2002). Expert testimony that is "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). While "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law," *Elsayed Mukhtar*, 299 F.3d at 1065 n.10, "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible," *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quotations and citation omitted). An expert may aid the fact finder by referencing facts "even though reference to those facts is couched in legal terms." *Id.* Moreover, in the context of a bench trial, there is less danger that the Court, as the factfinder, will be swayed by the aura of an expert's improper legal testimony.

### A. Dr. Lauren Wilson (Doc. 99)

Defendants seek to exclude the expert testimony of Dr. Lauren Wilson as unreliable and unhelpful. Neither argument has merit. Dr. Wilson prepared an expert report dated July 15, 2022, (Doc. 86-7), and was deposed on August 3, 2022, (Doc. 115-1). Dr. Wilson is a practicing pediatric hospitalist at Community Medical Center in Missoula and a Clinical Associate Professor of Pediatrics at the University of Washington School of Medicine. (Doc. 86-7 at ¶¶ 4–6.) Dr. Wilson's opinions are relevant because they concern vaccine use in healthcare settings. *See Estate of Barabin*, 740 F.3d at 463 (stated above); Fed. R. Evid. 401.

5

Her opinions are also reliable as they are based on her medical knowledge, skill, experience, and training, (*see id.* ¶¶ 14, 16–23), and in some cases—as with her opinions regarding measles and pertussis—on scientific data supported by cited studies, (*id.* ¶ 10). Contrary to Defendants' position, Dr. Wilson does not have to present data quantifying each opinion she gives, nor does she need to be a recognized vaccine specialist to give opinions on the efficacy of vaccines in healthcare settings. *See Primiano*, 598 F.3d at 565 (explaining that because "medicine is scientific, but not entirely science . . . much of medical decision-making relies on judgment—a process that is difficult to quantify or even assess qualitatively"). Notably, Dr. Wilson recognizes the limitations of her specialization, understanding she is not an expert in the science behind the design and manufacture of vaccines. (Doc. 115-1, Dep. Wilson 43:4–10.) Because Dr. Wilson relies on her specialized knowledge, experience, and education as a proper methodology for her decisions, her opinions are admissible, and Defendants' motion is denied.

### B. Dr. Bonnie Stephens (Doc. 101)

Defendants seek to exclude Dr. Stephens's opinions in their entirety or, at a minimum, limit them to her practice-based experience. With the exception of a single opinion, that request is denied. Dr. Stephens prepared an expert report dated July 15, 2022, (Doc. 86-4), and was deposed on August 15, 2022, (Doc. 115-2).

6

Dr. Stephens is board certified in Pediatrics, Developmental-Behavioral Pediatrics, and Neonatal-Perinatal Medicine. (Doc. 86-4 at ¶ 3.) She is currently the Chief Medical Officer for Community Medical Center. *(Id.* ¶ 4.)

Dr. Stephens's opinions are relevant because, for the same reasons as for Dr. Wilson, they concern the pertinent issue of vaccine use in healthcare settings. *See Estate of Barabin*, 740 F.3d at 463; Fed. R. Evid. 401. Her opinions are also reliable because they reflect her extensive and direct experience in this area. Her experience both as a clinician and as a hospital administrator, specifically in neonatal and pediatric intensive care settings, is sufficient to support the reliability of her testimony. Because Dr. Stephens relies on her specialized knowledge, experience, and education as a proper methodology for her decisions, her opinion testimony is admissible under *Daubert* and Rule 702.

Defendants also challenge Dr. Stephens's testimony on the basis that she proffers improper legal conclusions. However, apart from one conclusion in her expert report, Dr. Stephens's opinions do not amount to legal conclusions. While Dr. Stephens's statements implicate ultimate issues in this case, they are merely opinions on how a healthcare setting would need to operate to comply with the Americans with Disabilities Act and the Centers for Medicare & Medicaid Services Interim Final Rule regarding workplace vaccination. This discussion is permissible. *Hangarter*, 373 F.3d at 1017. Nevertheless, in paragraph 18 of her

7

expert report, Dr. Stephens opines that "[i]f the current injunction is lifted, Montana HB 702 directly conflicts with the CMS condition on participation." (Doc. 86-4 at ¶ 18.) Because that determination lies with the Court, this opinion is excluded as stated.

### C. Dr. David King (Doc. 103)

Defendants seek to exclude or limit the opinion testimony of Dr. David King. That motion lacks merit. Dr. King prepared an expert report dated July 15, 2022, (Doc. 86-1), and was deposed on August 2, 2022, (Doc. 115-3). Dr. King has been a board-certified practicing physician in Montana for about 40 years. (Doc. 86-1 at 24.) He has approximately five years' experience as the Medical Director of the Clinical Research Department at Bozeman Health, where he was directly involved in clinical trials of the Pfizer COVID-19 vaccine. (*Id.* at 24–25.)

Dr. King's opinions are relevant because they concern vaccine efficacy, their use in healthcare settings, and the potential dangers in limiting their use. *See Estate of Barabin*, 740 F.3d at 463; Fed. R. Evid. 401. His opinions are reliable because they rely on his extensive experience studying and working in the field of vaccine-preventable communicable diseases. His opinions are supported by this extensive experience. Defendants specifically seek to limit Dr. King's non-COVID-19 related opinions. While Dr. King only has two years of experience with COVID-19 and related vaccines, he has four decades of experience dealing

8

with other vaccines potentially implicated by Mont. Code Ann. § 49–2–312. His lack of differentiation between various vaccines in his discussion of their use in healthcare settings does not undermine his ability opine on their efficacy. Because Dr. King relies on his specialized knowledge, experience, and education, along with facts and data as a proper methodology for his decisions, the testimony is admissible, and Defendants' motion is denied.

### D. Dr. David Taylor (Doc. 105)

Defendants seek to exclude parts of the opinion testimony of Dr. David Taylor on the grounds that they are unreliable and unhelpful.[2] To the contrary, Dr. Taylor's testimony is both relevant and reliable. Dr. Taylor prepared an expert report dated July 15, 2022, (Doc. 86-2), and was deposed on August 4, 2022, (Doc. 115-4). Dr. Taylor has decades of experience in the field of infectious diseases, including as Chief of the Department of Clinical Trials and Acting Director of the Division of Communicable Diseases and Immunology at Walter Reed Army Institute of Research in Washington, D.C. (Doc. 86-2 at 39.) He currently serves as the Director of Clinical Research at Bozeman Health. (*Id.*)

---

[2] Notably, defendants do not object to the first paragraph of Dr. Taylor's expert report under *Daubert* or Rule 702. Dr. Taylor opines, "[v]accination is the single best strategy to protect the health of the US population against communicable diseases. FDA approved vaccines, including those under Emergency Use Authorization, are safe and effective." (Doc. 86-2 at ¶ 5.)

9

Dr. Taylor's opinions are relevant, perhaps the most relevant of all Plaintiffs and Plaintiff-Intervenor's experts, because they concern vaccine efficacy, their use in healthcare settings, and potential dangers should their uses be limited. *See Estate of Barabin*, 740 F.3d at 463; Fed. R. Evid. 401. And, contrary to Defendants' characterization, Dr. Taylor's opinions are not based on his personal opinions, but rather his years of professional experience. He also relies on data and research. (*See, e.g.,* Doc. 86-2 at ¶ 42.) Because Dr. Taylor's opinions are reliable and relevant, his testimony is admissible, and Defendants' motion is denied.

### E. Dr. Greg Holzman (Doc. 107)

Defendants seek to exclude portions of the opinion of Dr. Greg Holzman on the grounds that they are unreliable and unhelpful. Not so. Dr. Holzman prepared an expert report dated July 15, 2022, (Doc. 86-5), and was deposed on August 16, 2022, (Doc. 115-4). Dr. Holzman has extensive experience as a practicing doctor and public health official, including his work at the Centers for Disease Control and Prevention and for Defendants as the State of Montana's State Medical Officer. (Doc. 86-3 at 2-3.) As such, his experience and training more than satisfy Rule 702 gatekeeping requirements. Defendants' insistence that his opinions lack

10

foundation because of a lack of data is incorrect.[3] Dr. Holzman cites three studies used to support his opinions—there is no minimum number of supporting citations needed to meet the methodology requirement under Rule 702. Therefore, Dr. Holzman's testimony is admissible, and Defendants' motion is denied.

### F. Cumulative Testimony

The expert reports proffered by Plaintiff indicate potentially duplicative testimony as to the efficacy of vaccines and to their use in healthcare settings. Although this testimony is deemed admissible at the gatekeeping stage, the Court may limit cumulative evidence or testimony at trial. *See* Fed. R. Evid. 403, 611.

## II. Other Witnesses

### A. Vicky Byrd (Doc. 109)

Defendants seek to exclude portions of Vicky Byrd's testimony on the grounds that it includes topics to which Plaintiff-Intervenor objected during discovery. (Docs. 109, 110.) This is not the case.

Vicky Byrd is the CEO of the Montana Nurses Association and a registered nurse. (Doc. 85-1 at ¶¶ 1, 4.) Defendants first seek to exclude Byrd's testimony that some of the Nurses' members have vulnerabilities to "vaccine-preventable

---

[3] Defendants' treatment of Dr. Holzman is unnecessarily and improperly hostile and should not be employed at trial. For example, Defendants refer to one of Dr. Holzman's opinions as "ironically-titled," (Doc. 108 at 8), when criticizing its lack of foundation, (*see* Doc. 86-3 at ¶ 18).

11

diseases" because it was undisclosed but responsive to Defendants' Request for Production No. 4. (*See id.* at ¶¶ 8–9.)  Request for Production No. 4 asks Plaintiffs to "produce all documents including medical information substantiating the claims . . . that the [Montana Nurses Association] has members that have 'a compromised immune system' that qualify as disabilities under the Americans with Disabilities Act." (*See* Doc. 115-6 at 4.)  To this request, Plaintiff-Intervenor responded that they did not have responsive documents in their possession because they "do not maintain [their] members' individual medical records." (*See Id.*)  This response does not limit Byrd from commenting on members' medical conditions derived from her experience, not from documents in the Nurses' possession.  Defendants asked for "documents" with this information and Byrd's testimony does not contradict her assertion that the Nurses do not have such documents.  Therefore, Defendants' argument fails.

Similarly, Defendants seek to exclude Byrd's testimony regarding "work environments," "workplace safety concerns," and the "risk of vaccine-preventable disease," alleging they should have been produced in response to Defendants' Interrogatories 9 and 10.  These interrogatories ask Plaintiff-Intervenor to "explain in detail the infectious disease prevention protocols . . . in operation at healthcare settings . . . that employ Montana Nurses Association members." (*See* Doc. 115-6 at 6–7.)  Plaintiff-Intervenor responded that they do not "maintain a data set that

would permit a response." (*Id.* at 7.) Byrd's testimony does not explain any healthcare settings' protocols. For example, in testifying that she knows from her experience that before § 49–2–312, "vaccination requirements for nurses were common in healthcare settings in Montana," she does not describe *protocols* of these healthcare settings. (*See* Doc. 85-1 at ¶ 20.)

While Byrd cannot testify to undisclosed information that would have been responsive to Interrogatories 9 and 10, her testimony at issue here does not do so. Therefore, the motion is denied.

### B. Montana Attorney General's Office, Montana Department of Labor and Industry, Montana Human Rights Bureau, and Montana Department of Public Health and Human Services (Doc. 111)

Defendants seek to exclude certain testimony from the Montana Attorney General's Office, Montana Department of Labor and Industry, Montana Human Rights Bureau, and Montana Department of Public Health and Human Services, their own witnesses, on the grounds that the testimony included improper legal conclusions. That motion also lacks merit. A Rule 30(b)(6) designee is not prevented from making legal conclusions and those conclusions do not bind the party who designated the deponent. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018). Defendants may contradict the Rule 30(b)(6) testimony at trial to the extent they do not reflect the parties' positions. The testimony is admissible, and the motion is denied.

13

### C. Plaintiffs Five Valleys Urology, Western Montana Clinic, and Providence (Doc. 113)

Defendants seek an adverse inference that institutional Plaintiffs' pre-§ 49-2-312 vaccination policies did not change after the law was passed based on their invocations of the Fifth Amendment privilege against self-incrimination during depositions. These adverse inferences are neither warranted nor necessary.

In a civil matter, the privilege may be invoked by a person who "reasonably believes [their answer] could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 445 (1972). "[A]dverse inferences can be drawn from a party's invocation of this Fifth Amendment right." *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000). But "[s]uch adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer." *Id.* Moreover, an adverse inference cannot be drawn "unless there is a substantial need for the information and there is not another less burdensome way of obtaining that information." *Id.* at 1265.

First, Defendants seek an adverse inference that Providence's staff vaccination policy did not change since § 49-2-312 was enacted. Providence properly invoked its privilege and "independent evidence exists of the fact to which the party refuses to answer"—that the policy existed before and after the statute was enacted. *Glanzer*, 232 F.3d at 1264. However, that policy is in the

14

record, with timestamps noting that it has not changed since the statute was enacted. (Doc. 95-1 at 427–31.) Therefore, an adverse inference is unnecessary and this request is denied.

Second, Defendants seek to draw an adverse inference that Five Valley's Urology, PLLC has not changed the manner it treats vaccinated, versus unvaccinated patients. This contention is irrelevant as Plaintiffs do not challenge § 49–2–312 as it relates to discrimination based on a patient's vaccination status, only on an employee's vaccination status. (Doc. 37 at 26–28.) Therefore, this request is irrelevant and is therefore denied.

Third, Defendants seek an adverse inference regarding two Western Montana Clinic statements. In the first instance, no adverse inference can be drawn to Western Montana Clinic's statements about tracking of staff vaccinations because it did not invoke any privilege. In the second instance, Defendants seek an inference in regards to whether reasonable accommodations have been made since § 49–2–312 was enacted. (*See* Doc. 115-12 at 9, Dep. Morris 85:10–86:2.) Western Montana Clinic's deponent invokes her privilege, but it is unclear whether "independent evidence exists of the fact to which the party refuses to answer." *Glanzer*, 232 F.3d at 1264. Thus, no adverse inference can be drawn against Western Montana Clinic.

15

## CONCLUSION

Based on the foregoing, IT IS ORDERED, Defendants' motions (Docs. 99, 103, 105, 107, 109, 111, 113), are DENIED.

IT IS FURTHER ORDERED that Defendants' motion to exclude Dr. Bonnie Stephens (Doc. 101) is GRANTED as to the opinion stated in paragraph 18 of her report. (*See* Doc. 86-4 at ¶ 18.) That motion is DENIED in all other respects.

DATED this 18th day of October, 2022.

Donald W. Molloy, District Judge
United States District Court